No. 22-55873

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

LUKE DAVIS, JULIAN VARGAS, and AMERICAN COUNCIL OF THE BLIND,
individually and on behalf of all others similarly situated,

*Plaintiffs-Appellees,*

v.

LABORATORY CORPORATION OF AMERICA HOLDINGS, DBA
(doing business as) Labcorp,

*Defendant-Appellant.*

Appeal from an Order of the United States District Court
for the Central District of California
Case No. 2:20-cv-00893-FMO-KS · The Honorable Fernando M. Olguin

# EXCERPTS OF RECORD
## VOLUME 1 OF 8 – Pages 1 to 66

Robert I. Steiner
rsteiner@kelleydrye.com
KELLEY DRYE & WARREN LLP
3 World Trade Center
175 Greenwich Street
New York, New York 10007
212-808-7800

Glenn T. Graham
ggraham@kelleydrye.com
KELLEY DRYE & WARREN LLP
One Jefferson Road, 2nd Floor
Parsippany New Jersey 07054
973-503-5917

Becca J. Wahlquist
bwahlquist@kelleydrye.com
KELLEY DRYE & WARREN LLP
350 South Grand Avenue, Suite 3800
Los Angeles, California 90071
213-547-4900

Attorneys for Appellant
LABORATORY CORPORATION OF AMERICA HOLDINGS



JS-6

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

LUKE DAVIS, et al.

        Plaintiffs,

    v.

LABORATORY CORPORATION OF
AMERICA HOLDINGS, et al.

        Defendants.

CASE NO. 2:20-CV-00893-FMO-KS

**ORDER STAYING DISTRICT
COURT PROCEEDINGS
PENDING APPEAL**

ORDER
CASE NO.  2:20-CV-00893-FMO-KS

1        Having reviewed the Joint Stipulation filed by Plaintiffs Luke Davis, Julian

2    Vargas, and The American Counsel for the Blind ("Plaintiffs") and Defendant

3    Laboratory Corporation of America Holdings ("Labcorp"), as well as the

4    September 22-23, 2022, orders from the Ninth Circuit granting review and setting

5    a schedule for the appeal, and finding good cause to stay proceedings until the

6    Ninth Circuit issues its ruling, this Court orders as follows:

7        1.  This action is stayed pending a final ruling from the Ninth Circuit;

8        2.  All deadlines in the scheduling order (ECF No. 29) are stayed pending

9            resolution of the interlocutory appeal.

10       3.  The Clerk shall administratively close this case.

11   **IT IS SO ORDERED.**

12

13   Dated:  <u>September 28</u>, 2022

14                                          /s/

15                                   Hon. Fernando Olguin

16                                   District Court Judge

17

18

19

20

21

22

23

24

25

26

27

28

3

1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

LUKE DAVIS, JULIAN VARGAS, <u>et al.</u>,          )          Case No. CV 20-0893 FMO (KSx)
                                                )
                Plaintiffs,                     )
                                                )
        v.                                      )          **ORDER RE: MOTION TO REFINE CLASS**
                                                )          **DEFINITION**
LABORATORY CORPORATION OF                       )
AMERICA HOLDINGS,                               )
                                                )
                Defendant.                      )
_____            )

Having reviewed and considered all the briefing filed with respect to plaintiffs' Motion to Refine Class Definitions, (Dkt. 107, "Motion"), the court finds that oral argument is not necessary to resolve the Motion, <u>see</u> Fed. R. Civ. P. 78(b); Local Rule 7-15; <u>Willis v. Pac. Mar. Ass'n</u>, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.[1]

### <u>BACKGROUND</u>[2]

On May 23, 2022, the court granted Luke Davis ("Davis") and Julian Vargas's ("Vargas" and together with Davis, "plaintiffs") motion for class certification in connection with their complaint against Laboratory Corporation of America Holdings ("defendant" or "LabCorp"), and certified the following classes:[3]

_____

[1] Capitalization, quotation marks, punctuation, and emphasis in record citations may be altered without notation.

[2] The court hereby incorporates its Order of June 13, 2022 (Dkt. 103, "Amended Class Cert. Order").

[3] Because of the similarly of the class definitions, the court will refer to them in the singular.

1      <u>Nationwide Injunctive Class</u>:  All legally blind individuals in the United States

2      who visited a LabCorp patient service center in the United States during the

3      applicable limitations period and were denied full and equal enjoyment of the

4      goods, services, facilities, privileges, advantages, or accommodations due

5      to LabCorp's failure to make its e-check-in kiosks accessible to legally blind

6      individuals.

7

8      <u>California Class</u>:  All legally blind individuals in California who visited a

9      LabCorp patient service center in California during the applicable limitations

10      period and were denied full and equal enjoyment of the goods, services,

11      facilities, privileges, advantages, or accommodations due to LabCorp's failure

12      to make its e-check-in kiosks accessible to legally blind individuals.

13  (<u>See</u> Dkt. 97, Court's Order of May 23, 2022, at 24).

14      Approximately one month before the court issued its decision, the Ninth Circuit, in an <u>en</u>

15  <u>banc</u> decision, stated that "[a] court may not . . . create a 'fail safe' class that is defined to include

16  only those individuals who were injured by the allegedly unlawful conduct."[4]  <u>Olean Wholesale</u>

17  <u>Grocery Cooperative, Inc. v. Bumble Bee Foods, LLC</u>, 31 F.4th 651, 669 n. 14 (9th Cir. 2022) (<u>en</u>

18  <u>banc</u>).  LabCorp provided the court with a copy of its Rule 23(f) Petition for Permission to Appeal

19  Order Granting Class Certification ("Petition") in which it argues, among other things, that the court

20

21  _____

22     [4]  The court was aware of, and even cited, the <u>Olean</u> decision in its class certification order.
(<u>See</u>, <u>e.g.</u>, Dkt. 97, Court's Order of May 23, 2022, at 4, 17).  However, the court did not address

23  whether plaintiffs' proposed class definition constituted a fail-safe class because defendant did not
raise the argument for the court to rule on it.  <u>See Yamada v. Nobel Biocare Holding AG</u>, 825 F.3d

24  536, 543 (9th Cir. 2016) (an "argument must be raised sufficiently for the trial court to rule on it"
to preserve it for appellate review); (Dkt. 103, Amended Class Cert. Order at 5 n. 4) ("To the extent

25  LabCorp may be challenging the nationwide class on the ground that it is a  fail-safe class, the
court rejects the challenge, as defendant merely referenced a 'fail-safe class' in its 'Introductory

26  Statement[,]'); (<u>see</u> Dkt. 66-1, Joint Br. at 6); it provided no argument or authority to support its
challenge.");  <u>Beasley v. Astrue</u>, 2011 WL 1327130, *2 (W.D. Wash. 2011) ("It is not enough

27  merely to present an argument in the skimpiest way, and leave the Court to do counsel's work –
framing the argument, and putting flesh on its bones through a discussion of the applicable law

28  and facts.").

1   erred in certifying "fail-safe" classes.  (See Petition at 13-14).  Plaintiffs now seek to redefine the
2   certified classes "to remove any claim . . . that the current class definitions contain 'fail safe'
3   language[.]"  (Dkt. 107-1, Memorandum of Points and Authorities in Support of Plaintiffs' Motion
4   to Refine Class Definitions ("Memo") at 2).

5                                              **DISCUSSION**

6          Pursuant to Rule 23 of the Federal Rules of Civil Procedure,[5] "[a]n order that grants . . .
7   class certification may be altered or amended before final judgment."  Fed. R. Civ. P. 23(c)(1)(C);
8   see General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 160, 102 S.Ct. 2364, 2372
9   (1982) ("Even after a certification order is entered, the [court] remains free to modify it in the light
10  of subsequent developments in the litigation."); Owino v. CoreCivic, Inc., 36 F.4th 839, 847 (9th
11  Cir. 2022) (same).   A "fail-safe" class is "one that is defined so narrowly as to preclude[]
12  membership unless the liability of the defendant is established."  Torres v. Mercer Canyons, Inc.,
13  835 F.3d 1125, 1138 n. 7 (9th Cir. 2016) (internal quotation marks omitted).   "Such a class
14  definition is improper because a class member either wins or, by virtue of losing, is defined out of
15  the class and is therefore not bound by the judgment."  Olean, 31 F.4th at 669 n. 14 (quoting
16  Messner v. Northshore University HealthSystem, 669 F.3d 802, 825 (7th Cir. 2012)); Messner, 669
17  F.3d at 825 (explaining that a fail-safe class is "one that is defined so that whether a person
18  qualifies as a member depends on whether the person has a valid claim").  However, a fail-safe
19  class "can . . . be solved by refining the class definition rather than by flatly denying class
20  certification on that basis."  Olean, 31 F.4th at 669 n. 14 (internal quotation marks omitted); see
21  also 1 Newberg on Class Actions § 3:6 (5th ed.) (2021 Supp.) ("[E]ven those courts that
22  disapprove of fail-safe classes recognize that a court can simply fix the class definition instead of
23  denying class certification.").

24         Plaintiffs seek to redefine the class as follows:

25                 Nationwide Injunctive Class:   All legally blind individuals who visited a
26                 LabCorp patient service center with a LabCorp Express Self-Service kiosk in

27

28  ───────────────
            [5] All "Rule" references are to the Federal Rules of Civil Procedure unless otherwise indicated.

1   the United States during the applicable limitations period, but were unable to

2   use the LabCorp Express Self-Service kiosk.

3

4   <u>California Class</u>:  All legally blind individuals who visited a LabCorp patient

5   service center with a LabCorp Express Self-Service kiosk in California during

6   the applicable limitations period, but were unable to use the LabCorp Express

7   Self-Service kiosk.

8   (<u>See</u> Dkt. 107-1, Memo at 8).  Relying on <u>Mullins v. Direct Digital, LLC</u>, 795 F3d. 654 (7th Cir.

9   2015), (<u>see</u> Dkt. 107-1, Memo at 7), plaintiffs contend that the redefined class definition is not fail-

10  safe because the requirements for class membership are subject to objective criteria.  (<u>Id.</u> at 8).

11  More specifically, they contend that the definition comports with the requirement that "[i]t identif[y]

12  a particular group of individuals [] harmed in a particular way [] during a specific period in particular

13  areas."  (<u>Id.</u> at 7) (quoting <u>Mullins</u>, 795 F.3d at 660-61).  However, the portion of the <u>Mullins</u>

14  decision relied on by plaintiffs relates to whether the class definition is too vague.  <u>See</u> 795 F.3d

15  at 659-61 (noting that "classes that are defined too vaguely fail to satisfy the 'clear definition'

16  component" of ascertainability and finding that the class definition was "not vague" because "[i]t

17  identifie[d] a particular group of individuals [] harmed in a particular way [] during a specific period

18  in particular areas").  It was not, with respect to the quoted test, addressing a fail-safe class.[6]  <u>See</u>,

19  <u>generally</u>, <u>id.</u>

20      With respect to fail-safe classes, the <u>Mullins</u> court explained that "[t]he key to avoiding this

21  problem is to define the class so that membership does not depend on the liability of the

22  defendant."  <u>Mullins</u>, 795 F.3d at 660.  Here, the proposed class definition is defined "so that

23  membership does not depend on the liability of the defendant."  <u>See id.</u>  In other words, if LabCorp

24  "prevails, <u>res judicata</u> will bar class members from re-litigating their claims."  <u>Id.</u> at 661.  Moreover,

25

26

---

27      [6]  As such, the court will not address LabCorp's arguments, (<u>see</u> Defendant [LabCorp's]
28  Memorandum in Opposition to Plaintiffs' Motion [] ("Opp. ") 7-8), regarding plaintiffs' reliance on
    <u>Mullins</u>'s objective criteria test.

4

1   there is "a reasonably close fit between the class definition and [plaintiffs'] chosen theory of

2   liability." Torres, 835 F.3d at 1138 n. 7.

3        In its Opposition, LabCorp divides its brief into three separate sections.  The first section

4   argues that "the currently certified classes are fail-safe." (Dkt.  110, Opp.  at 2); (see id. at  2-5).

5   However, it's unclear why LabCorp is making this argument since plaintiffs' Motion seeks to

6   "remove any doubt" as to whether the current class definition is arguably a fail-safe class within

7   the meaning of Olean.  (See Dkt. 107-1, Memo at 7).

8        The second section of LabCorp's opposition asserts that "the fail-safe classes cannot be

9   'refined' into classes with fail-safe memberships." (Dkt. 110, Opp.  at 5); (see id. at 5-8).  LabCorp

10   asserts that, although plaintiffs "have dropped some of the language more closely tied to their

11   theory of ADA violations . . . , and now define class membership as all legally blind persons

12   'unable to use' the kiosk[,]" (id. at 6), plaintiffs are "still seeking certification of the same fail-safe

13   class of persons who Plaintiffs believe have ADA claims . . . because an independently accessible

14   kiosk was not available to them." (Id. at 6-7).  LabCorp asserts, for instance, that "if members of

15   the California class are shown to have no Unruh Act claim, they will fall out of the proposed

16   definition." (Id. at 7).  LabCorp's assertions are unpersuasive.

17        As an initial matter, LabCorp does not explain how or why the refined definition constitutes

18   a fail-safe class or why class members will fall out of the class definition if LabCorp were to prevail

19   on the certified claims.[7]  (See, generally, Dkt. 110, Opp.  at 6-8).  Indeed, LabCorp's Opposition

20   – which makes little, if any, effort to explain how or why the revised class definition is fail-safe –

21   focuses on challenging the revised class definition as overbroad.  (See id. at 6-7).  For example,

22   LabCorp contends that the class "cannot be certified so broadly as to include persons 'unable to

23

_____

24       [7] Nor could it because, unlike the prior class definition, which generally tracked the ADA, (see

25   Dkt. 103, Amended Class Cert. Order at 3-4, 24) (certifying classes composed of blind persons

26   who "were denied full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations due to LabCorp's failure to make its e-check-in kiosks accessible

27   to legally blind individuals"); 42 U.S.C. § 12182(a) ("No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges,

28   advantages, or accommodations of any place of public accommodation[.]"), the revised class definition markedly does not.  (See Dkt. 107-1, Memo at 8).

1   use' a LabCorp kiosk, including, for example: (i) persons visiting a patient service center . . .

2   without an operational kiosk; or (ii) persons who preferred to (and did) check in at the front desk,

3   as 25% of all Labcorp PSC patients do; or (iii) persons who (like Plaintiff Vargas) were directed

4   to check in at the front desk and never attempted to use a kiosk or may have even known a kiosk

5   existed at a particular PSC." (Id. at 6).  In other words, LabCorp contends that the "revised [class]

6   definition[] [is] overbroad" in that it includes class members who were not harmed as a result of

7   LabCorp's conduct.  (See id. at 6-7).  LabCorp's contentions are unpersuasive.

8        As an initial matter, LabCorp provides no evidence or citation to the record to support its

9   contentions.  (See, generally, Dkt. 110, Opp. at 6).  LabCorp's contention that plaintiffs' refined

10  class definition is overbroad because it "include[s] individuals in all of these situations," (id.), is

11  inaccurate because "even a well-defined class may inevitably contain some individuals who have

12  suffered no harm as a result of a defendant's unlawful conduct."  Torres, 835 F.3d at 1136.

13  "Ultimately, [LabCorp's] argument reflects a merits dispute about the scope of . . . liability, and is

14  not appropriate for resolution at the class certification stage of this proceeding."  Id. at 1137.

15       In any event, there is no doubt that the conduct at issue here is uniform as the crux of

16  plaintiffs' legal challenge is that LabCorp's kiosks are not ADA compliant and, therefore, are

17  inaccessible to visually impaired users.  (See Dkt. 40, FAC at ¶¶ 4-6, 29); (Dkt. 103, Amended

18  Class Cert. Order at 8) (noting that the commonality requirement was met, in part, based on

19  contention that "LabCorp trained its employees that use of the kiosks to check-in was mandatory");

20  (Dkt. 79, Exh. 12 (Deposition of Joseph Sinning) ("Sinning Depo") at JA61-62) (testimony that use

21  of kiosks was "not optional"); (id. at JA63); (Dkt. 80, Exh. 20 (Deposition of Bartholomew Coan)

22  ("Coan Depo") at JA518-524); (Dkt. 80, Exh. 17 at JA445); see, e.g., Vargas v. Quest Diagnostics

23  Clinical Labs, Inc., CV 19-8108 DMG (MRWx) ("Quest") (Dkt. 228 at 5) ("The 'common policy' here

24  is Quest's widespread rollout of its kiosks, which on their own are inaccessible to visually impaired

25  users.").   Thus, the "situations" LabCorp describes "merely highlight[] the possibility that an

26  injurious course of conduct may sometimes fail to cause injury to certain class members."[8]  Torres,

27

28       [8]  Indeed, LabCorp's focus on making absolutely sure that only those individuals who were
actually harmed can be members of the class seeks to impose an ascertainability requirement that

6

9

835 F.3d 1136.  However, "such fortuitous non-injury to a subset of class members does not necessarily defeat certification of the entire class, particularly as the district court is well situated to winnow out those non-injured members at the damages phase of the litigation, or to refine the class definition." Id. at 1137; see Olean, 31 F.4th at 669 n. 14 ("[T]he court may redefine the overbroad class to include only those members who can rely on the same body of common evidence to establish the common issue.").

