No. 22-55873

In the

# United States Court of Appeals
## For the Ninth Circuit
_____

**LUKE DAVIS, JULIAN VARGAS, and
AMERICAN COUNCIL OF THE BLIND,
individually and on behalf of all others similarly situated,**
*Plaintiffs-Appellees*

v.

**LABORATORY CORPORATION OF AMERICA HOLDINGS
d/b/a LABCORP,**
*Defendant-Appellant*

_____

Appeal from the United States District Court for the Central District of California
Case No. 2:20-cv-00893-FMO-KS

_____

**BRIEF OF THE CHAMBER OF COMMERCE
OF THE UNITED STATES OF AMERICA AS AMICUS CURIAE
IN SUPPORT OF DEFENDANT-APPELLANT**

_____

Jennifer B. Dickey
Kevin R. Palmer*
U.S. CHAMBER LITIGATION CENTER
1615 H Street NW
Washington, D.C. 20062
*Admitted in Massachusetts only.
Practicing under the supervision of
members of the D.C. Bar.*

Brian D. Schmalzbach
MCGUIREWOODS LLP
800 East Canal Street
Richmond, VA 23219
Telephone: (804) 775-4746
bschmalzbach@mcguirewoods.com

*Counsel for Amicus Curiae
Chamber of Commerce of the United States of America*

## CORPORATE DISCLOSURE STATEMENT

Amicus curiae the Chamber of Commerce of the United States of America certifies that it has no outstanding shares or debt securities in the hands of the public, and it does not have a parent company. No publicly held company has a 10% or greater ownership interest in amicus curiae.

*/s/ Brian D. Schmalzbach*
Brian D. Schmalzbach

# TABLE OF CONTENTS

**Page**

IDENTITY AND INTEREST OF AMICUS CURIAE ......................................1

STATEMENT OF CONSENT, AUTHORSHIP, AND CONTRIBUTION .....2

INTRODUCTION ...................................................................................2

ARGUMENT..........................................................................................5

    I.    The District Court erred in certifying a largely uninjured damages class......................................................................5

        A.    Rule 23(b)(3) classes must exclude the uninjured..............5

        B.    Even if the uninjured could be damages class members, individualized inquiries into injury would defeat predominance. ...............................................10

        C.    This Rule 23(b)(3) class is rife with uninjured members. ...................................................................15

    II.    Extending class certification to the uninjured harms American businesses and the economy as a whole. ..................18

CONCLUSION ....................................................................................21

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdullah v. U.S. Sec. Assocs.*,
  731 F.3d 952 (9th Cir. 2013) ..................................................................12

*Acheson Hotels, LLC v. Laufer*,
  No. 22-429 (cert granted Mar. 27, 2023) ........................................17

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ...................................................................8, 10, 12

*Arizona Christian Sch. Tuition Org. v. Winn*,
  563 U.S. 125 (2011) ....................................................................................2

*In re Asacol Antitrust Litig.*,
  907 F.3d 42 (1st Cir. 2018) ..................................................................14

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ..................................................................................19

*Bowerman v. Field Asset Servs., Inc.*,
  60 F.4th 459 (9th Cir. 2023) ................................................................14

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017) ............................................................13

*Chapman v. Pier 1 Imports (U.S.) Inc.*,
  631 F.3d 939 (9th Cir. 2011) ..............................................................15

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) ..............................................................................2, 10

*Coopers & Lybrand v. Livesay*,
  437 U.S. 463 (1978) ..................................................................................19

*Cordoba v. DIRECTV, LLC*,
  942 F.3d 1259 (11th Cir. 2019) ..........................................................14

*Davis v. Lab'y Corp. of Am. Holdings,*
  604 F. Supp. 3d 913 (C.D. Cal. 2022) ............................... 11, 12, 13, 14, 16, 21

*Denney v. Deutsche Bank AG,*
  443 F.3d 253 (2d Cir. 2006) .................................................................. 9

*Halvorson v. Auto-Owners Ins. Co.,*
  718 F.3d 773 (8th Cir. 2013) ................................................................. 9

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992) ............................................................................. 7

*Martinez v. Newsom,*
  46 F.4th 965 (9th Cir. 2022) ............................................................... 17

