No. 22-55873

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

LUKE DAVIS, JULIAN VARGAS, AND AMERICAN COUNCIL OF THE BLIND,
individually and on behalf all others similarly situated,
*Plaintiffs-Appellees*
v.
LABORATORY CORPORATION OF AMERICA HOLDINGS, DBA (DOING BUSINESS AS)
LABCORP,
*Defendant-Appellant*.

---

Appeal from an Order of the United States District Court
for the Central District of California
Case No. 2:20-cv-00893-FMO-KS
The Honorable Fernando M. Olguin

---

### APPELLEES' ANSWERING BRIEF
---

Jonathan D. Miller
Alison M. Bernal
Jordan T. Porter
**NYE, STIRLING, HALE, MILLER
& SWEET, LLP**
33 West Mission Street, Suite 201
Santa Barbara, California 93101
Telephone: (805) 963-2345
Facsimile: (805) 284-9590
jonathan@nshmlaw.com
alison@nshmlaw.com
jordan@nshmlaw.com

Benjamin J. Sweet
**NYE, STIRLING, HALE, MILLER
& SWEET, LLP**
1145 Bower Hill Road, Suite 104
Pittsburgh, Pennsylvania 15243
Telephone: (412) 857-5352
ben@nshmlaw.com

Matthew K. Handley
**HANDLEY FARAH &
ANDERSON PLLC**
200 Massachusetts Ave., NW 7th Fl.
Washington, DC 20001
Telephone: (202) 559-2411
mhandley@hfajustice.com

*Attorneys for Appellees*
Luke Davis, Julian Vargas, American Council of the Blind, and the Certified Class

## <u>DISCLOSURE STATEMENT</u>

Pursuant to Fed. R. App. P. 26.1, Plaintiff-Appellee American Council of the Blind states that it is a nonprofit 501(c)(3) corporation. It has no parent corporation and no publicly held corporation owns 10% or more of its stock.

Date: June 14, 2023          By:     s/ *Alison M. Bernal*
**Alison M. Bernal**
**Jonathan D. Miller**
**Jordan T. Porter**
NYE, STIRLING, HALE, MILLER &
SWEET, LLP
33 West Mission Street, Suite 201
Santa Barbara, CA 93101
Telephone: (805) 963-2345
alison@nshmlaw.com
jonathan@nshmlaw.com
jordan@nshmlaw.com

s/ *Benjamin J. Sweet*
**Benjamin J. Sweet**
NYE, STIRLING, HALE, MILLER &
SWEET, LLP
1145 Bower Hill Road, Suite 104
Pittsburgh, PA 15243
Telephone: (412) 857-5350
ben@nshmlaw.com

s/ *Matthew K. Handley*
**Matthew K. Handley**
HANDLEY FARAH & ANDERSON PLLC
200 Massachusetts Avenue, NW, 7th Fl.
Washington, DC 20001
mhandley@hfajustice.com

*Attorneys for Plaintiffs-Appellees Luke Davis, Julian Vargas, American Council of the Blind, and the Certified Class*

- i -

## <u>TABLE OF CONTENTS</u>

DISCLOSURE STATEMENT ....................................................................i

TABLE OF CONTENTS ........................................................................ ii

TABLE OF AUTHORITIES ..................................................................iv

INTRODUCTION ...................................................................................1

STATUTORY AND REGULATORY AUTHORITIES ..........................5

STATEMENT OF ISSUES PRESENTED...............................................5

STATEMENT OF THE CASE.................................................................5

I.      Plaintiffs Cannot Independently Use The Kiosks .......................11

        A.      Luke Davis ......................................................................11

        B.      Julian Vargas ..................................................................14

        C.      ACB Members..................................................................15

II.     RELEVANT PROCEDURAL HISTORY ....................................17

SUMMARY OF ARGUMENT ..............................................................19

STANDARDS OF REVIEW ..................................................................24

ARGUMENT ..........................................................................................25

I.      THE UNRUH ACT DAMAGES CLASS MEETS EACH
        REQUIREMENT FOR CLASS CERTIFICATION .....................25

        A.      Plaintiff Vargas Has Article III Standing............................25

                1.      Plaintiff Vargas Suffered an Injury-In-Fact Sufficient to
                        Confer Article III Standing. .......................................27

2. Mr. Vargas Has Statutory Standing Under the Unruh Act. ......34

3. Plaintiffs Need Not Show That All Class Members Suffered an Injury At The Class Certification Stage ...............35

B. The District Court Did Not Abuse Its Discretion in Finding That Common Issues Predominate ........................................37

1. The Certified Minimum Statutory Damages Class Claim Does Not Require Individualized Proof of Damages. .............40

2. The District Court Properly Rejected LabCorp's Misplaced Reliance on Civil Code Section 55.56 Construction-Related Accessibility Claim Standards as Inapplicable to the California Minimum Statutory Damages Class Claims. .............................................................41

3. LabCorp's Predominance Argument on Individualized Proof Primarily Challenges the Feasibility of Maintaining a Rule 23(b)(3) Class. .............................................................45

4. Each of the District Court's Factual Findings Are Supported by Record Evidence ...................................................47

C. Plaintiff Vargas Meets the Typicality and Adequacy Requirements of Rule 23(a). .................................................48

D. The Class Mechanism Remains the Superior Means of Resolving This Dispute. .......................................................51

II. A UNIFORM INJUNCTION CAN PROVIDE RELIEF TO ALL NATIONWIDE CLASS MEMBERS .........................................54

III. THE CLASS DEFINITIONS ARE NOT FAIL-SAFE................................58

CONCLUSION ........................................................................................61

STATEMENT OF RELATED CASES ..................................................62

CERTIFICATE OF COMPLIANCE ....................................................63

# TABLE OF AUTHORITIES

## Cases

*Antoninetti v. Chipotle Mexican Grill, Inc.*
  2012 WL 3762440 (S.D. Cal. Aug. 28, 2012) ........................................ 43, 45, 51

*B.K. v. Snyder*
  922 F.3d 957 (9th Cir. 2019) ................................................................. 55

*Barr v. Am. Ass'n of Political Consultants, Inc.*
  140 S. Ct. 2335 (2020) ......................................................................... 29

*Botosan v. Paul McNally Realty*
  216 F. 3d 827 (9th Cir. 2000) ............................................................... 43

*Briseno v. ConAgra Foods, Inc.*
  844 F.3d 1121 (9th Cir. 2017) ........................................................ 45, 53

*Cantrell v. City of Long Beach*
  241 F.3d 674 (9th Cir. 2001) ................................................................ 29

*Castillo v. Bank of Am., NA*
  980 F.3d 723 (9th Cir. 2020) ................................................................ 24

*Chapman v. Pier 1 Imports (U.S.) Inc.*
  631 F.3d 939 (9th Cir. 2011) ......................................................... 27, 28

*Chattopadhyay v. BBVA USA*
  2021 WL 4958850 (9th Cir. Oct. 26, 2021) ......................................... 34

*Comcast Corp. v. Behrend*
  569 U.S. 27 (2013) ................................................................................ 39

*Corral v. Staples the Office Superstore LLC*
  2023 WL 2347445 (C.D. Cal. Feb. 6, 2023) ........................................ 52

*Davidson v. O'Reilly Auto Enters., LLC*
  968 F.3d 955 (9th Cir. 2020) ................................................................ 24

*Doran v. 7 Eleven, Inc.*
  2011 WL 13143622 (C.D. Cal. Mar. 28, 2011) .................................... 43

*Doran v. 7-Eleven, Inc.*
  524 F.3d 1034 (9th Cir. 2008) .............................................................. 28

*Driver v. AppleIllinois, LLC*
  739 F.3d 1073 (7th Cir. 2014) .............................................................. 59

*Enyart v. Nat'l Conf. of Bar Exam'rs, Inc.*
  630 F.3d 1153 (9th Cir. 2011) .............................................................. 20

*Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*
  753 F.3d 862 (9th Cir. 2014) ................................................................28
*Goldman v. Standard Ins. Co.*
  341 F. 3d 1023 (9th Cir. 2003) ............................................................43
*Gonzales v. Taqueria*
  2022 WL 16924094 (C.D. Cal. Nov. 11, 2022) ..................................27
*Heckler v. Mathews*
  465 U.S. 728 (1984)..............................................................................29
*In re AutoZone, Inc., Wage & Hour Emp. Pracs. Litig.*
  289 F.R.D. 526 (N.D. Cal. 2012), *aff'd*, 789 Fed. Appx. 9 (9th Cir. 2019) .........18
*Jankey v. Lee*
  55 Cal. 4th 1038 (2012) .......................................................................41
*Kalani v. Starbucks Coffee Co.*
  698 Fed. Appx. 883 (9th Cir. 2017).....................................................20
*Kimbo v. MXD Grp., Inc.*
  2020 WL 4547324 (E.D. Cal. Aug. 6, 2020).......................................52
*Langer v. Kiser*
  57 F.4th 1085 (9th Cir. 2023) ....................................................... 26, 29
*Laufer v. Arpan LLC*
  29 F.4th 1268 (11th Cir. 2022) ............................................................32
*Le v. Little Saigon Square Garden Grove, LLC*
  2023 WL 2629162 (C.D. Cal. Mar. 13, 2023)......................................27
*Leyva v. Medline Indus. Inc.*
  716 F. 3d 510 (9th Cir. 2013) ..............................................................38
*Local Joint Exec. Bd. of Culinary v. Las Vegas Sands, Inc.*
  244 F.3d 1152 (9th Cir. 2001) .............................................................52
*Lujan v. Defs. of Wildlife*
  504 U.S. 555 (1992)..............................................................................29
*Moeller v. Taco Bell*
  2012 WL 3070863 (N.D. Cal. 2012) ...................................................43
*Molski v. M.J. Cable, Inc.*
  481 F. 3d 724 (9th. Cir. 2007) .............................................................38
*Montera v. Premier Nutrition Corp.*
  621 F. Supp. 3d 1012 (N.D. Cal. 2022)...............................................52
*Mullins v. Direct Digital LLC*
  795 F.3d 654 (7th Cir. 2015) ...............................................................53
*Mundy v. Pro-Thro Enters.*

192 Cal. App. 4th Supp. 1 (2011) ........................................................42

*Nevarez v. Forty Niners Football Co., LLC*
  326 F.R.D. 562 (N.D. Cal. 2018)............................................ 46, 52, 53

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*
  31 F.4th 651 (9th Cir. 2022) ........................................................ passim

*Parsons v. Ryan*
  754 F.3d 657 (9th Cir. 2014) ........................................... 50, 55, 56, 58

*Pickern v. Holiday Quality Foods Inc.*
  293 F.3d 1133 (9th Cir. 2002) ................................................... 28, 29

*Reycraft v. Lee*
  177 Cal. App. 4th 1211 (2009) ........................................................44

*Ries v. Ariz. Beverages USA LLC*
  287 F.R.D. 523 (N.D. Cal. 2016).....................................................53

*Robles v. Domino's Pizza, LLC*
  913 F.3d 898 (9th Cir. 2019) ..........................................................20

*Rodriguez Diaz v. Garland*
  53 F.4th 1189 (9th Cir. 2022) ........................................................55

*Rodriguez v. Hayes*
  591 F.3d 1105 (9th Cir. 2010) ........................................................55

*Ruiz Torres v. Mercer Canyons Inc.*
  835 F.3d 1125 (9th Cir. 2016) .................................................... passim

*Russell v. Tyson Farms, Inc.*
  2020 WL 3051241 (N.D. Ala. Jun. 8, 2020) ......................................60

*Shayler v. MMWH Grp. LLC*
  2022 WL 17080183 (C.D. Cal. Sep. 2, 2022) ...................................60

*Spokeo, Inc. v. Robins*
  578 U.S. 330 (2016)......................................................................31

*Stearns v. Ticketmaster Corp.*
  655 F.3d 1013 (9th Cir. 2011) ........................................................49

*Stockwell v. City and Cnty. of San Francisco*
  749 F.3d 1107 (9th Cir. 2014) ........................................................25

*Strojnik v. Xenia Hotels & Resorts, Inc.*
  2020 WL 3060761 (N.D. Cal. June 9, 2020).....................................45

*TransUnion LLC v. Ramirez*
  141 S. Ct. 2190 (2021).............................................................. passim

*Tyson Foods, Inc. v. Bouaphakeo*

577 U.S. 442 (2016) ........................................................................ 39, 53

*Urhausen v. Longs Drugs Stores California, Inc.*
155 Cal. App. 4th 254, 265–66 (2007) ............................................44

*Van v. LLR, Inc.*
61 F.4th 1053 (9th Cir. 2023) ..........................................................59

*Vargas v. Quest Diagnostics Clinical Labs.*
2021 WL 5989958 (C.D. Cal. Dec. 2, 2021) ............................... passim

*Vondersaar v. Starbucks Corp.*
2015 WL 629437 (C.D. Cal. Feb. 12, 2015) .....................................43

*Wal-Mart Stores, Inc. v. Dukes*
564 U.S. 338 (2011) ............................................................. 23, 54, 56

*White v. Square, Inc.*
7 Cal. 5th 1019 (2019) .................................................................. passim

*White v. Square, Inc.*
778 Fed. Appx. 444 (Mem) (9th Cir. Sept. 23, 2019) .......................35

*White v. Square, Inc.*
891 F.3d 1174 (9th Cir. 2018) ........................................... 27, 29, 34

*Wolin v. Jaguar Land Rover N. Am., LLC*
617 F.3d 1168 (9th Cir. 2010) ........................................................ 49, 51

## Statutes

42 U.S.C. § 12101 ..............................................................................4,31

42 U.S.C. § 12101(a)(4) .......................................................................31

42 U.S.C. § 12101(b)(4) .......................................................................31

42 U.S.C. § 12182(a) .............................................................................8

Cal. Civ. Code § 51(b) .........................................................................40

Cal. Civ. Code § 52 ...............................................................................44

Cal. Civ. Code § 52(a) ..........................................................................41

Cal. Civ. Code § 54.3(a) .......................................................................43

Cal. Civ. Code § 55.51 ..........................................................................44

Cal. Civ. Code § 55.56(a) ............................................................. 38, 42

Cal. Civ. Code § 55.56(b) ......................................................................42

Cal. Civ. Code §§ 55.51–55.57 .............................................................41

Cal. Civ. Code §55.56(c) ............................................................... 21, 42

**Other Authorities**

4 Newberg on Class Actions, § 11:6 (5th ed. 2014) ................................................53

**Rules**

Fed. R. Civ. P. 23(a)(3) ..................................................................... 48, 49

Fed. R. Civ. P. 23(b)(3) ...................................................................... 4, 20

Fed. R. Civ. P. 23(b)(2) ................................................................... passim

## INTRODUCTION

This appeal tests whether a certified class of legally blind patients of LabCorp, a for-profit national healthcare company, can pursue relief on a class-wide basis for LabCorp's intentional decision to offer an "express" kiosk-based communication service, called "LabCorp Express," yet deny its legally blind patients access to that same new service, relegating those patients to an unequal and inferior patient experience.

Lead Plaintiffs Luke Davis and Julian Vargas, as well as members of the American Council of the Blind ("ACB") (collectively "Plaintiffs") visited one of Appellant LabCorp's 1,853 patient service centers ("PSCs") but due to their disability were unable to access LabCorp Express because it lacks any accessible features that would allow a blind person to use it. The reality of the harm this inaccessible service causes to the class is not simply having to check in a different way. Because legally blind patients (like Plaintiffs) cannot book appointments at LabCorp in advance due to the inaccessibility of its website and mobile application, those patients are almost always treated as "walk-ins" who must check-in to enter the service queue. SER-4-5. But no LabCorp employee is present to greet these patients in waiting areas at hundreds of PSCs, as the check-in process was taken over by LabCorp Express, with phlebotomists remaining in the back. SER-4. A legally blind patient may be weak from fasting but he or she is

- 1 -

nonetheless required to wait—often for more than 15 minutes—for a phlebotomist or a stranger in the waiting room to check them in, very often divulging private health information in the process. SER-4-5. And while the legally blind patient may be anxious for fear of contracting COVID-19, he or she cannot avail themselves of the "Wait Where You're Comfortable" option, which allows sighted patients to wait outside safely, but can only be accessed from the inaccessible LabCorp Express service. *Id.* The legally blind patient is left frustrated and angry, feeling like a second-class citizen. At bottom, this disparate and inferior treatment fails to provide legally blind LabCorp patients with "full and equal" access to LabCorp.

The difficulty for legally blind patients began in 2016 when LabCorp replaced the manual patient check-in system at its PSCs with kiosk-based LabCorp Express, a distinct service for which it sought and obtained a federal service mark. As LabCorp touts, LabCorp Express offers customers not only an alternative means to register and check in for diagnostic services, but also a host of other advantages, including insurance and identity verification, appointment scheduling, status tracking for medical diagnostic tests, the ability to wait outside during COVID-19, and integration with LabCorp's mobile application.

While LabCorp's move to automation reduced LabCorp's staffing needs and saved the company $14 million in 2019 alone, it has also curtailed the availability

- 2 -

of staff to assist customers. In hundreds of LabCorp locations staff is limited to a single phlebotomist employee who is removed from the patient waiting area and positioned in a draw room behind a secure door. While LabCorp's sighted patients can check-in quickly and privately through LabCorp Express, then move to the front of the service queue, its legally blind patients must wait for staff to enter the waiting room to call a patient, get their attention (not an easy feat when blind), then check in, causing blind patients to wait longer.

LabCorp knew its LabCorp Express service would present a serious accessibility barrier for its legally blind patients. LabCorp nonetheless made an affirmative, corporate-level decision to implement the inaccessible LabCorp Express kiosk throughout its PSC network. Specifically, LabCorp was alerted to the inaccessibility of the service by both its own employees and other kiosk manufacturers who offered accessible kiosks. Instead of pausing the rollout to investigate and implement accessible options, LabCorp went full steam ahead. LabCorp selected an inaccessible iPad-based kiosk design, disabled the suite of built-in accessibility features in the iPad, covered its build-in headphone port (crucial for audio output to legally blind users), and deployed this "identical" and inaccessible kiosk throughout its PSC network.

After personally experiencing this discriminatory treatment, Plaintiffs filed this class action seeking nationwide injunctive relief under the Americans with

Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* ("ADA") and minimum statutory damages under California's Unruh Civil Rights Act, Cal. Civ. Code §§ 51, *et seq.* ("Unruh Act"). In a proper exercise of its discretion, the District Court correctly concluded Plaintiffs satisfied all prerequisites for class certification under Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) and certified a nationwide injunctive relief class under the ADA and a California minimum statutory damages class under the Unruh Act.

LabCorp's appeal of this certification order offers a thematic distraction, arguing the court should not have certified the Classes because Plaintiffs and some Class members were eventually able to check-in for *diagnostic services* through alternatives to LabCorp Express, which LabCorp argues requires individualized inquiry. But the issue is not whether LabCorp's legally blind customers could eventually access LabCorp's *diagnostic services* after, for example, suffering longer wait times or being forced to divulge private health information to strangers; the issue is whether LabCorp's legally blind customers could access its new service, *LabCorp Express*. As LabCorp itself acknowledges, all Class members could not.

This Court should affirm the District Court's class certification order because Judge Olguin applied the correct legal rules, properly exercised his

discretion, and reached a decision strongly supported by the underlying factual record.

## STATUTORY AND REGULATORY AUTHORITIES

All relevant statutory and regulatory authorities appear in the Addendum to this brief.

## STATEMENT OF ISSUES PRESENTED

I.     Whether the District Court abused its discretion in certifying Plaintiff Vargas's California Unruh Act damages subclass when Vargas's claims are typical of class members, the class mechanism is superior to individual lawsuits, common issues predominate, and he has Article III standing.

II.    Whether the District Court abused its discretion in certifying a nationwide injunctive relief class pursuant to Rule 23(b)(2) where Plaintiffs seek one uniform injunction that remedies LabCorp's corporate-level decision to deploy inaccessible LabCorp Express kiosks to all of its PSCs.

III.   Whether the certified classes present fail-safe definitions, and if so, whether they can be remedied by refinement of the class definitions.

## STATEMENT OF THE CASE

LabCorp "provides diagnostic, drug development, and technology-enabled solutions for more than 160 million patient encounters per year, or more than 3 million patients per week." 5-ER-1022.  LabCorp reported revenue growth of 23%

from 2018 to 2020, and total revenue in excess of $11.5 billion in 2019.  *Id.*;
4-ER-0921–22 (at 34:19-35:1).

Across LabCorp's approximately 1,853 PSCs nationwide, customers can
make appointments, pay their bills, and obtain laboratory services such as blood
work or urine tests.  6-ER-1252–56 (at 34:2-17, 36:2-19, 38:21-40:12); 4-ER-883–
84 (at 39:1-24, 49:3-20).  Many tests LabCorp administers require patients to fast,
thereby rendering delay in providing testing services an issue of patient care.
6-ER-1366–67 (at 21:3-22:19).

Beginning in 2016, LabCorp implemented "Project Horizon," (6-ER-1257–
58 (42:25-43:5); 1267 (98:7-19); 1276 (139:18-23); 5-ER-1184), which it brands
as "LabCorp Express" to the public (5-ER-1003–12).  The purpose of Project
Horizon was simple: through automation of the check-in process, LabCorp hoped
to increase the number of patients it served while at the same time reducing its
labor costs.  4-ER-899 (122:10-20); 4-ER-872–74 (29:13-31:4); 6-ER-1264–65
(69:15–70:8).  Internal LabCorp documents demonstrate that for an upfront capital
expenditure of $22.4 million, Horizon would pay for itself in less than four years,
saving the Company $14 million in 2019 alone from both the reduction in labor
and the ability to see more patients without hiring more employees.  6-ER-1262–63
(67:13-68:6); 1286; 1263 (68:7-16); *see also* 4-ER-886 (62:3-12).

LabCorp sought proposals from third party vendors to provide iPads for the LabCorp Express kiosks. A proposal from Olea Kiosks, a manufacturer of ADA and HIPAA-compliant kiosks, included accessibility features. 5-ER-1185–88; 4-ER-943 (68:1-14). In addition to Olea's accessibility features, a typical iPad is equipped with Apple's own built-in IOS accessibility features for the legally blind, including a built-in screen-reader program called VoiceOver that many legally blind individuals use regularly. 6-ER-1358–59 (13:23–14:4). The iPads are also equipped with a headphone port that allows legally blind users to utilize VoiceOver with privacy and without public disclosure of what the screen-reader is reading. 4-ER-682–83.