In an effort to address the Olean Court's concerns regarding fail-safe classes and because plaintiffs do not object to the court further refining the class definition, (Dkt. 111, Reply at 10 n. 4), the court will define the class as follows:

> Nationwide Injunctive Class:  All legally blind individuals who visited a LabCorp patient service center with a LabCorp Express Self-Service kiosk in the United States during the applicable limitations period, and who, due to their disability, were unable to use the LabCorp Express Self-Service kiosk.
>
> California Class:  All legally blind individuals who visited a LabCorp patient service center with a LabCorp Express Self-Service kiosk in California during the applicable limitations period, and who, due to their disability, were unable to use the LabCorp Express Self-Service kiosk.

The revised definition addresses any concerns regarding an over-inclusive class, while also avoiding a fail-safe definition.  See Messner, 669 F.3d at 825 ("Defining a class so as to avoid, on

_____

is not allowed under Ninth Circuit law, see Briseno v. ConAgra Foods, Inc., 844 F.3d 1121, 1126, 1133 (9th Cir. 2017) ("[T]he language of Rule 23 neither provides nor implies that demonstrating an administratively feasible way to identify class members is a prerequisite to class certification[.]"), and is inconsistent with important policy objectives of class actions by denying class members with the only meaningful possibility they may have to recover anything at all. See Mullins, 795 F.3d at 667-68 (The problem "with this dilution argument [that a class may include class members with invalid claims] is that class certification provides the only meaningful possibility for bona fide class members to recover anything at all. . . . [¶]  By focusing on making absolutely certain that compensation is distributed only to those individuals who were actually harmed, the heightened ascertainability requirement has ignored an equally important policy objective of class actions: deterring and punishing corporate wrongdoing.") (internal quotation marks omitted).

1   one hand, being over-inclusive and, on the other hand, the fail-safe problem is more of an art than

2   a science."); Torres, 835 F.3d at 1138 n. 7 (Ninth Circuit "require[s] no more than a reasonably

3   close fit between the class definition and the chosen theory of liability."). The revised class

4   definition is similar to the one recently adopted by Judge Gee in the Quest case. See Quest, CV

5   19-8108 DMG (MRWx) (Dkt. 228 at 6). The difference in definitions stems from the fact that the

6   defendant in Quest introduced a three-finger swipe function at some point in the process. See id.;

7   see also Vargas v. Quest Diagnostics Clinical Labs., 2021 WL 5989958, *1 (C.D. Cal. 2021)

8   ("Beginning in 2020, Quest began to roll out a change to its kiosks that allows visually-impaired

9   patients to swipe the touchscreen using three fingers, which checks the patient in and alerts a

10  phlebotomist that the patient has arrived."). Here, no such action was taken. Also, in this case,

11  there is evidence that LabCorp implemented its kiosks across its national network of more than

12  1,800 PSCs, and that LabCorp trained its employees that use of the kiosks to check-in was

13  mandatory. (See Dkt. 103, Amended Class Cert. Order at 3, 8); (Dkt. 79, Exh. 12 (Sinning Depo)

14  at JA61-62) (testimony that use of kiosks "not optional"); (id. at JA63); (Dkt. 80, Exh. 20 (Coan

15  Depo) at JA518-524); (Dkt. 80, Exh. 17 at JA445).

16        Moreover, the revised class definition does not impact the court's determinations regarding

17  class certification. As the court previously found, common questions of fact and law predominate

18  over individualized questions. (See Dkt. 103, Amended Class Cert. Order at 15-22); (see id. at

19  8) (common questions of fact and law include, but are not limited to, whether: (1) "LabCorp's

20  kiosks are independently accessible to legally blind individuals"; (2) "LabCorp has implemented

21  the inaccessible check-in kiosks system across its national network of more than 1,800 PSCs";

22  (3) "LabCorp trained its employees that use of the kiosks to check-in was mandatory"; (4) "use of

23  the kiosk is a good or service LabCorp offers its customers"; (5) "LabCorp offers a qualified aid

24  or auxiliary service to allow legally blind individuals to access the check-in kiosk service"; and (6)

25  "LabCorp has remedied the inaccessible check-in kiosk across its system."). Indeed, during the

26  class certification proceedings, LabCorp did "not dispute that there is at least one common

27  question of law at issue here." (Id. at 8) (quoting LabCorp's portion of Dkt. 66-1, Joint Brief

28  Concerning Plaintiff's Motion for Class Certification at 37).

The third and final section of LabCorp's opposition contends that "no refinement to the Rule 23(b)(3) California sub-class can render it certifiable." (Dkt. 110, Opp. at 8); (see id. at 8-13). Most of this section of LabCorp's brief seeks to reargue the propriety of the court's certification order. (See id. at 8-13). For instance, LabCorp refers to Judge Gee's denial of class certification of the Quest plaintiffs' Rule 23(b)(3) class, and her subsequent denial of plaintiffs' request for reconsideration of that decision. (See id. at 9-11). But as the court previously explained, there are significant and fundamental factual and procedural differences between this case and the Quest case.[9] (See, e.g., Dkt. 103, Amended Class Cert. Order at 20 n. 15) (noting that the Quest court had already resolved a summary judgment motion, and that the kiosks in Quest were not identical to those in this action). Nothing about the Quest Court's denial of the plaintiffs' request for reconsideration changes this court's conclusion that certification under Rule 23(b)(3) was proper in this case.

In any event, LabCorp did not timely file a motion for reconsideration, see Local Rule 7-18 (motion for reconsideration "must be filed no later than 14 days after entry of the Order that is the subject of the motion or application"), or make any effort to satisfy any of the requirements for reconsideration. (See, generally, Dkt. 110, Opp.); see Local Rule 7-18 (grounds for reconsideration are (1) material difference in fact or law; (2) emergence of new material facts or change of law; or (3) manifest showing of a failure to consider material facts).

The only argument LabCorp raises in the final section of its brief that relates to the refined class definition is its contention that, "with fail-safe Rule 23(b)(3) classes now barred in this Circuit, Plaintiffs' new proposed definition of persons who were 'unable to use' a kiosk would obviously include non-injured legally blind persons – such as those who preferred to and did check in at the PSC front desk, or those who visited a PSC without an operational kiosk." (Dkt 110, Opp. 11-12). But this is the same argument LabCorp raised in the previous section of its brief. (See, e.g., id.

_____

[9]   Given that LabCorp is now contradicting its prior position that this case is "fundamentally different from the Quest [] case[,]" (Dkt. 90, Defendant['s] Opposition to Plaintiffs' Request for Judicial Notice at 4), it appears, as plaintiffs argue, that LabCorp is seeking to "improve its litigation position by attempting to align the facts of this case with the facts in Quest[.]" (Dkt. 111, Reply at 7).

at 6) (contending that the refined class definition is overbroad because it includes "persons 'unable to use' a LabCorp kiosk, including, for example: (i) persons visiting a patient service center . . . without an operational kiosk; or (ii) persons who preferred to (and did) check in at the front desk, as 25% of all Labcorp PSC patients do"). For the reasons set forth above, the court rejects this argument. Moreover, the court has already determined that such individualized issues would not predominate, and that a class action is superior to other methods for fairly and efficiently adjudicating the present controversy. (See Dkt. 103, Amended Class Cert. Order at 13-24). In short, the redefined Rule 23(b)(3) class definition does not undermine the court's previous determinations.

Finally, LabCorp, in a one-sentence concluding paragraph, states that "the Olean Court recently recognized the Supreme Court's directive that '[e]very class member must have Article III standing in order to recover individual damages,' and cautioned: 'Rule 23 also requires a district court to determine whether individualized inquiries into this standing issue would predominate over common questions.'" (Dkt. 110, Opp. at 13) (quoting Olean, 31 F.4th at 669 n. 12 (quoting TransUnion LLC v. Ramirez, 141 S.Ct. 2190, 2208 (2021))). However, LabCorp says nothing further on this issue, much less argue why or how the standing requirement defeats predominance. (See, generally, Dkt. 110, Opp. at 13). "It is not enough merely to present an argument in the skimpiest way, and leave the Court to do counsel's work – framing the argument, and putting flesh on its bones through a discussion of the applicable law and facts." Beasley, 2011 WL 1327130, at *2; see also Yamada, 825 F.3d at 543 (an "argument must be raised sufficiently for the trial court to rule on it" to preserve it for appellate review).

In any event, as the court previously noted, (see Dkt. 103, Amended Class Cert. Order at 18), the Ninth Circuit in Olean reiterated its previous holding "that a district court is not precluded from certifying a class even if plaintiffs may have to prove individualized damages at trial, a conclusion implicitly based on the determination that such individualized issues do not predominate over common ones." 31 F.4th at 669. The Olean Court rejected the notion "that Rule 23 does not permit the certification of a class that potentially includes more than a de minimis number of uninjured class members." id.; see also id. at 668-69. Just as the court previously

1   concluded that predominance is not defeated by individualized questions regarding damages, it
2   also persuaded that predominance is not defeated by individualized inquiries into standing. See
3   Torres, 835 F.3d at 1137 n. 6 (For standing, "it must be possible that class members have suffered
4   injury, not that they did suffer injury, or that they must prove such injury at the certification
5   phase.").

6                                          **CONCLUSION**

7        In short, the Olean Court's statement regarding fail-safe classes does not change the
8   court's findings and conclusions that the Rule 23(a), (b)(2) and (b)(3) factors have been satisfied.[10]
9   Therefore, the court declines to decertify the class, (see Dkt. 110, Opp. at 13) (concluding with
10  request that court decertify the classes), and the court's Amended Order Re: Motion for Class
11  Certification otherwise stands.

12       Based on the foregoing, IT IS ORDERED THAT:

13       1. Plaintiffs' Motion to Refine Class Definition **(Document No. 107)** is **granted** as set forth
14  in this Order.

15       2. Page 24, Lines 13-23 of the Court's Amended Order of June 13, 2022 (Dkt. 103) is
16  replaced with the following:

17           <u>Nationwide Injunctive Class</u>:  All legally blind individuals who visited a
18           LabCorp patient service center with a LabCorp Express Self-Service kiosk in
19           the United States during the applicable limitations period, and who, due to
20           their disability, were unable to use the LabCorp Express Self-Service kiosk.

21

22           <u>California Class</u>:  All legally blind individuals who visited a LabCorp patient
23           service center with a LabCorp Express Self-Service kiosk in California during
24           the applicable limitations period, and who, due to their disability, were unable
25           to use the LabCorp Express Self-Service kiosk.

26           _____

27       [10]  In other words, in refining the class definition, this Order does not materially alter the
28  composition of the class or materially change in any manner the Amended Order Re: Motion for
    Class Certification.

1        3.  Counsel for the parties shall forthwith provide a copy of this Order to the Ninth Circuit

2    Court of Appeals.

3    Dated this 4th day of August, 2022.

4

5                                                    _____
                                                              /s/
6                                                      Fernando M. Olguin
                                                     United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-0893 FMO (KSx) | Date | June 13, 2022 |
|---|---|---|---|

| Title | **Luke Davis, et al. v. Laboratory Corporation of America Holdings** |
|---|---|

| Present: The Honorable | Fernando M. Olguin, United States District Judge | |
|---|---|---|
| Gabriela Garcia | None | None |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorney Present for Plaintiff(s): | Attorney Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**      **(In Chambers) Order Re: <u>Amended</u> Order Re: Motion for Class Certification**

     Defense counsel provided the court with a copy of its Rule 23(f) Petition for Permission to Appeal Order Granting Class Certification ("Petition") recently filed with the Ninth Circuit Court of Appeals.   Having reviewed the Petition, the court has issued an Amended Order Re: Motion for Class Certification ("Amended Order").   This Order and the Amended Order do not constitute a material change in the court's Order Re: Motion for Class Certification.   <u>Cf.</u> <u>Walker v.</u> <u>Life Insurance</u> <u>Company</u> <u>of</u> <u>the</u> <u>Southwest</u>, 953 F.3d 624, 636 (9th Cir. 2020) ("Every circuit to consider the question has interpreted the rule to allow appeals of reconsideration orders – but only those that materially change the original certification order and thereby affect the status quo.").   The Amended Order merely added a new footnote (No. 4) to note that defendant is seeking permission to appeal on a ground that was not raised or argued before this court.   <u>See</u> <u>Yamada v.</u> <u>Nobel Biocare</u> <u>Holding</u> <u>AG</u>, 825 F.3d 536, 543 (9th Cir. 2016) (an "argument must be raised sufficiently for the trial court to rule on it" to preserve it for appellate review).

     Based on the foregoing, IT IS ORDERED THAT the parties shall forthwith provide a copy of the Amended Order and this Order to the Ninth Circuit Court of Appeals.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | gga | |

16

1
2
3
4
5
6
7
8 **UNITED STATES DISTRICT COURT**

9 **CENTRAL DISTRICT OF CALIFORNIA**

10

11 LUKE DAVIS, JULIAN VARGAS, et al.,          Case No. CV 20-0893 FMO (KSx)

12                   Plaintiffs,

13          v.                                **AMENDED** ORDER RE: MOTION FOR
                                              **CLASS CERTIFICATION**
14 LABORATORY CORPORATION OF
   AMERICA HOLDINGS,
15
                   Defendant.
16

17        Having reviewed and considered all the briefing filed with respect to plaintiffs' Motion for

18 Class Certification, (Dkt. 66, "Motion"), the court finds that oral argument is not necessary to

19 resolve the Motion, see Fed. R. Civ. P. 78(b); Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d

20 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

21                              **BACKGROUND**[1]

22        On January 28, 2020, Luke Davis ("Davis") and Julian Vargas ("Vargas" and together with

23 Davis, "plaintiffs") filed this putative class action.  (See Dkt. 1, Class Action Complaint).  On

24 September 3, 2020, plaintiffs and the American Council of the Blind ("ACB") filed the operative

25 First Amended Class Action Complaint ("FAC"), (Dkt. 40), against Laboratory Corporation of

26 America Holdings ("defendant" or "LabCorp"), asserting claims for violations of: (1) the Americans

27 _____

28     [1] Capitalization, quotation marks, punctuation, and emphasis in record citations may be altered
   without notation.

with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq.; (2) California's Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code §§ 51, et seq.; (3) California's Disabled Persons Act ("CDPA"), Cal. Civ. Code §§ 54, et seq.;[2] (4) Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794(a); and (5) Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C. § 8116. (Dkt. 40, FAC at ¶¶ 41-95).  The Unruh Act and CDPA claims are brought by Vargas on behalf of himself and a putative California class, (see id. at ¶¶ 60-73), while the remaining federal claims are brought by plaintiffs on behalf of the Nationwide Injunctive Class. (See id. at ¶¶ 41-59, 74-95). Plaintiffs seek declaratory and injunctive relief, statutory damages, and attorney's fees. (See id. at Prayer for Relief).  Plaintiffs do "not seek class recovery for actual damages, personal injuries or emotional distress that may have been caused by defendant's conduct[.]"  (Id. at ¶ 36).

Plaintiffs allege that LabCorp discriminates against them and other visually impaired individuals, "by refusing and failing to provide auxiliary aids and services to Plaintiffs, and by requiring [them] to rely upon other means of communication that are inadequate to provide equal opportunity to participate in and benefit from Defendant's health care services free from discrimination." (Dkt. 40, FAC at ¶¶ 1-2).  Plaintiffs allege that they visited LabCorp's patient services centers ("PSCs") "and were denied full and equal access as a result of defendant's inaccessible touchscreen kiosks for self-service check-in." (See id. at ¶¶ 4, 21-22).  According to plaintiffs, the touchscreen kiosks "do not contain the necessary technology that would enable a person with a visual impairment to [a] enter any personal information necessary to process a transaction in a manner that ensures the same degree of personal privacy afforded to those without visual impairments; or [b] use the device independently and without the assistance of others in the same manner afforded to those without visual impairments."  (Id. at ¶ 5).  Indeed, "Plaintiffs were informed by staff of defendant that the kiosks are not accessible to the blind." (Id.). As a result, "plaintiffs, members of [] ACB, [a national membership organization of approximately 20,000 blind and visually impaired persons,] and all other visually impaired individuals are forced

---

[2] Plaintiffs concede that their claim under the CDPA cannot be maintained, and request that the court dismiss it pursuant to Federal Rule of Civil Procedure 41(a)(2).  (See Dkt. 84, Plaintiffs' Supplemental Memorandum in Support of Plaintiffs' Motion for Summary Judgment [] at 5 n. 2). Accordingly, the court will not address any arguments regarding the CDPA claim.

to seek the assistance of a sighted person, and thereafter divulge their personal medical information to that sighted person in a nonconfidential setting in order to register." (Id. at ¶¶ 5, 16).

LabCorp has approximately 2,000 PSCs throughout the country, 299 of which are located in California. (Dkt. 82, Exh. 32 (Deposition of Joseph Sinning) ("Sinning Depo") at JA1062). In October 2017, LabCorp launched "Project Horizon" to roll out check-in kiosks at its PSCs. (Id. at JA1071). In preparation for Project Horizon, LabCorp considered proposals from two companies for the kiosks. (Dkt. 80, Exh. 18 (Wright Depo) at JA477); (Dkt. 80, Exh. 26 at JA711-714). Although one of the companies  proposed to provide kiosks that were ADA compliant, LabCorp selected the company, Alia, that did not provide ADA compliant kiosks. (Dkt. 80, Exh. 18, Deposition of Mark Wright ("Wright Depo") at JA464, JA477).

Approximately 1,853 PSCs nationwide have check-in kiosks, 280 of which are in California. (Dkt. 82, Exh. 32 (Sinning Depo) at JA1064). According to LabCorp, the "kiosks are only available for use during normal business hours, when there is also at least one employee present at each PSC who can operate front desk check ins as needed." (Id. at JA1065-66).