*Mazza v. Am. Honda Motor Co.,*
  666 F.3d 581 (9th Cir. 2012) ................................................................ 8

*Olean v. Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC,*
  31 F.4th 651 (9th Cir. 2022) ........................................... 4, 6, 7, 8, 9, 10, 11, 13

*Robins v. Spokeo, Inc.,*
  867 F.3d 1108 (9th Cir. 2017) ............................................................. 15

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,*
  559 U.S. 393 (2010) ............................................................................. 8

*Simon v. E. Ky. Welfare Rts. Org.,*
  426 U.S. 26 (1976) ............................................................................. 17

*Smith v. Bayer Corp.,*
  564 U.S. 299 (2011) ............................................................................. 7

*Spokeo, Inc. v. Robins,*
  578 U.S. 330 (2016) ........................................................................... 15

*Torres v. Mercer Canyons Inc.,*
  835 F.3d 1125 (9th Cir. 2016) ............................................................. 13

*Town of Chester v. Laroe Ests., Inc.,*
  581 U.S. 433 (2017) ............................................................................. 7

iv

*TransUnion LLC v. Ramirez,*
  141 S. Ct. 2190 (2021)..........................................................................4, 6, 7, 15

*Van v. LLR, Inc.,*
  61 F.4th 1053 (9th Cir. 2023)...............................................................6

*Wal-Mart Stores, Inc. v. Dukes,*
  564 U.S. 338 (2011)................................................................................4, 16

**Rules**

Fed. R. Civ. P. 23.................................................................................*passim*

Fed. R. Civ. P. 82.................................................................................8

**Other Authorities**

2023 Carlton Fields Class Action Survey (2023),
  available at https://ClassActionSurvey.com......................................18, 20

7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
  Federal Practice and Procedure § 1785.1 (3d ed.).........................................9

Adeola Adele,
  *Dukes v. Wal-Mart: Implications for Employment Practices*
  *Liability Insurance* (July 2011) ............................................................18

Henry J. Friendly,
  *Federal Jurisdiction: A General View* (1973) .....................................19

U.S. Chamber Institute for Legal Reform,
  *Do Class Actions Benefit Class Members? An Empirical*
  *Analysis of Class Actions* (Dec. 2013), available at
  http://bit.ly/3rrHd29 ......................................................................19

Minh Vu, Kristina Launey & Susan Ryan,
  *ADA Title III Federal Lawsuit Filings Hit An All Time High,*
  Seyfarth Shaw LLP (Feb. 17, 2022), available at
  https://tinyurl.com/2021-ADA..................................................................21

## IDENTITY AND INTEREST OF AMICUS CURIAE

The Chamber of Commerce of the United States of America (the "Chamber") is the world's largest business federation. The Chamber represents around 300,000 direct members and indirectly represents the interests of more than three million companies and professional organizations of every size, in every industry sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files amicus briefs in cases, like this one, that raise issues of concern to the nation's business community.

The Chamber's members and their subsidiaries are often targeted as defendants in class actions. The Chamber thus is familiar with class action litigation, both from the perspective of individual defendants in class actions and from a more global perspective. The Chamber has a significant interest in this case because the district court's misapplications of Article III and Rule 23 raise issues of immense significance not only for the Chamber's members, but also for the customers, employees, and other businesses that depend on them.

## STATEMENT OF CONSENT, AUTHORSHIP, AND CONTRIBUTION

Counsel for all parties consented to the filing of this brief. No party's counsel authored this brief in whole or in part, and no such counsel nor any party here contributed money to fund the preparation of this brief or its submission. No person other than amicus, its members, or its counsel contributed money to the preparation or submission of this brief.

## INTRODUCTION

This case is a cautionary tale about the dangers of brushing aside bedrock Article III limitations on federal jurisdiction in the class action context. To be sure, the class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). But there is no class action exception to Article III. To the contrary: "In an era of frequent litigation" — and especially "class actions" — "courts must be more careful to insist on the formal rules of standing, not less so." *Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 146 (2011). The District Court ignored that admonition and sped past the problem that few (if any) members of this California damages class have any injury-in-fact from alleged technical

violations of the Americans with Disabilities Act ("ADA"). The resulting

inflated billion-dollar certified class bears no relationship to any actual harm

to class members.