Instead of selecting Olea's ADA-compliant kiosks, LabCorp selected a different vendor, Aila, to provide iPads for the LabCorp Express kiosks. 4-ER-929 (52:11–20). LabCorp conducted an internal risk scenario at the inception of Project Horizon that determined one of the barriers to implementation was that blind patients could not access the kiosks independently. 6-ER-1259–60 (44:25–45:2); 1280; 4-ER-887 (72:5-12). Despite the Company's knowledge of the lack of accessibility of Aila's kiosks and the availability of accessible kiosks from Olea and other manufacturers, LabCorp selected the inaccessible kiosk. 4-ER-923–24 (39:7–40:3); 5-ER-933–34 (57:21–58:13), 936–42 (60:4–11, 61:25–66:11); 6-ER-1273–75 (130:8-132:8). This identically-inaccessible kiosk was deployed

uniformly across the Company's nationwide network of 1,853 PSCs, including 280 locations in California. 6-ER-1255 (39:2-20); 6-ER-1255–56 (39:24–40:13); 1274 (131:12–22).

LabCorp sought and obtained federal service mark protection for "LabCorp Express," prominently displaying the LabCorp Express service mark on each of its kiosks within its PSCs. *See* ER-1004–1012. In its application to the United States Patent and Trademark Office ("USPTO"), LabCorp certified under oath that LabCorp Express is a new and distinct "service" separate and apart from its diagnostic services. *See* ER-1004–1012. In so doing, LabCorp either overlooked or ignored the ADA's requirement that distinct services be accessible. *See* 42 U.S.C. § 12182(a) ("No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of . . . services . . . of any place of public accommodation . . .").

Recognizing patients had to utilize the kiosks in order to achieve the Company's projected cost savings, LabCorp instructed its employees to "redirect" patients who failed to check-in at the kiosks back to the device to do so. 4-ER-890–91 (85:4–86:2); 909. LabCorp failed to provide its executives or patient-facing employees any training on how to engage in the interactive process with legally blind individuals. 4-ER-885 (52:12-18); 6-ER-1279 (227:8–17). LabCorp's messaging left both high-level employees working on Project Horizon's

- 8 -

implementation and on-site personnel at LabCorp PSCs with the distinct impression that use of the kiosks was mandatory. 6-ER-1269–72 (115:23–118:14); 1341 (use of kiosk "not optional"); 5-ER-986–92 (105:5–110:17, 112:8–15).

Senior executives knew both that employees were operating under this perception and that the kiosks were not independently accessible to legally blind patients. (*Id.*; *see also* 4-ER-892–94 (93:7-10, 98:18-22, 100:14-21); 4-ER-923 (39:7-23). LabCorp's actions—and inaction—resulted in its employees directing numerous legally blind patients to kiosks the Company knew were inaccessible. *See, e.g.,* 6-ER-1464 (41:14-24); 1467 (44:8-20); 1482 (59:6–13). And while LabCorp closely monitored the reduction in its sighted patient wait times based on use of the LabCorp Express service, blind patient wait times were never measured. 5-ER-951–52 (125:1–126:22).

Almost immediately after rolling out the kiosks (and at least as early as June 2018), LabCorp began receiving complaints from blind patients that "[t]he new check in kiosk is NOT accessible for blind/low vision individuals." 5-ER-1193 (LabCorp survey responses, Column H, Row 167). LabCorp received at least 190 complaints from visually impaired or legally blind individuals across each of LabCorp's six nationwide divisions who could not access the kiosks independently, a clear indication of a system-wide accessibility problem. 5-ER-1193–94. For example, LabCorp's patients told the Company its employees

were directing blind patients to use the Kiosk: "[t]he woman behind the counter in a monotone voice said to use the kiosk to sign in when standing there" and requested LabCorp provide its staff with "training on individuals with disabilities." *Id.* Despite such requests, LabCorp made no effort to train its employees not to direct blind patients to the inaccessible kiosks. 4-ER-892–98 (93:7-10, 98:18-22, 100:14-21, 101:5-104:17); 5-ER-975 (13:8-14); 4-ER-923 (39:7–23). Nor did LabCorp ever analyze how the Company could have utilized the iPad's built-in accessibility features to make its new service accessible. 5-ER-949–50 (97:18–98:7); 4-ER-682–85 (cost-effective, accessible kiosk options did and do exist).

In addition to LabCorp Express, the Company offers its sighted patients the option of booking appointments online through a dedicated website (*i.e.,* LabCorp Pre-Check). 4-ER-882–83 (38:20-25, 39:18-24). Such appointments can then be managed through use of the LabCorp mobile app, which in turn allows those customers to "check in" at the PSC by scanning a QR code. 6-ER-1268 (112:6–24). However, neither the website nor the mobile app (nor the kiosk) is accessible for legally blind customers. 6-ER-1485 (62:6-17); 4-ER-682–85. This means that most legally blind patients cannot make appointments in advance and instead present as "walk ins" who must somehow check-in through the inaccessible kiosk to enter the queue. *See* SER-4-5; 6-ER-1384 (39:5-8); 6-ER-1483 (60:15-19).

While moving to an integrated check-in system with the kiosk, website, and mobile app, the Company also reduced staffing levels across the PSCs.  5-ER-985 (20:9–13); 5-ER-0977–78 (114:9-115:9); 4-ER-900–05 (127:14-131:7, 132:1–10).  In fact, at more than 440 PSC locations,[1] the equivalent of only a single employee works at any given time.  4-ER-925–26 (42:11-43:12); 4-ER-906–07 (143:19-144:18).  That single employee is a phlebotomist, whose primary function is to draw blood, and—as experiences of numerous blind patients, more than 190 blind and visually impaired customer complaints, and internal LabCorp documents show—who rarely has time to attend to the waiting area.  *Id.*; *see also* 5-ER-1193–94.

## I.     Plaintiffs Cannot Independently Use The Kiosks

### A.     Luke Davis

Plaintiff Luke Davis is legally blind and relies on screen-reading software to read electronic written material.  6-ER-1438 (15:18–23); 1440 (17:1–10); 1462 (39:5–8).  He owns a consulting service offering computer network support, including supporting individuals who are blind with accessibility to Windows and iPhone usage.  6-ER-1437 (14:1–23).

---

[1] These 440 PSC locations are classified by LabCorp as "FTE 1."  4-ER-906 (143:22–25).

Mr. Davis has visited several of his local LabCorp locations for periodic blood and urine tests approximately one to three times per year, both before and after LabCorp introduced the kiosk, as it is in his health insurance network. 6-ER-1442–43 (19:21-20:23); 1445 (22:4-18); 1447 (24:12–21). During each of his many visits to several PSCs in Philadelphia, LabCorp required Mr. Davis to check-in at the kiosk. 6-ER-1445 (22:12-18); 1446 (23:1–23).

Mr. Davis first learned LabCorp implemented the kiosk check-in process when he presented at the Bustleton Avenue PSC for routine lab work. 6-ER-1476–77 (53:22–54:12). As he had done during his many prior visits, Mr. Davis went to the check-in window, but then was told by a LabCorp employee that he was required to use the kiosk to check-in. 6-ER-1464 (41:14–24). Mr. Davis informed the staff he was blind and asked if he would be able to use the kiosk, but the employee told him they did not know if the kiosk was accessible and said the person who had accompanied Davis to LabCorp should help him check-in. 6-ER-1466 (43:10–21). The LabCorp representative did not offer to help Mr. Davis check-in and instead told Mr. Davis he was required to use the kiosk. 6-ER-1466–67 (43:22–44:3).

On at least six different visits thereafter, LabCorp staff again told Mr. Davis he was required to use the kiosk to check-in. 6-ER-1482 (59:6-13); 1467 (44:8–20). He recalled one occasion in December 2017 when he tried to make an

appointment online but could not because of inaccessibility issues with the website. When he arrived at LabCorp, the staff again told him to use the kiosk to check-in. Although he fortunately had a family member with him, he was still left with no choice but to say his private information aloud in a public waiting room so his family member could complete the check-in, including his name, address, telephone number, and date of birth. 6-ER-1484–86 (61:21-63:4). Mr. Davis was subjected to similarly stigmatizing experiences on other occasions, once where he had to request help from another patient's aid worker—a stranger—and another where he was left with no choice but to ask a relative he did not trust to enter his personal information into the kiosk for him. 7-ER-1507 (83:5-9); 7-ER-1510 (86:14–22).

Mr. Davis tried to make a written complaint to LabCorp on October 29, 2019, but was unable to even submit a complaint because LabCorp's feedback system on the Company's website was inaccessible. 7-ER-1504 (80:3–14). He had previously verbally complained to staff at the LabCorp windows about the inaccessibility of the kiosk; yet they still required him to check-in at the kiosk. 7-ER-1505–07 (81:5–23, 82:19–83:9).

Mr. Davis began trying to utilize the mobile check-in option in October 2019. 6-ER-1482 (59:14–24). While the mobile check-in option allowed him to check-in, it did not give him access to any of the other features the kiosk has,

including billing and other services. 6-ER-1482–83 (59:23–60:10). Mr. Davis, like other blind individuals, experienced significant anxiety when confronted with the choice of whether to complain to LabCorp—upon whom he depends for his healthcare—or simply live with the discriminatory treatment and stigmatizing experience every time he enters a PSC.

### B. Julian Vargas

Plaintiff Julian Vargas, a resident of Van Nuys, California, is legally blind and uses a screen-reader as an auxiliary aid to allow him to understand the information displayed on a screen. 6-ER-1350 (5:24-25); 6-ER-1359–60 (14:12–15:20); 6-ER-1391 (46:17-21). Mr. Vargas works as a consultant providing end-user support to individuals looking to become more proficient in the use of assistive technology, primarily on the iOS operating system. 6-ER-1357–58 (12:9–13:22).

Mr. Vargas visited a LabCorp facility in Van Nuys on Friday, January 10, 2020, for bloodwork. Because he knew the bloodwork required him to fast, Mr. Vargas took a bus to the facility a day or two before to familiarize himself with the facility. 6-ER-1366–68 (21:3–22:19, 23:16–18). At his pre-appointment visit, Mr. Vargas went to the window, waited for staff, and explained he was legally blind, had a fasting appointment on January 10, and asked whether he would have to check-in at the kiosk. LabCorp staff told him a blind person could not

independently access the kiosk service, but assured him someone from LabCorp would be there to check him in. *Id.* After taking a paratransit service to LabCorp's Van Nuys' facility on the day of his appointment, he waited in line and requested assistance once he got to the window. 6-ER-1368 (23:13–15). He waited several minutes while the original employee found someone else who could assist him with checking in since the kiosk was not accessible. *Id.*; *see also* 6-ER-1369–70 (24:21-25); 1374 (29:2–16). When the second employee came to the window, Mr. Vargas expressed that he did not want to provide his personal information within earshot of others and asked if he could instead give the employee his identification and insurance cards, which he did. 6-ER-1372 (27:7–22).

### C. ACB Members

ACB, a national membership organization of thousands of blind and visually impaired persons residing in all 50 states and the District of Columbia (6-ER-1241 (18:15–25)), seeks to increase the independence, security, equality of opportunity, and quality of life for all legally blind people. 7-ER-1676 (¶ 16). Since at least December 2018, its members have informed ACB that LabCorp's kiosks are inaccessible to them. *See, e.g.*, 5-ER-1176–82. ACB members across the country reported similar experiences of visiting LabCorp and being unable to sign in independently, requiring the assistance of someone other than a staff member to check them in for their appointments. *See, e.g.,* 6-ER-1226–35; 5-ER-1176–82.

In response to a survey of ACB's membership concerning the accessibility of LabCorp's check-in kiosk, twelve ACB members responded, none of whom could independently use the kiosk, with eleven responding that they required the assistance of non-LabCorp staff to check-in. *See* 2-ER-310 (5:23-27). Five ACB members submitted declarations elaborating on their experiences, stating that: (1) they were unable to use the kiosk; (2) each of them had arrived at LabCorp in the past three years to find that no staff member was present at the front desk, forcing them to request the assistance of others to check-in via LabCorp's kiosk; and (3) if the kiosk had been accessible, they would have used it. *See* 5-ER-1224–35.

For instance, ACB member Robin Van Lant went to a LabCorp PSC in late 2019. 4-ER-862 (22:1–11). When she arrived, she brought her paperwork to the desk, waited for a long time, but found nobody at the desk to help her. *Id.* Her husband eventually came to pick her up, and she told him she had not checked in yet. He then informed her there was a kiosk she was supposed to use to check-in, which he was forced to do on her behalf because she was not aware of its presence and, in any event, could not use it independently. 4-ER-863 (33:12–15). Ms. Van Lant testified that her inability to independently use the kiosk, and the corresponding wait time at the desk for an attendant who never came, caused her to wait longer to check-in than sighted individuals, and that had her husband not come to check on her, it would have been much longer. 4-ER-864 (38:4–6).

Ms. Van Lant's experience is echoed in the declarations of numerous other ACB members. ***Not one ACB member was able to independently use the kiosk service, and instead had to wait for either an attendant to come to the window (putting sighted individuals ahead of them in line) or rely on a third party to aid their check-in at the kiosk.*** *See, e.g.*, 6-ER-1224–35. While one ACB member, John Harden, testified he was able to promptly check-in at the window and avoid using the kiosk, he also testified that the kiosk service is not accessible. 5-ER-1000–01 (41:24–42:14). Thus, Mr. Harden's experience of encountering a staff member at the window does nothing to change the pertinent analysis of this case—does LabCorp offer a good or service (the LabCorp Express service) that is inaccessible to the class of legally blind individuals, and therefore discriminatory against Class members.

## II.    RELEVANT PROCEDURAL HISTORY

Plaintiffs filed this class action lawsuit on January 28, 2020, with the operative First Amended Complaint asserting LabCorp violated the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act, Section 1557 of the Affordable Care Act ("ACA"), California's Unruh Civil Rights Act, and California's Disabled Persons Act (since dismissed). 7-ER-1670–31. Plaintiffs seek declaratory and injunctive relief, minimum statutory damages, and attorneys' fees. *See id.* (Prayer for Relief).

Following the close of discovery, Plaintiffs moved for class certification on April 26, 2021.  7-ER-1605–69.  At the time Plaintiffs filed their motion for class certification, the law in the Ninth Circuit permitted "fail-safe" class definitions. *See, e.g., In re AutoZone, Inc., Wage & Hour Emp. Pracs. Litig.*, 289 F.R.D. 526, 546 (N.D. Cal. 2012), *aff'd*, 789 Fed. Appx. 9 (9th Cir. 2019); *Vargas v. Quest Diagnostics Clinical Labs.*, 2021 WL 5989958, at *3 (C.D. Cal. Dec. 2, 2021) ("*Quest*"). While Plaintiffs' class certification motion was pending in the District Court, on April 8, 2022, this Court issued its en banc decision in *Olean* which, among other things, stated for the first time that "fail-safe" class definitions are impermissible. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 n.14 (9th Cir. 2022).

On May 19, 2022, *before* the District Court ruled on class certification, Plaintiffs sought to meet and confer with LabCorp pursuant to Local Rule 7-3 on a refined class definition to comply with *Olean*'s instructions.  2-ER-135–37.  On May 23, 2022, the District Court issued its order certifying a nationwide injunctive relief Class and a California Unruh Act minimum statutory damages Class. 1-ER-0065.  The Court later amended its Order, retaining the same definitions. 1-ER-0017–41.

Despite the Class Certification Order, Plaintiffs nevertheless proceeded with the motion to refine the class definition in light of *Olean*.  2-ER-135–37; 140–44.

Plaintiffs filed a motion to refine the class definition on June 16, 2022. 2-ER-123–25.

Before the District Court heard Plaintiffs' motion to refine the class definitions, LabCorp filed this petition for Rule 23(f) relief. 8-ER-1782–1808. Thereafter, the District Court granted Plaintiffs' motion to refine the class definitions, certifying the following two classes:

> **Nationwide Injunctive Class:** All legally blind individuals who visited a LabCorp patient service center with a LabCorp Express Self-Service kiosk in the United States during the applicable limitations period, and who, due to their disability, were unable to use the LabCorp Express Self-Service kiosk.

> **California Class**: All legally blind individuals who visited a LabCorp patient service center with a LabCorp Express Self-Service kiosk in California during the applicable limitations period, and who, due to their disability, were unable to use the LabCorp Express Self-Service kiosk.

1-ER-14. LabCorp did not appeal the order refining the class definitions.

## SUMMARY OF ARGUMENT

To overcome the District Court's decision to certify both the California minimum statutory damages Class and nationwide injunctive relief Class, LabCorp advances numerous arguments already rejected below. As the District Court properly concluded, each of these arguments lack merit, and based on the facts of this case, Plaintiffs meet each of the requirements for class certification under Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3).

- 19 -

*First*, LabCorp contends Mr. Vargas and the damages class lack Article III standing to pursue their claims because they have not suffered any cognizable harm. Specifically, LabCorp contends that because Mr. Vargas received diagnostic services, he did not suffer an injury-in-fact sufficient to confer Article III standing on behalf of the Unruh Act minimum statutory damages class. However, as the District Court correctly found, 1-ER-32, Plaintiff Vargas suffered a concrete and particularized injury at the time he walked into a LabCorp PSC and was denied full and equal access to the LabCorp Express service, regardless of whether he was able to check-in for diagnostic testing through alternative means. *See Enyart v. Nat'l Conf. of Bar Exam'rs, Inc*., 630 F.3d 1153, 1165–67 (9th Cir. 2011) (upholding district court's finding that the ability to access materials independently was a vital part of the service); *Kalani v. Starbucks Coffee Co*., 698 Fed. Appx. 883, 887 (9th Cir. 2017) (finding that inaccessible seating deprived its wheelchair-bound customers of the opportunity to participate in the "full and rewarding coffeehouse experience."); *see also Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 905–09 (9th Cir. 2019) (ADA applies to website and app that connects customers to the goods and services offered at a physical location). LabCorp offered a unique service—protected by a federal service mark—to its sighted patients but denied that same service to legally blind patients. Mr. Vargas has demonstrated his Article III standing.

*Second*, in challenging the District Court's Rule 23(b)(3) predominance analysis, LabCorp contends damages claims under the Unruh Act require—at the class certification stage—that each class member prove both standing and damages by showing they "experienced difficulty, discomfort, or embarrassment because of the violation." OB 2 (citing *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021); Cal. Civ. Code §55.56(c)). LabCorp is wrong. First, the District Court noted correctly that California Civil Code § 55.56 applies only to "construction-related" barrier cases and, as LabCorp concedes, this is an effective communication case not a construction-related barrier case. *See* OB 10 ("Plaintiffs' ADA claims regarding the kiosk are based on a communication-related disability…") (citing 42 U.S.C. § 12182(b)(2)(A)(iii)). Second, under this Court's precedent, no individualized damages or standing inquiry for all class members is required at the class certification stage which might predominate over the "more important" six common questions of fact and law identified by the District Court below. *See* 1-ER-33–38.

*Third*, LabCorp's claim that Messrs. Davis and Vargas are both inadequate and atypical class representatives is unpersuasive and premature. Here the Class representatives' injuries—the inability to access the LabCorp Express service—are plainly typical of all absent Class members. In addition, LabCorp's arguments

against typicality and adequacy based upon the contours of future injunctive relief the certified Class might seek are premature.

*Fourth*, LabCorp claims the class mechanism is not a superior means to adjudicate this dispute because "there is no record evidence regarding which persons visiting California PSCs . . . are legally blind." OB 45. Yet identifying potential class members here would not be difficult because LabCorp "knows how many patients check in, and has information on those patients from their provided ID and insurance." 1-ER-65. In addition, identifying which individuals are legally blind is an objective, administrative task that is routinely performed by government agencies such as the Social Security Administration. *See infra* at § I.B.3. As the District Court stated, it is a "well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns." 1-ER-39.

In addition, despite repeatedly stating below that the instant dispute is "fundamentally different," SER-87-88 (4:23-5:25), from another case involving effective communication, *Vargas v. Quest Diagnostics,* LabCorp now claims that the two actions are "almost identical," 1-ER-116–17 (8:19-9:1), and that their factual similarity undermines a superiority finding here. In so doing, as explained in detail below, *see infra* at § I.B, LabCorp ignores the key factual differences

- 22 -

identified by the District Court between the two actions which directly account for the divergent superiority findings. *See* 1-ER-38–40.[2]

*Fifth,* LabCorp's argument against the nationwide injunctive relief class— that no one single injunction will fix the issue for all class members—is both premature and incorrect in light of the record in this case. Rule 23(b)(2) allows class treatment when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. Proc. 23(b)(2); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011) ("*Dukes*"). Here, Plaintiffs seek one uniform injunction that remedies LabCorp's corporate-level decision to deploy inaccessible LabCorp Express kiosks to all of its PSCs. This is precisely the type of case for which Rule 23(b)(2) provides the appropriate mechanism to remedy on a nationwide basis.

*Finally,* LabCorp's argument that the definitions are "fail-safe" is simply incorrect. The final definitions—set forth in a district court order which LabCorp did not appeal—do not "preclude[] membership unless the liability of the defendant is established." *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1138 n.7 (9th Cir. 2016); *see also Olean*, 31 F.4th at 669 n.14. The validity of

---

[2] Plaintiffs do not agree with all of the *Quest* Court's factual findings but it is not in dispute such findings were made.

class members' damages claims will be objectively determined at later stages of the litigation and will bar class members from future claims against LabCorp. For these reasons, the District Court's certification order should be affirmed.

## STANDARDS OF REVIEW

The District Court's class certification decision is reviewed for abuse of discretion, *Castillo v. Bank of Am., NA*, 980 F.3d 723, 728 (9th Cir. 2020), and the findings of fact upon which the district court relied are reviewed for clear error, *Ruiz Torres*, 835 F.3d at 1132. When reviewing an order granting class certification, this court "accord[s] the district court noticeably more deference than when [] review[ing] a denial," *id.*, and may affirm the certification order "on any basis the record supports, including one the District Court did not reach," *Davidson v. O'Reilly Auto Enters., LLC*, 968 F.3d 955, 967 (9th Cir. 2020). Accordingly, the class certification decision is upheld unless the district court "'identified or applied the incorrect legal rule' or its 'resolution of the motion resulted from a factual finding that was illogical, implausible, or without support in inferences that may be drawn from the facts in the record.'" *Castillo*, 980 F.3d at 728 (quoting *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc)).