With respect to the instant Motion, plaintiffs seek an order certifying the following class and subclass pursuant to Rules 23(b)(2) and (3) of the Federal Rules of Civil Procedure:[3]

> All legally blind individuals in the United States who visited a LabCorp patient
> service center in the United States and were denied full and equal enjoyment
> of the goods, services, facilities, privileges, advantages, or accommodations
> due to LabCorp's failure to make its e-check-in kiosks accessible to legally
> blind individuals.  ["Nationwide Injunctive Class" or "Rule 23(b)(2) Class"]
>
> All legally blind individuals in California who visited a LabCorp patient service
> center in California and were denied full and equal enjoyment of the goods,
> services, facilities, privileges, advantages, or accommodations due to

---

[3] All "Rule" references are to the Federal Rules of Civil Procedure unless otherwise indicated.

1            LabCorp's failure to make its e-check-in kiosks accessible to legally blind

2            individuals.  ["California Class" or "Rule 23(b)(3) Class"].

3   (Dkt. 66, Motion at 2); (Dkt. 66-1, Joint Brief Concerning Plaintiff's Motion for Class Certification

4   ("Joint Br.") at 30).

5                            **LEGAL STANDARD**

6           Rule 23 permits a plaintiff to sue as a representative of a class if:

7                   (1) the class is so numerous that joinder of all members is impracticable;

8                   (2) there are questions or law or fact common to the class;

9                   (3) the claims or defenses of the representative parties are typical of the

10                  claims or defenses of the class; and

11                  (4) the representative parties will fairly and adequately protect the interests

12                  of the class.

13  Fed. R. Civ. P. 23(a).  Courts refer to these requirements by the following shorthand:  "numerosity,

14  commonality, typicality and adequacy of representation[.]"  Mazza v. Am. Honda Motor Co., 666

15  F.3d 581, 588 (9th Cir. 2012).  In addition to fulfilling the four prongs of Rule 23(a), the proposed

16  class must meet at least one of the three requirements listed in Rule 23(b).  See Wal-Mart Stores,

17  Inc. v. Dukes, 564 U.S. 338, 345, 131 S.Ct. 2541, 2548 (2011).

18          "Before it can certify a class, a district court must be satisfied, after a rigorous analysis, that

19  the prerequisites of both Rule 23(a) and" the applicable Rule 23(b) provision have been satisfied.

20  Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods L.L.C., 31 F.4th 651, 664 (9th

21  Cir.  2022) (en banc) (internal quotation marks omitted).  A plaintiff "must prove the facts

22  necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a

23  preponderance of the evidence." Id. at 665.

24          On occasion, the Rule 23 analysis "will entail some overlap with the merits of the plaintiff's

25  underlying claim[,]" and "sometimes it may be necessary for the court to probe behind the

26  pleadings[.]"  Dukes, 564 U.S. at 350-51, 131 S.Ct. at 2551 (internal quotation marks omitted).

27  However, courts must remember that "Rule 23 grants courts no license to engage in free-ranging

28  merits inquiries at the certification stage."  Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S.

1   455, 466, 133 S.Ct. 1184, 1194-95 (2013); see id., 133 S.Ct. at 1195 ("Merits questions may be

2   considered to the extent – but only to the extent – that they are relevant to determining whether

3   the Rule 23 prerequisites . . . are satisfied."); Ellis v. Costco Wholesale Corp., 657 F.3d 970, 983

4   n. 8 (9th Cir. 2011) (The court examines the merits of the underlying claim "only inasmuch as it

5   must determine whether common questions exist; not to determine whether class members could

6   actually prevail on the merits of their claims. . . . To hold otherwise would turn class certification

7   into a mini-trial.") (citations omitted).  Finally, a court has "broad discretion to determine whether

8   a class should be certified, and to revisit that certification throughout the legal proceedings before

9   the court." United Steel, Paper & Forestry, Rubber Mfg. Energy, Allied Indus. & Serv. Workers Int'l

10  Union, AFL-CIO, CLC v. ConocoPhillips Co., 593 F.3d 802, 810 (9th Cir. 2010) (internal quotation

11  marks omitted); see also Yokoyama v. Midland Nat'l Life Ins. Co., 594 F.3d 1087, 1092 (9th Cir.

12  2010) (The decision to certify a class and "any particular underlying Rule 23 determination

13  involving a discretionary determination" is reviewed for abuse of discretion.).

14                                                    **DISCUSSION**

15  I.      RULE 23(a) REQUIREMENTS.[4]

16          A.      Numerosity.

17          A putative class may be certified only if it "is so numerous that joinder of all members is

18  impracticable[.]"  Fed. R. Civ. P. 23(a)(1).  "Although the size of the class is not the sole

19  determining factor, . . . where a class is large in numbers, joinder will usually be impracticable."

20  A.B. v. Hawaii State Department of Education, 30 F.4th 828, 835 (9th Cir. 2022) (internal quotation

21  marks omitted); see Jordan v. Cty. of Los Angeles, 669 F.2d 1311, 1319 (9th Cir.), vacated on

22  other grounds by Cty. of Los Angeles v. Jordan, 459 U.S. 810, 103 S.Ct. 35 (1982) (class sizes

23

24          [4] To the extent LabCorp may be challenging the nationwide class on the ground that it is a  fail-
25  safe class, the court rejects the challenge, as defendant merely referenced a "fail-safe class" in
    its "Introductory Statement," (see Dkt. 66-1, Joint Br. at 6); it provided no argument or authority
26  to support its challenge. (See, generally, id. at 30-32, 34-45, 47-53); (Dkt. 86, Supplemental
    Memorandum in Support of LabCorp's Opposition to Motion to Certify Class); see Beasley v.
27  Astrue, 2011 WL 1327130, *2 (W.D.Wash. 2011) ("It is not enough merely to present an argument
    in the skimpiest way, and leave the Court to do counsel's work – framing the argument, and
28  putting flesh on its bones through a discussion of the applicable law and facts.").

1    of 39, 64, and 71 are sufficient to satisfy the numerosity requirement).  "As a general matter,

2    courts have found that numerosity is satisfied when class size exceeds 40 members[.]"  Slaven

3    v. BP Am., Inc., 190 F.R.D. 649, 654 (C.D. Cal. 2000); see Tait v. BSH Home Appliances Corp.,

4    289 F.R.D. 466, 473-74 (C.D. Cal. 2012) (same).

5         Based on plaintiffs' expert's analysis, plaintiffs contend that "there are at least 87,500 legally

6    blind class members nationwide" and "at least 8,861 legally blind class members in California."

7    (Dkt. 66-1, Joint Br. at 33); (Dkt. 81, Exh. 27 (Sean Chasworth Report) at JA722).  In addition,

8    plaintiffs rely on LabCorp's survey responses, which indicate that LabCorp received over 60

9    complaints from persons with low or no vision having difficulty using the kiosks.  (See Dkt. 66-1,

10   Joint Br. at 33).  Additionally, according to plaintiffs, LabCorp has records showing that there were

11   more than 130 complaints nationwide from individuals with low or no vision who claimed they

12   could not use the kiosks.  (See id. at 33-34).

13        With respect to the California Class, LabCorp contends that the "survey responses . . .

14   cannot satisfy the numerosity requirement" because of the 23 responses, four praised the kiosks,

15   "leav[ing] only 19 potential California class members identified in those responses, not all of which

16   may be legally blind[.]"[5]  (Dkt. 66-1, Joint Br. at 35).  However, given the number of complaints,

17   and "[b]ecause not every patient will lodge a complaint[,] . . .  it is highly unlikely that the[]

18   complaints [and survey responses] reflect every individual who encountered" accessibility issues

19   with the kiosks.  See Vargas v. Quest Diagnostic Clinical Labs., 2021 WL 5989958, *5 (C.D. Cal.

20   _____

21        [5] LabCorp also claims, without any supporting argument, that the responses to its own survey
     are "inadmissible and unsworn[.]"  (Dkt. 66-1, Joint Br. at 35).  As an initial matter, defendant's
22   reference to "inadmissible and unsworn" survey responses "is too cursory and undeveloped for
     the Court to fully understand and consider[.]"  See Wyles v. Sussman, 2019 WL 3249590, *3 (C.D.
23   Cal. 2019); see also  Beasley, 2011 WL 1327130, at *2 ("It is not enough merely to present an
     argument in the skimpiest way, and leave the Court to do counsel's work – framing the argument,
24   and putting flesh on its bones through a discussion of the applicable law and facts.").  Further,
     putting aside the fact that LabCorp itself relies on its own survey responses in support of its own
25   argument, (see Dkt. 66-1, Joint Br. at 35), LabCorp's argument is unpersuasive because
     "[i]nadmissibility alone is not a proper basis to reject evidence submitted in support of class
26   certification."  Sali v. Corona Regional Medical Center, 909 F.3d 996, 1004 (9th Cir. 2018); see
     Vargas v. Quest Diagnostic Clinical Labs., 2021 WL 5989958, *4 n. 3 (C.D. Cal. 2021) (The "Ninth
27   Circuit does not require that evidence submitted in connection with a class certification motion be
28   admissible.").

1   2021) ("<u>Quest</u>").  Thus, the court finds that plaintiffs have met the numerosity requirement as to

2   the California Class.

3          With respect to the Nationwide Injunctive Class, LabCorp does "not dispute that there is a

4   likelihood of at least 40 instances nationwide of some legally blind individuals who might claim that

5   they have had difficulty using a kiosk for check-in[.]"  (Dkt. 66-1, Joint Br. at 34).  Instead, it takes

6   issue with whether the individuals actually fall within the class definition since they were "not

7   denied service – the medical testing services PSCs provide[.]"  (<u>Id.</u>).  However, this is a merits

8   question which the court declines to address here.  As such, the court finds that plaintiffs have met

9   the numerosity requirement as to the Nationwide Injunctive Class.

10         B.    <u>Commonality</u>.

11         Commonality is satisfied if "there are common questions of law or fact common to the

12  class."  Fed. R. Civ. P. 23(a)(2).  It requires plaintiffs to demonstrate that their claims "depend

13  upon a common contention . . . [whose] truth or falsity will resolve an issue that is central to the

14  validity of each one of the claims in one stroke."  <u>Dukes</u>, 564 U.S. at 350, 131 S.Ct. at 2551; <u>see</u>

15  <u>also</u> <u>Wolin v. Jaguar Land Rover N. Am., LLC</u>, 617 F.3d 1168, 1172 (9th Cir. 2010) (explaining

16  that the commonality requirement demands that "class members' situations share a common issue

17  of law or fact, and are sufficiently parallel to insure a vigorous and full presentation of all claims

18  for relief") (internal quotation marks omitted).  "The plaintiff must demonstrate the capacity of

19  classwide proceedings to generate common answers to common questions of law or fact that are

20  apt to drive the resolution of the litigation."  <u>Mazza</u>, 666 F.3d at 588 (internal quotation marks

21  omitted).  "This does not, however, mean that every question of law or fact must be common to

22  the class; all that Rule 23(a)(2) requires is a single significant question of law or fact."  <u>Abdullah</u>

23  <u>v. U.S. Sec. Assocs., Inc.</u>, 731 F.3d 952, 957 (9th Cir. 2013) (emphasis and internal quotation

24  marks omitted); <u>see</u> <u>Mazza</u>, 666 F.3d at 589.  Proof of commonality under Rule 23(a) is "less

25  rigorous" than the related preponderance standard under Rule 23(b)(3).  <u>See</u> <u>Mazza</u>, 666 F.3d at

26  589 (characterizing commonality as a "limited burden[,]" stating that it "only requires a single

27  significant question of law or fact[,]" and concluding that it remains a distinct inquiry from the

28  predominance issues raised under Rule 23(b)(3)).  "The existence of shared legal issues with

divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).

Here, plaintiffs contend there are several common questions, including whether: (1) "LabCorp's kiosks are independently accessible to legally blind individuals"; (2) "LabCorp has implemented the inaccessible check-in kiosks system across its national network of more than 1,800 PSCs"; (3) "LabCorp trained its employees that use of the kiosks to check-in was mandatory"; (4) "use of the kiosk is a good or service LabCorp offers its customers"; (5) "LabCorp offers a qualified aid or auxiliary service to allow legally blind individuals to access the check-in kiosk service"; and (6) "LabCorp has remedied the inaccessible check-in kiosk across its system." (Dkt. 66-1, Joint Br. at 37). LabCorp "does not dispute that there is at least one common question of law at issue here."[6] (Id.). The court agrees. See, e.g., Quest, 2021 WL 5989958, at *5 (finding plaintiff satisfied commonality based on similar questions).

C.    Typicality.[7]

Typicality requires a showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3). The purpose of this requirement "is to assure that the interest of the named representative aligns with the interests of the class." Wolin, 617 F.3d at 1175 (internal quotation marks omitted). "The requirement is permissive, such that representative claims are typical if they are reasonably coextensive with those of absent class members; they need not be substantially identical." Just Film, Inc. v. Buono, 847 F.3d 1108, 1116 (9th Cir. 2017) (internal quotation marks omitted). "The test of typicality is

---

[6] LabCorp contends that as to the Nationwide Injunctive Class, there is no single injunction or declaration that will provide relief to the class as a whole. (See Dkt. 66-1, Joint Br. at 37-38). However, as LabCorp appears to recognize, that issue should be addressed as part of assessing the Rule 23(b)(2) factors. (See id. at 38). Similarly, with respect to the California Class, LabCorp contends only that common issues do not predominate. (Id.).

[7] Because the Supreme Court has noted that "[t]he commonality and typicality requirements of Rule 23(a) tend to merge[,]" General Tel. Co. of the SW v. Falcon, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 2371 n. 13 (1982), the court hereby incorporates the Rule 23(a) commonality discussion set forth above. See supra at § I.B.

whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Wolin, 617 F.3d at 1175 (internal quotation marks omitted). The typicality requirement is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." Stearns v. Ticketmaster Corp., 655 F.3d 1013, 1019 (9th Cir. 2011), abrogated on other grounds in Comcast Corp. v. Behrend, 569 U.S. 27, 133 S.Ct. 1426 (2013) (internal quotation marks omitted).

Here, Davis and Vargas have the same claims as the absent class members. (See Dkt. 40, FAC at ¶¶ 41-95). Both are legally blind and seek to represent classes of other legally blind individuals who, like them, encountered allegedly inaccessible kiosks at LabCorp's PSCs. (See Dkt. 79, Exh. 13 (Deposition of Vargas) ("Vargas Depo") at JA150); (Dkt. 79, Exh. 14 (Deposition of Luke Davis ("Davis Depo") at JA228); (Dkt.66-1, Joint Br. at 30) (class definitions). As such, their claims are typical of the claims of the class. See Fed. R. Civ. P. 23(a)(3); Stearns, 655 F.3d at 1019 ("[E]ach class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.").

Nonetheless, LabCorp contends that plaintiffs "failed to provide sufficient evidence that their own preference is typical for all the legally blind individuals they seek to represent, or that proposed class members suffered any injury related to inability to check-in on the kiosk." (Dkt. 66-1, Joint Br. at 39). However, LabCorp ignores typicality's permissive standard, see Parsons v. Ryan, 754 F.3d 657, 685 (9th Cir. 2014) ("Under the rule's permissive standards, representative claims are typical if they are reasonably coextensive with those of absent class members; they need not be substantially identical.") (internal quotation marks omitted), and the Ninth Circuit's admonition that courts may "not insist that the named plaintiffs' injuries be identical with those of the other class members, only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct." Id. (citation and internal quotation marks omitted); see, e.g., id. at 686 ("It does not matter that the named plaintiffs may have in the past suffered varying injuries or that they may currently have

1  different health care needs; Rule 23(a)(3) requires only that their claims be 'typical' of the class,
2  not that they be identically positioned to each []other or to every class member.").

3  Moreover, the scope and extent of any proposed injunction has yet to be litigated, and thus,
4  there is no basis to conclude that plaintiffs will seek an injunction covering only their "own
5  preference[s.]"  In any event, the court is confident that, assuming liability is established,  it can,
6  after obtaining the parties' input, fashion an appropriate injunction.

7  D.   Adequacy.

8  Rule 23(a)(4) permits certification of a class action if "the representative parties will fairly
9  and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  A two-prong test is
10  used to determine adequacy of representation: "(1) do the named plaintiffs and their counsel have
11  any conflicts of interest with other class members and (2) will the named plaintiffs and their
12  counsel prosecute the action vigorously on behalf of the class?"  Ellis, 657 F.3d at 985 (internal
13  quotation marks omitted).   "Adequate representation depends on, among other factors, an
14  absence of antagonism between representatives and absentees, and a sharing of interest
15  between representatives and absentees."  Id. The adequacy of counsel is also considered under
16  Rule 23(g).

17  Here, LabCorp challenges only the adequacy of plaintiffs, as it relates to the Rule 23(b)(2)
18  class.  (See Dkt. 66-1, Joint Br. at 42-43) (contending plaintiffs are inadequate "where a single
19  injunction could not resolve all issues").   Because LabCorp "incorporates its challenges to
20  Plaintiffs' typicality[,]"  (id. at 42), the court rejects it for the reasons set forth above.  See supra
21  at § I.C.

22  In any event, the court finds this factor is satisfied.  There are no known conflicts between
23  the absent class members and plaintiffs and their counsel.   (See Dkt. 66-1, Joint Br. at 42).
24  Plaintiffs have vigorously pursued this action on behalf of the two classes, participated in
25  discovery, including by each submitting to deposition, and will appear and testify at trial if
26  necessary.  (Dkt. 79, Exh. 13 (Vargas Depo) at JA203-206) (testifying regarding his role in this
27  litigation and the reasons for pursuing the claims asserted); (Dkt. 79, Exh. 14 (Davis Depo) at
28  JA336-40) (same as to the Nationwide Injunctive Class).   Further, plaintiffs' counsel are

1  experienced, (Dkt. 79, Exh. 2 (Declaration of Jonathan D. Miller) ("Miller Decl.") at ¶¶ 15-19)

2  (outlining counsel's experience); (Dkt. 17, Exh. 3 (Declaration of Matthew K. Handley) ("Handley

3  Decl.") at ¶¶ 10-13) (outlining counsel's experience), and have prosecuted this action vigorously.

4  II.    RULE 23(b) REQUIREMENTS.

5         A "proposed class or subclass must also satisfy the requirements of one of the sub-sections

6  of Rule 23(b), which defines three different types of classes." Parsons, 754 F.3d at 674 (9th Cir.