This Court should reverse the order certifying a class under Rule

23(b)(3) containing all legally blind Californian customers of LabCorp, a

clinical diagnostic laboratory that began rolling out touchscreen check-in

kiosks in 2017.[1] The District Court's standing analysis—which did not even

cite the recent, controlling precedent from this Court and the Supreme

Court—fails in at least three respects.

*First*, the District Court certified a largely (if not entirely) uninjured

class. That is not permissible under Article III. The act of certification makes

absent class members parties subject to the same standing requirements as

named plaintiffs. But the District Court let the many uninjured class

members try to grab the coattails of hypothesized class members with

---

[1] The Chamber's amicus brief focuses on the erroneously certified damages class, but agrees with LabCorp that the certification order should be reversed in its entirety. In particular, there should be no Rule 23(b)(2) class because the requested nationwide injunctive relief would not benefit (or would affirmatively harm) certain class members depending on their individualized preferences, and there is no evidence of any consistent nationwide practice regarding the use of kiosks over alternative check-in methods that many class members prefer anyway. *See* LabCorp Brief 46–48.

standing. This Court should take the opportunity to clarify what is implicit in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) and *Olean v. Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022): no damages class can be certified without evidence that each class member has Article III standing.

*Second*, the damages class is unsustainable here in any event because of the need to winnow out those uninjured class members. Under Rule 23(b)(3), plaintiffs must show, among other things, that any common questions "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). That is a burden of *proof*, not just pleading: "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). And that obligation applies to questions of Article III standing no less than the merits. *Olean*, 31 F.4th at 668. Yet the District Court skipped over the litigation that would be needed to identify any class members with injuries-in-fact before any damages judgment, even if it were hypothetically permissible to include uninjured individuals at the certification stage (it is not). The required Rule 23(b)(3) analysis would have shown that

4

individualized inquiries into injury (among others) would have predominated.

*Third*, this record already shows that the presence of uninjured class members bars certification under either approach to Article III and Rule 23. Many class members did not use the kiosks at all, so those kiosks could not have caused them any injury-in-fact. And many if not all of the remaining class members had immediate recourse to the traditional in-person check-in method. So not only did the plaintiff fail to "affirmatively demonstrate" class-wide standing, but the record confirms that the overwhelming number of uninjured class members bars certification under Rule 23(b)(3).

## ARGUMENT

### I. The District Court erred in certifying a largely uninjured damages class.

#### A. Rule 23(b)(3) classes must exclude the uninjured.

In this Circuit, a fundamental class-certification question has escaped resolution: Can a damages class be certified without evidence that each class member has Article III standing? This Court should finally resolve this issue and clarify that every member of a class certified under Rule 23(b)(3) must have standing.

1. *TransUnion* held that "[e]very class member must have Article III standing in order to recover individual damages."  141 S. Ct. at 2208.  But that decision addressed a final judgment awarding damages to absent class members—not the class-certification order itself.  So the Supreme Court did not need to resolve "the distinct question whether every class member must demonstrate standing *before* a court certifies a class."  *Id.* at 2208 n.4.

This Court likewise refrained from explicitly answering that question in *Olean*.  The plaintiffs in that antitrust case proffered an expert's model purporting to show antitrust impact on the entire class. 31 F.4th at 682.  The Court concluded that the model—if believed by the jury—"adequately demonstrated Article III standing at the class certification stage . . . , whether or not that was required."  *Id*.  So the Court did "not consider the [defendants'] argument that the possible presence of a large number of uninjured class members raises an Article III issue."  *Id.*; *see also Van v. LLR, Inc.*, 61 F.4th 1053, 1068 n.12 (9th Cir. 2023) (same).

2. Although *Olean* did not expressly resolve the question, it identified the building blocks that—when assembled—confirm why each putative class member must show standing before certification.