This Court "consider[s] merits questions at the class certification stage only to the extent they are relevant to whether Rule 23 requirements have been met." *Ruiz Torres*, 835 F.3d at 1133. This principle "has special force at the appellate

level where, as here, [this court] review[s] a class certification determination under Rule 23(f)" as "merits inquiries unrelated to certification exceed [this Court's] limited Rule 23(f) jurisdiction." *Stockwell v. City and Cnty. of San Francisco*, 749 F.3d 1107, 1113 (9th Cir. 2014).

## ARGUMENT

### I. THE UNRUH ACT DAMAGES CLASS MEETS EACH REQUIREMENT FOR CLASS CERTIFICATION

LabCorp challenges the District Court's certification of the Unruh Act minimum statutory damages Class on four grounds: (1) whether Plaintiff Vargas has established injury sufficient to confer Article III standing; (2) whether common issues predominate; (3) whether Vargas's claims are typical of absent Class members and he is an adequate representative; and (4) whether the class mechanism is the superior method of resolving this dispute. The District Court did not abuse its discretion in thoroughly considering and then rejecting these arguments. Its certification of the California minimum statutory damages Class should be affirmed.

#### A. Plaintiff Vargas Has Article III Standing

LabCorp argues Plaintiff Vargas and some of the California minimum statutory damages Class lack standing to assert their claims because they "were not concretely harmed" by LabCorp's new but inaccessible LabCorp Express service. OB 26.

- 25 -

Both this Court and the California Supreme Court have emphasized that "Courts must take a broad view of standing in civil rights cases, particularly in the ADA context where private enforcement is the primary method of securing compliance with the act's mandate." *Langer v. Kiser*, 57 F.4th 1085, 1094 (9th Cir. 2023); *White v. Square, Inc.*, 7 Cal. 5th 1019, 1025 (2019) ("[S]tanding under the Unruh Civil Rights Act is broad," "[i]n light of its broad preventative and remedial purposes.").

As a preliminary matter, LabCorp's arguments—that Mr. Vargas and other Class members were not harmed because legally blind individuals can check in at the front desk and thus were not deprived of access to LabCorp's "medical testing services"—misstate the injury upon which Plaintiffs base their theory of recovery. *See* OB 27. As the District Court found, 1-ER-18, Plaintiffs' theory of liability pertains to the lack of accessibility of a distinct service: *LabCorp Express*. Accordingly, LabCorp's contention that Mr. Vargas and some Class members were unharmed because they eventually received medical services requires this Court to discredit Plaintiffs' theory of recovery and venture into an impermissible inquiry into the merits of Plaintiffs' claims.

### 1. Plaintiff Vargas Suffered an Injury-In-Fact Sufficient to Confer Article III Standing

To establish Article III standing to sue in federal court, a plaintiff must demonstrate: "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."[3] *TransUnion LLC*, 141 S. Ct. at 2203; *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011). Numerous courts in this Circuit have held—after *TransUnion* and long before it—that disability discrimination is a concrete injury sufficient to confer standing. *See, e.g.*, *Le v. Little Saigon Square Garden Grove, LLC*, 2023 WL 2629162, at *5 (C.D. Cal. Mar. 13, 2023) (holding that wheelchair-bound plaintiff had Article III standing because he encountered barriers that interfered with his "full and equal enjoyment"); *Gonzales v. Taqueria*, 2022 WL 16924094, at *3 (C.D. Cal. Nov. 11, 2022) (injury in fact "easily satisfied" because plaintiff was "denied full and equal access").

Mr. Vargas was harmed when he experienced disability discrimination – a concrete injury that confers standing. *See White v. Square, Inc.*, 891 F.3d 1174, 1177 (9th Cir. 2018), *certified question answered*, 7 Cal. 5th 1019 (2019) (concluding plaintiff "meets the constitutional standing requirements" where

---

[3] LabCorp does not contend that the injury is not traceable to LabCorp's conduct or that the injury cannot be remedied by a favorable decision.

plaintiff "alleged that he sought to use Square's services, but was unable to do so because of its discriminatory policy"); *Chapman,* 631 F.3d at 947 ("Discrimination" under the ADA "satisfies the 'injury-in-fact' element of *Lujan*."). Disabled individuals who "encounter or become aware of alleged ADA violations that deter his patronage of or otherwise interfere with his access to a place of public accommodation . . . has already suffered an injury in fact traceable to the defendant's conduct and capable of being redressed by the courts, and so he possesses standing under Article III. . ." *Chapman*, 631 F.3d at 947 (quoting *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1042 n.5 (9th Cir. 2008)).

Moreover, this Court has repeatedly held the deterrent effect of inaccessible services is a cognizable injury sufficient to establish Article III standing. *See Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1137–38 (9th Cir. 2002) ("In the context of the ADA . . . in stating that he is currently deterred from attempting to gain access . . . [plaintiff] has stated sufficient facts to show concrete, particularized injury."); *Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*, 753 F.3d 862, 867 (9th Cir. 2014) ("Title III of the ADA 'explicitly provides that it does not require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization . . . does not intend to comply

with the ADA.'"); *Langer*, 57 F.4th at 1094 ("[T]he [ADA] plaintiff need not personally encounter the barrier . . . .").[4]

Mr. Vargas's injury, and the injury of all class members, occurred as soon as he walked into a LabCorp PSC and was denied full and equal access to the LabCorp Express service. As this Court recognized, "[b]ecause 'discrimination itself . . . can cause serious non-economic injuries to those persons who are denied equal treatment solely because of their membership in a disfavored group . . . and state law can create interests that support standing in federal courts . . . [the] allegations satisfy Article III's requirements for a concrete and particularized injury.'" *White*, 891 F.3d at 1177 (quoting *Heckler v. Mathews*, 465 U.S. 728, 739–40 (1984) and *Cantrell v. City of Long Beach*, 241 F.3d 674, 684 (9th Cir. 2001)); *see also Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335, 2355 (2020) ("[A] plaintiff who suffers unequal treatment has standing to challenge a discriminatory exception that favors others."); *cf. White*, 7 Cal. 5th at 1030–31.[5]

---

[4] Plaintiffs' injury is "actual or imminent" because they are "threatened with harm in the future because of existing or imminently threatened non-compliance" due to LabCorp's kiosks remaining inaccessible to blind persons. *See Pickern*, 293 F.3d at 1138.

[5] The injury Plaintiffs suffered is also particularized because they personally experienced disability discrimination. *Lujan*, 504 U.S. at 560 n.1 (A "particularized" injury is one that "affect[s] the plaintiff in a personal and individual way.").

LabCorp's discriminatory treatment of Mr. Vargas is not simply illegal discrimination without any discernable adverse effects. Mr. Vargas was deprived of the ability to engage with LabCorp's services independently. 6-ER-1385 (40:4–8); *see also* 6-ER-1379–80 (34:24–35:4) (a LabCorp employee informed Mr. Vargas that the kiosk "was not something that a blind person could use independently . . ."). For example, he was deprived of the option to "avoid a line and check in at a kiosk," 6-ER-1385 (40:6-8), and the ability—during a global pandemic—to wait safely outside the waiting room for his turn to be called, a benefit offered at the kiosk to sighted patients, 6-ER-1367 (22:14-19). LabCorp's cursory dismissal of these concrete injuries, *see* OB 25–26, ignores the reality that under this Court's jurisprudence, relegating blind individuals like Mr. Vargas to checking in at the front desk like second-class citizens while allowing sighted persons to use an "express" service is, without anything more, a concrete injury.

Nor does the Supreme Court's decision in *TransUnion LLC v. Ramirez* undermine Mr. Vargas's standing. In *TransUnion*, the Supreme Court instructed that to determine whether an intangible harm is concrete, courts should first assess whether the alleged injury bears a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion*, 141 S. Ct. at 2204. Separately, the Court stated that "because Congress is well positioned to identify intangible harms that meet minimum

Article III requirements, its judgment is also instructive and important." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016); *see also TransUnion*, 141 S. Ct. at 2204–05.

Underlying the ADA's enactment is Congressional recognition of the fact that "physical or mental disabilities in no way diminish a person's right to fully participate in all aspects of society, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination; others who have a record of a disability or are regarded as having a disability also have been subjected to discrimination." 42 U.S.C. § 12101 (setting forth Congress's findings and purpose of enacting the ADA). Congress expressly noted that "unlike individuals who have experienced discrimination on the basis of race, color, sex, national origin, religion, or age, individuals who have experienced discrimination on the basis of disability have often had no legal recourse to redress such discrimination." *Id.* at § 12101(a)(4). Thus, by enacting the ADA Congress "invoke[d] the sweep of congressional authority, . . . in order to address the major areas of discrimination faced day-to-day by people with disabilities." *Id.* at § 12101(b)(4).

*TransUnion* cannot fairly be read to defeat the concreteness of the often-intangible harms resulting from disability discrimination. *TransUnion* held only that a reviewing court "cannot treat an injury as 'concrete' for Article III

- 31 -

purposes based only on Congress's say-so," that Congress cannot "transform something that is not remotely harmful into something that is," and, accordingly, that "Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III." *TransUnion*, 141 S. Ct. at 2205. As the Eleventh Circuit noted recently, "indeed, *TransUnion* itself reaffirmed that 'discriminatory treatment'—in *some* shape or form—is a 'concrete, *de facto* injury that was previously inadequate in law' but that Congress may 'elevate to the status of legally cognizable injury.'" *Laufer v. Arpan LLC*, 29 F.4th 1268, 1274–75 (11th Cir. 2022) (quoting *TransUnion*, 141 S. Ct. at 2205) (emphasis in original).

*TransUnion* used a hypothetical to illustrate the difference between a plaintiff who is concretely harmed—a citizen of Maine whose land was damaged by pollution from a nearby factory in violation of federal environmental law and brings suit against the factory—from a plaintiff who was not concretely harmed—a citizen of Hawaii who sues the same company alleging the company violated federal environmental law by polluting land in Maine. *See TransUnion*, 141 S. Ct. at 2205–06. Plaintiffs here, like the hypothetical citizen of Maine whose land was damaged as a result of the factory's violation of environment law, were *personally* discriminated against, as the class definition certified by the District Court

- 32 -

specifically limits membership to include only those "legally blind individuals who *visited a LabCorp patient service center* with a LabCorp Express Self-Service kiosk . . . and who, due to their disability, were unable to use the LabCorp Express Self-Service kiosk." 1-ER-0014 (emphasis added).  Thus, here Class members are not simply "uninjured plaintiff[s] . . . merely seeking to ensure [LabCorp's] compliance with regulatory law" but are individuals who *actually experienced* LabCorp's unlawful discrimination.  *See TransUnion*, 141 S. Ct. at 2206.

LabCorp's reliance on *TransUnion* is additionally misplaced because of that case's post-trial posture.  In *TransUnion*, the litigation proceeded through a jury verdict in favor of plaintiffs. The Supreme Court reviewed the evidence adduced *at trial* in support of all class members' injury under Article III, concluding that some class members were unable to prove Article III injury. 141 S. Ct. at 2208 ("[I]n a case like this *that proceeds to trial*, . . . plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek . . ..") (emphasis added).  Although *TransUnion* requires plaintiffs to ultimately demonstrate Article III standing as to class members at trial, it does not supply the requirements that district courts must apply when deciding motions for class certification.  Indeed, this Court's post-*TransUnion* decision in *Olean*, which permitted certification of a class containing potentially significant numbers of

uninjured class members, speaks to the different standard at the class certification stage. *See Olean*, 31 F.4th at 682.

### 2. Mr. Vargas Has Statutory Standing Under the Unruh Act

LabCorp's violations of California's Unruh Civil Rights Act also demonstrate Mr. Vargas's injury-in-fact. Noting in *White v. Square, Inc.* that "state law can create interests that support standing in federal courts," this Court found that a plaintiff's allegations of discrimination in violation of the Unruh Act further supported the court's conclusion that the plaintiff "satisf[ied] Article III's requirements for a concrete and particularized injury." *White*, 891 F.3d at 1177 (quoting *Cantrell,* 241 F.3d at 684); *see also Chattopadhyay v. BBVA USA*, 2021 WL 4958850, at *1 (9th Cir. Oct. 26, 2021).

As the California Supreme Court has made clear, it is sufficient for Mr. Vargas to "encounter" a discriminatory facility "with the intent to use it" because, regardless of whether the person departed without using the facility, the plaintiff "could properly claim he or she was 'denied equal rights' and was 'aggrieved by the discriminatory conduct.'" *See White*, 7 Cal. 5th at 1028. This Court reached the same conclusion, and reversed a district court's dismissal for lack of statutory standing in an Unruh Act case where the plaintiff sufficiently alleged he "visited the business's website, encountered discriminatory terms, and intended to make use of the business's services." *White v. Square, Inc.*, 778 Fed. Appx. 444, 445

(Mem) (9th Cir. Sept. 23, 2019).  Accordingly, Mr. Vargas and the California

minimum statutory damages Class have statutory standing to bring their Unruh Act

claim.

### 3.  Plaintiffs Need Not Show That All Class Members Suffered an Injury At The Class Certification Stage

At the class certification stage, Plaintiffs are not required to demonstrate

injury for every class member.  Rather, Plaintiffs must only show that it is

"possible" that class members have suffered injury, since the question of injury is

reserved for the merits phase.  *Ruiz Torres,* 835 F.3d at 1137 n.6 (plaintiffs need

only show that it "must be possible that class members have suffered injury, not

that they did suffer injury, or that they must prove such injury at the certification

phase.").  Thus, the inquiry at the class certification stage is whether there may be

"large numbers of class members who were never *exposed to* the challenged

conduct to begin with," not whether the alleged "injurious course of conduct may

sometimes fail to cause injury to class members." *Id.* at 1137.

Here, Plaintiffs have proposed (and the District Court has certified) a class

of individuals who have suffered a clear ADA injury; namely that they were

exposed to an inaccessible LabCorp service.  Any individualized questions that

may exist as to whether each and every class member has been injured are dwarfed

by the "more important" common questions that predominate over these

questions. 1-ER-33. As such, LabCorp's effort to identify caches of uninjured class members does not compel reversal of the District Court's class certification order.

LabCorp's argument that each Class member's injury must be demonstrated at the class certification stage conflicts with this Court's post-*TransUnion* conclusion in *Olean* to the contrary. *Olean*, 31 F.4th at 669. There, the dissent argued that the "number of uninjured class members should be de minimis," not more than 10%. *See id.* This Court disagreed, finding certification proper even though the number of uninjured class members could be significant. *Id.* at 680. Although "every class member must have Article III standing" to recover damages at trial, *id.* at 668 n.12, this Court rejected "the dissent's argument that Rule 23 does not permit the certification of a class that potentially includes more than a de minimis number of uninjured class members," *id.* at 669.

Even if LabCorp were correct that Plaintiffs are required to demonstrate Article III standing for all Class members at this stage (they are not), considerable record evidence demonstrates such standing. All Class members visited a LabCorp PSC with a kiosk. All Class members are legally blind and were unable to independently check in using the LabCorp Express kiosks. 3-ER-386–87 (39:13–40:3) ("[W]e explicitly recognized that the device could not service a blind person . . . ."); 6-ER-1379–80 (34:24–35:1) (LabCorp employee informing Mr. Vargas

that the kiosk "was not something that a blind person could use independently . . .

."). Like Mr. Vargas, these Class members suffered the same concrete injuries

sufficient to establish standing under Article III, including discrimination.

### B. The District Court Did Not Abuse Its Discretion in Finding That Common Issues Predominate

The District Court found that *six* common issues predominate over

individualized issues: (1) whether the kiosks are independently accessible to blind

users; (2) whether the kiosks were rolled out nationwide to more than 1,800 PSCs;

(3) whether LabCorp trained its employees that use of the kiosks was mandatory;

(4) whether the kiosk is a good or service offered to LabCorp customers; (5)

whether LabCorp offered a qualified aid or auxiliary service to allow blind users to

access the check-in kiosk system; and, (6) whether LabCorp has remedied the

alleged effective communication failures within its kiosk-based communication

system. 1-ER-29–38.

LabCorp now contends that individualized proof of damages and standing is

required under California's Unruh Act at the class certification stage—that

individual class members must prove "difficulty, discomfort, or embarrassment"—

and that this individualized determination predominates over the six common

questions the District Court identified.

This contention is incorrect for at least three reasons. First, the argument is

a clear misapplication of the standard set forth in California Civil Code § 55.56

- 37 -

which, by its own terms, is limited to "construction-related" accessibility claims. *See* Cal. Civ. Code § 55.56(a) ("Statutory damages under either subdivision (a) of Section 52 or subdivision (a) of Section 54.3 may be recovered in a *construction-related accessibility claim* against a place of public accommodation only if a violation or violations of one or more *construction-related accessibility standards* denied the plaintiff full and equal access to the place of public accommodation on a particular occasion.") (emphasis added). This lawsuit does not present a "construction-related" accessibility claim but a denial of effective communication. 1-ER-34–37. Accordingly, class members need only establish they were exposed to the discriminatory kiosk to be entitled to the statutory minimum damages under the Unruh Act; no Unruh Act claimant need "prove she suffered actual damages to recover the [Unruh Act's] independent statutory damages of $4,000.00." *Molski v. M.J. Cable, Inc.*, 481 F. 3d 724, 731 (9th. Cir. 2007).

Second, this Court has repeatedly held that individual *damages* questions are generally not "individualized issues" (in the parlance of Rule 23) which predominate over common issues sufficient to defeat class certification. *Olean,* 31 F. 4th at 669.[6] Where, as here, common issues predominate (1-ER-33–34),

---

[6] *See also Leyva v. Medline Indus. Inc.*, 716 F. 3d 510, 514 (9th Cir. 2013) ("[T]he presence of individualized damages cannot, by itself, defeat class certification

certification is appropriate under Rule 23(b)(3), even if damages must be tried separately. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). Accordingly, the District Court applied the appropriate standard below, asking "whether each class member used or was exposed to a kiosk at one of LabCorp's PSCs" (1-ER-32) and it did not abuse its discretion in finding that common issues predominate. *See* 1-ER-35 (n.12).

Third, all class members were uniformly injured because they were exposed to LabCorp's discriminatory service. This Court's guidance in *Ruiz Torres*, 835 F.3d at 1136, is particularly helpful here. There, the defendant unsuccessfully argued "the class is too broad because it includes a subset of people exposed to— yet ultimately not harmed by" the allegedly unlawful policy. *Id.* This Court rejected this contention, noting that "[t]his merely highlights the possibility that an injurious course of conduct may sometimes fail to cause injury to certain class members. However, it fails to reveal a flaw that may defeat predominance, such as the existence of large numbers of class members who were never exposed to the challenged conduct to begin with." *Id.* Here too, the certified Class is defined to only include legally blind LabCorp patients who actually visit a LabCorp patient service center where a LabCorp Express kiosk is in use and are unable to use it due

---

under Rule 23(b)(3)."); *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) (damages "[c]alculations need not be exact" at the class-certification stage).

to their disability. These are all issues that can be determined by answering common questions: *e.g.*, (1) whether a LabCorp Express kiosk was in use on site on the date of the visit and (2) whether the Class member is legally blind. Patients who were not exposed to LabCorp's discriminatory conduct (*i.e.*, those who never visited a PSC with a kiosk) are specifically excluded from the Class definition. Accordingly, the District Court applied the appropriate standard below, asking "whether each class member used or was exposed to a kiosk at one of LabCorp's PSCs" (1-ER-32) and it did not abuse its discretion in finding that common questions predominate. *See* 1-ER-35 (n.12).

### 1. The Certified Minimum Statutory Damages Class Claim Does Not Require Individualized Proof of Damages

California's Unruh Act provides that "[a]ll persons within the jurisdiction of [California] are free and equal, and no matter what their . . . disability . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). "In general, a person suffers discrimination under the [Unruh] Act when the person presents himself or herself to a business with an intent to use its services but encounters an exclusionary policy or practice that prevents him or her from using those services." *White,* 7 Cal.5th at 1023. Since 1992, violations of the

ADA by a business establishment are "per se violations of the Unruh [] Act." *Jankey v. Lee*, 55 Cal. 4th 1038, 1044 (2012).

Here, Plaintiffs seek only minimum statutory damages allowed under the Unruh Act; they do not seek actual or compensatory damages. Cal. Civ. Code § 52(a); 7-ER-1699. Accordingly, a putative class member was damaged in the minimum statutory amount when they were exposed to an inaccessible LabCorp Express kiosk by visiting a LabCorp PSC which had a kiosk. Each exposure to the inaccessible kiosk will be determined at the claims administration stage after a finding of liability, and can be verified by reference to objective, non-discretionary proof that is within LabCorp's possession, as the District Court also found. 1-ER-33-34 (17:13-18:24).

> ## 2. The District Court Properly Rejected LabCorp's Misplaced Reliance on Civil Code Section 55.56 Construction-Related Accessibility Claim Standards as Inapplicable to the California Minimum Statutory Damages Class Claims

LabCorp's reliance on California Civil Code Section 55.56 of the Construction Related Accessibility Standards Compliance Act's "difficulty, discomfort, or embarrassment" standard has no application to the denial of effective communication at issue in this action. *See* Cal. Civ. Code §§ 55.51– 55.57. By their own terms, those statutory sections expressly limit recovery of damages "in a <u>construction-related accessibility claim</u> against a place of public

accommodation only if a violation or violations of one or more

construction-related accessibility standards denied the plaintiff full and equal

access to the place of public accommodation on a particular occasion. A violation

personally encountered by a plaintiff may be sufficient to cause a denial of full and

equal access if the plaintiff experienced difficulty, discomfort, or embarrassment

because of the violation." Cal. Civ. Code § 55.56(a)–(c) (emphasis added). *See*

*Mundy v. Pro-Thro Enters.*, 192 Cal. App. 4th Supp. 1, 5 (2011) ("Section 55.56 is

part of a comprehensive statutory scheme that was enacted in 2008 with the intent

of increasing voluntary compliance with equal access standards while protecting

businesses from abusive access litigation. The provisions in [§§] 55.51 through

55.57 apply only to a construction-related accessibility claim . . .")