7  2014) (internal quotation marks omitted).  Here, plaintiffs seek certification under Rule 23(b)(2) and

8  (b)(3).  (Dkt. 66-1, Joint Br. at 30) (class definitions)

9         A.    Rule 23(b)(2) Requirements – Nationwide Injunctive Class.

10        A class may be maintained under Rule 23(b)(2) if "the party opposing the class has acted

11  or refused to act on grounds that apply generally to the class, so that final injunctive relief or

12  corresponding declaratory relief is appropriate respecting the class as a whole[.]" Dukes, 564 U.S.

13  at 360, 131 S.Ct. at 2557.  This provision applies "only when a single injunction or declaratory

14  judgment would provide relief to each member of the class."  Id.  "It does not authorize class

15  certification when each individual class member would be entitled to a different injunction or

16  declaratory judgment against the defendant."  Id.  "Similarly, it does not authorize class

17  certification when each class member would be entitled to an individualized award of monetary

18  damages. "  Id. at 360-61, 131 S.Ct. at 2557.  "Thus, 23(b)(2) sets forth two basic requirements.

19  First, the party opposing the class must have acted, refused to act, or failed to perform a legal duty

20  on grounds generally applicable to all class members.  Second, final relief of an injunctive nature

21  or a corresponding declaratory nature, settling the legality of the behavior with respect to the class

22  as a whole, [must be] appropriate."  2 Newberg on Class Actions § 4:26 (5th ed. 2014) (internal

23  quotation marks omitted).

24        Plaintiffs seek to certify a Rule 23(b)(2) class with respect to their federal claims, particularly

25  the ADA claim.  (See Dkt. 66, Motion at 2).  LabCorp does not dispute that it "has acted or refused

26  to act on grounds that apply generally to the class[.]" Fed. R. Civ. P. 23(b)(2); (see, generally, Dkt.

27  66-1, Joint Br. at 43-45).  Instead, it challenges only the second Rule 23(b)(2) requirement,

28  arguing that a single injunction will not provide relief to each member of the class.

(See Dkt. 66-1, Joint Br. at 43-45).  LabCorp claims that ACB's Rule 30(b)(6) witness, Claire Stanely, "acknowledge[d] that the injunction Plaintiffs seek would not provide relief to each member of the class."[8]  (Id. at 44).  Stanley, however, did not testify that a single injunction or remedy would not render the kiosks accessible.  (See, generally, Dkt. 82, Exh. 35 (Stanley Depo) at JA1099-1100).  Rather, when asked whether providing "speech output" would "resolve the accessibility concerns of everyone that is blind or visually impaired[,]" Stanley testified that "[n]o one accommodation is going to accommodate every person everywhere."  (Id. at JA1099).  In other words, Stanley's testimony does not mean that an injunction cannot be crafted that will be generally applicable to the class as a whole.  See Parsons, 754 F.3d at 688 (The Rule 23(b)(2) indivisibility requirement is "unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole.")

LabCorp appears to be "exaggerate[ing] what is required under Rule 23(b)(2)[,]" Nightingale v. U.S. Citizenship and Immigration Services, 333 F.R.D. 449, 463 (N.D. Cal. 2019), because LabCorp's conduct need not have injured all class members in exactly the same way.  In other words, "[t]he fact that some class members may have suffered no injury or different injuries from the challenged practice does not prevent the class from meeting the requirements of Rule 23(b)(2)."  Rodriguez v. Hayes, 591 F.3d 1105, 1125 (9th Cir. 2010); see Parsons, 754 F.3d at 688 (The Rule 23(b)(2) "inquiry does not require an examination of the viability or bases of the class members' claims for relief, . . . and does not require a finding that all members of the class have suffered identical injuries.").  "[I]t is sufficient to meet the requirements of Rule 23(b)(2) that class members complain of a pattern or practice that is generally applicable to the class as a whole."  Rodriguez, 591 F.3d at 1125 (internal quotation marks omitted).

Moreover, as the Ninth Circuit has made clear, "the primary role of [Rule 23(b)(2)] has always been the certification of civil rights class actions."  Parsons, 754 F.3d at 686.  In a civil rights action, the fact that the discriminatory conduct may have affected different members of the

---

[8] LabCorp makes a similar argument regarding plaintiffs' accessibility expert, Rachael Bradley Montgomery.  (See Dkt. 66-1, Joint Br. at 44).

1  class in different ways does not prevent certification under Rule 23(b)(2).  See, e.g., Gibson v.

2  Local 40, Supercargoes and Checkers, 543 F.2d 1259, 1264 (9th Cir. 1976) ("A class action may

3  be maintained under [Rule] 23(b)(2) alleging a general course of racial discrimination by an

4  employer or union, though the discrimination may have . . . affect[ed] different members of the

5  class in different ways.").  Here, there is no dispute that this case constitutes a typical civil rights

6  class action.  As one court in this District stated, in addressing nearly identical class claims against

7  another company that provides diagnostic testing services, this case is "a civil rights action against

8  a party charged with unlawful, class-based discrimination based on the use of a specific auxiliary

9  aid or service, and is a prime candidate for 23(b)(2) certification."  Quest, 2021 WL 5989958, at

10  *7.  In short, the court finds that certification of the Nationwide Injunctive Class is appropriate

11  under Rule 23(b)(2).  See id.

   B.    Rule 23(b)(3) Requirements – California Class.

13  Certification under Rule 23(b)(3) is proper "whenever the actual interests of the parties can

14  be served best by settling their differences in a single action."  Hanlon, 150 F.3d at 1022 (internal

15  quotation marks omitted).  Fed. R. Civ. P. 23(b)(3) requires two different inquiries, specifically a

16  determination as to whether:  (1) "questions of law or fact common to class members predominate

17  over any questions affecting only individual members[;]" and (2) "a class action is superior to other

18  available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

   1.    Predominance.

20  "Though there is substantial overlap between [the Rule 23(a)(2) commonality test and the

21  Rule 23(b)(3) predominance test], the 23(b)(3) test is far more demanding[.]"[9]  Wolin, 617 F.3d at

22  1172 (internal quotation marks omitted).  "The Rule 23(b)(3) predominance inquiry tests whether

23  proposed classes are sufficiently cohesive to warrant adjudication by representation."  Amchem

24  Prods., Inc. v. Windsor, 521 U.S. 591, 623, 117 S.Ct. 2231, 2249 (1997).  "This calls upon courts

25  to give careful scrutiny to the relations between common and individual questions in a case."

26

27  _____

   [9]  Given the substantial overlap between Rule 23(a) and Rule 23(b)(3), and to minimize
28  repetitiveness, the court hereby incorporates the Rule 23(a) discussion set forth above.  See supra
   at § I.B.

1   Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442, 453, 136 S.Ct. 1036, 1045 (2016). "The
2   predominance inquiry asks whether the common, aggregation-enabling, issues in the case are
3   more prevalent or important than the non-common, aggregation-defeating, individual issues.
4   When one or more of the central issues in the action are common to the class and can be said to
5   predominate, the action may be considered proper under Rule 23(b)(3) even though other
6   important matters will have to be tried separately, such as damages or some affirmative defenses
7   peculiar to some individual class members." Id. (citations and internal quotation marks omitted);
8   see Wang v. Chinese Daily News, Inc., 737 F.3d 538, 545 (9th Cir. 2013) ("The predominance
9   analysis under Rule 23(b)(3) focuses on the relationship between the common and individual
10  issues in the case and tests whether the proposed classes are sufficiently cohesive to warrant
11  adjudication by representation.") (internal quotation marks omitted). The class members' claims
12  do not need to be identical. See Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las
13  Vegas Sands, Inc., 244 F.3d 1152, 1163 (9th Cir. 2001) (allowing "some variation" between class
14  members); Abdullah, 731 F.3d at 963 (explaining that "there may be some variation among
15  individual plaintiffs' claims") (internal quotation marks omitted). The focus is on whether the
16  "variation [in the class member's claims] is enough to defeat predominance under Rule 23(b)(3)."
17  Local Joint Exec. Bd. of Culinary/Bartender Trust Fund, 244 F.3d at 1163; see Blackie v. Barrack,
18  524 F.2d 891, 902 (9th Cir. 1975) ("[C]ourts have taken the common sense approach that the
19  class is united by a common interest in determining whether defendant's course of conduct is in
20  its broad outlines actionable, which is not defeated by slight differences in class members'
21  positions[.]").

22      Where, as here, a plaintiff's claims arise under state law, the court "looks to state law to
23  determine whether the plaintiffs' claims – and [defendant's] affirmative defenses – can yield a
24  common answer that is 'apt to drive the resolution of the litigation.'" Abdullah, 731 F.3d at 957
25  (quoting Dukes, 564 U.S. at 350, 131 S.Ct. at 2551); Erica P. John Fund, Inc. v. Halliburton Co.,
26  563 U.S. 804, 809, 131 S.Ct. 2179, 2184 (2011) ("Considering whether questions of law or fact
27  common to class members predominate begins . . . with the elements of the underlying cause of
28  action.") (internal quotation marks omitted).

14

30

1      The Unruh Act provides that "[a]ll persons within the jurisdiction of [California] are free and

2  equal, and no matter what their . . . disability . . . are entitled to the full and equal accommodations,

3  advantages, facilities, privileges, or services in all business establishments of every kind

4  whatsoever." Cal. Civ. Code § 51(b). The California Supreme Court has stated that the purpose

5  of the Unruh "Act is to create and preserve a nondiscriminatory environment in California business

6  establishments by banishing or eradicating arbitrary, invidious discrimination by such

7  establishments." White v. Square, Inc., 7 Cal.5th 1019, 1025 (2019) (internal quotation marks

8  omitted). "In enforcing the [Unruh] Act, courts must consider its broad remedial purpose and

9  overarching goal of deterring discriminatory practices by businesses" and construe it "liberally in

10  order to carry out its purpose." Id. (citations and internal quotation marks omitted).

11      "In general, a person suffers discrimination under the [Unruh] Act when the person presents

12  himself or herself to a business with an intent to use its services but encounters an exclusionary

13  policy or practice that prevents him or her from using those services." White, 7 Cal.5th at 1023;

14  Thurston v. Omni Hotels Mgmt. Corp., 69 Cal.App.5th 299, 307-08 (2021) (holding that plaintiff,

15  who was blind, "had to show a 'bona fide intent'" to use defendant's services) (quoting White, 7

16  Cal.5th at 1032). "While . . . an Unruh Act claimant need not be a client or customer of the

17  covered public accommodation, and . . . he or she need not prove intentional discrimination upon

18  establishing an ADA violation," a "claimant's intent or motivation for visiting the covered public

19  accommodation is []relevant to a determination of the merits of his or her claim." Thurston, 69

20  Cal.App.5th at 309.

21      "As part of the 1992 reformation of state disability law, the [California] Legislature amended

22  the Unruh [] Act to incorporate by reference the ADA, making violations of the ADA per se

23  violations of the Unruh [] Act." Jankey v. Lee, 55 Cal.4th 1038, 1044 (2012). "To prevail on a

24  discrimination claim under Title III [of the ADA], a plaintiff must show that: (1) he is disabled within

25  the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a

26  place of public accommodation; and (3) the plaintiff was denied public accommodations by the

27  defendant because of his disability." Arizona ex rel. Goddard v. Harkins Amusement Enterprises,

28  Inc., 603 F.3d 666, 670 (9th Cir. 2010).

Under the Unruh Act, "[w]hoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51 . . . is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000)[.]"  "The litigant need not prove she suffered actual damages to recover the [Unruh Act's] independent statutory damages of $4,000." Molski v. M.J. Cable, Inc., 481 F.3d 724, 731 (9th Cir. 2007).  Plaintiffs contend that common questions predominate because they seek only statutory damages under the Unruh Act which are directly attributable to their theory of harm and can be determined without complicated calculations.[10] (Dkt. 66-1, Joint Br. at 46).  They add that "should the need arise for class members to confirm eligibility to recover statutory damages under the Unruh Act, it is well-settled that this issue may properly be addressed by way of a claim form after class wide liability has been determined."  (Id. at 46-47).

LabCorp contends that individualized issues abound, (Dkt. 66-1, Joint Br. at 48), because "[t]o recover statutory damages under the Unruh Act, a class member must show they 'personally encountered' an Unruh Act violation that caused them difficulty, discomfort, or embarrassment." (Id. at 47).  According to LabCorp, "even if Vargas argued that checking in at the front desk caused him difficulty, discomfort, or embarrassment, his own experience cannot be imputed to other California residents who are legally blind[,]" (id. at 47-48), because "not all California PSC's [] have kiosks and for those that do, staffing varies widely[.]"  (Id.).  LabCorp's contentions are unpersuasive.

LabCorp's argument boils down to determining whether each class member used or was exposed to a kiosk at one of LabCorp's PSCs.  But predominance is not concerned with determining who may be entitled to class membership, i.e., identifying legally blind class members who attempted to or were discouraged from using LabCorp's kiosks.  Rather, the superiority prong is where that issue is considered.  See Briseno v. ConAgra Foods, Inc., 844 F.3d 1121, 1126 (9th

---

[10]  LabCorp does not challenge predominance under Comcast, 569 U.S. 27, 133 S.Ct. 1426. (See, generally, Dkt. 66-1, Joint Br. at 47-50).  Nor could it since plaintiffs are merely seeking statutory damages under the Unruh Act.

Cir. 2017) (declining to impose a separate administrability requirement to assess the difficulty of identifying class members, in part, because the superiority criterion already mandates considering "the likely difficulties in managing a class action") (internal quotation marks omitted).[11]  Here, defendant's concern as to whether a particular class member "personally encountered" a check-in kiosk – i.e., identifying those who are entitled to class membership – will not predominate over the more important common questions of fact and law such as whether: (1) "LabCorp's kiosks are independently accessible to legally blind individuals"; (2) "LabCorp has implemented the inaccessible check-in kiosks system across its national network of more than 1,800 PSCs"; (3) "LabCorp trained its employees that use of the kiosks to check-in was mandatory"; (4) "use of the kiosk is a good or service LabCorp offers its customers"; (5) "LabCorp offers a qualified aid or auxiliary service to allow legally blind individuals to access the check-in kiosk service"; and (6) "LabCorp has remedied the inaccessible check-in kiosk across its system."  See supra at § I.B.

In addition, although Vargas "need not prove [that] []he suffered actual damages," Molski, 481 F.3d at 731, to prevail on his Unruh disability discrimination claim, LabCorp argues that predominance cannot be established because eligibility for statutory damages cannot "be addressed by way of a claim form after class wide liability has been determined[.]"  (See Dkt. 66-1, Joint Br. at 49) (internal quotation marks omitted).  In effect, LabCorp argues that predominance cannot be established because the entitlement to statutory damages will have to be done on an individual basis after liability is established.  (See id.).  However, it is well-settled that "the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)."  Leyva v. Medline Indus. Inc., 716 F.3d 510, 514 (9th Cir. 2013).  In other words, "the fact that the amount of damage may not be susceptible of exact proof or may be uncertain, contingent or difficult of ascertainment does not bar recovery."  Pulaski & Middleman, LLC v. Google, Inc., 802 F.3d 979, 989 (9th Cir. 2015) (internal quotation marks omitted); see also Comcast, 569 U.S. at 35, 133 S.Ct. at 1433 (noting that damages "[c]alculations need not be

---

[11]  To the extent that LabCorp may be arguing that predominance is lacking due to a lack of ascertainability, (see Dkt. 66-1, Joint Br. at 47-50), it is without merit.  See Briseno, 844 F.3d at 1133 ("[T]he language of Rule 23 neither provides nor implies that demonstrating an administratively feasible way to identify class members is a prerequisite to class certification[.]").

exact" at the class-certification stage).  As the Ninth Circuit recently reiterated, "a district court is not precluded from certifying a class even if plaintiffs may have to prove individualized damages at trial, a conclusion implicitly based on the determination that such individualized issues do not predominate over common ones."  Olean Wholesale Grocery Cooperative, Inc., 31 F.4th at 669. Here, the court can bifurcate the case into a liability and damages phase and, assuming there is a liability determination, create a claims process by which to validate individualized claim determinations.  See, e.g., Briseno, 844 F.3d at 1131 ("Defendant[] will have . . . opportunities to individually challenge the claims of absent class members if and when they file claims for damages.  At the claims administration stage, parties have long relied on claim administrators, various auditing processes, sampling for fraud detection, follow-up notices to explain the claims process, and other techniques tailored by the parties and the court to validate claims.  Rule 23 specifically contemplates the need for such individualized claim determinations after a finding of liability.") (citation and internal quotation marks omitted); Mullins v. Direct Digital LLC, 795 F.3d 654, 667 (7th Cir. 2015) (parties regularly rely on "claims administrators, various auditing processes, sampling for fraud detection, follow-up notices to explain the claims process, and other techniques tailored by the parties and the court" to validate claims); Nevarez v. Forty Niners Football Co., LLC, 326 F.R.D. 562, 577 (N.D. Cal. 2018) ("Class members can certify whether they were present at the Stadium and whether they encountered an actionable Unruh Act violation.") (citing Cal. Civ. Code § 55.56); see also Tyson Foods, 577 U.S. at 461, 136 S.Ct. at 1050 (recognizing that bifurcation could resolve problems regarding uninjured class members); 4 Newberg on Class Actions, § 11:6, at 21 (5th ed. 2014) ("Courts have employed either issue certification (certifying only the question of liability for class treatment) or bifurcation (separating liability from damages and trying liability first, then damages) as the means to effectuate the goal of aggregated treatment.") (footnote omitted).