First, *Olean* recognized that a "plaintiff is required to establish the elements necessary to prove standing 'with the manner and degree of evidence required at the successive stages of the litigation.'" *Id.* at 682 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)); *see also TransUnion*, 141 S. Ct. at 2208 (plaintiffs must maintain standing "at all stages" of a case). At class certification, the necessary manner and degree of evidence is, at a minimum, proof by a preponderance of the evidence, using admissible evidence. 31 F.4th at 665 ("plaintiffs must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence."); *see also id.* (requiring admissible evidence). So before certifying a class, and thus exercising jurisdiction over the merits of the claims of absent class members, the district court must find by a preponderance of admissible evidence that it may do so. *See Smith v. Bayer Corp.*, 564 U.S. 299, 313 (2011) (unnamed class members are not "part[ies] to the class-action litigation *before the class is certified*").

Second, *Olean* confirmed that in the analogous context of intervention by right, "each plaintiff must demonstrate Article III standing in order to seek additional money damages." 31 F.4th at 682 n.32 (citing *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017)). Class actions and mandatory

intervention are both procedures that "enabl[e] a federal court to adjudicate claims of multiple parties at once, instead of in separate suits . . . , leav[ing] the parties' legal rights and duties intact and the rules of decision unchanged." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010) (plurality op.). In each case, additional plaintiffs are in some sense joined. These plaintiffs would need independent Article III standing in an unjoined damages lawsuit. Nothing about the procedural mechanisms for considering their claims can supplement that irreducible constitutional requirement. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) ("Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act."); *see also* Fed. R. Civ. P. 82 (instructing that the "rules do not extend . . . the [subject-matter] jurisdiction of the [United States] district courts").

*Olean*'s partial overruling of *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), only confirms that each damages class member requires standing. *Olean* took a scalpel rather than an axe to *Mazza*'s statement that "'no class may be certified that contains members lacking Article III standing.'" 31 F.4th at 682 n.32 (quoting *Mazza*, 666 F.3d at 594). The problem with *Mazza*'s statement was that it "does not apply when a court is

certifying a class seeking injunctive or other equitable relief," i.e., under Rule 23(b)(2). *Id.* But *Olean* did not disturb *Mazza* as to Rule 23(b)(3). *See id.* ("We do not overrule *Mazza* as to any other holding which remain good law."). That distinction makes good sense: a single plaintiff may seek an injunction that incidentally benefits others whether or not they would have standing, but that same plaintiff could not compel a court to resolve damages claims that belong to others.

This Court thus should join the other appellate courts refusing to certify damages classes containing uninjured members. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006) ("[N]o class may be certified that contains members lacking Article III standing."); *Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773, 778 (8th Cir. 2013) ("In order for a class to be certified, each member must have standing and show an injury in fact that is traceable to the defendant and likely to be redressed in a favorable decision."); 7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1785.1 (3d ed.) ("[T]o avoid a dismissal based on a lack of standing, the court must be able to find that both the class and the representatives have suffered some injury requiring court intervention.").

**B.** **Even if the uninjured could be damages class members, individualized inquiries into injury would defeat predominance.**

In any event, the class certification order is wrong because the uninjured class members here destroy predominance under Rule 23(b)(3). Before certifying a damages class, a court must engage in "rigorous analysis"—based on evidentiary proof—to determine that common issues will predominate over individualized questions.  31 F.4th at 664; *see also Comcast*, 569 U.S. at 34 (quoting *Amchem*, 521 U.S. at 615) (noting "the court's duty to take a 'close look' at whether common questions predominate over individual ones.").  But the District Court did not consider the serious problem of uninjured class members in the predominance context.  *Zero* analysis cannot be *rigorous* analysis.

1.  *Olean* rejected the District Court's agnostic approach to uninjured class members and predominance.  "When individualized questions relate to the injury status of class members, Rule 23(b)(3) requires that the court determine whether individualized inquiries about such matters would predominate over common questions."  31 F.4th at 668.  "Because the Supreme Court has clarified that '[e]very class member must have Article III standing in order to recover individual damages,' Rule 23 also requires a

district court to determine whether individualized inquiries into this standing issue would predominate over common questions." *Id.* at 668 n.12.

This Court held in *Olean* that common questions could predominate on those facts because the plaintiffs' evidence purported to resolve the question of *each* class member's standing simultaneously. If that jury "found that [the plaintiffs' expert's] model was reliable, then the [plaintiffs] would have succeeded in showing antitrust impact on a class-wide basis." *Id.* at 681. And vice versa. *Id.* So "[i]n neither case would the litigation raise individualized questions regarding which members of the [class] had suffered an injury." *Id.* The plaintiffs' theory in that particular case thus addressed each class member's standing at once without predominance-destroying individual inquiries into injury.