Neither below nor in its Opening Brief does LabCorp ever explain how its

alleged denial of effective communication amounts to a "construction-related"

accessibility claim that falls within the province of Section 55.56—because it

cannot. Cal. Civ. Code § 55.56(a). Nor does LabCorp point to any violation of

any "construction-related" accessibility standard asserted in Plaintiffs' complaint—

nor anywhere else in the record—because there simply aren't any. *Id.*

LabCorp's reliance on the cases cited and rejected below (and raised again

on appeal) for the proposition that class members must establish they "personally

encountered" an Unruh Act violation that caused "difficulty, discomfort or

embarrassment" were properly rejected by the District Court as being

"construction-related" accessibility cases subject to the requirements of Section

55.56. *See Vondersaar v. Starbucks Corp.*, 2015 WL 629437, *4 (C.D. Cal. Feb.

12, 2015), *aff'd*, 719 F. Appx. 657 (9th Cir. 2018); *Moeller v. Taco Bell*, 2012 WL

3070863, *5 (N.D. Cal. 2012); *Botosan v. Paul McNally Realty*, 216 F. 3d 827,

830 (9th Cir. 2000)[7]; *Doran v. 7 Eleven, Inc.*, 2011 WL 13143622, *1 (C.D. Cal.

Mar. 28, 2011) *aff'd*, 509 F. Appx. 647 (9th Cir. 2013); *Antoninetti v. Chipotle*

*Mexican Grill, Inc.*, 2012 WL 3762440, at *5–6 & n. 1 (S.D. Cal. Aug. 28, 2012).

LabCorp now cites three construction-related accessibility cases brought

under the California Disabled Persons Act ("DPA") and conflates the holdings of

those cases with claims brought under the Unruh Act.[8]  Yet the California DPA is

expressly *not* a part of the Unruh Act.  The respective standards differ.  *Goldman v.*

*Standard Ins. Co.*, 341 F. 3d 1023, 1027 n.4 (9th Cir. 2003).  Money damages are

available under the DPA only upon a showing of *actual* denial or *actual*

interference with admittance to or enjoyment of the public facilities.  *See* Cal. Civ.

Code § 54.3(a).

---

[7] *Botosan* holds that proof of actual damages is not a prerequisite to recovery of
minimum statutory damages under the Unruh Act.  216 F.3d 827, 835 (9th Cir.
2000).

[8] Plaintiffs dismissed their DPA claim prior to class certification. SER-83.

Conversely, minimum statutory damages are available pursuant to the Unruh Act for a wider range of offenses, including against anyone who "denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51 . . ." Cal. Civ. Code § 52. The California Supreme Court has been clear that an injury occurs under the Unruh Act—and statutory minimum damages attach—when a person experiences discrimination and nothing more. *See White*, 7 Cal. 5th at 1031.

Further, the Construction Related Accessibility Standards Compliance Act, including Section 55.56, applies to "construction-related" disability claims under the DPA and applies to each of the DPA cases cited by LabCorp. *See* OB 30–33; Cal. Civ. Code § 55.51. In *Urhausen v. Longs Drugs Stores California, Inc.*, a case brought under the DPA only, judgment on the pleadings was entered against the plaintiff's damages claim pursuant to California Civil Code Section 54.3 because he did not actually encounter the well-documented violation of a "construction-related" accessibility standard in a disabled parking area. 155 Cal. App. 4th 254, 265–66 (2007). In *Reycraft v. Lee*, the plaintiff sued under the DPA alleging that she was unable to use a park pool because there was no pool lift or other accessible device. 177 Cal. App. 4th 1211, 1215–16 (2009). The court ruled against her damages claim under California Civil Code Section 54.3 because the stipulated facts presented during the bench trial were insufficient to establish an

- 44 -

actual denial or actual interference with her access on a particular occasion, as required by the statute—because she never actually tried to use the pool. *Id.* at 1225; *see also Antoninetti,* 2012 WL 12845619, at *6 (discussing *Reycraft*). Similarly, in *Strojnik v. Xenia Hotels & Resorts, Inc.*, the district court granted the defendant's motion to dismiss but also allowed leave to amend to allege facts showing denial of access to the hotel by encountering the non-compliant hotel doors. 2020 WL 3060761, at *5 (N.D. Cal. June 9, 2020). Accordingly, all three DPA cases LabCorp cited concern "construction-related" disabilities claims and are therefore unavailing.

### 3. LabCorp's Predominance Argument on Individualized Proof Primarily Challenges the Feasibility of Maintaining a Rule 23(b)(3) Class

LabCorp's remaining argument against predominance is one of feasibility–that individualized issues in the later administration of a class-wide resolution might render this action unmanageable. However, this Court has expressly rejected the feasibility requirement LabCorp seeks to improperly inject into the class certification stage. *See Briseno v. ConAgra Foods, Inc.,* 844 F.3d 1121, 1123 (9th Cir. 2017). In *Briseno*, the Court explained that "requiring class proponents to satisfy an administrative feasibility prerequisite 'conflicts with the well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns.'" *Id.* at 1128 (internal citation omitted).

LabCorp criticizes the District Court's application of Judge Koh's ruling in *Nevarez v. Forty Niners Football Co., LLC*, 326 F.R.D. 562 (N.D. Cal. 2018) on the issue of predominance. *See* OB 36–37. LabCorp contends *Nevarez* is different than the case *sub judice* because the "construction-related" accessibility barriers at issue there were all present in a single location—the Forty Niners stadium, *Nevarez*, 326 F.R.D. at 586, while this case involves hundreds of California PSCs. This argument ignores the reality that this case involves one "identical," 1-ER-37, yet inaccessible kiosk which was uniformly deployed across the Company's 1,853 PSC system—it does not involve 1,853 unique kiosks deployed to 1,853 unique locations as LabCorp seems to suggest. Further, because LabCorp indisputably maintains records of precisely when the kiosks were deployed to each PSC, as well as records of every single patient visit to its California PSCs, this case is factually similar to *Nevarez*, where Judge Koh correctly found that defendants kept "records of class members' purchases of accessible seating that include[d] names and contact information." *Nevarez,* 326 F.R.D. at 586.

Likewise, LabCorp's reliance on *Quest*, 2021 WL 5989961, at *11, is misplaced because the facts of that case (as interpreted by the *Quest* Court) are starkly different—a fact LabCorp acknowledged below, *see* SER-87-88 (4:23–5:25); s*ee* OB 37–39. Among other distinguishing facts, the district court in *Quest* found that the kiosks at issue there were *not* identical because at some point the

defendant "began to roll out a change to its kiosks that allow[ed] visually-impaired patients to swipe the touchscreen using three fingers, which checks the patient in and alerts a phlebotomist that the patient has arrived."  *Quest*, 2021 WL 5989958, at *1.

Here, as the District Court noted, "there should be minimal logistical difficulties to identifying class members given the uniformity of the kiosks, and the fact that LabCorp 'knows how many patients checked in, and has information on those patients from their provided ID and insurance[.]'" 6-ER-1459 (36:14–23). The evidence shows that (1) LabCorp maintains records of every single patient visit to its PSCs, and (2) there are verifiable methods to identify legally blind patients amongst the PSC visits, a task routinely performed by administrative agencies such as the Social Security Administration.  *See, e.g.*, 2-ER-314–15.

### 4.  Each of the District Court's Factual Findings Are Supported by Record Evidence

LabCorp argues the District Court accepted allegations from Plaintiffs' complaint rather than record evidence, citing two examples: (1) the allegations that legally blind patients were required to "divulge their personal information to [a] sighted person in a nonconfidential setting in order to register; and, (2) that LabCorp trained its employees that all patients were required to check-in through the kiosk. This is untrue. The District Court referenced Plaintiffs' allegations

- 47 -

concerning personal information when summarizing the allegations of the complaint. Those allegations were not a part of the District Court's certification analysis, however.

LabCorp likewise misstates the import of the District Court's discussion concerning Plaintiffs' allegation that LabCorp trained its employees that all patients must check-in through the kiosk. The record below is replete with evidence that use of the kiosk is mandatory at LabCorp. Indeed, the testimony of LabCorp's corporate witness, as well as the Company's internal documents, reflect that staff is frequently not available to help patients check-in, and that use of the kiosks is "mandatory." 6-ER-1269–72 (115:23–118:14); 1330; 6-ER-986–92 (105:6–110:17, 112:8-15). However, the District Court never resolved that question as part of its certification analysis. Rather, it stated correctly that the question of whether LabCorp trained its employees that the use of the kiosks for check-in was mandatory is among the common questions for which class-wide proceedings would generate a common answer. This does not amount to an abuse of discretion.

### C. Plaintiff Vargas Meets the Typicality and Adequacy Requirements of Rule 23(a)

Typicality requires a showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or

similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). The typicality requirement is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011), abrogated on other grounds in *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) (internal quotation marks omitted).

As the District Court found, the facts of this case present a prime example of representative class members meeting the typicality and adequacy requirements because "Davis and Vargas have the same claims as the absent class members" in that "[b]oth are legally blind and seek to represent classes of other legally blind individuals who, like them, encountered allegedly inaccessible kiosks at LabCorp's PSCs." 1-ER-25. Their claims are thus typical of absent Class members. *See* Fed. R. Civ. P. 23(a)(3); *Stearns*, 655 F.3d at 1019 ("[E]ach class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.").

LabCorp's argument against typicality focuses on the Lead Plaintiffs' purported preferences as to injunctive relief they will seek in the future if they

- 49 -

prevail on their claims, which the Company argues will render their claims atypical from absent Class member.  This ignores the record evidence that both Mr. Vargas and Mr. Davis—like each ACB member—were personally exposed to the inaccessible LabCorp Express service.  6-ER-1474 (51:1-9); 6-ER-1369–70 (24:21-25); 6-ER-1374 (29:2–16).  It also ignores typicality's permissive standard.[9] As the District Court noted, this Court instructs that courts may "not insist that the named plaintiffs' injuries be identical with those of the other class members, only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct." 1-ER-25 (*quoting Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014)).

In addition, LabCorp's arguments against typicality (and adequacy) are plainly premature. As the District Court noted, "the scope and extent of any proposed injunction has yet to be litigated, and thus, there is no basis to conclude that plaintiffs will seek an injunction covering only their "own preference[s.]"  *Id.* The District Court did not abuse its discretion in finding that typicality and adequacy were satisfied.

---

[9] LabCorp's arguments against adequacy fail for these same reasons and for the additional reason that, as the District Court found, "there are no known conflicts between absent class members and plaintiffs and their counsel."  1-ER-26.

**D.    The Class Mechanism Remains the Superior Means of Resolving This Dispute**

LabCorp's arguments that the District Court abused its discretion by finding that Rule 23(b)(3) superiority is established in this case run directly counter to this Court's precedent and should be rejected.

First, LabCorp contends that "the District Court erred in holding that the Unruh Act's statutory damages of $4,000 **per incident** were minimal and weighed against class action superiority."  1-ER-64; OB 45 (emphasis in original).  In support of this contention, LabCorp cites the *Quest* court's contrary holding, relying on *Antoninetti,* 2012 WL 3762440, at *7 ("The Unruh Act allows minimum statutory damages . . . providing individuals with a significant monetary incentive to file individual lawsuit.").[10]  Yet, this argument, too, runs counter to both this Court's jurisprudence, as well as the weight of authority from this Circuit's district courts.  *See Wolin,* 617 F.3d at 1175 ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."); *Local Joint Exec. Bd. of Culinary/Bartender Tr.*

---

[10] The District Court in *Quest* analyzed that, in addition to the admittedly small "$4,000 . . . bounty" the availability of "attorney's fees for prevailing plaintiffs rendere[d] individual actions a viable alternative to class action."  2021 WL 5989958, at *10.  Plaintiffs counter, respectfully, that this argument puts the cart before the horse in that the operative inquiry should be about the incentive, or lack thereof, to the *individual* experiencing harm and then choosing to litigate to redress that harm, not the incentive to the attorney.

*Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) ("If plaintiffs cannot proceed as a class, some—perhaps most—will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover."); *see also Nevarez*, 326 F.R.D. at 589 ("Although class members are entitled to $4,000 in damages per Unruh Act violation that sum pales in comparison with the cost of pursuing litigation."); *Montera v. Premier Nutrition Corp.*, 621 F. Supp. 3d 1012, 1023 (N.D. Cal. 2022) (siding with *Nevarez* and stating that, in a statutory damages matter, "[i]t is unclear how an individual plaintiff would be incentivized to undertake those costs [associated with litigation], even if the possible recovery was in the tens of thousands of dollars.") (appeal filed on other grounds);[11] *see also Corral v. Staples the Office Superstore LLC*, 2023 WL 2347445, at *16 (C.D. Cal. Feb. 6, 2023) ("courts have concluded a recovery up to $8,871 is sufficiently modest to weigh in favor of certification") (citing *Kimbo v. MXD Grp., Inc.,* 2020 WL 4547324, at *5 (E.D. Cal. Aug. 6, 2020)).

Next, LabCorp's claim that there is no "manageable way" to locate class members at the class certification stage, *see* OB 45, ignores this Court's jurisprudence and the District Court's factual findings. As this Court and the

---

[11] In *Montera*, the District Court's finding that the statutory "prize" was not so great as to incentivize individual plaintiffs and destroy superiority was not affected by the fact that New York General Business Law Section 349(h), like the Unruh Act, provides for recovery of attorneys' fees. *Montera*, 621 F. Supp. at 1023.

District Court have stated, "courts should not refuse to certify a class merely on the basis of manageability concerns." *Briseno,* 844 F.3d at 1128 ("This presumption makes ample sense given the variety of procedural tools courts can use to manage the administrative burdens of class litigation.").  Nor does LabCorp ever address the District Court's holding that there is "no requirement that the identity of class members . . . be known at the time of certification."  1-ER-39 (quoting *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 535 (N.D. Cal. 2016)).

LabCorp similarly never addresses the District Court's factual finding both that "identifying class members . . . would not be difficult," and that the district court could bifurcate the case "into a liability and damages phase and, assuming there is a liability determination, create a claims process by which to validate individualized claim determinations."  1-ER-34–35.  As explained in depth in briefing below, 2-ER-313–15, and subsequently incorporated in the District Court's order, a range of available solutions addresses even theoretical manageability concerns.  Parties and courts regularly rely on claims administrators, auditing processes, sampling for fraud detection, follow-up notices to explain the claims process, and other techniques to validate claims.  1-ER-34 (18:13-24) (citing *Mullins v. Direct Digital LLC*, 795 F.3d 654, 667 (7th Cir. 2015); *Nevarez*, 326 F.R.D. at 577; *Tyson Foods,* 577 U.S. at 461; and 4 Newberg on Class Actions, § 11:6, at 21 (5th ed. 2014)).  Accordingly, the District Court did not

abuse its discretion in finding the class mechanism is the superior means for resolving this dispute.

## II.   A UNIFORM INJUNCTION CAN PROVIDE RELIEF TO ALL NATIONWIDE CLASS MEMBERS

LabCorp next argues there is no "single injunction" that can provide relief to all class members in the nationwide injunctive relief class.  OB 23.  Its argument fails because it is both factually inaccurate and, as explained above, premature *see supra* § I.C.  Plaintiffs seek one uniform injunction that remedies LabCorp's corporate-level decision to deploy inaccessible LabCorp Express kiosks to all of its PSCs.[12]

Rule 23(b)(2) allows class treatment when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. Proc. 23(b)(2).  The Supreme Court has explained that Rule 23 "does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." *Dukes,* 564 U.S. at 360.

---

[12] The District Court found that LabCorp's arguments are premature, stating: "assuming liability is established, it can, after obtaining the parties' input, fashion an appropriate injunction." *See* 1-ER-26. LabCorp does not dispute this statement.

Applying this standard, this Court has held repeatedly that an injunction satisfies Rule 23(b)(2) where the relief requested enjoins a centralized policy or practice and "a single, indivisible injunction" ordering a defendant to abate that policy would provide relief to the class as a whole. *See B.K. v. Snyder*, 922 F.3d 957, 971 (9th Cir. 2019); *Parsons,* 754 F.3d at 688; *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010), abrogated on other grounds as recognized by *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022) ("[I]t is sufficient to meet the requirements of Rule 23(b)(2) that class members complain of a *pattern or practice* that is generally applicable to the class as a whole.") (emphasis added).

Plaintiffs request an injunction that requires LabCorp to make its LabCorp Express service accessible to the legally blind.  Plaintiffs' kiosk accessibility expert Rachel Bradley Montgomery has made several suggestions for improving the kiosk's accessibility, including adding tactile keypads, providing a headphone jack, or installing new accessible kiosks. *See* 1-ER-0682–85.  An injunction containing these requirements would be generally applicable to all legally blind class members who enter a LabCorp PSC.

LabCorp mischaracterizes the deposition testimony of Dr. Montgomery and of ACB's Rule 30(b)(6) witness, Claire Stanley, in arguing that "Plaintiff ACB and Plaintiffs' retained accessibility expert conceded that no single accommodation will satisfy all class members."  First, Dr. Montgomery testified that the changes

she recommends to the kiosk would be "required to make the check-in kiosk accessible to the vast majority of blind people."  Indeed, she testified that "the majority" would be able to use the kiosk after her recommendations are implemented, but that it was "hard to say" whether "some legally blind people would [even then] not be able to check in at the kiosk independently . . . because there are different situations."  3-ER-424–25.  As the District Court found, there is nothing in this testimony to suggest that it is impossible to craft a uniform injunction concerning LabCorp Express that is generally applicable to the class as a whole.  *See Parsons*, 754 F.3d at 688 (Rule 23(b)(2) indivisibility requirement is "unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are *generally applicable* to the class as a whole.") (emphasis added).[13]  To the contrary, Dr.

---

[13] LabCorp's reliance on *Dukes* is unavailing because *Dukes* involved a requested injunction of "individualized monetary relief" to each class member, which claim the Supreme Court held "belong[ed] in Rule 23(b)(3)," not Rule 23(b)(2).  *Dukes*, 564 U.S. at 362.  The *Dukes* plaintiffs alleged the discretion exercised by Wal-Mart's thousands of local supervisors violated Title VII by discriminating against women.  *Id.* at 342. The class would not be entitled to injunctive relief "as a whole" because every member was individually injured by each local manager's promotion decision ("literally millions of employment decisions").  *Id.* at 352.  The plaintiffs' allegations lacked any "glue holding the alleged *reasons* for all those decisions together."  *Id.* at 352.  Here, the "glue" holding together the experiences of all Plaintiffs is LabCorp's corporate-level decision to implement inaccessible LabCorp Express kiosks in 1,853 PSCs. Rather than fashioning a remedy for each class member (as would have been required in *Dukes*), the District Court's

Montgomery's report and testimony are intended to aid the District Court in fashioning an injunction that will allow the "vast majority" of Class members to utilize the kiosk.[14]

Further, ACB representative Stanley never testified that each Class member would require an individualized injunction. Rather, when asked whether providing "speech output" would "resolve the accessibility concerns of everyone that is blind or visually impaired[,]" Ms. Stanley testified that "[n]o one accommodation is going to accommodate every person everywhere." 3-ER-404–05. As the District Court noted, "Stanley's testimony does not mean that an injunction cannot be crafted that will be generally applicable to the class as a whole." 1-ER-28.

As the District Court noted, "the primary role of [Rule 23(b)(2)] has always been the certification of civil rights class actions" and "[i]n a civil rights action, the fact that the discriminatory conduct may have affected different members of the class in different ways does not prevent certification under Rule 23(b)(2). 1-ER-28

---

injunction here is likely to address LabCorp's corporate policy of deploying inaccessible kiosks as a whole.

[14] LabCorp postulates that an injunction making LabCorp Express accessible to legally blind patients would somehow injure some Class members. Plaintiffs have never suggested—and do not now suggest— that "a single injunction mandate[] that LabCorp adopt a particular technology across the board in lieu of an in-person check-in option." OB 48. Nor have Plaintiffs ever demanded—and do not now demand— that LabCorp shut down its purported "in-person check-in option."

(quoting *Parsons*, 754 F.3d at 686). The District Court therefore did not abuse its discretion in finding the requirement of Rule 23(b)(2) has been satisfied.

## III.    THE CLASS DEFINITIONS ARE NOT FAIL-SAFE

LabCorp's argument that the Class definitions are "fail-safe" is unavailing. First, it refers to Class definitions in a District Court order which LabCorp did not appeal.  On June 6, 2022, LabCorp filed its petition under Rule 23(f) to appeal an "Order Granting Motion for Class Certification entered by the District Court for the Central District of California, Hon. Fernando M. Olguin, on May 23, 2022." 8-ER-1787.  No other District Court orders were referenced or attached to the Rule 23(f) petition.  *Id.*[15]  On June 13, 2022, the District Court issued an amended order concerning Plaintiffs' motion for class certification.  On August 4, 2022, the District Court issued another order refining the class definitions it had previously certified.[16]  Although LabCorp provided notice of the subsequent decisions, it did not file a subsequent Rule 23(f) petition challenging the refined Class definitions

---

[15] Federal Rule of Appellate Procedure 5 requires a petition for interlocutory appeal by permission attach "the order, decree, or judgment complained of and any related opinion or memorandum." LabCorp attached only the District Court's May 23, 2022, order, and orders from other litigation to its Rule 23(f) petition.  *See* 8-ER-1811.

[16] The Class definitions contained in the District Court's May 23, 2022, order no longer apply as they were replaced by the definitions in the August 4, 2022, Order. *See* 1-ER-0014.

and, as such, the District Court's August 4, 2022, order is not properly before this Court.