Further, even assuming it was proper to consider, under the predominance prong, the issue of identifying class members, the court is not persuaded that the "personally encountered" and "difficulty, discomfort, or embarrassment" standard upon which LabCorp relies, (see Dkt. 66-1, Joint Br. at 47), has application to the specific Unruh Act disability discrimination claim in this

1    action.[12]  That standard, which is set forth in California Civil Code § 55.56 [13] of the Construction

2    Related Accessibility Standards Compliance Act ("CRAS"), see Cal. Civ. Code §§ 55.51–55.57,

3    provides in relevant part that statutory damages under § 52(a) may "be recovered in a

4    construction-related accessibility claim against a place of public accommodation only if a violation

5    or violations of one or more construction-related accessibility standards denied the plaintiff full and

6    equal access to the place of public accommodation on a particular occasion.  A violation

7    personally encountered by a plaintiff may be sufficient to cause a denial of full and equal access

8    if the plaintiff experienced difficulty, discomfort, or embarrassment because of the violation."  Cal.

9    Civ. Code § 55.56(a)-(c) (emphasis added); see Mundy v. Pro-Thro Enterprises, 192 Cal.App.4th

10    Supp. 1, 5 (2011) ("Section 55.56 is part of a comprehensive statutory scheme that was enacted

11    in 2008 with the intent of increasing voluntary compliance with equal access standards while

12    protecting businesses from abusive access litigation.  The provisions in [§§] 55.51 through 55.57

13    apply only to a construction-related accessibility claim, which is defined as a violation of a

14    construction-related accessibility standard under federal or state law[.]") (citations and internal

15    quotation marks omitted); Hernandez v. Polanco Enterprises, Inc., 624 F.Appx. 964, 965 (9th Cir.

16    2015) ("Under California law, [plaintiff] must prove – in addition to the ADA violation – that she

17    'personally encountered the violation [of a construction-related accessibility standard] on a

18    particular occasion' and that it caused her 'difficulty, discomfort, or embarrassment,' thus denying

19    her full and equal access to a place of public accommodation.") (quoting Cal. Civ. Code §

20    55.56(a)-(c)) (first alteration added).

21         The two cases cited by LabCorp for the proposition that it is necessary for a class member

22    to establish that he or she personally encountered an Unruh Act violation that caused difficulty,

23

24    _____

25    [12]  With respect to the intent to use LabCorp's services, see White, 7 Cal.5th at 1023, LabCorp does not challenge that requirement.  (See, generally, Dkt 66-1, Joint Br. at 47-50).  In any event,

26    that requirement would not defeat a finding of predominance.  See Quest, 2021 WL 5989958 at *8 (noting that "there is no real question that the putative class members had a bona fide intent

27    to use [defendant's] services" because plaintiff proposed to use defendant's records to identify class members).

28

    [13]  Unless otherwise indicated, all section references are to the California Civil Code.

discomfort or embarrassment, (see Dkt. 66-1, Joint Br. at 47), are both construction-related accessibility cases. See Doran v. 7 Eleven, Inc., 2011 WL 13143622, *1 (C.D. Cal. 2011) ("Doran I"), aff'd, 509 F.Appx. 647 (9th Cir. 2013) (noting that plaintiff was a "paraplegic" and that defendant had previously "remov[ed] all barriers related to his disability"); Botosan v. Paul McNally Realty, 216 F.3d 827, 830 (9th Cir. 2000) (plaintiff was a paraplegic asserting claims based on "lack of a designated parking space for disabled persons").[14]  Similarly, the three ADA cases LabCorp relies on as examples of where class certification was denied, (see Dkt. 66-1, Joint Br. at 47-49) – Vondersaar v. Starbucks Corp., 2015 WL 629437, *4 (C.D. Cal. 2015), aff'd, 719 F.Appx. 657 (9th Cir. 2018); Moeller v. Taco Bell, 2012 WL 3070863, *14 (N.D. Cal. 2012); Antoninetti v. Chipotle Mexican Grill, Inc., 2012 WL 3762440, *5-*6 & n. 1 (S.D. Cal. 2012) – do not compel the conclusion that predominance is lacking here because, unlike those cases, this case does not involve construction-related accessibility claims. See Quest, 2021 WL 5989958, at *8 (noting that these cases "have certain notable similarities: all three involved disabled plaintiffs who alleged that counter heights and other physical barriers to access in fast food establishments violated the ADA and the Unruh Act").[15]  The cases relied upon by LabCorp involved various

---

[14]  Although the court in Quest recognized that § 55.56 "applies specifically to construction-related accessibility claims[,]" 2021 WL 5989958, at *8, it also appeared to accept defendant's argument that "both federal and California courts have [] articulated the same standard without reference to section 55.56." (Id.).  LabCorp has not cited, nor has the court found a California published case that has addressed this standard outside of the construction-related accessibility context. On the contrary, the cases suggest otherwise. See, e.g., Mundy, 192 Cal.App.4th Supp. at 5 ("The provisions in [§§] 55.51 through 55.57 apply only to a construction-related accessibility claim, which is defined as a violation of a construction-related accessibility standard under federal or state law[.]") (citations and internal quotation marks omitted); Munson v. Del Taco, Inc., 46 Cal.4th 661, 677-78 (2009) (noting that §§ 55.53-55.57 were enacted to "protect[] businesses from abusive access litigation" arising from construction-related accessibility claims).

[15]  These cases are also distinguishable because, as the court in Nevarez observed, Moeller and Antoninetti are procedurally distinct in that the class certification motions were decided "after the defendants' liability had been adjudicated, which meant that the most important common question had already been resolved." Nevarez, 326 F.R.D. at 586 (emphasis omitted). The same holds true with respect to Quest, where the court had already resolved a motion for summary judgment. See Vargas v. Quest Diagnostics Clinical Laboratories, Inc., 2021 WL 5989961, *11 (C.D. Cal. 2021). Here, the court has not yet ruled on a summary judgment motion. Further, unlike the instant case, the kiosks in Quest were not identical because at some point, defendant "began to roll out a change to its kiosks that allow[ed] visually-impaired patients to swipe the

accessibility issues at different restaurants while Vargas's Unruh Act claim is based on LabCorp's kiosks, which are identical. While LabCorp maintains that "[n]ot all California PSC's [sic] even have kiosks[,]" and "for those that do, staffing varies widely depending on location and a PSC's size: some locations have a dedicated patient intake representative ('PIR') who sits full time at the front desk to check in patients; others have phlebotomists to conduct both check in and testing; and some PSCs are located inside Walgreens stores where there is always a dedicated Walgreens staff member to assist patients," (Dkt. 66-1, Joint Br. at 48), the variations are not as significant as LabCorp makes them out to be. First, of the 299 PSCs in California, (Dkt. 82, Exh. 32 (Sinning Depo) at JA1064), only 19 do not have kiosks. (Id.). Second, with respect to PIRs, there is evidence that LabCorp has "very few PIRs" and instead, "[t]he vast majority of the people working in [the PSCs] doing patient care and intake are phlebotomists." (Id. at JA1067-68). In other words, LabCorp is aware of which PSCs in California have kiosks, when they were installed and made operational, and how each PSC is staffed.

Finally, even if the standard set forth in § 55.56 applied in this case, it would not defeat a finding of predominance. In Nevarez, the plaintiffs, who required the use of wheelchairs, 326 F.R.D. at 569, sued several defendants, including the owners and operators of Levi's Stadium, asserting claims under the ADA and the Unruh Act. See id. at 568-71. The plaintiffs alleged that they faced barriers in accessing the stadium, including a lack of accessible seating, narrow security checkpoints, heavy doors, and inaccessible counters. See id. at 569-70, 578. The plaintiffs sought to certify a Rule 23(b)(3) class of persons who use wheelchairs, scooters or other mobility aids who "purchased, attempted to purchase, or for whom third parties purchased accessible seating," and who were denied equal access to the stadium. Id. at 572. The plaintiffs sought "statutory minimum damages of $4,000 per actionable violation of the Unruh Act[.]" Id. at 571.

With respect to the predominance requirement, the defendants made the same argument LabCorp makes here – namely that "individual questions predominate because each class

---

touchscreen using three fingers, which checks the patient in and alerts a phlebotomist that the patient has arrived." Quest, 2021 WL 5989958, at *1.

21

37

member will have to prove that they 'personally encountered' an Unruh Act violation that caused 'difficulty, discomfort, or embarrassment' to the class member." Nevarez, 326 F.R.D. at 585 (quoting Cal. Civ. Code §§ 55.56(b)-(c)). Then-district Judge Koh rejected the defendants' contention that application of § 55.56 defeated predominance, noting that defendants kept "records of class members' purchases of accessible seating that include[d] names and contact information." Id. at 586. Similar to Nevarez and, as discussed below, see infra at § II.B.2., there should be minimal logistical difficulties to identifying class members given the uniformity of the kiosks, and the fact that LabCorp "knows how many patients checked in, and has information on those patients from their provided ID and insurance[.]" (Dkt. 66-1, Joint Br. at 21 n. 4).

In short, the court finds that plaintiff has established that common questions of fact and law predominate over individualized questions.

### 2. Superiority.

"[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." Wolin, 617 F.3d at 1175 (internal quotation marks omitted). To determine superiority, the court must look at

> (A) the class members' interests in individually controlling the prosecution or
> defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already
> begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims
> in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Of the four superiority factors, LabCorp appears to dispute only the fourth factor regarding whether the case is manageable as a class action.[16] (See Dkt. 66-1, Joint Br. at 51-53). First,

---

[16] Given the substantial overlap between LabCorp's predominance argument, which appears to primarily challenge the feasibility of maintaining a Rule 23(b)(3) class, the court hereby incorporates the predominance discussion set forth above. See supra at § II.B.1.

LabCorp relies on "[t]wo of the decisions[, Antoninetti and Moeller,] already discussed in Labcorp's predominance section" to argue that "class procedures" are "not superior for adjudicating" plaintiffs' Unruh Act claim, "considering the individualized issues involved in assessing damages and the hefty per-claimant minimum statutory damages amounts incentivizing lawsuits." (Id. at 51). LabCorp's argument and the cases it relies on were addressed and rejected in the previous section. See supra at § II.B.1. Further, it should be noted that LabCorp provides no explanation or authority as to why the statutory minimum damages amount under the Unruh Act qualifies as "hefty" and, even assuming it did qualify as a "hefty" damages amount, LabCorp does not explain why that matters in terms of assessing whether a class action is manageable. (See, generally, Dkt. 66-1, Joint Br. at 51). In any event, the $4,000 statutory damages amount is a minimal sum that "would be dwarfed by the cost of litigating on an individual basis[.]" Wolin, 617 F.3d at 1175; see Local Joint Exec. Bd. of Culinary/Bartender Trust Fund, 244 F.3d at 1163 (stating that "[i]f plaintiffs cannot proceed as a class, some – perhaps most – will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover"). In other words, the superiority requirement strongly "weighs in favor of class certification." Wolin, 617 F.3d at 1175 (discussing Rule 23(b)(3)(A) superiority factor). As the Nevarez court stated, "[a]lthough class members are entitled to $4,000 in damages per Unruh Act violation that sum pales in comparison with the cost of pursuing litigation. Consequently, this factor points towards certification." 326 F.R.D. at 589; see Local Joint Exec. Bd. of Culinary/Bartender Trust Fund, 244 F.3d at 1163 (In cases where a number of individuals seek only to recover relatively small sums, "[c]lass actions may permit the plaintiffs to pool claims which would be uneconomical to bring individually.").

Second, with respect to LabCorp's contention that the class would not be manageable given that plaintiffs "have not indicated how they would locate [] class members[,]" (Dkt. 66-1, Joint Br. at 51-52), it is a "well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns." Briseno, 844 F.3d at 1128 (internal quotation marks omitted); Nevarez, 326 F.R.D. at 590 (same). Moreover, "[t]here is no requirement that the identity of class members . . . be known at the time of certification." Ries v. Ariz. Beverages USA LLC,

1    287 F.R.D. 523, 535 (N.D. Cal. 2016); see id. ("If there were [an identification requirement], there

2    would be no such thing as a consumer class action.").  In any event, identifying class members

3    here would not be difficult.  LabCorp "knows how many patients checked in, and has information

4    on those patients from their provided ID and insurance[.]"  (Dkt. 66-1, Joint Br. at 21 n. 4).  While

5    it may not know at this point "which persons would fall into the category of legally blind[,]" (id.),

6    making that determination at a later stage of the proceedings would not be an unduly burdensome

7    task.  Indeed, LabCorp was able to determine that Davis was mistaken with respect to the dates

8    of one of his visits to a LabCorp PSC.  (See Dkt. 266-1, Joint Br. at 23); (Dkt. 79, Exh. 14 (Davis

9    Depo) at JA268-69).  Certainly a similar undertaking could be done at the appropriate juncture.

10          Based on the foregoing, IT IS ORDERED THAT:

11          1. The Motion **(Document No. 66)** is **granted** as set forth in this Order.  The court certifies

12   the following classes:

13          Nationwide Injunctive Class:  All legally blind individuals in the United States who

14          visited a LabCorp patient service center in the United States during the applicable

15          limitations period and were denied full and equal enjoyment of the goods, services,

16          facilities, privileges, advantages, or accommodations due to LabCorp's failure to

17          make its e-check-in kiosks accessible to legally blind individuals.

18

19          California Class:  All legally blind individuals in California who visited a LabCorp

20          patient service center in California during the applicable limitations period and were

21          denied full and equal enjoyment of the goods, services, facilities, privileges,

22          advantages, or accommodations due to LabCorp's failure to make its e-check-in

23          kiosks accessible to legally blind individuals.[17]

24

25   _____

26     [17]  Since the class definitions discussed by the parties did not address the temporal scope of
27   the two classes, the court added the language "during the applicable limitations period" to the
     definition.   See Torres v. Mercer Canyons, Inc., 835 F.3d 1125, 1139 (9th Cir. 2016)
28   (acknowledging that "the district court may . . . adjust the scope of the class definition, if it later
     finds that the inclusiveness of the class exceeds the limits of [the defendant'] legal liability").

1        2.  The court hereby appoints Luke Davis and Julian Vargas as the representatives of the

2    Nationwide Class and Vargas as the representative of the California Class.

3        3.  The court hereby appoints the law firms of Nye, Stirling, Hale & Miller, LLP and Handley,

4    Farah & Anderson, PLLC as class counsel.

5    Dated this 13th day of June, 2022.

6

7                                                   /s/

8                               Fernando M. Olguin
                        United States District Judge

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

LUKE DAVIS, JULIAN VARGAS, et al.,

Plaintiffs,

v.

LABORATORY CORPORATION OF
AMERICA HOLDINGS,

Defendant.

Case No. CV 20-0893 FMO (KSx)

**ORDER RE: MOTION FOR CLASS
CERTIFICATION**

Having reviewed and considered all the briefing filed with respect to plaintiffs' Motion for Class Certification, (Dkt. 66, "Motion"), the court finds that oral argument is not necessary to resolve the Motion, see Fed. R. Civ. P. 78(b); Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

**BACKGROUND**[1]

On January 28, 2020, Luke Davis ("Davis") and Julian Vargas ("Vargas" and together with Davis, "plaintiffs") filed this putative class action. (See Dkt. 1, Class Action Complaint). On September 3, 2020, plaintiffs and the American Council of the Blind ("ACB") filed the operative First Amended Class Action Complaint ("FAC"), (Dkt. 40), against Laboratory Corporation of America Holdings ("defendant" or "LabCorp"), asserting claims for violations of: (1) the Americans

---

[1] Capitalization, quotation marks, punctuation, and emphasis in record citations may be altered without notation.

1  with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq.; (2) California's Unruh Civil Rights Act

2  ("Unruh Act"), Cal. Civ. Code §§ 51, et seq.; (3) California's Disabled Persons Act ("CDPA"), Cal.

3  Civ. Code §§ 54, et seq.;[2] (4) Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794(a); and

4  (5) Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C. § 8116.

5  (Dkt. 40, FAC at ¶¶ 41-95).  The Unruh Act and CDPA claims are brought by Vargas on behalf of

6  himself and a putative California class, (see id. at ¶¶ 60-73), while the remaining federal claims

7  are brought by plaintiffs on behalf of the Nationwide Injunctive Class. (See id. at ¶¶ 41-59, 74-95).

8  Plaintiffs seek declaratory and injunctive relief, statutory damages, and attorney's fees. (See id.

9  at Prayer for Relief).  Plaintiffs do "not seek class recovery for actual damages, personal injuries

10  or emotional distress that may have been caused by defendant's conduct[.]"  (Id. at ¶ 36).