2. The District Court, by contrast failed in its duty "to determine whether individualized inquiries into this standing issue would predominate." *Id.* at 668 n.12. Indeed, it did not even cite *Olean* or *TransUnion.* The District Court did make cursory inquiry into the effect of uninjured class members elsewhere in the Rule 23 analysis. *See, e.g.*, *Davis v. Lab'y Corp. of Am. Holdings*, 604 F. Supp. 3d 913, 926 (C.D. Cal. 2022) ("[T]he fact that some class members may have suffered no injury or different

injuries from the challenged practice does not prevent the class from meeting the requirements of Rule 23(b)(2).") But the District Court bypassed Article III injury problems in the "far more demanding" predominance requirement, *Amchem*, 521 U.S. at 623–24.

The District Court skirted the problem of Article III standing in the predominance analysis for three apparent reasons. None of them excuses disregarding this fundamental question.

First, the District Court highlighted the role of state law in the predominance analysis, but omitted the threshold question under Article III: "Where, as here, a plaintiff's claims arise under state law, the court 'looks to state law to determine whether the plaintiffs' claims—and [defendant's] affirmative defenses—can yield a common answer that is apt to drive the resolution of the litigation.'" 604 F. Supp. 3d at 928 (quoting *Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 957 (9th Cir. 2013)).[2] But even when state law provides the rule of decision, "[e]very class member must have Article III

---

[2] *Abdullah* says nothing about excluding Article III from the Rule 23(b)(3) predominance analysis. In fact, the sentence excerpted by the District Court comes in the *injunctive* class context: "We therefore begin our Rule 23(a)(2) analysis by looking to state law . . . ." 731 F.3d at 957.

standing in order to recover individual damages.'" *Olean*, 31 F.4th at 668 n.12.

Second, the District Court conflated the question of Article III injury with the issue of ascertaining class membership. 604 F. Supp. 3d at 929. But "whether each class member used or was exposed to a kiosk at one of LabCorp's PSCs" is not only key to identifying members of the class in this case, but also to verifying standing. A class member who neither used nor *was even exposed to* the kiosk option lacks the concrete injury necessary under Article III. *Id.* The District Court incorrectly dismissed questions about identifying such use or exposure as relevant only to class membership, with which the District Court thought "predominance is not concerned." *Id.* This Court's precedent confirms that—whatever the status of the ascertainability requirement—lack of injury may present a predominance problem. *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1125 (9th Cir. 2017); *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1136–39 (9th Cir. 2016). The District Court thus could not ignore the necessary litigation to determine which class members were in fact exposed to the kiosks.

Third, the District Court misconstrued the Article III problem here as a matter of individualized damages. 604 F. Supp. 3d at 930. The need to

establish "entitlement to statutory damages . . . on an individual basis" is not a dispute over "the amount of damage," and the assertion that "calculations need not be exact at the class-certification stage" is no response. *Id.* Rather, Plaintiffs will have to show that each class member was concretely injured *at all.*[3]  *See, e.g., Bowerman v. Field Asset Servs., Inc.*, 60 F.4th 459, 470 (9th Cir. 2023) (common policy of not paying overtime does not predominate over individualized question "whether the class members actually worked overtime").  That sort of individualized inquiry into injury should stop the District Court's certification order in its tracks.  *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1273 (11th Cir. 2019) (vacating class certification for failure to address predominance in light of standing problems); *In re Asacol Antitrust Litig.*, 907 F.3d 42, 53 (1st Cir. 2018) (if a substantial number of class members "in fact suffered no injury," the "need to identify those individuals will predominate").

---

[3] The District Court's suggestion that individualized questions of injury could be punted to a bifurcated "damages phase" after "a liability determination" faces the same problem.  There can be no liability determination until each class member proves Article III standing.

**C. This Rule 23(b)(3) class is rife with uninjured members.**

Whether uninjured class members must be excluded outright (part I.A) or must weigh in the predominance calculus (part I.B), the prevalence of uninjured members dooms this damages class.

"Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016); *see also TransUnion*, 141 S. Ct. at 2205 ("[U]nder Article III, an injury in law is not an injury in fact."). So the alleged ADA violations must "actually harm, or present a material risk of harm to" each class member. *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1113 (9th Cir. 2017) (considering the concreteness requirement of standing on remand). In the context of Title III of the ADA, this Court has found standing when "a disabled individual has encountered or become aware of alleged ADA violations that deter his patronage of or otherwise interfere with his access to a place of public accommodation." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 947 (9th Cir. 2011).

The broadly defined damages class here is not limited to those with Article III standing. The District Court made clear that nothing in its class definition would exclude uninjured class members because class

identification hinges on LabCorp's records—not the class members' experiences:

> [I]dentifying class members here would not be difficult. LabCorp knows how many patients checked in, and has information on those patients from their provided ID and insurance. While it may not know at this point which persons would fall into the category of legally blind, making that determination at a later stage of the proceedings would not be an unduly burdensome task.

604 F. Supp. 3d at 934. Indeed, the District Court confirmed that the class is *not* limited to those who "personally encountered" an alleged ADA violation "that caused them difficulty, discomfort or embarrassment." *Id.* at 929–30.

As explained in LabCorp's Brief (at 26–36), this record establishes that there are many uninjured class members. For starters, many class members did not even use a kiosk. The data shows that roughly a quarter of LabCorp visitors checked in at the front desk with an employee, and another tenth checked in online before setting foot in a patient service center.[4] 3-ER-509. Indeed, *Plaintiff Vargas himself*—the only damages class representative—did

---

[4] These same facts confirm that there is no consistent nationwide practice regarding the use of a kiosk—let alone an *unlawful* classwide practice—as required for a nationwide injunctive class under Rule 23(b)(2) and *Dukes*, 564 U.S. at 353–55.

not even try to use the kiosk, and instead checked in at the desk. 6-ER-1382–83. There is nothing to establish that all class members *were even aware of the kiosk option.* Thus, many class members did not and would not have personally encountered the kiosk in any event. The mere presence of an unused kiosk caused no concrete injury to them.[5]

And of the class members who did not successfully complete check-in at a kiosk, many would have completed the process (again without complaint) at a staffed desk. LabCorp Brief 35. Article III does not countenance such "satisfied customer standing." Even if *any* class member had Article III standing—a conclusion not supported by this record—*many*

---

[5] Vargas's attempt to leverage an abstract concern about a check-in process that he has not used—and doesn't claim he will use—resembles the efforts of so-called ADA "tester" plaintiffs. The Supreme Court has granted certiorari to determine whether such ADA testers lack standing. *See Acheson Hotels, LLC v. Laufer*, No. 22-429 (cert granted Mar. 27, 2023). A decision that analogous testers lack standing would confirm that Vargas lacks standing as well and would require the dismissal of the damages claim here. *See Martinez v. Newsom*, 46 F.4th 965, 970 (9th Cir. 2022) ("'That a suit may be a class action ... adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40 n.20 (1976)).

experienced no difficulty, discomfort, or embarrassment and thus faced no impediment to their equal access. That glut of uninjured class members precludes a damages class, and in any event the individualized efforts needed to separate them from any actually affected class members would destroy predominance under Rule 23(b)(3).

## II.   Extending class certification to the uninjured harms American businesses and the economy as a whole.

The rigorous analysis required under Rule 23 is badly needed to combat the ills that burdensome class action litigation on behalf of uninjured class members imposes on the business community and the public. Those ills are especially severe in the context of litigation under Title III of the ADA, particularly as leveraged in claims for massive statutory damages under California's Unruh Act.

1. Class action litigation costs in the United States are enormous and growing. In 2022, those costs surged to $3.5 billion, continuing a long-running trend of rising costs. *See* 2023 Carlton Fields Class Action Survey, at 4–6 (2023), available at https://ClassActionSurvey.com. Defending *even one* class action can cost a business over $100 million. *See, e.g.*, Adeola Adele, *Dukes v. Wal-Mart: Implications for Employment Practices Liability Insurance* 1

(July 2011). And those class actions can persist for years, accruing legal fees, with no resolution of class certification—let alone the dispute as a whole. *See* U.S. Chamber Institute for Legal Reform, *Do Class Actions Benefit Class Members? An Empirical Analysis of Class Actions*, at 1, 5 (Dec. 2013), available at http://bit.ly/3rrHd29 ("Approximately 14 percent of all class action cases remained pending four years after they were filed, without resolution or even a determination of whether the case could go forward on a class-wide basis.").