The Ninth Circuit's jurisdiction "on interlocutory appeal from an order granting or denying class certification is limited to the class certification order." *Van v. LLR, Inc.*, 61 F.4th 1053, 1070 (9th Cir. 2023) (Christen, J., concurring in part). When a district court alters a class certification order, prospective appellants can file subsequent Rule 23(f) petitions. *Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1074 (7th Cir. 2014) ("The rule . . . does not forbid a party to file repeated motions seeking our permission to appeal if, as is not uncommon, the district judge alters the class definition from time to time and therefore issues a new certification order each time."). Rather than timely filing a Rule 23(f) petition challenging the District Court's August 4, 2022, order, however, LabCorp improperly seeks review of an order other than the class certification order it has appealed. It has therefore waived its opportunity to challenge that order.

Second, even if this issue were properly before this Court, the certified Class definitions are not impermissibly "fail safe" because they do not "preclude[] membership unless the liability of the defendant is established." *Ruiz*, 835 F.3d at 1138 n.7; *see also Olean*, 31 F.4th at 669 n.14 ("Such a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment."). The validity of Class

members' damages claims will be objectively determined at later stages of the litigation and will appropriately bar Class members from future claims against LabCorp based upon the same conduct.

LabCorp cites to a district court case from Alabama for the proposition that a class definition is improper if "any class member . . . would fall out of the class if he or she was unable to prove damage and proximate causation, and therefore ultimate liability." OB 50 (citing *Russell v. Tyson Farms, Inc.*, 2020 WL 3051241, at *2 (N.D. Ala. Jun. 8, 2020)). But *Tyson Farm*'s logic does not apply to this case. There, the class definition specifically qualified that the class included only individuals "who have been personally injured and/or damaged." *Tyson Farms*, 2020 WL 3051241, at *1. The Class definition here does not tautologically exclude uninjured Class members but limits the Class to individuals "who were unable to use the kiosk." Whether that constitutes a legal injury and injury-in-fact is a matter to be decided by the District Court and a jury.[17]

---

[17] LabCorp's reference to "proximate causation" does not apply here. Proximate cause does not need to be proven for Unruh Act or ADA claims, unlike the state common law claims at issue in *Tyson*. *Shayler v. MMWH Grp. LLC*, 2022 WL 17080183, at *7 (C.D. Cal. Sep. 2, 2022) (in ADA action, "the Court declines to give any credence to Defendants' 'proximate cause' arguments"). Moreover, "damages" are set statutorily under the Unruh Act. Plaintiffs are not required to prove that each class member suffered a particular amount of damages. Concerning the injunctive relief class, damages are not an element of a claim for injunctive relief. As explained above, there are other elements of Plaintiffs' ADA and Unruh Act claims that will be determined at summary judgment or trial. The class definitions are not "fail safe."

## CONCLUSION

For the foregoing reasons, Plaintiffs-Appellees respectfully request this Court affirm the Order of the District Court granting class certification in its entirety.

Date: June 14, 2023     By:     s/ *Alison M. Bernal*
**Alison M. Bernal**
**Jonathan D. Miller**
**Jordan T. Porter**
NYE, STIRLING, HALE, MILLER & SWEET, LLP
33 West Mission Street, Suite 201
Santa Barbara, CA 93101
Telephone: (805) 963-2345
alison@nshmlaw.com
jonathan@nshmlaw.com
jordan@nshmlaw.com

s/ *Benjamin J. Sweet*
**Benjamin J. Sweet**
NYE, STIRLING, HALE, MILLER & SWEET, LLP
1145 Bower Hill Road, Suite 104
Pittsburgh, PA 15243
Telephone: (412) 857-5350
ben@nshmlaw.com

s/ *Matthew K. Handley*
**Matthew K. Handley**
HANDLEY FARAH & ANDERSON PLLC
200 Massachusetts Avenue, NW, 7th Fl.
Washington, DC 20001
mhandley@hfajustice.com

*Attorneys for Plaintiffs-Appellees Luke Davis, Julian Vargas, American Council of the Blind, and the Certified Class*

- 61 -

<u>**STATEMENT OF RELATED CASES**</u>

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6**

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)** ___22-55873_____

The undersigned attorney or self-represented party states the following:

[X] I am unaware of any related cases currently pending in this court.

[  ]  I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[  ]  I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** ___*/s/ Alison M. Bernal*_____ **Date** __June 14, 2023_____
*(use "*s/[typed name]*" to sign electronically-filed documents)*

- 62 -

## <u>CERTIFICATE OF COMPLIANCE</u>

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** __22-55873_____

I am the attorney or self-represented party.

**This brief contains 13,967 words,** including <u>0</u> words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ X ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** _/s/ Alison M. Bernal_____ **Date** _June 14, 2023_____
*(use "s/[typed name]" to sign electronically-filed documents)*

- 63 -

# ADDENDUM

## ADDENDUM TABLE OF CONTENTS

### Statutes & Regulations

| TITLE | BEGINNING PAGE |
|---|---|
| **Federal Statutes** | |
| 42 U.S.C. § 12101 | PL-ADD-001 |
| 42 U.S.C. § 12182 | PL-ADD-003 |
| **Federal Rules** | |
| F.R.C.P. 23 | PL-ADD-007 |
| **California Civil Code** | |
| Cal. Civ. Code § 51 | PL-ADD-014 |
| Cal. Civ. Code § 52 | PL-ADD-017 |
| Cal. Civ. Code § 54.3 | PL-ADD-019 |
| Cal. Civ. Code § 55.51 | PL-ADD-020 |
| Cal. Civ. Code § 55.52 | PL-ADD-021 |
| Cal. Civ. Code § 55.53 | PL-ADD-023 |
| Cal. Civ. Code § 55.54 | PL-ADD-027 |
| Cal. Civ. Code § 55.55 | PL-ADD-040 |
| Cal. Civ. Code § 55.56 | PL-ADD-041 |
| Cal. Civ. Code § 55.57 | PL-ADD-046 |

| United States Code Annotated |
| --- |
| Title 42. The Public Health and Welfare |
| Chapter 126. Equal Opportunity for Individuals with Disabilities (Refs & Annos) |

42 U.S.C.A. § 12101

§ 12101. Findings and purpose

Effective: January 1, 2009
Currentness

**(a) Findings**

The Congress finds that--

**(1)** physical or mental disabilities in no way diminish a person's right to fully participate in all aspects of society, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination; others who have a record of a disability or are regarded as having a disability also have been subjected to discrimination;

**(2)** historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

**(3)** discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

**(4)** unlike individuals who have experienced discrimination on the basis of race, color, sex, national origin, religion, or age, individuals who have experienced discrimination on the basis of disability have often had no legal recourse to redress such discrimination;

**(5)** individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities;

**(6)** census data, national polls, and other studies have documented that people with disabilities, as a group, occupy an inferior status in our society, and are severely disadvantaged socially, vocationally, economically, and educationally;

**(7)** the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals; and

PL-ADD-001

(8) the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.

**(b) Purpose**

It is the purpose of this chapter--

(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

(3) to ensure that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities; and

(4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

**CREDIT(S)**

(Pub.L. 101-336, § 2, July 26, 1990, 104 Stat. 328; Pub.L. 110-325, § 3, Sept. 25, 2008, 122 Stat. 3554.)

42 U.S.C.A. § 12101, 42 USCA § 12101
Current through P.L.118-5. Some statute sections may be more current, see credits for details.

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

PL-ADD-002

United States Code Annotated
   Title 42. The Public Health and Welfare
      Chapter 126. Equal Opportunity for Individuals with Disabilities (Refs & Annos)
         Subchapter III. Public Accommodations and Services Operated by Private Entities (Refs & Annos)

42 U.S.C.A. § 12182

§ 12182. Prohibition of discrimination by public accommodations

Currentness

**(a) General rule**

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

**(b) Construction**

**(1) General prohibition**

**(A) Activities**

**(i) Denial of participation**

It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

**(ii) Participation in unequal benefit**

It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals.

**(iii) Separate benefit**

It shall be discriminatory to provide an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals, unless such

PL-ADD-003

action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others.

### (iv) Individual or class of individuals

For purposes of clauses (i) through (iii) of this subparagraph, the term "individual or class of individuals" refers to the clients or customers of the covered public accommodation that enters into the contractual, licensing or other arrangement.

### (B) Integrated settings

Goods, services, facilities, privileges, advantages, and accommodations shall be afforded to an individual with a disability in the most integrated setting appropriate to the needs of the individual.

### (C) Opportunity to participate

Notwithstanding the existence of separate or different programs or activities provided in accordance with this section, an individual with a disability shall not be denied the opportunity to participate in such programs or activities that are not separate or different.

### (D) Administrative methods

An individual or entity shall not, directly or through contractual or other arrangements, utilize standards or criteria or methods of administration--

### (i) that have the effect of discriminating on the basis of disability; or

### (ii) that perpetuate the discrimination of others who are subject to common administrative control.

### (E) Association

It shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association.

## (2) Specific prohibitions

### (A) Discrimination

For purposes of subsection (a), discrimination includes--

### (i) the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges,

PL-ADD-004

advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered;

**(ii)** a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations;

**(iii)** a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden;

**(iv)** a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities, and transportation barriers in existing vehicles and rail passenger cars used by an establishment for transporting individuals (not including barriers that can only be removed through the retrofitting of vehicles or rail passenger cars by the installation of a hydraulic or other lift), where such removal is readily achievable; and

**(v)** where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable.

**(B) Fixed route system**

**(i) Accessibility**

It shall be considered discrimination for a private entity which operates a fixed route system and which is not subject to section 12184 of this title to purchase or lease a vehicle with a seating capacity in excess of 16 passengers (including the driver) for use on such system, for which a solicitation is made after the 30th day following the effective date of this subparagraph, that is not readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs.

**(ii) Equivalent service**

If a private entity which operates a fixed route system and which is not subject to section 12184 of this title purchases or leases a vehicle with a seating capacity of 16 passengers or less (including the driver) for use on such system after the effective date of this subparagraph that is not readily accessible to or usable by individuals with disabilities, it shall be considered discrimination for such entity to fail to operate such system so that, when viewed in its entirety, such system ensures a level of service to individuals with disabilities, including individuals who use wheelchairs, equivalent to the level of service provided to individuals without disabilities.

**(C) Demand responsive system**

PL-ADD-005

For purposes of subsection (a), discrimination includes--

**(i)** a failure of a private entity which operates a demand responsive system and which is not subject to section 12184 of this title to operate such system so that, when viewed in its entirety, such system ensures a level of service to individuals with disabilities, including individuals who use wheelchairs, equivalent to the level of service provided to individuals without disabilities; and

**(ii)** the purchase or lease by such entity for use on such system of a vehicle with a seating capacity in excess of 16 passengers (including the driver), for which solicitations are made after the 30th day following the effective date of this subparagraph, that is not readily accessible to and usable by individuals with disabilities (including individuals who use wheelchairs) unless such entity can demonstrate that such system, when viewed in its entirety, provides a level of service to individuals with disabilities equivalent to that provided to individuals without disabilities.

**(D) Over-the-road buses**

**(i) Limitation on applicability**

Subparagraphs (B) and (C) do not apply to over-the-road buses.

**(ii) Accessibility requirements**

For purposes of subsection (a), discrimination includes (I) the purchase or lease of an over-the-road bus which does not comply with the regulations issued under section 12186(a)(2) of this title by a private entity which provides transportation of individuals and which is not primarily engaged in the business of transporting people, and (II) any other failure of such entity to comply with such regulations.

**(3) Specific construction**

Nothing in this subchapter shall require an entity to permit an individual to participate in or benefit from the goods, services, facilities, privileges, advantages and accommodations of such entity where such individual poses a direct threat to the health or safety of others. The term "direct threat" means a significant risk to the health or safety of others that cannot be eliminated by a modification of policies, practices, or procedures or by the provision of auxiliary aids or services.

**CREDIT(S)**

(Pub.L. 101-336, Title III, § 302, July 26, 1990, 104 Stat. 355.)

42 U.S.C.A. § 12182, 42 USCA § 12182
Current through P.L.118-5. Some statute sections may be more current, see credits for details.

End of Document          © 2023 Thomson Reuters. No claim to original U.S. Government Works.

PL-ADD-006

---

United States Code Annotated
    Federal Rules of Civil Procedure for the United States District Courts (Refs & Annos)
        Title IV. Parties

Federal Rules of Civil Procedure Rule 23

Rule 23. Class Actions [Rule Text & Notes of Decisions subdivisions I to VII]

Currentness

<Notes of Decisions for 28 USCA Federal Rules of Civil Procedure Rule 23 are displayed in multiple documents. >

**(a) Prerequisites.** One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

  **(1)** the class is so numerous that joinder of all members is impracticable;

  **(2)** there are questions of law or fact common to the class;

  **(3)** the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

  **(4)** the representative parties will fairly and adequately protect the interests of the class.

**(b) Types of Class Actions.** A class action may be maintained if Rule 23(a) is satisfied and if:

  **(1)** prosecuting separate actions by or against individual class members would create a risk of:

    **(A)** inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

    **(B)** adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

  **(2)** the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

  **(3)** the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

PL-ADD-007

**(A)** the class members' interests in individually controlling the prosecution or defense of separate actions;

**(B)** the extent and nature of any litigation concerning the controversy already begun by or against class members;

**(C)** the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

**(D)** the likely difficulties in managing a class action.

**(c) Certification Order; Notice to Class Members; Judgment; Issues Classes; Subclasses.**

**(1)** *Certification Order.*

**(A)** *Time to Issue.* At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action.

**(B)** *Defining the Class; Appointing Class Counsel.* An order that certifies a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g).

**(C)** *Altering or Amending the Order.* An order that grants or denies class certification may be altered or amended before final judgment.

**(2)** *Notice.*

**(A)** *For (b)(1) or (b)(2) Classes.* For any class certified under Rule 23(b)(1) or (b)(2), the court may direct appropriate notice to the class.

**(B)** *For (b)(3) Classes.* For any class certified under Rule 23(b)(3)--or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)--the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means. The notice must clearly and concisely state in plain, easily understood language:

**(i)** the nature of the action;

**(ii)** the definition of the class certified;

**(iii)** the class claims, issues, or defenses;

PL-ADD-008

**(iv)** that a class member may enter an appearance through an attorney if the member so desires;

**(v)** that the court will exclude from the class any member who requests exclusion;

**(vi)** the time and manner for requesting exclusion; and

**(vii)** the binding effect of a class judgment on members under Rule 23(c)(3).

**(3)** *Judgment.* Whether or not favorable to the class, the judgment in a class action must:

**(A)** for any class certified under Rule 23(b)(1) or (b)(2), include and describe those whom the court finds to be class members; and

**(B)** for any class certified under Rule 23(b)(3), include and specify or describe those to whom the Rule 23(c)(2) notice was directed, who have not requested exclusion, and whom the court finds to be class members.

**(4)** *Particular Issues.* When appropriate, an action may be brought or maintained as a class action with respect to particular issues.

**(5)** *Subclasses.* When appropriate, a class may be divided into subclasses that are each treated as a class under this rule.

## (d) Conducting the Action.

**(1)** *In General.* In conducting an action under this rule, the court may issue orders that:

**(A)** determine the course of proceedings or prescribe measures to prevent undue repetition or complication in presenting evidence or argument;

**(B)** require--to protect class members and fairly conduct the action--giving appropriate notice to some or all class members of:

**(i)** any step in the action;

**(ii)** the proposed extent of the judgment; or

**(iii)** the members' opportunity to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or to otherwise come into the action;

PL-ADD-009

**(C)** impose conditions on the representative parties or on intervenors;

**(D)** require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly; or

**(E)** deal with similar procedural matters.

**(2)** *Combining and Amending Orders.* An order under Rule 23(d)(1) may be altered or amended from time to time and may be combined with an order under Rule 16.

**(e) Settlement, Voluntary Dismissal, or Compromise.** The claims, issues, or defenses of a certified class--or a class proposed to be certified for purposes of settlement--may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

**(1)** *Notice to the Class.*

**(A)** *Information That Parties Must Provide to the Court.* The parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class.

**(B)** *Grounds for a Decision to Give Notice.* The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to:

**(i)** approve the proposal under Rule 23(e)(2); and

**(ii)** certify the class for purposes of judgment on the proposal.

**(2)** *Approval of the Proposal.* If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

**(A)** the class representatives and class counsel have adequately represented the class;

**(B)** the proposal was negotiated at arm's length;

**(C)** the relief provided for the class is adequate, taking into account:

**(i)** the costs, risks, and delay of trial and appeal;

---

PL-ADD-010

**(ii)** the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

**(iii)** the terms of any proposed award of attorney's fees, including timing of payment; and

**(iv)** any agreement required to be identified under Rule 23(e)(3); and

**(D)** the proposal treats class members equitably relative to each other.

**(3)** *Identifying Agreements.* The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

**(4)** *New Opportunity to be Excluded.* If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

**(5)** *Class-Member Objections.*

**(A)** *In General*. Any class member may object to the proposal if it requires court approval under this subdivision (e). The objection must state whether it applies only to the objector, to a specific subset of the class, or to the entire class, and also state with specificity the grounds for the objection.

**(B)** *Court Approval Required for Payment in Connection with an Objection*. Unless approved by the court after a hearing, no payment or other consideration may be provided in connection with:

**(i)** forgoing or withdrawing an objection, or

**(ii)** forgoing, dismissing, or abandoning an appeal from a judgment approving the proposal.

**(C)** *Procedure for Approval After an Appeal*. If approval under Rule 23(e)(5)(B) has not been obtained before an appeal is docketed in the court of appeals, the procedure of Rule 62.1 applies while the appeal remains pending.

**(f) Appeals.** A court of appeals may permit an appeal from an order granting or denying class-action certification under this rule, but not from an order under Rule 23(e)(1). A party must file a petition for permission to appeal with the circuit clerk within 14 days after the order is entered, or within 45 days after the order is entered if any party is the United States, a United States agency, or a United States officer or employee sued for an act or omission occurring in connection with duties performed on the United States' behalf. An appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders.

**(g) Class Counsel.**

PL-ADD-011

**(1)** ***Appointing Class Counsel.*** Unless a statute provides otherwise, a court that certifies a class must appoint class counsel. In appointing class counsel, the court:

  **(A)** must consider:

   **(i)** the work counsel has done in identifying or investigating potential claims in the action;

   **(ii)** counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

   **(iii)** counsel's knowledge of the applicable law; and

   **(iv)** the resources that counsel will commit to representing the class;

  **(B)** may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;

  **(C)** may order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney's fees and nontaxable costs;

  **(D)** may include in the appointing order provisions about the award of attorney's fees or nontaxable costs under Rule 23(h); and

  **(E)** may make further orders in connection with the appointment.

**(2)** ***Standard for Appointing Class Counsel.*** When one applicant seeks appointment as class counsel, the court may appoint that applicant only if the applicant is adequate under Rule 23(g)(1) and (4). If more than one adequate applicant seeks appointment, the court must appoint the applicant best able to represent the interests of the class.

**(3)** ***Interim Counsel.*** The court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action.

**(4)** ***Duty of Class Counsel.*** Class counsel must fairly and adequately represent the interests of the class.

**(h) Attorney's Fees and Nontaxable Costs.** In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement. The following procedures apply:

---

PL-ADD-012

**(1)** A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.

**(2)** A class member, or a party from whom payment is sought, may object to the motion.

**(3)** The court may hold a hearing and must find the facts and state its legal conclusions under Rule 52(a).

**(4)** The court may refer issues related to the amount of the award to a special master or a magistrate judge, as provided in Rule 54(d)(2)(D).

**CREDIT(S)**

(Amended February 28, 1966, effective July 1, 1966; March 2, 1987, effective August 1, 1987; April 24, 1998, effective December 1, 1998; March 27, 2003, effective December 1, 2003; April 30, 2007, effective December 1, 2007; March 26, 2009, effective December 1, 2009; April 26, 2018, effective December 1, 2018.)

Fed. Rules Civ. Proc. Rule 23, 28 U.S.C.A., FRCP Rule 23
Including Amendments Received Through 6-1-23

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

PL-ADD-013

West's Annotated California Codes
   Civil Code (Refs & Annos)
      Division 1. Persons (Refs & Annos)
         Part 2. Personal Rights (Refs & Annos)

West's Ann.Cal.Civ.Code § 51

§ 51. Unruh Civil Rights Act; equal rights; business establishments; violations of federal Americans with Disabilities Act

Effective: January 1, 2016
Currentness

(a) This section shall be known, and may be cited, as the Unruh Civil Rights Act.

(b) All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

(c) This section shall not be construed to confer any right or privilege on a person that is conditioned or limited by law or that is applicable alike to persons of every sex, color, race, religion, ancestry, national origin, disability, medical condition, marital status, sexual orientation, citizenship, primary language, or immigration status, or to persons regardless of their genetic information.

(d) Nothing in this section shall be construed to require any construction, alteration, repair, structural or otherwise, or modification of any sort whatsoever, beyond that construction, alteration, repair, or modification that is otherwise required by other provisions of law, to any new or existing establishment, facility, building, improvement, or any other structure, nor shall anything in this section be construed to augment, restrict, or alter in any way the authority of the State Architect to require construction, alteration, repair, or modifications that the State Architect otherwise possesses pursuant to other laws.

(e) For purposes of this section:

(1) "Disability" means any mental or physical disability as defined in Sections 12926 and 12926.1 of the Government Code.

(2)(A) "Genetic information" means, with respect to any individual, information about any of the following:

(i) The individual's genetic tests.

(ii) The genetic tests of family members of the individual.

(iii) The manifestation of a disease or disorder in family members of the individual.

PL-ADD-014

(B) "Genetic information" includes any request for, or receipt of, genetic services, or participation in clinical research that includes genetic services, by an individual or any family member of the individual.

(C) "Genetic information" does not include information about the sex or age of any individual.

(3) "Medical condition" has the same meaning as defined in subdivision (i) of Section 12926 of the Government Code.

(4) "Religion" includes all aspects of religious belief, observance, and practice.

(5) "Sex" includes, but is not limited to, pregnancy, childbirth, or medical conditions related to pregnancy or childbirth. "Sex" also includes, but is not limited to, a person's gender. "Gender" means sex, and includes a person's gender identity and gender expression. "Gender expression" means a person's gender-related appearance and behavior whether or not stereotypically associated with the person's assigned sex at birth.

(6) "Sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status" includes a perception that the person has any particular characteristic or characteristics within the listed categories or that the person is associated with a person who has, or is perceived to have, any particular characteristic or characteristics within the listed categories.