11        Plaintiffs allege that LabCorp discriminates against them and other visually impaired

12  individuals, "by refusing and failing to provide auxiliary aids and services to Plaintiffs, and by

13  requiring [them] to rely upon other means of communication that are inadequate to provide equal

14  opportunity to participate in and benefit from Defendant's health care services free from

15  discrimination." (Dkt. 40, FAC at ¶¶ 1-2).  Plaintiffs allege that they visited LabCorp's patient

16  services centers ("PSCs") "and were denied full and equal access as a result of defendant's

17  inaccessible touchscreen kiosks for self-service check-in." (See id. at ¶¶ 4, 21-22).  According to

18  plaintiffs, the touchscreen kiosks "do not contain the necessary technology that would enable a

19  person with a visual impairment to [a] enter any personal information necessary to process a

20  transaction in a manner that ensures the same degree of personal privacy afforded to those

21  without visual impairments; or [b] use the device independently and without the assistance of

22  others in the same manner afforded to those without visual impairments."  (Id. at ¶ 5).  Indeed,

23  "Plaintiffs were informed by staff of defendant that the kiosks are not accessible to the blind." (Id.).

24  As a result, "plaintiffs, members of [] ACB, [a national membership organization of approximately

25  20,000 blind and visually impaired persons,] and all other visually impaired individuals are forced

26  _____

27  [2] Plaintiffs concede that their claim under the CDPA cannot be maintained, and request that the court dismiss it pursuant to Federal Rule of Civil Procedure 41(a)(2). (See Dkt. 84, Plaintiffs'

28  Supplemental Memorandum in Support of Plaintiffs' Motion for Summary Judgment [] at 5 n. 2). Accordingly, the court will not address any arguments regarding the CDPA claim.

1  to seek the assistance of a sighted person, and thereafter divulge their personal medical

2  information to that sighted person in a nonconfidential setting in order to register." (Id. at ¶¶ 5, 16).

3       LabCorp has approximately 2,000 PSCs throughout the country, 299 of which are located

4  in California. (Dkt. 82, Exh. 32 (Deposition of Joseph Sinning) ("Sinning Depo") at JA1062). In

5  October 2017, LabCorp launched "Project Horizon" to roll out check-in kiosks at its PSCs. (Id. at

6  JA1071). In preparation for Project Horizon, LabCorp considered proposals from two companies

7  for the kiosks. (Dkt. 80, Exh. 18 (Wright Depo) at JA477); (Dkt. 80, Exh. 26 at JA711-714).

8  Although one of the companies  proposed to provide kiosks that were ADA compliant, LabCorp

9  selected the company, Alia, that did not provide ADA compliant kiosks. (Dkt. 80, Exh. 18,

10 Deposition of Mark Wright ("Wright Depo") at JA464, JA477).

11      Approximately 1,853 PSCs nationwide have check-in kiosks, 280 of which are in California.

12 (Dkt. 82, Exh. 32 (Sinning Depo) at JA1064). According to LabCorp, the "kiosks are only available

13 for use during normal business hours, when there is also at least one employee present at each

14 PSC who can operate front desk check ins as needed." (Id. at JA1065-66).

15      With respect to the instant Motion, plaintiffs seek an order certifying the following class and

16 subclass pursuant to Rules 23(b)(2) and (3) of the Federal Rules of Civil Procedure:[3]

17          All legally blind individuals in the United States who visited a LabCorp patient

18          service center in the United States and were denied full and equal enjoyment

19          of the goods, services, facilities, privileges, advantages, or accommodations

20          due to LabCorp's failure to make its e-check-in kiosks accessible to legally

21          blind individuals. ["Nationwide Injunctive Class" or "Rule 23(b)(2) Class"]

22

23          All legally blind individuals in California who visited a LabCorp patient service

24          center in California and were denied full and equal enjoyment of the goods,

25          services, facilities, privileges, advantages, or accommodations due to

26

27

28

---

[3] All "Rule" references are to the Federal Rules of Civil Procedure unless otherwise indicated.

1  LabCorp's failure to make its e-check-in kiosks accessible to legally blind
2  individuals.  ["California Class" or "Rule 23(b)(3) Class"].
3  (Dkt. 66, Motion at 2); (Dkt. 66-1, Joint Brief Concerning Plaintiff's Motion for Class Certification
4  ("Joint Br.") at 30).
5  **LEGAL STANDARD**
6  Rule 23 permits a plaintiff to sue as a representative of a class if:
7  (1) the class is so numerous that joinder of all members is impracticable;
8  (2) there are questions or law or fact common to the class;
9  (3) the claims or defenses of the representative parties are typical of the
10  claims or defenses of the class; and
11  (4) the representative parties will fairly and adequately protect the interests
12  of the class.
13  Fed. R. Civ. P. 23(a).  Courts refer to these requirements by the following shorthand:  "numerosity,
14  commonality, typicality and adequacy of representation[.]"  Mazza v. Am. Honda Motor Co., 666
15  F.3d 581, 588 (9th Cir. 2012).  In addition to fulfilling the four prongs of Rule 23(a), the proposed
16  class must meet at least one of the three requirements listed in Rule 23(b).  See Wal-Mart Stores,
17  Inc. v. Dukes, 564 U.S. 338, 345, 131 S.Ct. 2541, 2548 (2011).
18  "Before it can certify a class, a district court must be satisfied, after a rigorous analysis, that
19  the prerequisites of both Rule 23(a) and" the applicable Rule 23(b) provision have been satisfied.
20  Olean Wholesale Grocery Cooperative, Inc.  v.  Bumble Bee Foods L.L.C., 31 F.4th 651, 664 (9th
21  Cir.  2022) (en banc) (internal quotation marks omitted).  A plaintiff "must prove the facts
22  necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a
23  preponderance of the evidence."  Id. at 665.
24  On occasion, the Rule 23 analysis "will entail some overlap with the merits of the plaintiff's
25  underlying claim[,]" and "sometimes it may be necessary for the court to probe behind the
26  pleadings[.]"  Dukes, 564 U.S. at 350-51, 131 S.Ct. at 2551 (internal quotation marks omitted).
27  However, courts must remember that "Rule 23 grants courts no license to engage in free-ranging
28  merits inquiries at the certification stage."  Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S.

1   455, 466, 133 S.Ct. 1184, 1194-95 (2013); see id., 133 S.Ct. at 1195 ("Merits questions may be

2   considered to the extent – but only to the extent – that they are relevant to determining whether

3   the Rule 23 prerequisites . . . are satisfied."); Ellis v. Costco Wholesale Corp., 657 F.3d 970, 983

4   n. 8 (9th Cir. 2011) (The court examines the merits of the underlying claim "only inasmuch as it

5   must determine whether common questions exist; not to determine whether class members could

6   actually prevail on the merits of their claims. . . . To hold otherwise would turn class certification

7   into a mini-trial.") (citations omitted).  Finally, a court has "broad discretion to determine whether

8   a class should be certified, and to revisit that certification throughout the legal proceedings before

9   the court." United Steel, Paper & Forestry, Rubber Mfg. Energy, Allied Indus. & Serv. Workers Int'l

10   Union, AFL-CIO, CLC v. ConocoPhillips Co., 593 F.3d 802, 810 (9th Cir. 2010) (internal quotation

11   marks omitted); see also Yokoyama v. Midland Nat'l Life Ins. Co., 594 F.3d 1087, 1092 (9th Cir.

12   2010) (The decision to certify a class and "any particular underlying Rule 23 determination

13   involving a discretionary determination" is reviewed for abuse of discretion.).

14   **DISCUSSION**

15   I.      RULE 23(a) REQUIREMENTS.

16          A.      Numerosity.

17          A putative class may be certified only if it "is so numerous that joinder of all members is

18   impracticable[.]"  Fed. R. Civ. P. 23(a)(1).  "Although the size of the class is not the sole

19   determining factor, . . . where a class is large in numbers, joinder will usually be impracticable."

20   A.B. v. Hawaii State Department of Education, 30 F.4th 828, 835 (9th Cir. 2022) (internal quotation

21   marks omitted); see Jordan v. Cty. of Los Angeles, 669 F.2d 1311, 1319 (9th Cir.), vacated on

22   other grounds by Cty. of Los Angeles v. Jordan, 459 U.S. 810, 103 S.Ct. 35 (1982) (class sizes

23   of 39, 64, and 71 are sufficient to satisfy the numerosity requirement).  "As a general matter,

24   courts have found that numerosity is satisfied when class size exceeds 40 members[.]"  Slaven

25   v. BP Am., Inc., 190 F.R.D. 649, 654 (C.D. Cal. 2000); see Tait v. BSH Home Appliances Corp.,

26   289 F.R.D. 466, 473-74 (C.D. Cal. 2012) (same).

27          Based on plaintiffs' expert's analysis, plaintiffs contend that "there are at least 87,500 legally

28   blind class members nationwide" and "at least 8,861 legally blind class members in California."

1   (Dkt. 66-1, Joint Br. at 33); (Dkt. 81, Exh. 27 (Sean Chasworth Report) at JA722).  In addition,

2   plaintiffs rely on LabCorp's survey responses, which indicate that LabCorp received over 60

3   complaints from persons with low or no vision having difficulty using the kiosks.  (See Dkt. 66-1,

4   Joint Br. at 33).  Additionally, according to plaintiffs, LabCorp has records showing that there were

5   more than 130 complaints nationwide from individuals with low or no vision who claimed they

6   could not use the kiosks.  (See id. at 33-34).

7         With respect to the California Class, LabCorp contends that the "survey responses . . .

8   cannot satisfy the numerosity requirement" because of the 23 responses, four praised the kiosks,

9   "leav[ing] only 19 potential California class members identified in those responses, not all of which

10  may be legally blind[.]"[4]  (Dkt. 66-1, Joint Br. at 35).  However, given the number of complaints,

11  and "[b]ecause not every patient will lodge a complaint[,] . . .  it is highly unlikely that the[]

12  complaints [and survey responses] reflect every individual who encountered" accessibility issues

13  with the kiosks.  See Vargas v. Quest Diagnostic Clinical Labs., 2021 WL 5989958, *5 (C.D. Cal.

14  2021) ("Quest").  Thus, the court finds that plaintiffs have met the numerosity requirement as to

15  the California Class.

16        With respect to the Nationwide Injunctive Class, LabCorp does "not dispute that there is a

17  likelihood of at least 40 instances nationwide of some legally blind individuals who might claim that

18  they have had difficulty using a kiosk for check-in[.]" (Dkt. 66-1, Joint Br. at 34).  Instead, it takes

19  issue with whether the individuals actually fall within the class definition since they were "not

20  _____

21        [4] LabCorp also claims, without any supporting argument, that the responses to its own survey
    are "inadmissible and unsworn[.]"  (Dkt. 66-1, Joint Br. at 35).  As an initial matter, defendant's
22  reference to "inadmissible and unsworn" survey responses "is too cursory and undeveloped for
    the Court to fully understand and consider[.]" See Wyles v. Sussman, 2019 WL 3249590, *3 (C.D.
23  Cal. 2019); see also  Beasley v. Astrue, 2011 WL 1327130, *2 (W.D. Wash. 2011) ("It is not
    enough merely to present an argument in the skimpiest way, and leave the Court to do counsel's
24  work – framing the argument, and putting flesh on its bones through a discussion of the applicable
    law and facts.").  Further, putting aside the fact that LabCorp itself relies on its own survey
25  responses in support of its own argument, (see Dkt. 66-1, Joint Br. at 35), LabCorp's argument
    is unpersuasive because "[i]nadmissibility alone is not a proper basis to reject evidence submitted
26  in support of class certification." Sali v. Corona Regional Medical Center, 909 F.3d 996, 1004 (9th
    Cir. 2018); see Vargas v. Quest Diagnostic Clinical Labs., 2021 WL 5989958, *4 n. 3 (C.D. Cal.
27  2021) (The "Ninth Circuit does not require that evidence submitted in connection with a class
    certification motion be admissible.").
28

1   denied service – the medical testing services PSCs provide[.]" (Id.).  However, this is a merits

2   question which the court declines to address here.  As such, the court finds that plaintiffs have met

3   the numerosity requirement as to the Nationwide Injunctive Class.

4        B.    Commonality.

5        Commonality is satisfied if "there are common questions of law or fact common to the

6   class."  Fed. R. Civ. P. 23(a)(2).  It requires plaintiffs to demonstrate that their claims "depend

7   upon a common contention . . . [whose] truth or falsity will resolve an issue that is central to the

8   validity of each one of the claims in one stroke." Dukes, 564 U.S. at 350, 131 S.Ct. at 2551; see

9   also Wolin v. Jaguar Land Rover N. Am., LLC, 617 F.3d 1168, 1172 (9th Cir. 2010) (explaining

10   that the commonality requirement demands that "class members' situations share a common issue

11   of law or fact, and are sufficiently parallel to insure a vigorous and full presentation of all claims

12   for relief") (internal quotation marks omitted).  "The plaintiff must demonstrate the capacity of

13   classwide proceedings to generate common answers to common questions of law or fact that are

14   apt to drive the resolution of the litigation." Mazza, 666 F.3d at 588 (internal quotation marks

15   omitted).  "This does not, however, mean that every question of law or fact must be common to

16   the class; all that Rule 23(a)(2) requires is a single significant question of law or fact." Abdullah

17   v. U.S. Sec. Assocs., Inc., 731 F.3d 952, 957 (9th Cir. 2013) (emphasis and internal quotation

18   marks omitted); see Mazza, 666 F.3d at 589.  Proof of commonality under Rule 23(a) is "less

19   rigorous" than the related preponderance standard under Rule 23(b)(3). See Mazza, 666 F.3d at

20   589 (characterizing commonality as a "limited burden[,]" stating that it "only requires a single

21   significant question of law or fact[,]" and concluding that it remains a distinct inquiry from the

22   predominance issues raised under Rule 23(b)(3)).  "The existence of shared legal issues with

23   divergent factual predicates is sufficient, as is a common core of salient facts coupled with

24   disparate legal remedies within the class." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th

25   Cir. 1998).

26        Here, plaintiffs contend there are several common questions, including whether:  (1)

27   "LabCorp's kiosks are independently accessible to legally blind individuals"; (2) "LabCorp has

28   implemented the inaccessible check-in kiosks system across its national network of more than

1,800 PSCs"; (3) "LabCorp trained its employees that use of the kiosks to check-in was mandatory"; (4) "use of the kiosk is a good or service LabCorp offers its customers"; (5) "LabCorp offers a qualified aid or auxiliary service to allow legally blind individuals to access the check-in kiosk service"; and (6) "LabCorp has remedied the inaccessible check-in kiosk across its system." (Dkt. 66-1, Joint Br. at 37). LabCorp "does not dispute that there is at least one common question of law at issue here."[5] (Id.). The court agrees. See, e.g., Quest, 2021 WL 5989958, at *5 (finding plaintiff satisfied commonality based on similar questions).

     C.    Typicality.[6]

     Typicality requires a showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3). The purpose of this requirement "is to assure that the interest of the named representative aligns with the interests of the class." Wolin, 617 F.3d at 1175 (internal quotation marks omitted). "The requirement is permissive, such that representative claims are typical if they are reasonably coextensive with those of absent class members; they need not be substantially identical." Just Film, Inc. v. Buono, 847 F.3d 1108, 1116 (9th Cir. 2017) (internal quotation marks omitted). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Wolin, 617 F.3d at 1175 (internal quotation marks omitted). The typicality requirement is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." Stearns v. Ticketmaster Corp., 655 F.3d 1013, 1019 (9th Cir. 2011), abrogated on other

---

[5] LabCorp contends that as to the Nationwide Injunctive Class, there is no single injunction or declaration that will provide relief to the class as a whole. (See Dkt. 66-1, Joint Br. at 37-38). However, as LabCorp appears to recognize, that issue should be addressed as part of assessing the Rule 23(b)(2) factors. (See id. at 38). Similarly, with respect to the California Class, LabCorp contends only that common issues do not predominate. (Id.).

[6] Because the Supreme Court has noted that "[t]he commonality and typicality requirements of Rule 23(a) tend to merge[,]" General Tel. Co. of the SW v. Falcon, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 2371 n. 13 (1982), the court hereby incorporates the Rule 23(a) commonality discussion set forth above. See supra at § I.B.

1   grounds in Comcast Corp. v. Behrend, 569 U.S. 27, 133 S.Ct. 1426 (2013) (internal quotation
2   marks omitted).

3         Here, Davis and Vargas have the same claims as the absent class members.  (See Dkt.
4   40, FAC at ¶¶ 41-95).  Both are legally blind and seek to represent classes of other legally blind
5   individuals who, like them, encountered allegedly inaccessible kiosks at LabCorp's PSCs.  (See
6   Dkt. 79, Exh. 13 (Deposition of Vargas) ("Vargas Depo") at JA150); (Dkt. 79, Exh. 14 (Deposition
7   of Luke Davis ("Davis Depo") at JA228); (Dkt.66-1, Joint Br. at 30) (class definitions).  As such,
8   their claims are typical of the claims of the class.  See Fed. R. Civ. P. 23(a)(3); Stearns, 655 F.3d
9   at 1019 ("[E]ach class member's claim arises from the same course of events, and each class
10   member makes similar legal arguments to prove the defendant's liability.").

11         Nonetheless, LabCorp contends that plaintiffs "failed to provide sufficient evidence that
12   their own preference is typical for all the legally blind individuals they seek to represent, or that
13   proposed class members suffered any injury related to inability to check-in on the kiosk."  (Dkt. 66-
14   1, Joint Br. at 39).  However, LabCorp ignores typicality's permissive standard, see Parsons v.
15   Ryan, 754 F.3d 657, 685 (9th Cir. 2014) ("Under the rule's permissive standards, representative
16   claims are typical if they are reasonably coextensive with those of absent class members; they
17   need not be substantially identical.") (internal quotation marks omitted), and the Ninth Circuit's
18   admonition that courts may "not insist that the named plaintiffs' injuries be identical with those of
19   the other class members, only that the unnamed class members have injuries similar to those of
20   the named plaintiffs and that the injuries result from the same, injurious course of conduct."  Id.
21   (citation and internal quotation marks omitted); see, e.g., id. at 686 ("It does not matter that the
22   named plaintiffs may have in the past suffered varying injuries or that they may currently have
23   different health care needs; Rule 23(a)(3) requires only that their claims be 'typical' of the class,
24   not that they be identically positioned to each []other or to every class member.").