The extraordinary exposure opened up by a court's certification of a class also creates immense pressure on defendants to settle even cases that ought to be resolved in their favor on the merits. Judge Friendly aptly termed these "blackmail settlements." Henry J. Friendly, *Federal Jurisdiction: A General View* 120 (1973). As the Supreme Court explained, "Certification of a large class may so increase the defendant's potential damages liability and litigation costs that he may find it economically prudent to settle and to abandon a meritorious defense." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 476 (1978); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 350 (2011) (noting "the risk of 'in terrorem' settlements that class actions entail"). Over the last five years, well over half of class actions have resulted in

settlements—including over 73% of class actions in 2021. *See* 2023 Carlton Fields Class Action Survey 22.

Judicial recommitment to rigorous enforcement of both Article III and Rule 23 at the class-certification stage would be a step in the right direction. This enforcement would ensure that parties do not waste time and money—and defendants are not faced with undue settlement pressure—litigating a certified class action through trial only for a court to conclude at final judgment that uninjured class members have run rampant. If the District Court's ostrich approach to uninjured class members is affirmed as the law of this Circuit, however, then the already immense pressure on businesses to settle improperly brought class actions will continue to balloon without regard to whether plaintiffs have suffered any actual harm. That coercion hurts the entire economy, because the attorney's fees and costs accrued in defending and settling overbroad class actions are ultimately absorbed by consumers and employees through higher prices and lower wages.

2. Those deleterious effects are magnified in the burgeoning context of litigation under Title III of the ADA and the Unruh Act.

Federal lawsuits invoking Title III of the ADA have mushroomed recently. In 2013, there were fewer than 3,000 such lawsuits. *See* Minh Vu,

Kristina Launey & Susan Ryan, *ADA Title III Federal Lawsuit Filings Hit An All Time High*, Seyfarth Shaw LLP (Feb. 17, 2022), available at https://tinyurl.com/2021-ADA.  But ADA claims have exploded to more than 10,000 per year since then.  *Id.*  In 2021, that number reached 11,452—more than a three-fold increase in only eight years.  *Id.*

Of those ADA Title III lawsuits in 2021, 5,930—over half—were filed *in California alone.  Id.*  No-injury ADA lawsuits are particularly problematic in California, where (as here) plaintiffs seek to leverage alleged technical ADA violations into Unruh Act claims for statutory damages of $4,000 *per* class member, injured or not.  *See* 604 F. Supp. 3d at 928–29.  Thus, the failure to exclude uninjured class members at this critical stage of litigation has a force-multiplier effect far beyond the merits of any claim.  That unjustifiable effect is all the more reason to reverse here with instructions to the district court to enforce the requirements of Article III and Rule 23 with the requisite rigor here.

## CONCLUSION

For these reasons and those in LabCorp's brief, the Court should reverse the order granting class certification.

Dated: April 7, 2023            Respectfully submitted,

*/s/ Brian D. Schmalzbach*
Brian D. Schmalzbach
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Telephone: (804) 775-4746
bschmalzbach@mcguirewoods.com

Jennifer B. Dickey
Kevin R. Palmer*
U.S. CHAMBER LITIGATION CENTER
1615 H Street NW
Washington, D.C. 20062
*Admitted in Massachusetts only.
Practicing under the supervision of
members of the D.C. Bar.*

*Counsel for Amicus Chamber of Commerce
of the United States of America*

**CERTIFICATE OF COMPLIANCE**

1.  This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) because it contains 4,441 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.  This brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word, in 14-point size.

*/s/ Brian D. Schmalzbach*
Brian D. Schmalzbach

**CERTIFICATE OF SERVICE**

I hereby certify that on April 7, 2023 the foregoing was electronically filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system. All participants in the case are registered CM/ECF users and will be served by the system.

*/s/ Brian D. Schmalzbach*
Brian D. Schmalzbach