(7) "Sexual orientation" has the same meaning as defined in subdivision (s) of Section 12926 of the Government Code.

(f) A violation of the right of any individual under the federal Americans with Disabilities Act of 1990 (Public Law 101-336) [1] shall also constitute a violation of this section.

(g) Verification of immigration status and any discrimination based upon verified immigration status, where required by federal law, shall not constitute a violation of this section.

(h) Nothing in this section shall be construed to require the provision of services or documents in a language other than English, beyond that which is otherwise required by other provisions of federal, state, or local law, including Section 1632.

**Credits**

(Added by Stats.1905, c. 413, p. 553, § 1. Amended by Stats.1919, c. 210, p. 309, § 1; Stats.1923, c. 235, p. 485, § 1; Stats.1959, c. 1866, p. 4424, § 1; Stats.1961, c. 1187, p. 2920, § 1; Stats.1974, c. 1193, p. 2568, § 1; Stats.1987, c. 159, § 1; Stats.1992, c. 913 (A.B.1077), § 3; Stats.1998, c. 195 (A.B.2702), § 1; Stats.2000, c. 1049 (A.B.2222), § 2; Stats.2005, c. 420 (A.B.1400), § 3; Stats.2011, c. 261 (S.B.559), § 3; Stats.2011, c. 719 (A.B.887), § 1.5; Stats.2015, c. 303 (A.B.731), § 25, eff. Jan. 1, 2016; Stats.2015, c. 282 (S.B.600), § 1, eff. Jan. 1, 2016.)

PL-ADD-015

**Footnotes**

1        For public law sections classified to the U.S.C.A., see USCA-Tables.

West's Ann. Cal. Civ. Code § 51, CA CIVIL § 51
Current with Ch. 1 of 2023-24 1st Ex.Sess, and urgency legislation through Ch. 9 of 2023 Reg.Sess. Some statute sections may be more current, see credits for details.

**End of Document**                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

PL-ADD-016

West's Annotated California Codes
   Civil Code (Refs & Annos)
      Division 1. Persons (Refs & Annos)
         Part 2. Personal Rights (Refs & Annos)

West's Ann.Cal.Civ.Code § 52

§ 52. Denial of civil rights or discrimination; damages; civil action by persons
aggrieved; intervention; unlawful practice complaint; waiver of rights by contract

Effective: June 30, 2022
Currentness

(a) Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51, 51.5, or 51.6, is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

(b) Whoever denies the right provided by Section 51.7 or 51.9, or aids, incites, or conspires in that denial, is liable for each and every offense for the actual damages suffered by any person denied that right and, in addition, the following:

(1) An amount to be determined by a jury, or a court sitting without a jury, for exemplary damages.

(2) A civil penalty of twenty-five thousand dollars ($25,000) to be awarded to the person denied the right provided by Section 51.7 in any action brought by the person denied the right, or by the Attorney General, a district attorney, or a city attorney. An action for that penalty brought pursuant to Section 51.7 shall be commenced within three years of the alleged practice.

(3) Attorney's fees as may be determined by the court.

(c) Whenever there is reasonable cause to believe that any person or group of persons is engaged in conduct of resistance to the full enjoyment of any of the rights described in this section, and that conduct is of that nature and is intended to deny the full exercise of those rights, the Attorney General, any district attorney or city attorney, or any person aggrieved by the conduct may bring a civil action in the appropriate court by filing with it a complaint. The complaint shall contain the following:

(1) The signature of the officer, or, in the officer's absence, the individual acting on behalf of the officer, or the signature of the person aggrieved.

(2) The facts pertaining to the conduct.

PL-ADD-017

(3) A request for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order against the person or persons responsible for the conduct, as the complainant deems necessary to ensure the full enjoyment of the rights described in this section.

(d) Whenever an action has been commenced in any court seeking relief from the denial of equal protection of the laws under the Fourteenth Amendment to the Constitution of the United States on account of race, color, religion, sex, national origin, or disability, the Attorney General or any district attorney or city attorney for or in the name of the people of the State of California may intervene in the action upon timely application if the Attorney General or any district attorney or city attorney certifies that the case is of general public importance. In that action, the people of the State of California shall be entitled to the same relief as if it had instituted the action.

(e) Actions brought pursuant to this section are independent of any other actions, remedies, or procedures that may be available to an aggrieved party pursuant to any other law.

(f) Any person claiming to be aggrieved by an alleged unlawful practice in violation of Section 51 or 51.7 may also file a verified complaint with the Civil Rights Department pursuant to Section 12948 of the Government Code.

(g) This section does not require any construction, alteration, repair, structural or otherwise, or modification of any sort whatsoever, beyond that construction, alteration, repair, or modification that is otherwise required by other provisions of law, to any new or existing establishment, facility, building, improvement, or any other structure, nor does this section augment, restrict, or alter in any way the authority of the State Architect to require construction, alteration, repair, or modifications that the State Architect otherwise possesses pursuant to other laws.

(h) For the purposes of this section, "actual damages" means special and general damages. This subdivision is declaratory of existing law.

(i) Subdivisions (b) to (f), inclusive, shall not be waived by contract except as provided in Section 51.7.

**Credits**
(Added by Stats.1905, c. 413, p. 553, § 2. Amended by Stats.1919, c. 210, p. 309, § 2; Stats.1923, c. 235, p. 485, § 2; Stats.1959, c. 1866, p. 4424, § 2; Stats.1974, c. 1193, p. 2568, § 2; Stats.1976, c. 366, p. 1013, § 2; Stats.1976, c. 1293, p. 5778, § 2.5; Stats.1978, c. 1212, p. 3927, § 1; Stats.1981, c. 521, § 1, eff. Sept. 16, 1981; Stats.1986, c. 244, § 1; Stats.1987, c. 159, § 4; Stats.1989, c. 459, § 1; Stats.1991, c. 607 (S.B.98), § 2; Stats.1991, c. 839 (A.B.1169), § 2; Stats.1992, c. 913 (A.B.1077), § 3.6; Stats.1994, c. 535 (S.B.1288), § 1; Stats.1998, c. 195 (A.B.2702), § 4; Stats.1999, c. 964 (A.B.519), § 2; Stats.2000, c. 98 (A.B.2719), § 2; Stats.2001, c. 261 (A.B.587), § 1; Stats.2005, c. 123 (A.B.378), § 1; Stats.2014, c. 910 (A.B.2617), § 3, eff. Jan. 1, 2015; Stats.2022, c. 48 (S.B.189), § 5, eff. June 30, 2022.)

West's Ann. Cal. Civ. Code § 52, CA CIVIL § 52
Current with Ch. 1 of 2023-24 1st Ex.Sess. and urgency legislation through Ch. 9 of 2023 Reg.Sess. Some statute sections may be more current, see credits for details.

 © 2023 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW  © 2023 Thomson Reuters. No claim to original U.S. Government Works.

West's Annotated California Codes
    Civil Code (Refs & Annos)
        Division 1. Persons (Refs & Annos)
            Part 2.5. Blind and Other Physically Disabled Persons (Refs & Annos)

West's Ann.Cal.Civ.Code § 54.3

§ 54.3. Violations; liability

Effective: June 30, 2022
Currentness

(a) Any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2 is liable for each offense for the actual damages and any amount as may be determined by a jury, or the court sitting without a jury, up to a maximum of three times the amount of actual damages but in no case less than one thousand dollars ($1,000), and attorney's fees as may be determined by the court in addition thereto, suffered by any person denied any of the rights provided in Sections 54, 54.1, and 54.2. "Interfere," for purposes of this section, includes, but is not limited to, preventing or causing the prevention of a guide dog, signal dog, or service dog from carrying out its functions in assisting a disabled person.

(b) Any person who claims to be aggrieved by an alleged unlawful practice in violation of Section 54, 54.1, or 54.2 may also file a verified complaint with the Civil Rights Department pursuant to Section 12948 of the Government Code. The remedies in this section are nonexclusive and are in addition to any other remedy provided by law, including, but not limited to, any action for injunctive or other equitable relief available to the aggrieved party or brought in the name of the people of this state or of the United States.

(c) A person may not be held liable for damages pursuant to both this section and Section 52 for the same act or failure to act.

**Credits**
(Added by Stats.1968, c. 461, p. 1092, § 1. Amended by Stats.1976, c. 971, p. 2270, § 2; Stats.1976, c. 972, p. 2274, § 2.5; Stats.1977, c. 881, p. 2650, § 1; Stats.1981, c. 395, § 1; Stats.1992, c. 913 (A.B.1077), § 7; Stats.1994, c. 1257 (S.B.1240), § 4; Stats.1996, c. 498 (S.B.1687), § 2.3; Stats.2022, c. 48 (S.B.189), § 6, eff. June 30, 2022.)

West's Ann. Cal. Civ. Code § 54.3, CA CIVIL § 54.3
Current with Ch. 1 of 2023-24 1st Ex.Sess, and urgency legislation through Ch. 9 of 2023 Reg.Sess. Some statute sections may be more current, see credits for details.

**End of Document**
© 2023 Thomson Reuters. No claim to original U.S. Government Works.

PL-ADD-019

 © 2023 Thomson Reuters. No claim to original U.S. Government Works.

West's Annotated California Codes
   Civil Code (Refs & Annos)
      Division 1. Persons (Refs & Annos)
         Part 2.52. Construction-Related Accessibility Standards Compliance (Refs & Annos)

West's Ann.Cal.Civ.Code § 55.51

§ 55.51. Short title; application

Effective: January 1, 2009
Currentness

This part shall be known, and may be cited, as the Construction-Related Accessibility Standards Compliance Act. Notwithstanding any other provision of law, the provisions of this part shall apply to any construction-related accessibility claim, as defined in this part, including, but not limited to, any claim brought under Section 51, 54, 54.1, or 55.

**Credits**

(Added by Stats.2008, c. 549 (S.B.1608), § 3.)

West's Ann. Cal. Civ. Code § 55.51, CA CIVIL § 55.51
Current with Ch. 1 of 2023-24 1st Ex.Sess, and urgency legislation through Ch. 9 of 2023 Reg.Sess. Some statute sections may be more current, see credits for details.

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

PL-ADD-020

West's Annotated California Codes
  Civil Code (Refs & Annos)
    Division 1. Persons (Refs & Annos)
      Part 2.52. Construction-Related Accessibility Standards Compliance (Refs & Annos)

West's Ann.Cal.Civ.Code § 55.52

§ 55.52. Definitions

Effective: September 19, 2012
Currentness

(a) For purposes of this part, the following definitions apply:

(1) "Construction-related accessibility claim" means any civil claim in a civil action with respect to a place of public accommodation, including, but not limited to, a claim brought under Section 51, 54, 54.1, or 55, based wholly or in part on an alleged violation of any construction-related accessibility standard, as defined in paragraph (6).

(2) "Application for stay and early evaluation conference" means an application to be filed with the court that meets the requirements of subdivision (c) of Section 55.54.

(3) "Certified access specialist" or "CASp" means any person who has been certified pursuant to Section 4459.5 of the Government Code.

(4) "Meets applicable standards" means the site was inspected by a CASp and determined to meet all applicable construction-related accessibility standards pursuant to paragraph (1) of subdivision (a) of Section 55.53. A site that is "CASp inspected" on or before the effective date of the amendments made to this section by Senate Bill 1186 of the 2011-12 Regular Session of the Legislature means that the site "meets applicable standards."

(5) "Inspected by a CASp" means the site was inspected by a CASp and is pending a determination by the CASp that the site meets applicable construction-related accessibility standards pursuant to paragraph (2) of subdivision (a) of Section 55.53. A site that is "CASp determination pending" on or before the effective date of the amendments made to this section by Senate Bill 1186 of the 2011-12 Regular Session of the Legislature means that the site was "inspected by a CASp."

(6) "Construction-related accessibility standard" means a provision, standard, or regulation under state or federal law requiring compliance with standards for making new construction and existing facilities accessible to persons with disabilities, including, but not limited to, any provision, standard, or regulation set forth in Section 51, 54, 54.1, or 55 of this code, Section 19955.5 of the Health and Safety Code, the California Building Standards Code (Title 24 of the California Code of Regulations), the federal Americans with Disabilities Act of 1990 (Public Law 101-336; 42 U.S.C. Sec. 12101 et seq.), and the federal Americans with Disabilities Act Accessibility Guidelines (Appendix A to Part 36 of Title 28 of the Code of Federal Regulations).

PL-ADD-021

(7) "Place of public accommodation" has the same meaning as "public accommodation," as set forth in Section 12181(7) of Title 42 of the United States Code and the federal regulations adopted pursuant to that section.

(8) "Qualified defendant" means a defendant in an action that includes a construction-related accessibility claim that is asserted against a place of public accommodation that met the requirements of "meets applicable standards" or "inspected by a CASp" prior to the date the defendant was served with the summons and complaint in that action. To be a qualified defendant, the defendant is not required to have been the party who hired any CASp, so long as the basis of the alleged liability of the defendant is a construction-related accessibility claim. To determine whether a defendant is a qualified defendant, the court need not make a finding that the place of public accommodation complies with all applicable construction-related accessibility standards as a matter of law. The court need only determine that the place of public accommodation has a status of "meets applicable standards" or "inspected by a CASp."

(9) "Site" means a place of public accommodation.

(b) Unless otherwise indicated, terms used in this part relating to civil procedure have the same meanings that those terms have in the Code of Civil Procedure.

**Credits**

(Added by Stats.2008, c. 549 (S.B.1608), § 3. Amended by Stats.2012, c. 383 (S.B.1186), § 7, eff. Sept. 19, 2012.)

West's Ann. Cal. Civ. Code § 55.52, CA CIVIL § 55.52

Current with Ch. 1 of 2023-24 1st Ex.Sess, and urgency legislation through Ch. 9 of 2023 Reg.Sess. Some statute sections may be more current, see credits for details.

**End of Document** © 2023 Thomson Reuters. No claim to original U.S. Government Works.

PL-ADD-022

WESTLAW © 2023 Thomson Reuters. No claim to original U.S. Government Works. 2

---

West's Annotated California Codes
  Civil Code (Refs & Annos)
    Division 1. Persons (Refs & Annos)
      Part 2.52. Construction-Related Accessibility Standards Compliance (Refs & Annos)

West's Ann.Cal.Civ.Code § 55.53

§ 55.53. Certified access specialists (CASp); post-inspection compliance requirements; conflicting regulations
or standards; post-inspection notice to owner or tenant of public accommodation; inspection certificate

Effective: May 10, 2016
Currentness

(a) For purposes of this part, a certified access specialist shall, upon completion of the inspection of a site, comply with the following:

(1) For a meets applicable standards site, if the CASp determines the site meets all applicable construction-related accessibility standards, the CASp shall provide a written inspection report to the requesting party that includes both of the following:

(A) An identification and description of the inspected structures and areas of the site.

(B) A signed and dated statement that includes both of the following:

(i) A statement that, in the opinion of the CASp, the inspected structures and areas of the site meet construction-related accessibility standards. The statement shall clearly indicate whether the determination of the CASp includes an assessment of readily achievable barrier removal.

(ii) If corrections were made as a result of the CASp inspection, an itemized list of all corrections and dates of completion.

(2) For an inspected by a CASp site, if the CASp determines that corrections are needed to the site in order for the site to meet all applicable construction-related accessibility standards, the CASp shall provide a signed and dated written inspection report to the requesting party that includes all of the following:

(A) An identification and description of the inspected structures and areas of the site.

(B) The date of the inspection.

(C) A statement that, in the opinion of the CASp, the inspected structures and areas of the site need correction to meet construction-related accessibility standards. This statement shall clearly indicate whether the determination of the CASp includes an assessment of readily achievable barrier removal.

---

PL-ADD-023

(D) An identification and description of the structures or areas of the site that need correction and the correction needed.

(E) A schedule of completion for each of the corrections within a reasonable timeframe.

(3) The CASp shall provide, within 30 days of the date of the inspection of a business that qualifies for the provisions of subparagraph (A) of paragraph (3) of subdivision (g) of Section 55.56, a copy of a report prepared pursuant to that subparagraph to the business.

(4) The CASp shall file, within 10 days of inspecting a business pursuant to subparagraph (A) of paragraph (3) of subdivision (g) of Section 55.56, a notice with the State Architect for listing on the State Architect's Internet Web site, as provided by subdivision (d) of Section 4459.7 of the Government Code, indicating that the CASp has inspected the business, the name and address of the business, the date of the filing, the date of the inspection of the business, the name and license number of the CASp, and a description of the structure or area inspected by the CASp.

(5) The CASp shall post the notice described in paragraph (4), in a form prescribed by the State Architect, in a conspicuous location within five feet of all public entrances to the building on the date of the inspection and instruct the business to keep it in place until the earlier of either of the following:

(A) One hundred twenty days after the date of the inspection.

(B) The date when all of the construction-related violations in the structure or area inspected by the CASp are corrected.

(b) For purposes of this section, in determining whether the site meets applicable construction-related accessibility standards when there is a conflict or difference between a state and federal provision, standard, or regulation, the state provision, standard, or regulation shall apply unless the federal provision, standard, or regulation is more protective of accessibility rights.

(c) Every CASp who conducts an inspection of a place of public accommodation shall, upon completing the inspection of the site, provide the building owner or tenant who requested the inspection with the following notice, which the State Architect shall make available as a form on the State Architect's Internet Web site:

**NOTICE TO PRIVATE PROPERTY OWNER/TENANT:**

YOU ARE ADVISED TO KEEP IN YOUR RECORDS ANY WRITTEN INSPECTION REPORT AND ANY OTHER DOCUMENTATION CONCERNING YOUR PROPERTY SITE THAT IS GIVEN TO YOU BY A CERTIFIED ACCESS SPECIALIST.

IF YOU BECOME A DEFENDANT IN A LAWSUIT THAT INCLUDES A CLAIM CONCERNING A SITE INSPECTED BY A CERTIFIED ACCESS SPECIALIST, YOU MAY BE ENTITLED TO A COURT STAY (AN ORDER TEMPORARILY STOPPING ANY LAWSUIT) OF THE CLAIM AND AN EARLY EVALUATION CONFERENCE.

IN ORDER TO REQUEST THE STAY AND EARLY EVALUATION CONFERENCE, YOU WILL NEED TO VERIFY THAT A CERTIFIED ACCESS SPECIALIST HAS INSPECTED THE SITE THAT IS THE SUBJECT OF THE CLAIM.

PL-ADD-024

WESTLAW © 2023 Thomson Reuters. No claim to original U.S. Government Works. 2

YOU WILL ALSO BE REQUIRED TO PROVIDE THE COURT AND THE PLAINTIFF WITH THE COPY OF A WRITTEN INSPECTION REPORT BY THE CERTIFIED ACCESS SPECIALIST, AS SET FORTH IN CIVIL CODE SECTION 55.54. THE APPLICATION FORM AND INFORMATION ON HOW TO REQUEST A STAY AND EARLY EVALUATION CONFERENCE MAY BE OBTAINED AT www.courts.ca.gov/selfhelp-start.htm.

YOU ARE ENTITLED TO REQUEST, FROM A CERTIFIED ACCESS SPECIALIST WHO HAS CONDUCTED AN INSPECTION OF YOUR PROPERTY, A WRITTEN INSPECTION REPORT AND OTHER DOCUMENTATION AS SET FORTH IN CIVIL CODE SECTION 55.53. YOU ARE ALSO ENTITLED TO REQUEST THE ISSUANCE OF A DISABILITY ACCESS INSPECTION CERTIFICATE, WHICH YOU MAY POST ON YOUR PROPERTY.

(d)(1) Commencing July 1, 2010, a local agency shall employ or retain at least one building inspector who is a certified access specialist. The certified access specialist shall provide consultation to the local agency, permit applicants, and members of the public on compliance with state construction-related accessibility standards with respect to inspections of a place of public accommodation that relate to permitting, plan checks, or new construction, including, but not limited to, inspections relating to tenant improvements that may impact access. If a local agency employs or retains two or more certified access specialists to comply with this subdivision, at least one-half of the certified access specialists shall be building inspectors who are certified access specialists.

(2) Commencing January 1, 2014, a local agency shall employ or retain a sufficient number of building inspectors who are certified access specialists to conduct permitting and plan check services to review for compliance with state construction-related accessibility standards by a place of public accommodation with respect to new construction, including, but not limited to, projects relating to tenant improvements that may impact access. If a local agency employs or retains two or more certified access specialists to comply with this subdivision, at least one-half of the certified access specialists shall be building inspectors who are certified access specialists.

(3) If a permit applicant or member of the public requests consultation from a certified access specialist, the local agency may charge an amount limited to a reasonable hourly rate, an estimate of which shall be provided upon request in advance of the consultation. A local government may additionally charge or increase permitting, plan check, or inspection fees to the extent necessary to offset the costs of complying with this subdivision. Any revenues generated from an hourly or other charge or fee increase under this subdivision shall be used solely to offset the costs incurred to comply with this subdivision. A CASp inspection pursuant to subdivision (a) by a building inspector who is a certified access specialist shall be treated equally for legal and evidentiary purposes as an inspection conducted by a private CASp. Nothing in this subdivision shall preclude permit applicants or any other person with a legal interest in the property from retaining a private CASp at any time.

(e)(1) Every CASp who completes an inspection of a place of public accommodation shall, upon a determination that the site meets applicable standards pursuant to paragraph (1) of subdivision (a) or is inspected by a CASp pursuant to paragraph (2) of subdivision (a), provide the building owner or tenant requesting the inspection with a numbered disability access inspection certificate indicating that the site has undergone inspection by a certified access specialist. The disability access inspection certificate shall be dated and signed by the CASp inspector, and shall contain the inspector's name and license number. Upon issuance of a certificate, the CASp shall record the issuance of the numbered certificate, the name and address of the recipient, and the type of report issued pursuant to subdivision (a) in a record book the CASp shall maintain for that purpose.

(2) Beginning March 1, 2009, the State Architect shall make available for purchase by any local building department or CASp sequentially numbered disability access inspection certificates that are printed with a watermark or other feature to deter forgery and that comply with the information requirements specified in subdivision (a).

PL-ADD-025

(3) The disability access inspection certificate may be posted on the premises of the place of public accommodation, unless, following the date of inspection, the inspected site has been modified or construction has commenced to modify the inspected site in a way that may impact compliance with construction-related accessibility standards.