25         Moreover, the scope and extent of any proposed injunction has yet to be litigated, and thus,
26   there is no basis to conclude that plaintiffs will seek an injunction covering only their "own
27   preference[s.]"  In any event, the court is confident that, assuming liability is established,  it can,
28   after obtaining the parties' input, fashion an appropriate injunction.

1        D.      Adequacy.

2        Rule 23(a)(4) permits certification of a class action if "the representative parties will fairly

3   and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  A two-prong test is

4   used to determine adequacy of representation: "(1) do the named plaintiffs and their counsel have

5   any conflicts of interest with other class members and (2) will the named plaintiffs and their

6   counsel prosecute the action vigorously on behalf of the class?"  Ellis, 657 F.3d at 985 (internal

7   quotation marks omitted).   "Adequate representation depends on, among other factors, an

8   absence of antagonism between representatives and absentees, and a sharing of interest

9   between representatives and absentees."  Id.  The adequacy of counsel is also considered under

10  Rule 23(g).

11       Here, LabCorp challenges only the adequacy of plaintiffs, as it relates to the Rule 23(b)(2)

12  class.  (See Dkt. 66-1, Joint Br. at 42-43) (contending plaintiffs are inadequate "where a single

13  injunction could not resolve all issues").   Because LabCorp "incorporates its challenges to

14  Plaintiffs' typicality[,]"  (id. at 42), the court rejects it for the reasons set forth above.  See supra

15  at § I.C.

16       In any event, the court finds this factor is satisfied.  There are no known conflicts between

17  the absent class members and plaintiffs and their counsel.  (See Dkt. 66-1, Joint Br. at 42).

18  Plaintiffs have vigorously pursued this action on behalf of the two classes, participated in

19  discovery, including by each submitting to deposition, and will appear and testify at trial if

20  necessary.  (Dkt. 79, Exh. 13 (Vargas Depo) at JA203-206) (testifying regarding his role in this

21  litigation and the reasons for pursuing the claims asserted); (Dkt. 79, Exh. 14 (Davis Depo) at

22  JA336-40) (same as to the Nationwide Injunctive Class).   Further, plaintiffs' counsel are

23  experienced, (Dkt. 79, Exh. 2 (Declaration of Jonathan D. Miller) ("Miller Decl.") at ¶¶ 15-19)

24  (outlining counsel's experience); (Dkt. 17, Exh. 3 (Declaration of Matthew K. Handley) ("Handley

25  Decl.") at ¶¶ 10-13) (outlining counsel's experience), and have prosecuted this action vigorously.

26  II.     RULE 23(b) REQUIREMENTS.

27       A "proposed class or subclass must also satisfy the requirements of one of the sub-sections

28  of Rule 23(b), which defines three different types of classes."  Parsons, 754 F.3d at 674 (9th Cir.

10

51

1   2014) (internal quotation marks omitted).  Here, plaintiffs seek certification under Rule 23(b)(2) and

2   (b)(3).  (Dkt. 66-1, Joint Br. at 30) (class definitions)

3       A.      Rule 23(b)(2) Requirements – Nationwide Injunctive Class.

4       A class may be maintained under Rule 23(b)(2) if "the party opposing the class has acted

5   or refused to act on grounds that apply generally to the class, so that final injunctive relief or

6   corresponding declaratory relief is appropriate respecting the class as a whole[.]" Dukes, 564 U.S.

7   at 360, 131 S.Ct. at 2557.  This provision applies "only when a single injunction or declaratory

8   judgment would provide relief to each member of the class."  Id.  "It does not authorize class

9   certification when each individual class member would be entitled to a different injunction or

10  declaratory judgment against the defendant."  Id.  "Similarly, it does not authorize class

11  certification when each class member would be entitled to an individualized award of monetary

12  damages. "  Id. at 360-61, 131 S.Ct. at 2557.  "Thus, 23(b)(2) sets forth two basic requirements.

13  First, the party opposing the class must have acted, refused to act, or failed to perform a legal duty

14  on grounds generally applicable to all class members.  Second, final relief of an injunctive nature

15  or a corresponding declaratory nature, settling the legality of the behavior with respect to the class

16  as a whole, [must be] appropriate."  2 Newberg on Class Actions § 4:26 (5th ed. 2014) (internal

17  quotation marks omitted).

18      Plaintiffs seek to certify a Rule 23(b)(2) class with respect to their federal claims, particularly

19  the ADA claim.  (See Dkt. 66, Motion at 2).  LabCorp does not dispute that it "has acted or refused

20  to act on grounds that apply generally to the class[.]" Fed. R. Civ. P. 23(b)(2); (see, generally, Dkt.

21  66-1, Joint Br. at 43-45).  Instead, it challenges only the second Rule 23(b)(2) requirement,

22  arguing that a single injunction will not provide relief to each member of the class.

23  (See Dkt. 66-1, Joint Br. at 43-45).  LabCorp claims that ACB's Rule 30(b)(6) witness, Claire

24  Stanely, "acknowledge[d] that the injunction Plaintiffs seek would not provide relief to each

25  member of the class."[7]  (Id. at 44).  Stanley, however, did not testify that a single injunction or

26  remedy would not render the kiosks accessible.  (See, generally, Dkt. 82, Exh. 35 (Stanley Depo)

27  _____

28      [7] LabCorp makes a similar argument regarding plaintiffs' accessibility expert, Rachael Bradley
    Montgomery.  (See Dkt. 66-1, Joint Br. at 44).

1   at JA1099-1100). Rather, when asked whether providing "speech output" would "resolve the

2   accessibility concerns of everyone that is blind or visually impaired[,]" Stanley testified that "[n]o

3   one accommodation is going to accommodate every person everywhere." (Id. at JA1099). In

4   other words, Stanley's testimony does not mean that an injunction cannot be crafted that will be

5   generally applicable to the class as a whole. See Parsons, 754 F.3d at 688 (The Rule 23(b)(2)

6   indivisibility requirement is "unquestionably satisfied when members of a putative class seek

7   uniform injunctive or declaratory relief from policies or practices that are generally applicable to

8   the class as a whole.")

9        LabCorp appears to be "exaggerate[ing] what is required under Rule 23(b)(2)[,]" Nightingale

10   v. U.S. Citizenship and Immigration Services, 333 F.R.D. 449, 463 (N.D. Cal. 2019), because

11   LabCorp's conduct need not have injured all class members in exactly the same way. In other

12   words, "[t]he fact that some class members may have suffered no injury or different injuries from

13   the challenged practice does not prevent the class from meeting the requirements of Rule

14   23(b)(2)." Rodriguez v. Hayes, 591 F.3d 1105, 1125 (9th Cir. 2010); see Parsons, 754 F.3d at 688

15   (The Rule 23(b)(2) "inquiry does not require an examination of the viability or bases of the class

16   members' claims for relief, . . . and does not require a finding that all members of the class have

17   suffered identical injuries."). "[I]t is sufficient to meet the requirements of Rule 23(b)(2) that class

18   members complain of a pattern or practice that is generally applicable to the class as a whole."

19   Rodriguez, 591 F.3d at 1125 (internal quotation marks omitted).

20        Moreover, as the Ninth Circuit has made clear, "the primary role of [Rule 23(b)(2)] has

21   always been the certification of civil rights class actions." Parsons, 754 F.3d at 686. In a civil

22   rights action, the fact that the discriminatory conduct may have affected different members of the

23   class in different ways does not prevent certification under Rule 23(b)(2). See, e.g., Gibson v.

24   Local 40, Supercargoes and Checkers, 543 F.2d 1259, 1264 (9th Cir. 1976) ("A class action may

25   be maintained under [Rule] 23(b)(2) alleging a general course of racial discrimination by an

26   employer or union, though the discrimination may have . . . affect[ed] different members of the

27   class in different ways."). Here, there is no dispute that this case constitutes a typical civil rights

28   class action. As one court in this District stated, in addressing nearly identical class claims against

12

53

1   another company that provides diagnostic testing services, this case is "a civil rights action against

2   a party charged with unlawful, class-based discrimination based on the use of a specific auxiliary

3   aid or service, and is a prime candidate for 23(b)(2) certification." Quest, 2021 WL 5989958, at

4   *7.  In short, the court finds that certification of the Nationwide Injunctive Class is appropriate

5   under Rule 23(b)(2). See id.

6          B.     Rule 23(b)(3) Requirements – California Class.

7          Certification under Rule 23(b)(3) is proper "whenever the actual interests of the parties can

8   be served best by settling their differences in a single action." Hanlon, 150 F.3d at 1022 (internal

9   quotation marks omitted).  Fed. R. Civ. P. 23(b)(3) requires two different inquiries, specifically a

10  determination as to whether:  (1) "questions of law or fact common to class members predominate

11  over any questions affecting only individual members[;]" and (2) "a class action is superior to other

12  available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

13         1.     Predominance.

14         "Though there is substantial overlap between [the Rule 23(a)(2) commonality test and the

15  Rule 23(b)(3) predominance test], the 23(b)(3) test is far more demanding[.]"[8] Wolin, 617 F.3d at

16  1172 (internal quotation marks omitted).  "The Rule 23(b)(3) predominance inquiry tests whether

17  proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem

18  Prods., Inc. v. Windsor, 521 U.S. 591, 623, 117 S.Ct. 2231, 2249 (1997).  "This calls upon courts

19  to give careful scrutiny to the relations between common and individual questions in a case."

20  Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442, 453, 136 S.Ct. 1036, 1045 (2016).  "The

21  predominance inquiry asks whether the common, aggregation-enabling, issues in the case are

22  more prevalent or important than the non-common, aggregation-defeating, individual issues.

23  When one or more of the central issues in the action are common to the class and can be said to

24  predominate, the action may be considered proper under Rule 23(b)(3) even though other

25  important matters will have to be tried separately, such as damages or some affirmative defenses

26  _____

27         [8]  Given the substantial overlap between Rule 23(a) and Rule 23(b)(3), and to minimize
28  repetitiveness, the court hereby incorporates the Rule 23(a) discussion set forth above. See supra
    at § I.B.

peculiar to some individual class members." Id. (citations and internal quotation marks omitted);
see Wang v. Chinese Daily News, Inc., 737 F.3d 538, 545 (9th Cir. 2013) ("The predominance
analysis under Rule 23(b)(3) focuses on the relationship between the common and individual
issues in the case and tests whether the proposed classes are sufficiently cohesive to warrant
adjudication by representation.") (internal quotation marks omitted).  The class members' claims
do not need to be identical.  See Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las
Vegas Sands, Inc., 244 F.3d 1152, 1163 (9th Cir. 2001) (allowing "some variation" between class
members; Abdullah, 731 F.3d at 963 (explaining that "there may be some variation among
individual plaintiffs' claims") (internal quotation marks omitted).  The focus is on whether the
"variation [in the class member's claims] is enough to defeat predominance under Rule 23(b)(3)."
Local Joint Exec. Bd. of Culinary/Bartender Trust Fund, 244 F.3d at 1163; see Blackie v. Barrack,
524 F.2d 891, 902 (9th Cir. 1975) ("[C]ourts have taken the common sense approach that the
class is united by a common interest in determining whether defendant's course of conduct is in
its broad outlines actionable, which is not defeated by slight differences in class members'
positions[.]").

     Where, as here, a plaintiff's claims arise under state law, the court "looks to state law to
determine whether the plaintiffs' claims – and [defendant's] affirmative defenses – can yield a
common answer that is 'apt to drive the resolution of the litigation.'"  Abdullah, 731 F.3d at 957
(quoting Dukes, 564 U.S. at 350, 131 S.Ct. at 2551); Erica P. John Fund, Inc. v. Halliburton Co.,
563 U.S. 804, 809, 131 S.Ct. 2179, 2184 (2011) ("Considering whether questions of law or fact
common to class members predominate begins . . . with the elements of the underlying cause of
action.") (internal quotation marks omitted).

     The Unruh Act provides that "[a]ll persons within the jurisdiction of [California] are free and
equal, and no matter what their . . . disability . . . are entitled to the full and equal accommodations,
advantages, facilities, privileges, or services in all business establishments of every kind
whatsoever."  Cal. Civ. Code § 51(b).  The California Supreme Court has stated that the purpose
of the Unruh "Act is to create and preserve a nondiscriminatory environment in California business
establishments by banishing or eradicating arbitrary, invidious discrimination by such

establishments." White v. Square, Inc., 7 Cal.5th 1019, 1025 (2019) (internal quotation marks omitted). "In enforcing the [Unruh] Act, courts must consider its broad remedial purpose and overarching goal of deterring discriminatory practices by businesses" and construe it "liberally in order to carry out its purpose." Id. (citations and internal quotation marks omitted).

"In general, a person suffers discrimination under the [Unruh] Act when the person presents himself or herself to a business with an intent to use its services but encounters an exclusionary policy or practice that prevents him or her from using those services." White, 7 Cal.5th at 1023; Thurston v. Omni Hotels Mgmt. Corp., 69 Cal.App.5th 299, 307-08 (2021) (holding that plaintiff, who was blind, "had to show a 'bona fide intent'" to use defendant's services) (quoting White, 7 Cal.5th at 1032). "While . . . an Unruh Act claimant need not be a client or customer of the covered public accommodation, and . . . he or she need not prove intentional discrimination upon establishing an ADA violation," a "claimant's intent or motivation for visiting the covered public accommodation is []relevant to a determination of the merits of his or her claim." Thurston, 69 Cal.App.5th at 309.

"As part of the 1992 reformation of state disability law, the [California] Legislature amended the Unruh [] Act to incorporate by reference the ADA, making violations of the ADA per se violations of the Unruh [] Act." Jankey v. Lee, 55 Cal.4th 1038, 1044 (2012). "To prevail on a discrimination claim under Title III [of the ADA], a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability." Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc., 603 F.3d 666, 670 (9th Cir. 2010).

Under the Unruh Act, "[w]hoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51 . . . is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000)[.]" "The litigant need not prove she suffered actual damages to recover the [Unruh Act's] independent statutory damages of $4,000." Molski v. M.J. Cable, Inc., 481 F.3d

724, 731 (9th Cir. 2007).  Plaintiffs contend that common questions predominate because they seek only statutory damages under the Unruh Act which are directly attributable to their theory of harm and can be determined without complicated calculations.[9]  (Dkt. 66-1, Joint Br. at 46).  They add that "should the need arise for class members to confirm eligibility to recover statutory damages under the Unruh Act, it is well-settled that this issue may properly be addressed by way of a claim form after class wide liability has been determined."  (Id. at 46-47).

LabCorp contends that individualized issues abound, (Dkt. 66-1, Joint Br. at 48), because "[t]o recover statutory damages under the Unruh Act, a class member must show they 'personally encountered' an Unruh Act violation that caused them difficulty, discomfort, or embarrassment."  (Id. at 47).  According to LabCorp, "even if Vargas argued that checking in at the front desk caused him difficulty, discomfort, or embarrassment, his own experience cannot be imputed to other California residents who are legally blind[,]" (id. at 47-48), because "not all California PSC's [] have kiosks and for those that do, staffing varies widely[.]"  (Id.).  LabCorp's contentions are unpersuasive.

LabCorp's argument boils down to determining whether each class member used or was exposed to a kiosk at one of LabCorp's PSCs.  But predominance is not concerned with determining who may be entitled to class membership, i.e., identifying legally blind class members who attempted to or were discouraged from using LabCorp's kiosks.  Rather, the superiority prong is where that issue is considered.  See Briseno v. ConAgra Foods, Inc., 844 F.3d 1121, 1126 (9th Cir. 2017) (declining to impose a separate administrability requirement to assess the difficulty of identifying class members, in part, because the superiority criterion already mandates considering "the likely difficulties in managing a class action") (internal quotation marks omitted).[10]  Here,

---

[9]  LabCorp does not challenge predominance under Comcast, 569 U.S. 27, 133 S.Ct. 1426. (See, generally, Dkt. 66-1, Joint Br. at 47-50).  Nor could it since plaintiffs are merely seeking statutory damages under the Unruh Act.

[10]  To the extent that LabCorp may be arguing that predominance is lacking due to a lack of ascertainability, (see Dkt. 66-1, Joint Br. at 47-50), it is without merit.  See Briseno, 844 F.3d at 1133 ("[T]he language of Rule 23 neither provides nor implies that demonstrating an administratively feasible way to identify class members is a prerequisite to class certification[.]").

16

1   defendant's concern as to whether a particular class member "personally encountered" a check-in

2   kiosk – i.e., identifying those who are entitled to class membership – will not predominate over the

3   more important common questions of fact and law such as whether: (1) "LabCorp's kiosks are

4   independently accessible to legally blind individuals"; (2) "LabCorp has implemented the

5   inaccessible check-in kiosks system across its national network of more than 1,800 PSCs"; (3)

6   "LabCorp trained its employees that use of the kiosks to check-in was mandatory"; (4) "use of the

7   kiosk is a good or service LabCorp offers its customers"; (5) "LabCorp offers a qualified aid or

8   auxiliary service to allow legally blind individuals to access the check-in kiosk service"; and (6)

9   "LabCorp has remedied the inaccessible check-in kiosk across its system." See supra at § I.B.