(f) Nothing in this section or any other law is intended to require a property owner or tenant to hire a CASp. A property owner's or tenant's election not to hire a CASp shall not be admissible to prove that person's lack of intent to comply with the law.

**Credits**

(Added by Stats.2008, c. 549 (S.B.1608), § 3. Amended by Stats.2012, c. 383 (S.B.1186), § 8, eff. Sept. 19, 2012; Stats.2016, c. 13 (S.B.269), § 1, eff. May 10, 2016.)

West's Ann. Cal. Civ. Code § 55.53, CA CIVIL § 55.53

Current with Ch. 1 of 2023-24 1st Ex.Sess, and urgency legislation through Ch. 9 of 2023 Reg.Sess. Some statute sections may be more current, see credits for details.

**End of Document**                         © 2023 Thomson Reuters. No claim to original U.S. Government Works.

PL-ADD-026

West's Annotated California Codes
  Civil Code (Refs & Annos)
    Division 1. Persons (Refs & Annos)
      Part 2.52. Construction-Related Accessibility Standards Compliance (Refs & Annos)

West's Ann.Cal.Civ.Code § 55.54

§ 55.54. Service of summons and complaint in construction-related accessibility claim
action; simultaneous service of specified notice and application for early evaluation
conference; actions following service; construction and application of provisions

Effective: October 10, 2015
Currentness

(a)(1) An attorney who causes a summons and complaint to be served in an action that includes a construction-related accessibility claim, including, but not limited to, a claim brought under Section 51, 54, 54.1, or 55, shall, at the same time, cause to be served a copy of the application form specified in subdivision (c) and a copy of the following notice, including, until January 1, 2013, the bracketed text, to the defendant on separate papers that shall be served with the summons and complaint:

ADVISORY NOTICE TO DEFENDANT

YOU MAY BE ENTITLED TO ASK FOR A COURT STAY (AN ORDER TEMPORARILY STOPPING ANY LAWSUIT) AND EARLY EVALUATION CONFERENCE IN THIS LAWSUIT AND MAY BE ASSESSED REDUCED STATUTORY DAMAGES IF YOU MEET CERTAIN CONDITIONS.

If the construction-related accessibility claim pertains to a site that has a Certified Access Specialist (CASp) inspection report for that site, or to a site where new construction or improvement was approved after January 1, 2008, by the local building permit and inspection process, you may make an immediate request for a court stay and early evaluation conference in the construction-related accessibility claim by filing the attached application form with the court. You may be entitled to the court stay and early evaluation conference regarding the accessibility claim only if ALL of the statements in the application form applicable to you are true.

FURTHER, if you are a defendant described above (with a CASp inspection report or with new construction after January 1, 2008), and, to the best of your knowledge, there have been no modifications or alterations completed or commenced since the CASp report or building department approval of the new construction or improvement that impacted compliance with construction-related accessibility standards with respect to the plaintiff's claim, your liability for minimum statutory damages may be reduced to $1,000 for each offense, unless the violation was intentional, and if all construction-related accessibility violations giving rise to the claim are corrected within 60 days of being served with this complaint.

ALSO, if your business has been served with a complaint filed by a high-frequency litigant, as defined in subdivision (b) of Section 425.55 of the Code of Civil Procedure, asserting a construction-related accessibility claim, including, but not limited to, a claim brought under Section 51, 54, 54.1, or 55 of the Civil Code, you may also be entitled to a court stay and an early evaluation conference. If you choose to request a stay and early evaluation conference, you may also request to meet in person with the plaintiff and counsel for both parties, as well as experts if the parties so elect, at the subject premises no later than 30 days after issuance of the court order to jointly inspect the portions of the subject premises and review any conditions that are claimed to constitute a violation of a construction-related accessibility standard.

PL-ADD-027

IN ADDITION, if your business is a small business that, over the previous three years, or the existence of the business if less than three years, employs 25 or fewer employees on average over that time period and meets specified gross receipts criteria, you may also be entitled to the court stay and early evaluation conference and your minimum statutory damages for each claim may be reduced to $2,000 for each offense, unless the violation was intentional, and if all the alleged construction-related accessibility violations are corrected within 30 days of being served with the complaint.

If you plan to correct the violations giving rise to the claim, you should take pictures and measurements or similar action to document the condition of the physical barrier asserted to be the basis for a violation before undertaking any corrective action in case a court needs to see the condition of a barrier before it was corrected.

The court will schedule the conference to be held within 70 days after you file the attached application form.

[If you are not a defendant with a CASp inspection report, until a form is adopted by the Judicial Council, you may use the attached form if you modify the form and supplement it with your declaration stating any one of the following:

(1) Until January 1, 2018, that the site's new construction or improvement on or after January 1, 2008, and before January 1, 2016, was approved pursuant to the local building permit and inspection process; that, to the best of your knowledge, there have been no modifications or alterations completed or commenced since the building department approval that impacted compliance with construction-related accessibility standards with respect to the plaintiff's claim; and that all violations giving rise to the claim have been corrected, or will be corrected within 60 days of the complaint being served.

(2) That the site's new construction or improvement passed inspection by a local building department inspector who is a certified access specialist; that, to the best of your knowledge, there have been no modifications or alterations completed or commenced since that inspection approval that impacted compliance with construction-related accessibility standards with respect to the plaintiff's claim; and that all violations giving rise to the claim have been corrected, or will be corrected within 60 days of the complaint being served.

(3) That your business is a small business with 25 or fewer employees and meets the gross receipts criteria set out in Section 55.56 of the Civil Code, and that all violations giving rise to the claim have been corrected, or will be corrected within 30 days of being served with the complaint.]

The court will also issue an immediate stay of the proceedings unless the plaintiff has obtained a temporary restraining order in the construction-related accessibility claim. You may obtain a copy of the application form, filing instructions, and additional information about the stay and early evaluation conference through the Judicial Council Internet Web site at www.courts.ca.gov/selfhelp-start.htm.

You may file the application after you are served with a summons and complaint, but no later than your first court pleading or appearance in this case, which is due within 30 days after you receive the summons and complaint. If you do not file the application, you will still need to file your reply to the lawsuit within 30 days after you receive the summons and complaint to contest it. You may obtain more information about how to represent yourself and how to file a reply without hiring an attorney at www.courts.ca.gov/selfhelp-start.htm.

You may file the application without the assistance of an attorney, but it may be in your best interest to immediately seek the assistance of an attorney experienced in disability access laws when you receive a summons and complaint. You may make an offer to settle the case, and it may be in your interest to put that offer in writing so that it may be considered under Section 55.55 of the Civil Code.

PL-ADD-028

(2) An attorney who files a Notice of Substitution of Counsel to appear as counsel for a plaintiff who, acting in propria persona, had previously filed a complaint in an action that includes a construction-related accessibility claim, including, but not limited to, a claim brought under Section 51, 54, 54.1, or 55, shall, at the same time, cause to be served a copy of the application form specified in subdivision (c) and a copy of the notice specified in paragraph (1) upon the defendant on separate pages that shall be attached to the Notice of Substitution of Counsel.

(b)(1) Notwithstanding any other law, upon being served with a summons and complaint asserting a construction-related accessibility claim, including, but not limited to, a claim brought under Section 51, 54, 54.1, or 55, a qualified defendant, or other defendant as defined in paragraph (2), may file a request for a court stay and early evaluation conference in the proceedings of that claim prior to or simultaneous with that defendant's responsive pleading or other initial appearance in the action that includes the claim. If that defendant filed a timely request for stay and early evaluation conference before a responsive pleading was due, the period for filing a responsive pleading shall be tolled until the stay is lifted. Any responsive pleading filed simultaneously with a request for stay and early evaluation conference may be amended without prejudice, and the period for filing that amendment shall be tolled until the stay is lifted.

(2) This subdivision shall also apply to a defendant if any of the following apply:

(A) Until January 1, 2018, the site's new construction or improvement on or after January 1, 2008, and before January 1, 2016, was approved pursuant to the local building permit and inspection process, and the defendant declares with the application that, to the best of the defendant's knowledge, there have been no modifications or alterations completed or commenced since that approval that impacted compliance with construction-related accessibility standards with respect to the plaintiff's claim, and that all violations have been corrected, or will be corrected within 60 days of being served with the complaint.

(B) The site's new construction or improvement was approved by a local public building department inspector who is a certified access specialist, and the defendant declares with the application that, to the best of the defendant's knowledge, there have been no modifications or alterations completed or commenced since that approval that impacted compliance with construction-related accessibility standards with respect to the plaintiff's claim, and that all violations have been corrected, or will be corrected within 60 days of being served with the complaint.

(C) The defendant is a small business described in subdivision (f) of Section 55.56, and the defendant declares with the application that all violations have been corrected, or will be corrected within 30 days of being served with the complaint.

(D) The defendant is a business that has been served with a complaint filed by a high-frequency litigant, as defined in subdivision (b) of Section 425.55 of the Code of Civil Procedure, asserting a construction-related accessibility claim, including, but not limited to, a claim brought under Section 51, 54, 54.1, or 55.

(3) Notwithstanding any other law, if the plaintiff had acted in propria persona in filing a complaint that includes a construction-related accessibility claim, including, but not limited to, a claim brought under Section 51, 54, 54.1, or 55, a qualified defendant, or a defendant described by paragraph (2), who is served with a Notice of Substitution of Counsel shall have 30 days to file an application for a stay and an early evaluation conference. The application may be filed prior to or after the defendant's filing of a responsive pleading or other initial appearance in the action that includes the claim, except that an application may not be filed in a claim in which an early evaluation conference or settlement conference has already been held on the claim.

PL-ADD-029

(c)(1) An application for an early evaluation conference and stay by a qualified defendant shall include a signed declaration that states both of the following:

(A) The site identified in the complaint has been CASp-inspected or meets applicable standards, or is CASp determination pending or has been inspected by a CASp, and if the site is CASp-inspected or meets applicable standards, there have been no modifications completed or commenced since the date of inspection that may impact compliance with construction-related accessibility standards to the best of the defendant's knowledge.

(B) An inspection report pertaining to the site has been issued by a CASp. The inspection report shall be provided to the court and the plaintiff at least 15 days prior to the court date set for the early evaluation conference.

(2) An application for an early evaluation conference and stay by a defendant described by subparagraph (A) of paragraph (2) of subdivision (b), which may be filed until January 1, 2018, shall include a signed declaration that states all of the following:

(A) The site's new construction or improvement was approved pursuant to the local building permit and inspection process on or after January 1, 2008, and before January 1, 2016.

(B) To the best of the defendant's knowledge there have been no modifications or alterations completed or commenced since that approval that impacted compliance with construction-related accessibility standards with respect to the plaintiff's claim.

(C) All construction-related violations giving rise to the claim have been corrected, or will be corrected within 60 days of the complaint being served upon the defendant.

(3) An application for an early evaluation conference and stay by a defendant described in subparagraph (B) of paragraph (2) of subdivision (b) shall include a signed declaration that states all of the following:

(A) The site's new construction or improvement was approved by a local building department inspector who is a certified access specialist.

(B) To the best of the defendant's knowledge there have been no modifications or alterations completed or commenced since that approval that impacted compliance with construction-related accessibility standards with respect to the plaintiff's claim.

(C) All construction related violations giving rise to the claim have been corrected, or will be corrected within 60 days of the complaint being served upon the defendant.

(4) An application for an early evaluation conference and stay by a defendant described by subparagraph (C) of paragraph (2) of subdivision (b) shall include the materials listed in paragraphs (5) and (6) of this subdivision, and shall include a signed declaration that states both of the following:

PL-ADD-030

(A) The defendant is a small business that employs 25 or fewer employees and meets the gross receipts eligibility criteria provided in paragraph (2) of subdivision (f) of Section 55.56.

(B) All construction-related violations giving rise to the claim have been corrected, or will be corrected within 30 days of the complaint being served upon the defendant.

(5) An application for an early evaluation conference and stay by a small business defendant under paragraph (4) shall include evidence showing correction of all violations within 30 days of the service of the complaint and served upon the plaintiff with the reply unless the application is filed prior to completion of the corrections. In that event, the evidence shall be provided to the court and served upon the plaintiff within 10 days of the court order as provided in paragraph (4) of subdivision (d). This paragraph shall not be construed to extend the permissible time under subdivision (f) of Section 55.56 to make the corrections.

(6) An application for an early evaluation conference and stay by a small business defendant under paragraph (4) shall also include both of the following, which shall be confidential documents filed only with the court and not served upon or available to the plaintiff:

(A) Proof of the defendant's number of employees, as shown by wage report forms filed with the Employment Development Department.

(B) Proof of the defendant's average gross receipts for the previous three years, or for the existence of the business if less than three years, as shown by a federal or state tax document.

(7) An application for an early evaluation conference and stay by a defendant described by subparagraph (D) of paragraph (2) of subdivision (b) shall include a signed declaration that the defendant was served with a complaint filed by a high-frequency litigant, as defined in subdivision (b) of Section 425.55 of the Code of Civil Procedure, asserting a construction-related accessibility claim, including, but not limited to, a claim brought under Section 51, 54, 54.1, or 55.

(8) The following provisional request and notice forms may be used and filed by a qualified defendant until forms are adopted by the Judicial Council for those purposes pursuant to subdivision (*l*):

PL-ADD-031

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number if attorney and address): | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO:      FAX NO. (Optional): | |
| E MAIL ADDRESS (Optional): | |
| ATTORNEY FOR (Name): | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF _____

STREET ADDRESS:

MAILING ADDRESS:

CITY AND ZIP CODE:

BRANCH NAME:

PLAINTIFF:

DEFENDANT:

| DEFENDANT'S APPLICATION FOR STAY AND EARLY EVALUATION CONFERENCE PURSUANT TO CIVIL CODE SECTION 55.54 (CONSTRUCTION-RELATED ACCESSIBILITY CLAIM) | CASE NUMBER: |
|---|---|

(Information about this application and the filing instructions may be obtained at http:// www.courtinfo.ca.gov/selfhelp/ )

1. Defendant (name)_____ requests a stay of proceedings and early evaluation conference pursuant to Civil Code Section 55.54.

2. The complaint in this case alleges a construction-related accessibility claim as defined under Civil Code Section 55.52(a)(1).

3. The claim concerns a site that (check the box if the statement is true):
   a. _____ Has been inspected by a Certified Access Specialist (CASp) and determined to be CASp inspected or CASp determination pending and, if CASp inspected, there have been no modifications completed or commenced since the date of inspection that may impact compliance with construction-related accessibility standards to the best of defendant's knowledge; and
   b. _____ An inspection report by a Certified Access Specialist (CASp) relating to the site has been issued
   (Both (a) and (b) must be met for the court to order a Stay and Early Evaluation Conference.)

4. I am requesting the court to:
   a. Stay the proceedings relating to the construction-related accessibility claim.
   b. Schedule an early evaluation conference.
   c. Order Defendant to file a confidential copy of the Certified Access Specialist (CASp) report with the court and serve a copy of the report on the Plaintiff at least fifteen (15) days before the Early Evaluation Conference date.
   d. Order Plaintiff to file the statement required by Civil Code Section 55.54(d)(6)(A)–(D) with the court and serve a copy of the statement on the Defendant at least fifteen (15) days before the date of the Early Evaluation Conference.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

_____      _____
(TYPE OR PRINT NAME OF DECLARANT)      (SIGNATURE OF DECLARANT)

_____
(TITLE OF DECLARANT)

DEFENDANT'S APPLICATION FOR EARLY EVALUATION CONFERENCE AND STAY OF PROCEEDINGS
(Construction-related Accessibility Claim)      Provisional Form

PL-ADD-032

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number of attorney, and address): | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.:          FAX NO. (Optional): | |
| E-MAIL ADDRESS (Optional): | |
| ATTORNEY FOR (Name): | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF _____

STREET ADDRESS:

MAILING ADDRESS:

CITY AND ZIP CODE:

BRANCH NAME:

PLAINTIFF:

DEFENDANT:

| NOTICE OF STAY OR PROCEEDINGS AND EARLY EVALUATION CONFERENCE (CONSTRUCTION-RELATED ACCESSIBILITY CLAIM) | CASE NUMBER: |
|---|---|

## Stay of Proceedings

For a period of 90 days from the date of the filing of this court notice, unless otherwise ordered by the court, the parties are stayed from taking any further action relating to the construction-related accessibility claim or claims in this case.

This stay does not apply to any construction-related accessibility claim in which the plaintiff has obtained temporary injunctive relief which is still in place.

## Notice of Early Evaluation Conference

1. This action includes a construction-related accessibility claim under Civil Code Section 55.52(a)(1) or other provision of law.

2. A defendant has requested an early evaluation conference and a stay of proceedings under Civil Code Section 55.54.

3. The early evaluation conference is scheduled as follows:

   a. Date:       Time:       Dept.:       Room:

   b. The conference will be held at _____ the court address shown above, or _____ at:

4. The plaintiff and defendant shall attend with any other person needed for settlement of the case unless, with court approval, a party's disability requires the party's participation by a telephone appearance or other alternate means or through the personal appearance of an authorized representative.

5. The defendant that requested the conference and stay of proceedings must file with the court and serve on all parties a copy of the CASp report for the site that is the subject of the construction-related accessibility claim at least fifteen (15) days before the date set for the early evaluation conference. The CASp report is confidential and only available as set forth below and in Civil Code Section 55.54(d)(4).

6. The CASp report shall be marked "CONFIDENTIAL" and may be disclosed only to counsel, the parties to the action, the parties' attorneys, those individuals employed or retained by the attorneys to assist in the litigation, and insurance representatives or others involved in the evaluation and settlement of the case.

7. The plaintiff shall file with the court and serve on all parties at least fifteen (15) days before the date set for the early evaluation conference a statement of, to the extent known, all of the following:
   a. An itemized list of specific issues on the subject premises that are the basis of the claimed construction-related accessibility violations in the plaintiff's complaint.
   b. The amount of damages claimed.
   c. The amount of attorney's fees and costs incurred to date, if any, that are being claimed, and
   d. Any demand for settlement of the case in its entirety.

PL-ADD-033

B. A copy of this Notice and Order and the Defendant's Application shall be served on the plaintiff or plaintiff's attorney by hand delivering it or mailing it to the address listed on the complaint on the same date that the court issues this Notice and Order of Stay of Proceedings and Early Evaluation Conference.

Date: _____     Clerk, by _____, Deputy

More information about this Notice and Order and the defendant's application, and instructions to assist plaintiff and defendants in complying with this Notice and Order, may be obtained at http://www.courtinfo.ca.gov/selfhelp/.)

---

### Requests for Accommodation

Assistive listening systems, computer-assisted real-time captioning, or sign language interpreter services are available if you ask at least 5 days before the date on which you are to appear. Contact the clerk's office or go to www.courtinfo.ca.gov/forms for Request for Accommodations by Persons with Disabilities and Order (form MC-410). (Civil Code Section 54.8)

---

### Proof of Service
(Required from Defendant Filing Application for Stay and Early Evaluation Conference)

I served a copy of the defendant's Application For Stay and Early Evaluation Conference Pursuant To Civil Code Section 55.54 and the court Notice and Order of Stay of Proceedings and Early Evaluation Conference (check one):

_____ On the Plaintiff's attorney

_____ On the Plaintiff who is not represented by an attorney

By hand delivering it or mailing it to the address listed on the complaint on the day the court issued this Notice and Order of Stay of Proceedings and Early Evaluation Conference.

I declare under penalty of perjury of the laws of the State of California that the foregoing is true and correct.

Date: _____

_____          _____
Type or Print Name                                          Signature

_____
Address of named person

---

NOTICE OF STAY OF PROCEEDINGS AND EARLY EVALUATION CONFERENCE
(Construction-related Accessibility Claim)                Provisional Form

(9) The provisional forms and any replacement Judicial Council forms shall include the defendant's declaration of proof of service of the application, the notice of the court's order, and the court's order pursuant to subdivision (d).

---

PL-ADD-034

(d) Upon the filing of an application for stay and early evaluation conference by a qualified defendant, or a defendant described by paragraph (2) of subdivision (b), the court shall immediately issue an order that does all of the following:

(1) Grants a 90-day stay of the proceedings with respect to the construction-related accessibility claim, unless the plaintiff has obtained temporary injunctive relief that is still in place for the construction-related accessibility claim.

(2) Schedules a mandatory early evaluation conference for a date as soon as possible from the date of the order, but in no event later than 70 days after issuance of the order, and in no event earlier than 50 days after the filing of the request.

(3) Directs the parties, and any other person whose authority is required to negotiate and enter into settlement, to appear in person at the time set for the conference. Appearance by counsel shall not satisfy the requirement that the parties or those with negotiation and settlement authority personally appear, provided, however, that the court may allow a party who is unable to attend in person due to his or her disability to participate in the hearing by telephone or other alternative means or through a representative authorized to settle the case.

(4)(A) Directs the qualified defendant to file with the court and serve on the plaintiff a copy of any relevant CASp inspection report at least 15 days before the date of the conference. The CASp inspection report is confidential and is available only as set forth in paragraph (5) of this subdivision and in paragraph (4) of subdivision (e).

(B) Directs a defendant described by subparagraph (A) or (B) of paragraph (2) of subdivision (b) who has filed a declaration stating that the violation or violations have been corrected, or will be corrected within 60 days of service of the complaint to file with the court and serve on the plaintiff evidence showing correction of the violation or violations within 10 calendar days after the completion of the corrections.

(C) Directs a defendant described by subparagraph (C) of paragraph (2) of subdivision (b) who has filed a declaration stating that the violation or violations have been corrected, or will be corrected within 30 days of service of the complaint to file with the court and serve on the plaintiff within 10 days after issuance of the court order evidence of correction of the violation or violations, if that evidence showing correction was not filed previously with the application and served on the plaintiff.

(5) Directs the parties that the CASp inspection report may be disclosed only to the court, the parties to the action, the parties' attorneys, those individuals employed or retained by the attorneys to assist in the litigation, and insurance representatives or others involved in the evaluation and settlement of the case.