10       In addition, although Vargas "need not prove [that] []he suffered actual damages," Molski,

11   481 F.3d at 731, to prevail on his Unruh disability discrimination claim, LabCorp argues that

12   predominance cannot be established because eligibility for statutory damages cannot "be

13   addressed by way of a claim form after class wide liability has been determined[.]" (See Dkt. 66-1,

14   Joint Br. at 49) (internal quotation marks omitted).  In effect, LabCorp argues that predominance

15   cannot be established because the entitlement to statutory damages will have to be done on an

16   individual basis after liability is established.  (See id.).  However, it is well-settled that "the

17   presence of individualized damages cannot, by itself, defeat class certification under Rule

18   23(b)(3)."  Leyva v. Medline Indus. Inc., 716 F.3d 510, 514 (9th Cir. 2013).  In other words, "the

19   fact that the amount of damage may not be susceptible of exact proof or may be uncertain,

20   contingent or difficult of ascertainment does not bar recovery."  Pulaski & Middleman, LLC v.

21   Google, Inc., 802 F.3d 979, 989 (9th Cir. 2015) (internal quotation marks omitted); see also

22   Comcast, 569 U.S. at 35, 133 S.Ct. at 1433 (noting that damages "[c]alculations need not be

23   exact" at the class-certification stage).  As the Ninth Circuit recently reiterated, "a district court is

24   not precluded from certifying a class even if plaintiffs may have to prove individualized damages

25   at trial, a conclusion implicitly based on the determination that such individualized issues do not

26   predominate over common ones."  Olean Wholesale Grocery Cooperative, Inc., 31 F.4th at 669.

27   Here, the court can bifurcate the case into a liability and damages phase and, assuming there is

28   a liability determination, create a claims process by which to validate individualized claim

determinations. See, e.g., Briseno, 844 F.3d at 1131 ("Defendant[] will have . . . opportunities to individually challenge the claims of absent class members if and when they file claims for damages. At the claims administration stage, parties have long relied on claim administrators, various auditing processes, sampling for fraud detection, follow-up notices to explain the claims process, and other techniques tailored by the parties and the court to validate claims. Rule 23 specifically contemplates the need for such individualized claim determinations after a finding of liability.") (citation and internal quotation marks omitted); Mullins v. Direct Digital LLC, 795 F.3d 654, 667 (7th Cir. 2015) (parties regularly rely on "claims administrators, various auditing processes, sampling for fraud detection, follow-up notices to explain the claims process, and other techniques tailored by the parties and the court" to validate claims); Nevarez v. Forty Niners Football Co., LLC, 326 F.R.D. 562, 577 (N.D. Cal. 2018) ("Class members can certify whether they were present at the Stadium and whether they encountered an actionable Unruh Act violation.") (citing Cal. Civ. Code § 55.56); see also Tyson Foods, 577 U.S. at 461, 136 S.Ct. at 1050 (recognizing that bifurcation could resolve problems regarding uninjured class members); 4 Newberg on Class Actions, § 11:6, at 21 (5th ed. 2014) ("Courts have employed either issue certification (certifying only the question of liability for class treatment) or bifurcation (separating liability from damages and trying liability first, then damages) as the means to effectuate the goal of aggregated treatment.") (footnote omitted).

Further, even assuming it was proper to consider, under the predominance prong, the issue of identifying class members, the court is not persuaded that the "personally encountered" and "difficulty, discomfort, or embarrassment" standard upon which LabCorp relies, (see Dkt. 66-1, Joint Br. at 47), has application to the specific Unruh Act disability discrimination claim in this

1   action.[11]  That standard, which is set forth in California Civil Code § 55.56 [12] of the Construction

2   Related Accessibility Standards Compliance Act ("CRAS"), see Cal. Civ. Code §§ 55.51–55.57,

3   provides in relevant part that statutory damages under § 52(a) may "be recovered in a

4   construction-related accessibility claim against a place of public accommodation only if a violation

5   or violations of one or more construction-related accessibility standards denied the plaintiff full and

6   equal access to the place of public accommodation on a particular occasion.   A violation

7   personally encountered by a plaintiff may be sufficient to cause a denial of full and equal access

8   if the plaintiff experienced difficulty, discomfort, or embarrassment because of the violation." Cal.

9   Civ. Code § 55.56(a)-(c) (emphasis added); see Mundy v. Pro-Thro Enterprises, 192 Cal.App.4th

10  Supp. 1, 5 (2011) ("Section 55.56 is part of a comprehensive statutory scheme that was enacted

11  in 2008 with the intent of increasing voluntary compliance with equal access standards while

12  protecting businesses from abusive access litigation.  The provisions in [§§] 55.51 through 55.57

13  apply only to a construction-related accessibility claim, which is defined as a violation of a

14  construction-related accessibility standard under federal or state law[.]") (citations and internal

15  quotation marks omitted); Hernandez v. Polanco Enterprises, Inc., 624 F.Appx. 964, 965 (9th Cir.

16  2015) ("Under California law, [plaintiff] must prove – in addition to the ADA violation – that she

17  'personally encountered the violation [of a construction-related accessibility standard] on a

18  particular occasion' and that it caused her 'difficulty, discomfort, or embarrassment,' thus denying

19  her full and equal access to a place of public accommodation.") (quoting Cal. Civ. Code §

20  55.56(a)-(c)) (first alteration added).

21       The two cases cited by LabCorp for the proposition that it is necessary for a class member

22  to establish that he or she personally encountered an Unruh Act violation that caused difficulty,

23

24       [11] With respect to the intent to use LabCorp's services, see White, 7 Cal.5th at 1023, LabCorp

25  does not challenge that requirement.  (See, generally, Dkt 66-1, Joint Br. at 47-50).  In any event,
     that requirement would not defeat a finding of predominance.  See Quest, 2021 WL 5989958 at

26  *8 (noting that "there is no real question that the putative class members had a bona fide intent
     to use [defendant's] services" because plaintiff proposed to use defendant's records to identify

27  class members).

28       [12] Unless otherwise indicated, all section references are to the California Civil Code.

19

1  discomfort or embarrassment, (see Dkt. 66-1, Joint Br. at 47), are both construction-related

2  accessibility cases. See Doran v. 7 Eleven, Inc., 2011 WL 13143622, *1 (C.D. Cal. 2011) ("Doran

3  I"), aff'd, 509 F.Appx. 647 (9th Cir. 2013) (noting that plaintiff was a "paraplegic" and that

4  defendant had previously "remov[ed] all barriers related to his disability"); Botosan v. Paul McNally

5  Realty, 216 F.3d 827, 830 (9th Cir. 2000) (plaintiff was a paraplegic asserting claims based on

6  "lack of a designated parking space for disabled persons").[13]  Similarly, the three ADA cases

7  LabCorp relies on as examples of where class certification was denied, (see Dkt. 66-1, Joint Br.

8  at 47-49) – Vondersaar v. Starbucks Corp., 2015 WL 629437, *4 (C.D. Cal. 2015), aff'd, 719

9  F.Appx. 657 (9th Cir. 2018); Moeller v. Taco Bell, 2012 WL 3070863, *14 (N.D. Cal. 2012);

10  Antoninetti v. Chipotle Mexican Grill, Inc., 2012 WL 3762440, *5-*6 & n. 1 (S.D. Cal. 2012) – do

11  not compel the conclusion that predominance is lacking here because, unlike those cases, this

12  case does not involve construction-related accessibility claims.  See Quest, 2021 WL 5989958,

13  at *8 (noting that these cases "have certain notable similarities: all three involved disabled plaintiffs

14  who alleged that counter heights and other physical barriers to access in fast food establishments

15  violated the ADA and the Unruh Act").[14]  The cases relied upon by LabCorp involved various

---

17  [13]  Although the court in Quest recognized that § 55.56 "applies specifically to construction-
18  related accessibility claims[,]" 2021 WL 5989958, at *8, it also appeared to accept defendant's
   argument that "both federal and California courts have [] articulated the same standard without
19  reference to section 55.56." (Id.).  LabCorp has not cited, nor has the court found a California
   published case that has addressed this standard outside of the construction-related accessibility
20  context. On the contrary, the cases suggest otherwise. See, e.g., Mundy, 192 Cal.App.4th Supp.
   at 5 ("The provisions in [§§] 55.51 through 55.57 apply only to a construction-related accessibility
21  claim, which is defined as a violation of a construction-related accessibility standard under federal
   or state law[.]") (citations and internal quotation marks omitted); Munson v. Del Taco, Inc., 46
22  Cal.4th 661, 677-78 (2009) (noting that §§ 55.53-55.57 were enacted to "protect[] businesses from
   abusive access litigation" arising from construction-related accessibility claims).
23

24  [14]  These cases are also distinguishable because, as the court in Nevarez observed, Moeller
   and Antoninetti are procedurally distinct in that the class certification motions were decided  "after
25  the defendants' liability had been adjudicated, which meant that the most important common
   question had already been resolved." Nevarez, 326 F.R.D. at 586 (emphasis omitted).  The same
26  holds true with respect to Quest, where the court had already resolved a motion for summary
   judgment.  See Vargas v. Quest Diagnostics Clinical Laboratories, Inc., 2021 WL 5989961, *11
27  (C.D. Cal. 2021).  Here, the court has not yet ruled on a summary judgment motion.  Further,
   unlike the instant case, the kiosks in Quest were not identical because at some point, defendant
28  "began to roll out a change to its kiosks that allow[ed] visually-impaired patients to swipe the

accessibility issues at different restaurants while Vargas's Unruh Act claim is based on LabCorp's kiosks, which are identical. While LabCorp maintains that "[n]ot all California PSC's [sic] even have kiosks[,]" and "for those that do, staffing varies widely depending on location and a PSC's size: some locations have a dedicated patient intake representative ('PIR') who sits full time at the front desk to check in patients; others have phlebotomists to conduct both check in and testing; and some PSCs are located inside Walgreens stores where there is always a dedicated Walgreens staff member to assist patients," (Dkt. 66-1, Joint Br. at 48), the variations are not as significant as LabCorp makes them out to be. First, of the 299 PSCs in California, (Dkt. 82, Exh. 32 (Sinning Depo) at JA1064), only 19 do not have kiosks. (Id.). Second, with respect to PIRs, there is evidence that LabCorp has "very few PIRs" and instead, "[t]he vast majority of the people working in [the PSCs] doing patient care and intake are phlebotomists." (Id. at JA1067-68). In other words, LabCorp is aware of which PSCs in California have kiosks, when they were installed and made operational, and how each PSC is staffed.

Finally, even if the standard set forth in § 55.56 applied in this case, it would not defeat a finding of predominance. In Nevarez, the plaintiffs, who required the use of wheelchairs, 326 F.R.D. at 569, sued several defendants, including the owners and operators of Levi's Stadium, asserting claims under the ADA and the Unruh Act. See id. at 568-71. The plaintiffs alleged that they faced barriers in accessing the stadium, including a lack of accessible seating, narrow security checkpoints, heavy doors, and inaccessible counters. See id. at 569-70, 578. The plaintiffs sought to certify a Rule 23(b)(3) class of persons who use wheelchairs, scooters or other mobility aids who "purchased, attempted to purchase, or for whom third parties purchased accessible seating," and who were denied equal access to the stadium. Id. at 572. The plaintiffs sought "statutory minimum damages of $4,000 per actionable violation of the Unruh Act[.]" Id. at 571.

With respect to the predominance requirement, the defendants made the same argument LabCorp makes here – namely that "individual questions predominate because each class

_____

touchscreen using three fingers, which checks the patient in and alerts a phlebotomist that the patient has arrived." Quest, 2021 WL 5989958, at *1.

21

62

member will have to prove that they 'personally encountered' an Unruh Act violation that caused 'difficulty, discomfort, or embarrassment' to the class member." Nevarez, 326 F.R.D. at 585 (quoting Cal. Civ. Code §§ 55.56(b)-(c)). Then-district Judge Koh rejected the defendants' contention that application of § 55.56 defeated predominance, noting that defendants kept "records of class members' purchases of accessible seating that include[d] names and contact information." Id. at 586. Similar to Nevarez and, as discussed below, see infra at § II.B.2., there should be minimal logistical difficulties to identifying class members given the uniformity of the kiosks, and the fact that LabCorp "knows how many patients checked in, and has information on those patients from their provided ID and insurance[.]" (Dkt. 66-1, Joint Br. at 21 n. 4).

In short, the court finds that plaintiff has established that common questions of fact and law predominate over individualized questions.

    **2.    Superiority**.

"[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." Wolin, 617 F.3d at 1175 (internal quotation marks omitted). To determine superiority, the court must look at

> (A) the class members' interests in individually controlling the prosecution or
> defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already
> begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims
> in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Of the four superiority factors, LabCorp appears to dispute only the fourth factor regarding whether the case is manageable as a class action.[15] (See Dkt. 66-1, Joint Br. at 51-53). First,

---

[15] Given the substantial overlap between LabCorp's predominance argument, which appears to primarily challenge the feasibility of maintaining a Rule 23(b)(3) class, the court hereby incorporates the predominance discussion set forth above. See supra at § II.B.1.

1  LabCorp relies on "[t]wo of the decisions[, Antoninetti and Moeller,] already discussed in Labcorp's

2  predominance section" to argue that "class procedures" are "not superior for adjudicating"

3  plaintiffs' Unruh Act claim, "considering the individualized issues involved in assessing damages

4  and the hefty per-claimant minimum statutory damages amounts incentivizing lawsuits." (Id. at

5  51). LabCorp's argument and the cases it relies on were addressed and rejected in the previous

6  section. See supra at § II.B.1. Further, it should be noted that LabCorp provides no explanation

7  or authority as to why the statutory minimum damages amount under the Unruh Act qualifies as

8  "hefty" and, even assuming it did qualify as a "hefty" damages amount, LabCorp does not explain

9  why that matters in terms of assessing whether a class action is manageable. (See, generally,

10 Dkt. 66-1, Joint Br. at 51). In any event, the $4,000 statutory damages amount is a minimal sum

11 that "would be dwarfed by the cost of litigating on an individual basis[.]" Wolin, 617 F.3d at 1175;

12 see Local Joint Exec. Bd. of Culinary/Bartender Trust Fund, 244 F.3d at 1163 (stating that "[i]f

13 plaintiffs cannot proceed as a class, some – perhaps most – will be unable to proceed as

14 individuals because of the disparity between their litigation costs and what they hope to recover").

15 In other words, the superiority requirement strongly "weighs in favor of class certification." Wolin,

16 617 F.3d at 1175 (discussing Rule 23(b)(3)(A) superiority factor). As the Nevarez court stated,

17 "[a]lthough class members are entitled to $4,000 in damages per Unruh Act violation that sum

18 pales in comparison with the cost of pursuing litigation. Consequently, this factor points towards

19 certification." 326 F.R.D. at 589; see Local Joint Exec. Bd. of Culinary/Bartender Trust Fund, 244

20 F.3d at 1163 (In cases where a number of individuals seek only to recover relatively small sums,

21 "[c]lass actions may permit the plaintiffs to pool claims which would be uneconomical to bring

22 individually.").

23     Second, with respect to LabCorp's contention that the class would not be manageable

24 given that plaintiffs "have not indicated how they would locate [] class members[,]" (Dkt. 66-1, Joint

25 Br. at 51-52), it is a "well-settled presumption that courts should not refuse to certify a class merely

26 on the basis of manageability concerns." Briseno, 844 F.3d at 1128 (internal quotation marks

27 omitted); Nevarez, 326 F.R.D. at 590 (same). Moreover, "[t]here is no requirement that the identity

28 of class members . . . be known at the time of certification." Ries v. Ariz. Beverages USA LLC,

287 F.R.D. 523, 535 (N.D. Cal. 2016); see id. ("If there were [an identification requirement], there would be no such thing as a consumer class action."). In any event, identifying class members here would not be difficult. LabCorp "knows how many patients checked in, and has information on those patients from their provided ID and insurance[.]" (Dkt. 66-1, Joint Br. at 21 n. 4). While it may not know at this point "which persons would fall into the category of legally blind[,]" (id.), making that determination at a later stage of the proceedings would not be an unduly burdensome task. Indeed, LabCorp was able to determine that Davis was mistaken with respect to the dates of one of his visits to a LabCorp PSC. (See Dkt. 266-1, Joint Br. at 23); (Dkt. 79, Exh. 14 (Davis Depo) at JA268-69). Certainly a similar undertaking could be done at the appropriate juncture.

Based on the foregoing, IT IS ORDERED THAT:

1. The Motion **(Document No. 66)** is **granted** as set forth in this Order. The court certifies the following classes:

Nationwide Injunctive Class: All legally blind individuals in the United States who visited a LabCorp patient service center in the United States during the applicable limitations period and were denied full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations due to LabCorp's failure to make its e-check-in kiosks accessible to legally blind individuals.

California Class: All legally blind individuals in California who visited a LabCorp patient service center in California during the applicable limitations period and were denied full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations due to LabCorp's failure to make its e-check-in kiosks accessible to legally blind individuals.[16]

---

[16] Since the class definitions discussed by the parties did not address the temporal scope of the two classes, the court added the language "during the applicable limitations period" to the definition. See Torres v. Mercer Canyons, Inc., 835 F.3d 1125, 1139 (9th Cir. 2016) (acknowledging that "the district court may . . . adjust the scope of the class definition, if it later finds that the inclusiveness of the class exceeds the limits of [the defendant'] legal liability").

24

1       2.  The court hereby appoints Luke Davis and Julian Vargas as the representatives of the

2  Nationwide Class and Vargas as the representative of the California Class.

3       3.  The court hereby appoints the law firms of Nye, Stirling, Hale & Miller, LLP and Handley,

4  Farah & Anderson, PLLC as class counsel.

5  Dated this 23rd day of May, 2022.

6

7                                       /s/

8                                Fernando M. Olguin
                                United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28