(6) If the defendant so requests, directs the parties that no later than 30 days after issuance of the court order the parties and their counsel, accompanied by their experts if the parties so elect, shall meet in person at the subject premises. They shall jointly inspect the portions of the subject premises, and shall review any programmatic or policy issues, that are claimed to constitute a violation of a construction-related accessibility standard. The court may allow a plaintiff who is unable to meet in person at the subject premises to be excused from participating in a site visit or to participate by telephone or other alternative means for good cause. A plaintiff or plaintiff's counsel is not required, but may agree, to attend more than one in-person site meeting. A site inspection pursuant to this paragraph shall not affect the right of the parties to conduct otherwise appropriate discovery.

PL-ADD-035

(7) Directs the plaintiff to file with the court and serve on the defendant at least 15 days before the date of the conference a statement that includes, to the extent reasonably known, for use solely for the purpose of the early evaluation conference, all of the following:

(A) An itemized list of specific conditions on the subject premises that are the basis of the claimed violations of construction-related accessibility standards in the plaintiff's complaint.

(B) The amount of damages claimed.

(C) The amount of attorney's fees and costs incurred to date, if any, that are being claimed.

(D) Any demand for settlement of the case in its entirety.

(e)(1) A party failing to comply with any court order may be subject to court sanction at the court's discretion.

(2)(A) The court shall lift the stay when the defendant has failed to file and serve the CASp inspection report prior to the early evaluation conference and has failed also to produce the report at the time of the early evaluation conference, unless the defendant shows good cause for that failure.

(B) The court shall lift the stay when a defendant described by paragraph (2) of subdivision (b) has failed to file and serve the evidence showing correction of the violation or violations as required by law.

(3) The court may lift the stay at the conclusion of the early evaluation conference upon a showing of good cause by the plaintiff. Good cause may include the defendant's failure to make reasonably timely progress toward completion of corrections noted by a CASp.

(4) The CASp inspection report filed and served pursuant to subdivision (d) shall remain confidential throughout the stay and shall continue to be confidential until the conclusion of the claim, whether by dismissal, settlement, or final judgment, unless there is a showing of good cause by any party. Good cause may include the defendant's failure to make reasonably timely progress toward completion of corrections noted by a CASp. The confidentiality of the inspection report shall terminate upon the conclusion of the claim, unless the owner of the report obtains a court order pursuant to the California Rules of Court to seal the record.

(f) All discussions at the early evaluation conference shall be subject to Section 1152 of the Evidence Code. It is the intent of the Legislature that the purpose of the evaluation conference shall include, but not be limited to, evaluation of all of the following, as applicable:

(1) Whether the defendant is entitled to the 90-day stay for some or all of the identified issues in the case, as a qualified defendant.

PL-ADD-036

(2) The current condition of the site and the status of any plan of corrections, including whether the qualified defendant has corrected or is willing to correct the alleged violations, and the timeline for doing so.

(3) Whether subdivision (f) of Section 55.56 may be applicable to the case, and whether all violations giving rise to the claim have been corrected within the specified time periods.

(4) Whether the case, including any claim for damages or injunctive relief, can be settled in whole or in part.

(5) Whether the parties should share other information that may facilitate early evaluation and resolution of the dispute.

(g) Nothing in this section precludes any party from making an offer to compromise pursuant to Section 998 of the Code of Civil Procedure.

(h) For a claim involving a qualified defendant, as provided in paragraph (1) of subdivision (b), the court may schedule additional conferences and may extend the 90-day stay for good cause shown, but not to exceed one additional 90-day extension.

(i) Early evaluation conferences shall be conducted by a superior court judge or commissioner, or a court early evaluation conference officer. A commissioner shall not be qualified to conduct early evaluation conferences pursuant to this subdivision unless he or she has received training regarding disability access requirements imposed by the federal Americans with Disabilities Act of 1990 (Public Law 101-336; 42 U.S.C. Sec. 12101 et seq.), state laws that govern access to public facilities, and federal and state regulations adopted pursuant to those laws. For purposes of this subdivision, a "court early evaluation conference officer" means an attorney employed by the court who has received training regarding disability access requirements imposed by the federal Americans with Disabilities Act of 1990, state laws that govern access to public facilities, and federal and state regulations adopted pursuant to those laws. Attorneys serving in this capacity may also be utilized by the court for other purposes not related to these proceedings.

(j) Nothing in this part shall be deemed to make any inspection report, opinion, statement, or other finding or conclusion of a CASp binding on the court, or to abrogate in any manner the ultimate authority of the court to make all appropriate findings of fact and law. The CASp inspection report and any opinion, statement, finding, or conclusion therein shall be given the weight the trier of fact finds that it deserves.

(k) Nothing in this part shall be construed to invalidate or limit any California construction-related accessibility standard that provides greater or equal protection for the rights of individuals with disabilities than is afforded by the federal Americans with Disabilities Act (Public Law 101-336; 42 U.S.C. Sec. 12101 et seq.) and the federal regulations adopted pursuant to that act.

(*l*)(1) The Judicial Council shall, by January 1, 2013, prepare and post on its Internet Web site instructions and a form for use by a qualified defendant, or other defendant described by paragraph (2) of subdivision (b), to file an application for stay and early evaluation conference as provided in subdivisions (b) and (c), a form for the court's notice of stay and early evaluation conference, and any other forms appropriate to implement the provisions relating to early evaluation conferences. Until those forms are adopted, the Judicial Council shall post on its Internet Web site the provisional forms set forth in subdivision (c).

WESTLAW  © 2023 Thomson Reuters. No claim to original U.S. Government Works.

(2) Until the adoption of the forms as provided in paragraph (1), the provisional application form may be used by a defendant described by paragraph (2) of subdivision (b).

(3) In lieu of the provisions specified in number 3 of page 1 of the application form set forth in paragraph (7) of subdivision (c), the application shall include one of the following declarations of the defendant as to the basis for the application, as follows:

(A) That all of the following apply to a defendant described by subparagraph (A) of paragraph (2) of subdivision (b):

(i) The site's new construction or improvement was approved pursuant to the local building permit and inspection process on or after January 1, 2008, and before January 1, 2016.

(ii) To the best of the defendant's knowledge there have been no modifications or alterations completed or commenced since that approval that impacted compliance with construction-related accessibility standards with respect to the plaintiff's claim.

(iii) All the violations giving rise to the claim have been corrected, or will be corrected within 60 days of the complaint being served.

(B) That all of the following apply to a defendant described by subparagraph (B) of paragraph (2) of subdivision (b):

(i) The site's new construction or improvement was approved by a local public building department inspector who is a certified access specialist.

(ii) To the best of the defendant's knowledge there have been no modifications or alterations completed or commenced since that approval that impacted compliance with construction-related accessibility standards with respect to the plaintiff's claim.

(iii) All the violations giving rise to the claim have been corrected, or will be corrected within 60 days of the complaint being served.

(C) That both of the following apply to a defendant described by subparagraph (C) of paragraph (2) of subdivision (b):

(i) The defendant is a small business described in paragraph (2) of subdivision (f) of Section 55.56.

(ii) The violation or violations giving rise to the claim have been corrected, or will be corrected within 30 days of the complaint being served.

(4) In lieu of the provision specified in number 4(c) of page 1 of the application form set forth in paragraph (7) of subdivision (c), the application shall include a request that the court order the defendant to do either of the following:

PL-ADD-038

(A) For a defendant who has filed a declaration stating that all violations have been corrected, or will be corrected within 60 days of service of the complaint, file with the court and serve on the plaintiff evidence showing correction of the violation or violations within 10 calendar days of the completion of the corrections.

(B) For a defendant who is a small business that has filed a declaration stating that all the violations have been corrected, or will be corrected within 30 days of the service of the complaint, file with the court and serve on the plaintiff evidence showing correction of the violation or violations within 10 calendar days after issuance of the court order, if that evidence showing correction was not filed previously with the application and served on the plaintiff.

(5) The Judicial Council shall also prepare and post on its Internet Web site instructions and cover pages to assist plaintiffs and defendants, respectively, to comply with their filing responsibilities under subdivision (d). The cover pages shall also provide for the party's declaration of proof of service of the pertinent document served under the court order.

(m) The stay provisions shall not apply to any construction-related accessibility claim in which the plaintiff has been granted temporary injunctive relief that remains in place.

(n) This section shall not apply to any action brought by the Attorney General, or by any district attorney, city attorney, or county counsel.

(o) The amendments to this section made by Senate Bill 1186 of the 2011-12 Regular Session of the Legislature shall apply only to claims filed on or after the operative date of that act. Nothing in this part is intended to affect any complaint filed before that date.

(p) Nothing in this part is intended to affect existing law regarding class action requirements.

**Credits**
(Added by Stats.2008, c. 549 (S.B.1608), § 3. Amended by Stats.2009, c. 569 (S.B.209), § 1; Stats.2012, c. 383 (S.B.1186), § 9, eff. Sept. 19, 2012; Stats.2015, c. 755 (A.B.1521), § 4, eff. Oct. 10, 2015.)

West's Ann. Cal. Civ. Code § 55.54, CA CIVIL § 55.54
Current with Ch. 1 of 2023-24 1st Ex.Sess, and urgency legislation through Ch. 9 of 2023 Reg.Sess. Some statute sections may be more current, see credits for details.

**End of Document**                                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

PL-ADD-039

West's Annotated California Codes
  Civil Code (Refs & Annos)
    Division 1. Persons (Refs & Annos)
      Part 2.53. Attorney's Fees and Statutory Damages in Construction-Related Accessibility Standards Claims (Refs & Annos)

West's Ann.Cal.Civ.Code § 55.55

§ 55.55. Attorney's fees and costs; additional factors to consider

Effective: January 1, 2009
Currentness

Notwithstanding subdivision (f) of Section 55.54, in determining an award of reasonable attorney's fees and recoverable costs with respect to any construction-related accessibility claim, the court may consider, along with other relevant information, written settlement offers made and rejected by the parties. Nothing in this section affects or modifies the inadmissibility of evidence regarding offers of compromise pursuant to Section 1152 of the Evidence Code, including, but not limited to, inadmissibility to prove injury or damage.

**Credits**
(Added by Stats.2008, c. 549 (S.B.1608), § 4.)

West's Ann. Cal. Civ. Code § 55.55, CA CIVIL § 55.55
Current with Ch. 1 of 2023-24 1st Ex.Sess, and urgency legislation through Ch. 9 of 2023 Reg.Sess. Some statute sections may be more current, see credits for details.

**End of Document**                                      © 2023 Thomson Reuters. No claim to original U.S. Government Works.

PL-ADD-040

West's Annotated California Codes
  Civil Code (Refs & Annos)
    Division 1. Persons (Refs & Annos)
      Part 2.53. Attorney's Fees and Statutory Damages in Construction-Related Accessibility Standards Claims (Refs & Annos)

West's Ann.Cal.Civ.Code § 55.56

§ 55.56. Statutory damages awards; grounds; rebuttable presumptions; exemption from liability

Effective: May 10, 2016
Currentness

(a) Statutory damages under either subdivision (a) of Section 52 or subdivision (a) of Section 54.3 may be recovered in a construction-related accessibility claim against a place of public accommodation only if a violation or violations of one or more construction-related accessibility standards denied the plaintiff full and equal access to the place of public accommodation on a particular occasion.

(b) A plaintiff is denied full and equal access only if the plaintiff personally encountered the violation on a particular occasion, or the plaintiff was deterred from accessing a place of public accommodation on a particular occasion.

(c) A violation personally encountered by a plaintiff may be sufficient to cause a denial of full and equal access if the plaintiff experienced difficulty, discomfort, or embarrassment because of the violation.

(d) A plaintiff demonstrates that he or she was deterred from accessing a place of public accommodation on a particular occasion only if both of the following apply:

(1) The plaintiff had actual knowledge of a violation or violations that prevented or reasonably dissuaded the plaintiff from accessing a place of public accommodation that the plaintiff intended to use on a particular occasion.

(2) The violation or violations would have actually denied the plaintiff full and equal access if the plaintiff had accessed the place of public accommodation on that particular occasion.

(e)(1) The following technical violations are presumed to not cause a person difficulty, discomfort, or embarrassment for the purpose of an award of minimum statutory damages in a construction-related accessibility claim, as set forth in subdivision (c), where the defendant is a small business, as described by subparagraph (B) of paragraph (2) of subdivision (g), the defendant has corrected, within 15 days of the service of a summons and complaint asserting a construction-related accessibility claim or receipt of a written notice, whichever is earlier, all of the technical violations that are the basis of the claim, and the claim is based on one or more of the following violations:

(A) Interior signs, other than directional signs or signs that identify the location of accessible elements, facilities, or features, when not all such elements, facilities, or features are accessible.

PL-ADD-041

(B) The lack of exterior signs, other than parking signs and directional signs, including signs that indicate the location of accessible pathways or entrance and exit doors when not all pathways, entrance and exit doors are accessible.

(C) The order in which parking signs are placed or the exact location or wording of parking signs, provided that the parking signs are clearly visible and indicate the location of accessible parking and van-accessible parking.

(D) The color of parking signs, provided that the color of the background contrasts with the color of the information on the sign.

(E) The color of parking lot striping, provided that it exists and provides sufficient contrast with the surface upon which it is applied to be reasonably visible.

(F) Faded, chipped, damaged, or deteriorated paint in otherwise fully compliant parking spaces and passenger access aisles in parking lots, provided that it indicates the required dimensions of a parking space or access aisle in a manner that is reasonably visible.

(G) The presence or condition of detectable warning surfaces on ramps, except where the ramp is part of a pedestrian path of travel that intersects with a vehicular lane or other hazardous area.

(2) The presumption set forth in paragraph (1) affects the plaintiff's burden of proof and is rebuttable by evidence showing, by a preponderance of the evidence, that the plaintiff did, in fact, experience difficulty, discomfort, or embarrassment on the particular occasion as a result of one or more of the technical violations listed in paragraph (1).

(3) This subdivision shall apply only to claims filed on or after the effective date of Senate Bill 269 of the 2015-16 Regular Session.

(f) Statutory damages may be assessed pursuant to subdivision (a) based on each particular occasion that the plaintiff was denied full and equal access, and not upon the number of violations of construction-related accessibility standards identified at the place of public accommodation where the denial of full and equal access occurred. If the place of public accommodation consists of distinct facilities that offer distinct services, statutory damages may be assessed based on each denial of full and equal access to the distinct facility, and not upon the number of violations of construction-related accessibility standards identified at the place of public accommodation where the denial of full and equal access occurred.

(g)(1) Notwithstanding any other law, a defendant's liability for statutory damages in a construction-related accessibility claim against a place of public accommodation is reduced to a minimum of one thousand dollars ($1,000) for each offense if the defendant demonstrates that it has corrected all construction-related violations that are the basis of a claim within 60 days of being served with the complaint, and the defendant demonstrates any of the following:

(A) The structure or area of the alleged violation was determined to be "CASp-inspected" or "meets applicable standards" and, to the best of the defendant's knowledge, there were no modifications or alterations that impacted compliance with construction-

PL-ADD-042

related accessibility standards with respect to the plaintiff's claim that were completed or commenced between the date of that determination and the particular occasion on which the plaintiff was allegedly denied full and equal access.

(B) The structure or area of the alleged violation was the subject of an inspection report indicating "CASp determination pending" or "Inspected by a CASp," and the defendant has either implemented reasonable measures to correct the alleged violation before the particular occasion on which the plaintiff was allegedly denied full and equal access, or the defendant was in the process of correcting the alleged violation within a reasonable time and manner before the particular occasion on which the plaintiff was allegedly denied full and equal access.

(C) For a claim alleging a construction-related accessibility violation filed before January 1, 2018, the structure or area of the alleged violation was a new construction or an improvement that was approved by, and passed inspection by, the local building department permit and inspection process on or after January 1, 2008, and before January 1, 2016, and, to the best of the defendant's knowledge, there were no modifications or alterations that impacted compliance with respect to the plaintiff's claim that were completed or commenced between the completion date of the new construction or improvement and the particular occasion on which the plaintiff was allegedly denied full and equal access.

(D) The structure or area of the alleged violation was new construction or an improvement that was approved by, and passed inspection by, a local building department official who is a certified access specialist, and, to the best of the defendant's knowledge, there were no modifications or alterations that affected compliance with respect to the plaintiff's claim that were completed or commenced between the completion date of the new construction or improvement and the particular occasion on which the plaintiff was allegedly denied full and equal access.

(2) Notwithstanding any other law, a defendant's liability for statutory damages in a construction-related accessibility claim against a place of public accommodation is reduced to a minimum of two thousand dollars ($2,000) for each offense if the defendant demonstrates both of the following:

(A) The defendant has corrected all construction-related violations that are the basis of a claim within 30 days of being served with the complaint.

(B) The defendant is a small business that has employed 25 or fewer employees on average over the past three years, or for the years it has been in existence if less than three years, as evidenced by wage report forms filed with the Economic Development Department, and has average annual gross receipts of less than three million five hundred thousand dollars ($3,500,000) over the previous three years, or for the years it has been in existence if less than three years, as evidenced by federal or state income tax returns. The average annual gross receipts dollar amount shall be adjusted biannually by the Department of General Services for changes in the California Consumer Price Index for All Urban Consumers, as compiled by the Department of Industrial Relations. The Department of General Services shall post that adjusted amount on its Internet Web site.

(3)(A) Notwithstanding any other law, a defendant shall not be liable for minimum statutory damages in a construction-related accessibility claim, with respect to a violation noted in a report by a certified access specialist (CASp), for a period of 120 days following the date of the inspection if the defendant demonstrates compliance with each of the following:

PL-ADD-043

(i) The defendant is a business that, as of the date of inspection, has employed 50 or fewer employees on average over the past three years, or for the years it has been in existence if less than three years, as evidenced by wage report forms filed with the Employment Development Department.

(ii) The structure or area of the alleged violation was the subject of an inspection report indicating "CASp determination pending" or "Inspected by a CASp."

(iii) The inspection predates the filing of the claim by, or receipt of a demand letter from, the plaintiff regarding the alleged violation of a construction-related accessibility standard, and the defendant was not on notice of the alleged violation prior to the CASp inspection.

(iv) The defendant has corrected, within 120 days of the date of the inspection, all construction-related violations in the structure or area inspected by the CASp that are noted in the CASp report that are the basis of the claim.

(B) Notwithstanding any other law, a defendant who claims the benefit of the reduction of, or protection from liability for, minimum statutory damages under this subdivision shall disclose the date and findings of any CASp inspection to a plaintiff if relevant to a claim or defense in an action.

(4) A defendant may claim the protection from liability for minimum statutory damages under paragraph (3) only once for each structure or area inspected by a CASp, unless the inspected structure or area has undergone modifications or alterations that affect the compliance with construction-related accessibility standards of those structures or areas after the date of the last inspection, and the defendant obtains an additional CASp inspection within 30 days of final approval by the building department or certificate of occupancy, as appropriate, regarding the modification or alterations.

(5) If the defendant has failed to correct, within 120 days of the date of the inspection, all construction-related violations in the structure or area inspected by the CASp that are noted in the CASp report, the defendant shall not receive any protection from liability for minimum statutory damages pursuant to paragraph (3), unless a building permit is required for the repairs which cannot reasonably be completed by the defendant within 120 days and the defendant is in the process of correcting the violations noted in the CASp report, as evidenced by having, at least, an active building permit necessary for the repairs to correct the violation that was noted, but not corrected, in the CASp report and all of the repairs are completed within 180 days of the date of the inspection.

(6) This subdivision shall not be applicable to intentional violations.

(7) Nothing in this subdivision affects the awarding of actual damages, or affects the awarding of treble actual damages.

(8) This subdivision shall apply only to claims filed on or after the effective date of Chapter 383 of the Statutes of 2012, except for paragraphs (3), (4), and (5), which shall apply only to claims filed on or after the effective date of Senate Bill 269 of the 2015-16 Regular Session. Nothing in this subdivision is intended to affect a complaint filed before those dates, as applicable.

PL-ADD-044

(h) This section does not alter the applicable law for the awarding of injunctive or other equitable relief for a violation or violations of one or more construction-related accessibility standards, nor alter any legal obligation of a party to mitigate damages.

(i) In assessing liability under subdivision (d), in an action alleging multiple claims for the same construction-related accessibility violation on different particular occasions, the court shall consider the reasonableness of the plaintiff's conduct in light of the plaintiff's obligation, if any, to mitigate damages.

(j) For purposes of this section, the "structure or area inspected" means one of the following: the interior of the premises, the exterior of the premises, or both the interior and exterior.

**Credits**
(Added by Stats.2008, c. 549 (S.B.1608), § 4. Amended by Stats.2012, c. 383 (S.B.1186), § 11, eff. Sept. 19, 2012; Stats.2013, c. 76 (A.B.383), § 9; Stats.2016, c. 13 (S.B.269), § 2, eff. May 10, 2016.)

West's Ann. Cal. Civ. Code § 55.56, CA CIVIL § 55.56
Current with Ch. 1 of 2023-24 1st Ex.Sess, and urgency legislation through Ch. 9 of 2023 Reg.Sess. Some statute sections may be more current, see credits for details.

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

PL-ADD-045

West's Annotated California Codes
Civil Code (Refs & Annos)
Division 1. Persons (Refs & Annos)
Part 2.53. Attorney's Fees and Statutory Damages in Construction-Related Accessibility Standards Claims (Refs & Annos)

West's Ann.Cal.Civ.Code § 55.57

§ 55.57. Application of Part

Effective: January 1, 2009
Currentness

(a) This part shall apply only to claims filed on or after January 1, 2009. Nothing in this part is intended to affect litigation filed before that date, and no inference shall be drawn from provisions contained in this part concerning the state of the law as it existed prior to January 1, 2009.

(b) Nothing in this part is intended to affect existing law regarding class action requirements.

**Credits**
(Added by Stats.2008, c. 549 (S.B.1608), § 4.)

West's Ann. Cal. Civ. Code § 55.57, CA CIVIL § 55.57
Current with Ch. 1 of 2023-24 1st Ex.Sess, and urgency legislation through Ch. 9 of 2023 Reg.Sess. Some statute sections may be more current, see credits for details.

**End of Document**  © 2023 Thomson Reuters. No claim to original U.S. Government Works.

PL-ADD-046

WESTLAW © 2023 Thomson Reuters. No claim to original U.S. Government Works. 1