No. 22-55873

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

LUKE DAVIS, JULIAN VARGAS, and AMERICAN COUNCIL OF THE BLIND,
individually and on behalf all others similarly situated.,
*Plaintiffs-Appellees*,

v.

LABORATORY CORPORATION OF AMERICA HOLDINGS
DBA LABCORP,
*Defendant-Appellant*.

_____

On Appeal from the United States District Court for the Central District of California
District Court Case No. 2:20-cv- 00893-FMO-KS
The Honorable Fernando M. Olguin

_____

## BRIEF OF *AMICI CURIAE* IMPACT FUND, DISABILITY RIGHTS ADVOCATES *and others* IN SUPPORT OF PLAINTIFFS-APPELLEES

_____

Lindsay Nako
Fawn Jade Rajbhandari-Korr
IMPACT FUND
2080 Addison Street, Suite 5
Berkeley, California 94704
Tel: (510) 845-3473
lnako@impactfund.org
fkorr@impactfund.org

*Counsel for Amici Curiae*

Thomas P. Zito
DISABILITY RIGHTS ADVOCATES
2001 Center St., 3rd Fl.
Berkeley, CA 94704
Tel: (510) 665-8644
tzito@dralegal.org

# DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a), the undersigned counsel states that Disability Rights Advocates, Impact Fund, Access Ready, the American Foundation of the Blind, The Autistic Self Advocacy Network, The Autistic Women & Nonbinary Network, Civil Rights Education and Enforcement Center, The Disability Rights Bar Association, Disability Rights California, The Disability Rights Education and Defense Fund, Justice in Aging, Legal Aid at Work, LightHouse for the Blind and Visually Impaired, National Association of the Deaf, the National Federation of the Blind, and the Public Interest Law Project are all 501(c)(3) organizations and are not publicly held corporations; none have any parent corporation; and none have shares owned by any publicly held corporation.

Dated: June 21, 2023          By: */s/ Thomas Zito*

Thomas Zito
DISABILITY RIGHTS ADVOCATES

*Attorneys for Amici Curiae Disability Rights Advocates, Impact Fund, Access Ready, the American Foundation of the Blind, The Autistic Self Advocacy Network, The Autistic Women & Nonbinary Network, Civil Rights Education and Enforcement Center, The Disability Rights Bar Association, Disability Rights California, The Disability Rights Education and Defense Fund, Justice in Aging, Legal Aid at Work, LightHouse for the Blind and Visually Impaired, National Association of the Deaf, the National Federation of the Blind, and the Public Interest Law Project.*

i

# **TABLE OF CONTENTS**

DISCLOSURE STATEMENT ............................................................... i

INTEREST OF AMICI CURIAE ..........................................................1

      A.    Certification of Consent and Authorship ...................................2

      B.    Statement of Interests of Individual Amici ...............................2

INTRODUCTION AND SUMMARY OF ARGUMENT .......................9

ARGUMENT ...................................................................................10

    I.    The Unruh Act Prohibits a Wide Range of Discriminatory Conduct and "Is to Be Given a Liberal Construction." ..........................................................................11

      A.    The Legislature's Intent to Eradicate Discrimination Is Evident in Its Adoption and Expansion of the Unruh Act. .....................................................12

      B.    The Unruh Act's Statutory Damages Provision Recognizes that the Legal Harm Resulting from Acts of Discrimination Goes Beyond Economic Losses. .....................................................................14

      C.    California's Legislature and Supreme Court Have Preserved and Expanded Legal Rights to Access for People with Disabilities. ...........................................17

      D.    The California Supreme Court Recently Reiterated the Broad Scope of Standing for Injuries Encompassed by the Unruh Act ...............................................19

    II.    Federal Courts Continue to Consider Unequal Treatment a Concrete Injury. ..........................................................20

CONCLUSION .................................................................................24

# TABLE OF AUTHORITIES

**Cases**

*Angelucci v. Century Supper Club*, 41 Cal. 4th 160 (2007) ...................................11

*Barr v. American Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335 (2020)....................................................................................................20

*Botosan v. Paul McNally Realty*, 216 F.3d 827 (9th Cir. 2000).............................15

*Burks v. Poppy Constr. Co.*, 57 Cal. 2d 463 (1962) .................................................14

*Carello v. Aurora Policemen Credit Union*, 930 F.3d 830 (7th Cir. 2019)...............................................................................................................22

*Cath. League for Religious & Civil Rights v. City & Cnty. of S.F.*, 624 F.3d 1043 (9th Cir. 2010) ......................................................................21

*Chattopadhyay v. BBVA USA*, No. 21-15017, 2021 WL 4958850 (9th Cir. Oct. 26, 2021)...........................................................................................23

*Civil Rights Cases*, 109 U.S. 3 (1883) ....................................................................12

*Colmenares v. Braemar Country Club, Inc.*, 29 Cal. 4th 1019 (2003)...................18

*Diffey v. Riverside County Sheriff's Dept.*, 84 Cal.App.4th 1031 (2000)..............................................................................................................18

*Fisk v. Bd. of Trustees of California State Univ.*, No. 22-CV-173 TWR (MSB), 2023 WL 2919317 (S.D. Cal. Apr. 12, 2023) ..............................23

*Gosvener v. Coastal Corp.*, 51 Cal.App.4th 805 (1996) .........................................18

*Heckler v. Mathews*, 465 U.S. 728 (1984).......................................................... 20, 21

*Hobson v. Raychem Corp.*, 73 Cal.App.4th 614 (1999) ..........................................18

*In re Cox*, 3 Cal. 3d 205 (1970) ......................................................................... 13, 15

*Isbister v. Boys' Club of Santa Cruz*, 40 Cal. 3d 72 (1985) ...................................14

*Jankey v. Los Burritos, Inc.*, 343 F. App'x 262 (9th Cir. 2009)..............................15

*Koire v. Metro Car Wash*, 40 Cal. 3d 24 (1985) ....................................................14

*Kwon v. Ramirez*, 576 F. Supp. 3d 696 (C.D. Cal. 2021)........................................15

*Marina Point, Ltd v. Wolfson*, 30 Cal. 3d 721 (1982) ............................................14

*Maystrenko v. Wells Fargo, N.A.*, No. 21-CV-00133-JD, 2021 WL
    5232221 (N.D. Cal. Nov. 10, 2021) ...........................................................23

*Muller v. Automobile Club of So. Cal.*, 61 Cal.App.4th 431 (1998) .......................18

*Murphy v. United Parcel Service, Inc.*, 527 U.S. 516 (1999).................................18

*Northeastern Fla. Chapter, Associated Gen. Contractors of America
    v. Jacksonville*, 508 U.S. 656 (1993).................................................... 20, 21

*O'Connor v. Village Green Owners Assn.* 33 Cal. 3d 790 (1983) .........................14

*Orloff v. Los Angeles Turf Club*, 30 Cal. 2d 110 (1947) ................................. 12, 15

*Pensinger v. Bowsmith, Inc.*, 60 Cal.App.4th 709 (1998) .......................................18

*Sanchez v. Los Angeles Dep't of Transportation,* 39 F.4th 548 (9th
    Cir. 2022).................................................................................................22

*Sierra v. City of Hallandale Beach, Fla.*, 996 F.3d 1110 (11th Cir.
    2021).......................................................................................................22

*Stoumen v. Reilly*, 37 Cal. 2d 713 (1951) ..............................................................12

*Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999).............................................18

*TransUnion, LLC v. Ramirez*, 141 S. Ct. 2190 (2021) .............................................9

*White v. Square,* 7 Cal. 5th 1019 (2019)....................................................... 8, 11, 19

*White v. Square, Inc.*, 891 F.3d 1174 (9th Cir. 2018)....................................... 21, 22

## Statutes

43 Cong. Ch. 114, 18 Stat. 335-337, enacted Mar. 1, 1875....................................12

Cal. Civ. Code, § 51 ........................................................................................ 11, 18

Cal. Gov. Code, § 12926.1 ...................................................................18

**Rules**

Fed. R. App. Proc. 29(a)(4)(E) ...............................................................2

**Federal Laws**

Pub. L. No. 110-325 (Sept. 25, 2008) 122 Stat. 3553 .............................18

**State Bills**

1905 Cal. Stat. 413 ................................................................................13

Civil Rights – Civil Rights Act of 2005, 2005 Cal. Legis. Serv. Ch. 420 (A.B. 1400) ................................................................. 13, 14

Civil Rights – Discrimination – Immigration, 2015 Cal. Legis. Serv. Ch. 282 (S.B. 600) ...............................................................13

Civil Rights - Discrimination, 1987 Cal. Legis. Serv. Ch. 159 (A.B. 181) ................................................................................17

Civil Rights—Equality—Fines and Penalties, 2001 Cal. Legis. Serv. Ch. 261 (A.B. 587) (WEST) ...............................................15

Disabled Persons—Discrimination—Parking Placards, 2001 Cal. Legis. Serv. Ch. 708 (A.B. 677) .........................................19

Discrimination-Disabled Persons, 1992 Cal. Legis. Serv. Ch. 913 (A.B. 1077) ...........................................................................17

Stats. 1897, ch. 108 (Cal. 1897) .............................................................12

Stats. 1961, ch. 1187 (Cal. 1961) ...........................................................13

Stats. 1974, ch. 1193 (Cal. 1974) ...........................................................13

**Legislative History**

California Bill Analysis, A.B. 587 Assem., 3/26/2001 .................................... 15, 16

California Bill Analysis, A.B. 587 Sen., 7/03/2001 ................................16

## INTEREST OF AMICI CURIAE

*Amici* are non-profit advocacy and legal services organizations that represent and defend the rights of individuals with disabilities in California and nationwide. The constituents and clients of *amici* are disproportionately subject to automated kiosk systems and medical testing companies that have multiple facilities with automated check-in, site-based personnel and system-wide oversight. They include foster children, K-12 students, nursing home residents, people with chronic medical conditions, people with vision and other sensory disabilities, and people with intellectual and developmental disabilities. These constituents and clients are typically low-income and experience barriers to accessing the legal system. It is often infeasible for them to hire private attorneys to bring individual cases to obtain relief, and the free legal services available to indigent and disabled individuals cannot meet the need.[1] Oftentimes, participation in a class action under Federal Rule of Civil Procedure 23 is the primary, if not only way that these client groups can access legal services, obtain relief, and reform large institutions. The

---

[1] Legal Services Corporation, The Justice Gap: The Unmet Civil Legal Needs of Low-income Americans (Apr. 2022), 19 (LSC-funded organizations are unable to provide any or enough legal help for 71% of the civil legal problems brought to them), https://lsc-live.app.box.com/s/xl2v2uraiotbbzrhuwtjlgi0emp3myz1; State Bar of California, 2019 California Justice Gap Study: Executive Report, https://www.calbar.ca.gov/Portals/0/documents/accessJustice/Justice-Gap-Study-Executive-Summary.pdf.

district court's order properly held that the Plaintiffs had standing to bring their Americans with Disabilities Act and Unruh claims and properly certified the two classes at issue, the nationwide and California class of legally blind individuals who were unable to use a LabCorp Express Self-Service Kiosk.

## A. Certification of Consent and Authorship

*Amici* certify that counsel for all parties have consented to the filing of this brief. *Amici* further certify that no party or party counsel authored the brief in whole or in part or contributed money to fund preparing or submitting the brief. *Amici* know of no person who contributed money intended to fund preparing or submitting the brief. Fed. R. App. Proc. 29(a)(4)(E).

## B. Statement of Interests of Individual Amici

**Disability Rights Advocates (DRA)** is based in Berkeley, California with offices in New York City, New York and Chicago, Illinois. DRA is a national nonprofit public interest center recognized for its expertise on issues affecting people with disabilities. DRA represents clients with disabilities who face discrimination or other violations of civil rights or federal statutory protections in class action and impact litigation. DRA is generally acknowledged to be one of the leading public interest disability rights legal organizations in the country, taking on precedent-setting disability rights class actions in this Circuit and beyond.

**The Impact Fund** is a non-profit legal foundation that provides funding for impact litigation, offers innovative training and support, and acts as counsel in impact litigation across the country. The Impact Fund has an interest in ensuring that class actions remain a robust vehicle for individuals with disabilities and other underserved communities to vindicate their rights and enable greater access to justice.

**Access Ready, Inc.,** is an independent, non-profit, cross-disability education and advocacy organization promoting a policy of digital inclusion and accessibility across information and communications technology. Access Ready, Inc., is committed to ensuring that individuals with disabilities can access the same information, engage in the same interactions, and enjoy the same items and services that healthcare institutions offer to individuals without disabilities.

The **American Foundation for the Blind (AFB)** is a national nonprofit that creates a world of no limits for people who are blind and low vision. AFB mobilizes leaders, advances understanding, and champions impactful policies and practices using research and data. In addition to publishing the Journal of Visual Impairment & Blindness, the essential professional resource for information about visual impairment in the field, AFB is also the proud steward of the accessible Helen Keller Archive, honoring the legacy of our most famous ambassador.

The **Autistic Self Advocacy Network (ASAN)** is a national grassroots disability rights organization run by and for autistic people. ASAN works to make sure autistic people are included in policy making, so that laws and policies meet the needs of the autistic community. ASAN's work includes policy and legal advocacy, making educational resources, creating advocacy tools, and providing leadership training for autistic self-advocates to support all forms of self-advocacy and change the way people think about autism.

The **Autistic Women & Nonbinary Network (AWN)** provides community support and resources for Autistic women, girls, transfeminine and transmasculine nonbinary people, trans people of all genders, Two Spirit people, and all people of marginalized genders or of no gender. AWN is committed to recognizing and celebrating diversity and the many intersectional experiences in our community. AWN's work includes solidarity aid, community events, publications, fiscal support, and advocacy to empower disabled and autistic people in their fight for disability, gender, and racial justice.

**Civil Rights Education and Enforcement Center (CREEC)** is a national nonprofit organization whose mission is to defend human and civil rights secured by law, focusing on intersectional disability justice. CREEC's efforts to defend human and civil rights extend to all walks of life, including ensuring that individuals with disabilities have access to all advantages, privileges, and benefits

4

offered by businesses and places of public accommodation, including access to the benefits provided by websites and other electronic platforms. In today's society, websites, and electronic interface generally, provide an invaluable method of communication, information gathering, and obtaining services and goods. It is essential that all points of access be equally available to people with disabilities. CREEC has successfully represented blind, and deaf and hard of hearing people in lawsuits seeking to ensure that they have full access to websites and other electronic access points.

The **Disability Rights Bar Association (DRBA)** is a group of disability rights lawyers from nonprofit advocacy groups, private law firms, and law professors who share a commitment to effective legal representation of individuals with disabilities. Members of DRBA are committed to supporting the fundamental civil rights of people with disabilities, which are often inadequately represented in our society, through litigation and other legal advocacy strategies that are highly effective and necessary to enforce and advance the rights of people with disabilities.

**Disability Rights California** is California's protection and advocacy agency and the nation's largest non-profit disability rights law firm, mandated under state and federal law to advocate for the rights of people with disabilities and investigate allegations of abuse and neglect. 42 U.S.C. § 15001 *et seq*.; 29 U.S.C. § 794e *et*

*seq.*; 42 U.S.C. § 10801 *et seq.*; Welf. & Inst. Code, § 4900 *et seq*. Since its founding in 1978, Disability Rights California has represented people with disabilities in numerous individual and class action cases involving their right to be free from discrimination and has done substantial work in the area of access to information technology, including a lawsuit against the Social Security Administration regarding its national system of inaccessible check-in kiosks.

**Disability Rights Education & Defense Fund (DREDF)** is a national non-profit law and policy organization dedicated to protecting and advancing the civil rights of people with disabilities. Based in Berkeley, California, DREDF has remained board- and staff-led by people with disabilities since its founding in 1979. DREDF pursues its mission through education, advocacy, and law reform efforts, and is nationally recognized for its expertise in the interpretation of California and federal disability civil rights laws. As part of its mission, DREDF works to ensure that people with disabilities have the legal protections, including effective legal remedies, necessary to vindicate their right to be free from discrimination.

**Justice in Aging**'s principal mission is to protect the rights of low-income older adults. Through advocacy, litigation, and the education and counseling of legal aid attorneys and other local advocates, we seek to ensure the health and economic security of older adults with limited income and resources. Since 1972,

Justice in Aging (formerly the National Senior Citizens Law Center) has worked to promote the independence and well-being of low-income older adults, especially women, members of the LGBTQ community, people of color, people with disabilities, and people with limited English proficiency. We work to ensure access to public benefit programs that allow low-income older adults to live with dignity and independence. Much of our work involves advocacy for equal and unfettered access to governmental benefits, services and programs, including Medicare and Medicaid. We are concerned about the non-economic impact of discrimination on older adults, who face ageism and intersectional discrimination every day.

**Legal Aid at Work (LAAW)** is a San Francisco-based, non-profit public interest law firm founded in 1916 whose mission is to protect, preserve, and advance the rights of individuals from traditionally underrepresented communities. LAAW has represented clients in cases covering a broad range of civil rights issues including discrimination on the basis of race, gender, age, disability, pregnancy, sexual orientation, and national origin. LAAW has represented, and continues to represent, numerous clients faced with discrimination on the basis of their disabilities, including those with claims brought under the Americans with Disabilities Act and the Unruh Civil Rights Act. LAAW has also filed amicus

briefs in numerous cases of importance to persons with disabilities, including in *White v. Square,* 7 Cal. 5th 1019 (2019).

**LightHouse for the Blind and Visually Impaired** provides education, training, advocacy, and community for blind individuals in California and around the world. Founded and based in San Francisco since 1902, the LightHouse is one of the largest and most established comprehensive blindness organizations in North America, with a wide variety of programs to suit a wide variety of needs, as well as a rich network of blindness advocates and professionals.

The **National Association of the Deaf (NAD)** was founded in 1880 by deaf leaders, and is the oldest national civil rights organization in the United States. The NAD has a mission of preserving, protecting, and promoting the civil, human and linguistic rights of 48 million deaf and hard of hearing people in this country. The NAD engages in civil rights litigation on behalf of deaf and hard of hearing Americans, advocates for individuals and organizations in furthering its mission, and files amicus briefs in support of the rights of people with disabilities.

The **National Federation of the Blind**, a District of Columbia nonprofit corporation, is the oldest and largest membership organization of blind people in the United States, with a membership of over 50,000. The National Federation of the Blind advocates for full and equal opportunities for blind people in all aspects of life.

**The Public Interest Law Project (PILP)** is a California non-profit corporation certified as a state support center to local legal services programs by the State Bar.  PILP provides advocacy support, technical assistance and training to local legal services offices throughout California on issues related to affordable housing and fair housing, public benefits and civil rights. Our practice includes representation of persons with disabilities, including people who are blind or low vision, who are denied access to critical programs and benefits as have been the class members in this action.

## INTRODUCTION AND SUMMARY OF ARGUMENT

In its Opening Brief, Appellant Laboratory Corporation of America Holdings ("LabCorp") asserts that the United States Supreme Court's recent ruling in *TransUnion, LLC v. Ramirez*, 141 S. Ct. 2190 (2021), presents "insurmountable hurdles" for Appellees.  Opening Br., p. 26.  LabCorp argues that Plaintiff Julian Vargas and many class members were "not concretely harmed" and "lack standing" because they were ultimately able to access diagnostic services at a LabCorp service center. *Id*.  LabCorp's argument both ignores that the California class members are entitled to full and equal accommodations, advantages, and privileges under the California Unruh Civil Rights Act and mischaracterizes the relevance of *TransUnion* to this case.

In their Answering Brief, Appellees explain why Mr. Vargas and his fellow California class members suffered a particularized injury at the time they were denied full and equal access to LabCorp's Express service. Answering Br, pp. 27 – 34. *Amici* write separately first to underscore the unique nature of the Unruh Act's protections and their importance to the Article III standing analysis. The California Legislature has worked for decades to address the myriad harms caused by discriminatory business practices. The Legislature and the California Supreme Court have steadily broadened the Act's application to effectuate its purpose of eliminating discrimination, including incorporating evolving protections for people with disabilities and embracing robust standing principles.

Second, federal courts continue to find violations of the Unruh Act and other antidiscrimination laws to be concrete injuries under Article III, even after *TransUnion*. *Amici* analyze recent decisions in which the United States Supreme Court, this Court, and others have reiterated that unequal treatment is a concrete and particularized injury that confers Article III standing, both before and after *TransUnion*. The courthouse doors remain open to those with allegations of unequal treatment.

Appellant LabCorp asks this Court to depart from the precedent of the Circuit and the United States Supreme Court. The appeal should be denied.

## **ARGUMENT**

10

## I.   The Unruh Act Prohibits a Wide Range of Discriminatory Conduct and "Is to Be Given a Liberal Construction."

In arguing that Plaintiff Vargas and others lack standing, LabCorp fails to acknowledge the broad scope of the Unruh Act's protections and its implications for determining Article III standing.  The Act empowers victims of discrimination with standing to challenge the full range of prohibited discriminatory conduct.

The Unruh Civil Rights Act is a foundational civil rights law that defines the rights of Californians to access commercial spaces and sets standards of nondiscriminatory conduct for the state's businesses.  For over sixty years, the Unruh Act has provided that all people in the state "are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."  Cal. Civ. Code, § 51 subds. (b), (e).  With this enactment, the Legislature intended to "banish[]" and "eradicat[e]" arbitrary invidious discrimination in California business establishments.  *Angelucci v. Century Supper Club*, 41 Cal. 4th 160, 167 (2007).

To this end, the California Supreme Court recently reiterated that "courts must consider [the Act's] broad remedial purpose and overarching goal of deterring discriminatory practices by businesses."  *White v. Square, Inc.*, 7 Cal. 5th 1019, 1025 (2019), *question certified by* 891 F.3d 1174, 1176–77 (9th Cir. 2018).  In particular, "[s]tanding under the Unruh Act is broad" "[i]n light of its broad

11

preventative and remedial purposes." *Id.* (quoting *Osborne v. Yasmeh*, 1 Cal. App. 5th 1118, 1127 (2016)).

### A. The Legislature's Intent to Eradicate Discrimination Is Evident in Its Adoption and Expansion of the Unruh Act.

In *White v. Square*, the California Supreme Court directed that "[s]tanding rules for statutes must be viewed in light of the intent of the Legislature and the purpose of the enactment." *Id.* at 1024. The evolution of the Unruh Act's protections evidence a legislative intent to provide broad standing for victims of discrimination.

California's historical commitment to full and equal access to the state's businesses actually began long before the enactment of the Unruh Act in 1959. In the late 1800s, California initiated state action after the U.S. Supreme Court invalidated federal post-Civil War legislation prohibiting racial discrimination in public accommodations.[2] California picked up the civil rights mantle abandoned by the federal government and, in 1897, passed its first public accommodations statute, the Dibble Civil Rights Act, the predecessor to today's Unruh Civil Rights

---

[2] *See Civil Rights Cases*, 109 U.S. 3 (1883), in which the high court struck down the Civil Rights Act of 1875. (43 Cong. Ch. 114, 18 Stat. 335-337, enacted Mar. 1, 1875.) The court construed the Thirteenth and Fourteen Amendments as narrowly focused on the abolition of slavery and a small measure of protection from discriminatory governmental action. (*Civil Rights Cases*, 109 U.S. at 23.) Expansive federal protections would not return until the civil rights era of the 1960s.

Act.[3]  Over the next sixty years, the California Supreme Court issued expansive

public accommodations decisions, extending the protections of the Dibble Act to a

range of unenumerated situations.[4]  In 1905, the Legislature also adopted statutory

damages for violations of the Act, further demonstrating the state's commitment to

preventing discrimination. 1905 Cal. Stat. 413, p. 553, § 2.

In 1959, the present-day Unruh Act was enacted by the California legislature

through amendments to the Dibble Civil Rights Act.  *In re Cox*, 3 Cal. 3d 205, 216

(1970) citing 1959 Cal. Stats. ch. 1866, p. 4424, § 1. Following the 1959

amendment, the California Supreme Court continued to apply a broad

interpretation of the state's anti-discrimination protections, describing its

enumeration of specific types of discrimination as "illustrative rather than

restrictive."  *Id*.  Together, the Court and the Legislature added enumerated

diversity characteristics to the Unruh Act,[5] confirmed the Act's coverage in

---

[3] *See* Stats. 1897, ch. 108 (Cal. 1897).  The statute's author, Henry Clay Dibble, was notable for his career as an early civil rights lawyer and legislator.  McClain, *California Carpetbagger: The Career of Henry Dibble*, 28 Quinnipiac L.Rev. 885 (2010).

[4] *See, e.g.*, *Orloff v. Los Angeles Turf Club*, 30 Cal. 2d 110, 113-114 (1947) (identifying the importance of adequate remedies to ensure appropriate public access to privately operated accommodations); *Stoumen v. Reilly*, 37 Cal. 2d 713, 717 (1951) (California Board of Equalization cannot suspend an establishment's liquor license on the grounds that "many of [its] patrons were homosexuals").

[5] *See, e.g.*, Civil Rights – Discrimination – Immigration, 2015 Cal. Legis. Serv. Ch. 282 (S.B. 600), § 1 eff. Jan. 1, 2016 (adding "citizenship, primary language, or

unenumerated scenarios,[6] and endorsed expansive judicial interpretations of the

Act.[7]

The methodical expansion of these substantive anti-discrimination

protections demonstrates the intent of the Legislature to provide victims with

access to an avenue for vindicating their rights.

### B. The Unruh Act's Statutory Damages Provision Recognizes that the Legal Harm Resulting from Acts of Discrimination Goes Beyond Economic Losses.

The Legislature incorporated and maintained statutory damages from the

Act's inception to ensure that its antidiscrimination mandates carry weight, even in

instances where the alleged discrimination causes little or no direct economic loss.

*Koire v. Metro Car Wash*, 40 Cal. 3d 24, 33 (1985) (Section 52 provides for

---

immigration status" to the list of characteristics protected by the Unruh Act); Civil Rights – Civil Rights Act of 2005, 2005 Cal. Legis. Serv. Ch. 420 (A.B. 1400), § 3 (adding "marital status" and "sexual orientation"); Stats. 1974, ch. 1193, § 1 (Cal. 1974)(adding "sex"); Stats. 1961, ch. 1187, § 1 (Cal. 1961)(specifying protection for "all persons" rather than "all citizens").

[6] *See, e.g.*, *Isbister v. Boys' Club of Santa Cruz*, 40 Cal. 3d 72, 76 (1985) (Act covers private charitable organization that operates community recreation facility); *O'Connor v. Village Green Owners Assn.* 33 Cal. 3d 790, 796 (1983) (condominium owners' association covered); *Burks v. Poppy Constr. Co.*, 57 Cal. 2d 463, 469 (1962) (real estate developers covered).

[7] For example, the Civil Rights Act of 2005 expressly endorsed *Marina Point, Ltd v. Wolfson*, 30 Cal. 3d 721, 740 (1982) (holding children to be a protected class, even though unenumerated] and *O'Connor*, 33 Cal. 3d at 796 (holding condominium owners' associations to be covered by Unruh Act, even though unenumerated). *See* 2005 Cal. Legis. Serv. Ch. 420, § 1(d).

minimum statutory damages for every violation of Section 51, regardless of the plaintiff's actual damages); *see also Orloff v. Los Angeles Turf Club*, 30 Cal. 2d 110, 115 (1947) ("[I]t is a penalty imposed in any and in every case, whether the rejection or refusal of admission was or was not done under circumstances of oppression or violence.").  In enforcing the provisions of the Act, this Court, the California Supreme Court, and others have consistently awarded statutory damages for violations of the Unruh Act, regardless of whether the plaintiff establishes that they sustained direct economic or other damages.  *See, e.g.*, *Botosan v. Paul McNally Realty*, 216 F.3d 827 (9th Cir. 2000); *Jankey v. Los Burritos, Inc.*, 343 F. App'x 262 (9th Cir. 2009); *Kwon v. Ramirez*, 576 F. Supp. 3d 696 (C.D. Cal. 2021).

Over the years, the state has steadily increased the minimum statutory damages award under the Act.  *In re Cox,* 3 Cal. 3d at 205, fn. 6 (damages increased from $100 in 1905, to $250 in 1959, to $1,000 in 1994).  In 2001, the Legislature increased Unruh Act statutory damages to $4,000.  Civil Rights—Equality—Fines and Penalties, 2001 Cal. Legis. Serv. Ch. 261 (A.B. 587) (WEST). The legislative history from 2001 demonstrates that damages under the Act are intended to address civil rights violations that are profitable to businesses but cause relatively little economic damage. California Bill Analysis, A.B. 587 Assem.,

3/26/2001.[8] Members of the legislature feared that businesses benefiting from discriminatory policies and practices considered the then-$1,000 minimum damage award an absorbable cost of doing business with little deterrent effect. *Id.*. The minimum damage award was increased but still carefully limited to remain within the jurisdictional limitations of small claims court and to ensure that small businesses would not be fatally harmed by a single violation of the Act. California Bill Analysis, A.B. 587 Sen., 7/03/2001.

The Legislature accurately predicted that a business might engage in a cost-benefit analysis to the detriment of Californians. Here, LabCorp made an affirmative decision to disregard known discriminatory accessibility barriers when developing the LabCorp Express service and intentionally selected kiosks that were not accessible to legally blind users and could not be made accessible. Answering Br., pp. 7-8. This corporate policy increased profits for LabCorp at the expense of its legally blind patients.[9] This is precisely the deliberate

---

[8] All California legislative materials have been reproduced in this brief's addendum for the convenience of the Court.

[9] LabCorp Express was estimated to save the Company $14 million in 2019 alone from both the reduction in labor and the ability to see more patients without hiring more employees. Ex. 12, at JA0054:13-55:6, JA0078 (Sinning deposition); *Id*. at JA0055:7-16 (Sinning deposition); *see also* Ex. 17, at JA0422:3-12 (DeAngelo deposition). Answering Br., pp. 2-3.

discrimination and resulting unjust enrichment that the Legislature intended to address with the statutory damages provision in the Unruh Act.

### C. California's Legislature and Supreme Court Have Preserved and Expanded Legal Rights to Access for People with Disabilities.

Since the passage of the Unruh Act, the California Legislature has repeatedly increased protections for people with disabilities, including Mr. Vargas and his fellow class members, demonstrating its commitment to accessible commercial spaces. In 1987, the Legislature added "blindness or other physical disability" to the Unruh Act's enumerated list of protected diversity characteristics. *See* Civil Rights - Discrimination, 1987 Cal. Legis. Serv. Ch. 159 (A.B. 181), § 1. In 1992, the Legislature expanded the definition to include mental disabilities, in addition to physical and sensory disabilities. *See* Discrimination-Disabled Persons, 1992 Cal. Legis. Serv. Ch. 913 (A.B. 1077), § 3 (deleting the word "physical" as a modifier of "disability"). This 1992 legislation also incorporated the federal Americans with Disabilities Act (ADA) as a minimum level of protection, retaining California law where it provided greater advantages. *Id.*, § 1. ("It is the intent of the Legislature in enacting this act to strengthen California law in areas where it is weaker than the [ADA] and to retain California law when it provides more protection for individuals with disabilities than the [ADA]."). The amendment provided people with disabilities strong protections and remedies under state law.

17

During this time, the California Supreme Court firmly rebuffed attempts by federal[10] and state[11] courts to narrow protections for people with disabilities. *Colmenares v. Braemar Country Club, Inc.*, 29 Cal. 4th 1019, 1027, 1031, fn. 6 (2003) (confirming the broad scope of state law, invalidating state appellate decisions, and disapproving of the narrowing federal analysis of disability). The Legislature also moved to clarify the breadth and independence of California state law in the face of federal regression. *See* Cal. Gov. Code, § 12926.1 ("Although the federal [Americans with Disabilities Act] provides a floor of protection, this state's law has always, even prior to passage of the federal act, afforded additional

---

[10] *See, e.g.*, *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 475 (1999) (holding severe vision impairment did not qualify as disability within the meaning of the ADA); *Murphy v. United Parcel Service, Inc.*, 527 U.S. 516, 523 (1999) (holding significantly high blood pressure did not qualify as disability within the meaning of the ADA). The ADA Amendments Act of 2008 superseded these cases, restoring Congress's expansive federal definition of "disability." *See* Pub. L. No. 110-325 (Sept. 25, 2008) 122 Stat. 3553.

[11] *See, e.g.*, *Diffey v. Riverside County Sheriff's Dept.*, 84 Cal.App.4th 1031, 1039-1040 (2000) (inability to see color red not a "disability"); *Hobson v. Raychem Corp.*, 73 Cal.App.4th 614, 628-629 (1999) (evidence of "only minor limitations" insufficient); *Muller v. Automobile Club of So. Cal.*, 61 Cal.App.4th 431, 442 (1998) ("Legislature intended to conform California's employment discrimination statutes to the ADA"); *Pensinger v. Bowsmith, Inc.*, 60 Cal.App.4th 709, 721 (1998) (suggesting that the federal "substantial limitation test" applies to proving physical disability under state law); *Gosvener v. Coastal Corp.*, 51 Cal.App.4th 805, 813 (1996) (California law incorporates the ADA's definition of disability).

protections").[12]

This expansion of the rights of people with disabilities further demonstrates the Legislature's commitment to antidiscrimination protections and supports standing to enforce rights granted by the Act.

### D. The California Supreme Court Recently Reiterated the Broad Scope of Standing for Injuries Encompassed by the Unruh Act

At the request of the Ninth Circuit, the California Supreme Court recently revisited standing under the Unruh Act and confirmed that standing exists wherever one has been denied equal access and treatment because of an exclusionary policy or practice, as that is precisely the injury the Act seeks to prevent. *White v. Square, Inc*., 7 Cal. 5th 1019, 1023 (2019) ("In general, a person suffers discrimination under the Act when the person presents himself or herself to a business with an intent to use its services but encounters an exclusionary policy or practice that prevents him or her from using those services."). This includes standing for people with disabilities denied equal access to any of the benefits and services that a business provides, including self-service kiosks. *Id*. at 1028

---

[12] Because FEHA establishes definitions that are cross-referenced by other state laws, FEHA provisions like this enactment are applicable to the Unruh Act. Cal. Civ. Code § 51(e). A comparable amendment was added to Government Code, Section 11135 a year later. *See* Disabled Persons—Discrimination—Parking Placards, 2001 Cal. Legis. Serv. Ch. 708 (A.B. 677), § 1.

(postulating that a person who encounters a self-service kiosk and sees a sign prohibiting access based on membership in a protected category "would not need to violate or attempt to violate the stated exclusionary policy before bringing a claim").

The California Supreme Court's determination regarding the scope of civil rights standing ensures that people with disabilities and all others who experience discrimination can legally enforce the full spectrum of rights granted by the Unruh Act. Any less would fatally undermine the goals of the Act.

## II. Federal Courts Continue to Consider Unequal Treatment to Be a Concrete Injury.

Federal courts similarly hold that unequal treatment because of a protected characteristic is a concrete injury within the meaning of Article III. In 2020, a year before the Court's decision in *TransUnion, LLC, v. Ramirez*, Justice Kavanaugh delivered the plurality opinion for the U.S. Supreme Court in *Barr v. American Ass'n of Political Consultants, Inc.*, and affirmed the plaintiff's standing to challenge unequal treatment. 140 S. Ct. 2335, 2355 (2020) (opinion of Kavanaugh, J.). The opinion reiterated that "the Court has squarely held that a plaintiff who suffers unequal treatment has standing to challenge a discriminatory exception that favors others." *Id.* (citing *Heckler v. Mathews*, 465 U.S. 728, 737–740 (1984); *Northeastern Fla. Chapter, Associated Gen. Contractors of America v. Jacksonville*, 508 U.S. 656, 666 (1993)). It relied on an earlier holding that, an

20

"'injury in fact' in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." *Northeastern Fla.*, 508 U.S. at 666.

The *Barr* decision also relied on *Heckler v. Mathews*, a long-standing precedent recognizing that "discrimination itself, by perpetuating 'archaic and stereotypic notions' or by stigmatizing members of the disfavored group as 'innately inferior' . . . can cause serious non-economic injuries to those persons who are denied equal treatment solely because of their membership in a disfavored group." *Heckler*, 465 U.S. at 739–40. Nothing in *TransUnion* abrogates the well-established principle that discriminatory acts "cause serious non-economic injuries" and establish Article III standing under antidiscrimination laws.

Likewise, this Court has repeatedly affirmed Article III standing for plaintiffs alleging discrimination based on the principles articulated in *Heckler*. *See, e.g.*, *White v. Square, Inc.*, 891 F.3d 1174, 1176–77 (9th Cir. 2018), *certified question answered*, 7 Cal. 5th 1019, 446 P.3d 276 (2019) (quoting *Heckler*, 465 U.S. at 739–40); *see also Cath. League for Religious & Civil Rights v. City & Cnty. of S.F.*, 624 F.3d 1043, 1052 (9th Cir. 2010) (holding plaintiffs had standing based on alleged stigmatic harm of feeling like second-class citizens because of city ordinance denigrating plaintiffs' religion).

Shortly before the Supreme Court's ruling in *TransUnion*, a panel of this

Court issued its own decision in *White v. Square, Inc.*, finding Article III standing under the Unruh Act and certifying the question of statutory standing to the California Supreme Court. 891 F.3d at 1176-77 (2018). In its decision, the Ninth Circuit panel held that the plaintiff met constitutional standing requirements based on allegations that he was not able to use Square's online services because of a discriminatory policy against bankruptcy attorneys. *Id*. Citing *Heckler*, the panel concluded, "White's allegations satisfy Article III's requirements for a concrete and particularized injury." *Id.* at 1177.

Similarly, other Circuits have relied on *Heckler* to conclude that dignitary or stigmatic harm from discrimination is a cognizable injury. *See Carello v. Aurora Policemen Credit Union*, 930 F.3d 830, 833-34 (7th Cir. 2019) (Barrett, J.) ("There is no doubt that dignitary harm is cognizable; stigmatic injury is 'one of the most serious consequences' of discrimination." (citation omitted)); *Sierra v. City of Hallandale Beach, Fla.*, 996 F.3d 1110, 1113 (11th Cir. 2021) ("An individual who suffers an intangible injury from discrimination can establish standing if he personally experienced the discrimination[.]")

After *TransUnion*, this Court and district courts in the Circuit have continued to affirm standing for plaintiffs who allege discrimination or unequal treatment causing intangible and or non-economic injuries. *See Sanchez v. Los Angeles Dep't of Transportation,* 39 F.4th 548, 554 (9th Cir. 2022) (finding

standing to challenge collection of location information alleged as a violation of the Fourth Amendment); *Chattopadhyay v. BBVA USA*, No. 21-15017, 2021 WL 4958850, at *1 (9th Cir. Oct. 26, 2021) (affirming standing for non-U.S. Citizens to challenge a bank's requirement to apply for a checking account in person as opposed to doing so online as U.S. Citizens may do, relying on *Barr*); *Maystrenko v. Wells Fargo, N.A.*, No. 21-CV-00133-JD, 2021 WL 5232221, at *2 (N.D. Cal. Nov. 10, 2021) (standing to challenge denial of banking services to non-citizens); *Fisk v. Bd. of Trustees of California State Univ.*, No. 22-CV-173 TWR (MSB), 2023 WL 2919317, at *16 (S.D. Cal. Apr. 12, 2023) (upholding standing in Title IX claim of discrimination based on stigmatic and psychological harm from unequal treatment) (citing cases).

The Ninth Circuit has specifically held that a plaintiff has standing to challenge discriminatory unequal treatment even if they would have ultimately fulfilled the purpose of their visit to the business. *Chattopadhyay*, 2021 WL 4958850, at *1. This is because the discriminatory treatment *is* the injury. *See id*. Any limitation on the service is corollary to the disparate treatment resulting from discriminatory business practices. *See id*.

LabCorp has prevented its visually impaired patients from independently accessing its check-in kiosks and related benefits, a primary feature of its in-person facilities. In doing so, the company has violated the Unruh Act's promise of full

and equal access to all of the advantages and services a business provides to its customers. Plaintiff Vargas and his fellow California class members have alleged a concrete harm sufficient to establish standing under the Unruh Act and Article III. *TransUnion, LLC, v. Ramirez* has not modified this Circuit's precedent in any manner relevant to this case.

## **CONCLUSION**

For the foregoing reasons, as well as those set forth by Appellees, Amici respectfully request that the Court deny the present appeal and affirm the District Court's orders certifying the nationwide and California Class.

Respectfully submitted,

Dated: June 21, 2023

By: */s/ Thomas Zito*
Thomas Zito
DISABILITY RIGHTS ADVOCATES

By: */s/ Fawn Jade Rajbhandari-Korr*
Lindsay Nako
Fawn Jade Rajbhandari-Korr
IMPACT FUND

*Attorneys for Amici Curiae Disability Rights Advocates, Impact Fund, Access Ready, the American Foundation of the Blind, The Autistic Self Advocacy Network, The Autistic Women & Nonbinary Network, Civil Rights Education and Enforcement Center, The Disability Rights Bar Association, Disability Rights California, The Disability Rights Education and Defense Fund, Justice in Aging, Legal Aid at Work, LightHouse for the Blind and Visually Impaired, National Association of the Deaf, the National Federation of the Blind, and the Public Interest Law Project.*

24

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number: 22-55873**

I am an attorney for plaintiffs-Appellees.

**This brief contains __5,403__ words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[X] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature:** /s/ *Thomas P. Zito*_____ **Date:** June 21, 2023_____

25

## CERTIFICATE OF SERVICE

I certify that on June 21, 2023, I electronically filed the foregoing brief and appended addendum with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. All attorneys for the Parties in the case are registered CM/ECF users and will be served electronically via the CM/ECF system.

DATED: June 21, 2023                    By:  /s/Thomas P. Zito
                                            Thomas P. Zito

                                        *Attorney for Amici Curiae*

# TABLE OF CONTENTS (ADDENDUM)

## STATUTES AND LAWS

Civil Rights - Discrimination, 1987 Cal. Legis. Serv. Ch. 159
(A.B. 181) ......................................................................ADD_001

Discrimination-Disabled Persons, 1992 Cal. Legis. Serv. Ch. 913
(A.B. 1077)(WEST)........................................................ADD_005

Civil Rights—Equality—Fines And Penalties, 2001 Cal. Legis. Serv.
Ch. 261 (A.B. 587) (WEST) ...........................................ADD_047

Disabled Persons—Discrimination—Parking Placards, 2001 Cal.
Legis. Serv. Ch. 708 (A.B. 677) (WEST) ........................ADD_050

Civil Rights—Civil Rights Act of 2005, 2005 Cal. Legis. Serv. Ch.
420 (S.B. 1400) (WEST) .................................................ADD _054

Civil Rights—Discrimination—Immigration, 2015 Cal. Legis. Serv.
Ch. 282 (S.B. 600) (WEST) .............................................ADD_057

## LEGISLATIVE ANALYSIS

California Bill Analysis, Assembly Floor, 2001-2002 Regular Session,
Assembly Bill 587, March 26, 2001...................................ADD_060

California Bill Analysis, Senate Committee, 2001-2002 Regular
Session, Assembly Bill 587, July 3, 2001 .........................ADD_062

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 34 of 98

Civil rights—Discrimination, 1987 Cal. Legis. Serv. 159 (West)

1987 Cal. Legis. Serv. 159 (West)

CALIFORNIA LEGISLATIVE SERVICE 1987-88

REGULAR SESSION (1987 Laws)

Additions are indicated by <<+ UPPERCASE +>>

Deletions by <<- * * * ->>

Changes in tabular material are not indicated

CHAPTER 159

Assembly Bill No. 181
Civil rights—Discrimination

An act to amend Sections 51, 51.5, 51.8, 52, and 53 of the Civil Code, relating to civil rights.

LEGISLATIVE COUNSEL'S DIGEST

AB 181, Harris. Civil rights: bases of discrimination: physical disability.

Existing law relating to civil rights provides, generally, that (1) all persons no matter what their sex, race, color, religion, ancestry, or national origin are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever; (2) no business establishment of any kind whatsoever shall discriminate against, boycott or blacklist, refuse to buy from, sell to, or trade with any person in this state because of the race, creed, religion, color, national origin, or sex of that person; (3) no franchisor shall discriminate in the granting of franchises solely because of the racial, ethnic, religious, or national origin composition of a neighborhood or geographic area in which the franchise is located; and (4) every restriction or prohibition relating to the acquisition, use, or occupation of real property which is based on sex, race, color, religion, ancestry, or national origin is void. Existing law provides similar, but less inclusive, civil rights provisions with respect to blind and other physically disabled persons.

This bill would include blindness or other physical disability within the bases of discrimination prohibited by these general civil rights provisions. This bill would also provide that it shall not be construed to require any construction, alteration, repair, or modification to any existing establishment, facility, building, improvement, or any other structure, or to augment, alter, or restrict the authority of the State Architect, as specified.

The people of the State of California do enact as follows:

CA CIVIL § 51

SECTION 1. Section 51 of the Civil Code is amended to read:
This section shall be known, and may be cited, as the Unruh Civil Rights Act.
All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, or blindness or other physical disability are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.
This section shall not be construed to confer any right or privilege on a person which is conditioned or limited by law or which is applicable alike to persons of every sex, color, race, religion, ancestry, national origin, or blindness or other physical disability.
Nothing in this section shall be construed to require any construction, alteration, repair, structural or otherwise, or modification of any sort whatsoever to any new or existing establishment, facility, building, improvement, or any other structure, or

to augment, restrict, or alter in any way the authority of the State Architect to require construction, alteration, repair, or modifications that the State Architect otherwise possesses pursuant to other provisions of the law.

Nothing in this section shall require any person renting, leasing, or otherwise providing real property for compensation to modify his or her property in any way, or to provide a higher degree of care for a blind or other physically disabled person than for a person who is not physically disabled.

## CA CIVIL § 51.5

SEC. 2. Section 51.5 of the Civil Code is amended to read:

No business establishment of any kind whatsoever shall discriminate against, boycott or blacklist, refuse to buy from, sell to, or trade with any person in this state because of the race, creed, religion, color, national origin, sex, or blindness or other physical disability of the person or of the person's partners, members, stockholders, directors, officers, managers, superintendents, agents, employees, business associates, suppliers, or customers.

As used in this section "person" includes any person, firm, association, organization, partnership, business trust, corporation, or company.

Nothing in this section shall be construed to require any construction, alternation, repair, structural or otherwise, or modification of any sort whatsoever to any new or existing establishment, facility, building, improvement, or any other structure, or to augment, restrict, or alter in any way the authority of the State Architect to require construction, alteration, repair, or modifications that the State Architect otherwise possesses pursuant to other provisions of the law.

Nothing in this section shall require any person renting, leasing, or otherwise providing real property for compensation to modify his or her property in any way, or to provide a higher degree of care for a blind or other physically disabled person than for a person who is not physically disabled.

## CA CIVIL § 51.8

SEC. 3. Section 51.8 of the Civil Code is amended to read:

No franchisor shall discriminate in the granting of franchises solely because of the race, color, religion, sex, or national origin of the franchisee and the racial, ethnic, religious, national origin, or blindness or other physical disability composition of a neighborhood or geographic area in which the franchise is located. Nothing in this section shall be interpreted to prohibit a franchisor from granting a franchise to prospective franchisees as part of a program or programs to make franchises available to persons lacking the capital, training, business experience, or other qualifications ordinarily required of franchisees, or any other affirmative action program adopted by the franchisor.

Nothing in this section shall be construed to require any construction, alteration, repair, structural or otherwise, or modification of any sort whatsoever to any new or existing establishment, facility, building, improvement, or any other structure, or to augment, restrict, or alter in any way the authority of the State Architect to require construction, alteration, repair, or modifications that the State Architect otherwise possesses pursuant to other provisions of the law.

Nothing in this section shall require any person renting, leasing, or otherwise providing real property for compensation to modify his or her property in any way, or to provide a higher degree of care for a blind or other physically disabled person than for a person who is not physically disabled.

## CA CIVIL § 52

SEC. 4. Section 52 of the Civil Code is amended to read:

(a) Whoever denies, or who aids, or incites such denial, or whoever makes any discrimination, distinction or restriction on account of sex, color, race, religion, ancestry, national origin, or blindness or other physical disability contrary to the provisions of Section 51 or 51.5, is liable for each and every such offense for the actual damages, and such amount as may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than two hundred fifty dollars ($250), and such attorney's fees as may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51 or 51.5.

(b) Whoever denies the right provided by Section 51.7, or whoever aids, incites, or conspires in that denial, is liable for each and every offense for the actual damages suffered by any person denied that right and, in addition, (1) an amount to be determined

Civil rights—Discrimination, 1987 Cal. Legis. Serv. 159 (West)

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 36 of 98

by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damages; (2) a civil penalty of ten thousand dollars ($10,000); and (3) attorney fees as may be determined by the court. In the case of multiple offenders, the ten thousand dollar ($10,000) civil penalty shall be prorated between them.

(c) Whenever there is reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights hereby secured, and that the pattern or practice is of such a nature and is intended to deny the full exercise of the rights herein described, the Attorney General, any district attorney or city attorney, or any person aggrieved by the pattern or practice may bring a civil action in the appropriate court by filing with it a complaint (1) signed by the officer (or in his or her absence the individual acting on behalf of the officer) or by the person aggrieved, (2) setting forth facts pertaining to the pattern or practice, and (3) requesting such preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order against the person or persons responsible for such pattern or practice, as he or she deems necessary to insure the full enjoyment of the rights herein described.

(d) Whenever an action has been commenced in any court seeking relief from the denial of equal protection of the laws under the Fourteenth Amendment to the Constitution of the United States on account of race, color, religion, sex, national origin, or blindness or other physical disability, the Attorney General or any district attorney or city attorney for or in the name of the people of the State of California may intervene in the action upon timely application if the Attorney General or any district attorney or city attorney certifies that the case is of general public importance. In that action the people of the State of California shall be entitled to the same relief as if it had instituted the action.

(e) Actions under this section shall be independent of any other remedies or procedures that may be available to an aggrieved party.

(f) Any person claiming to be aggrieved by an alleged unlawful practice in violation of Section 51 or 51.7 may also file a verified complaint with the Department of Fair Employment and Housing pursuant to Section 12948 of the Government Code.

(g) Nothing in this section shall be construed to require any construction, alteration, repair, structural or otherwise, or modification of any sort whatsoever to any new or existing establishment, facility, building, improvement, or any other structure, or to augment, restrict, or alter in any way the authority of the State Architect to require construction, alteration, repair, or modifications that the State Architect otherwise possesses pursuant to other provisions of the law.

Nothing in this section shall require any person renting, leasing, or otherwise providing real property for compensation to modify his or her property in any way, or provide a higher degree of care for a blind or other physically disabled person than for a person who is not physically disabled.

## CA CIVIL § 53

SEC. 5. Section 53 of the Civil Code is amended to read:

(a) Every provision in a written instrument relating to real property which purports to forbid or restrict the conveyance, encumbrance, leasing, or mortgaging of that real property to any person of a specified sex, race, color, religion, ancestry, national origin, or blindness or other physical disability, is void and every restriction or prohibition as to the use or occupation of real property because of the user's or occupier's sex, race, color, religion, ancestry, national origin, or blindness or other physical disability is void.

(b) Every restriction or prohibition, whether by way of covenant, condition upon use or occupation, or upon transfer of title to real property, which restriction or prohibition directly or indirectly limits the acquisition, use or occupation of that property because of the acquirer's, user's, or occupier's sex, race, color, religion, ancestry, national origin, or blindness or other physical disability is void.

(c) In any action to declare that a restriction or prohibition specified in subdivision (a) or (b) is void, the court shall take judicial notice of the recorded instrument or instruments containing the prohibitions or restrictions in the same manner that it takes judicial notice of the matters listed in Section 452 of the Evidence Code.

Nothing in this section shall require any person renting, leasing, or otherwise providing real property for compensation to modify his or her property in any way, or provide a higher degree of care for a blind or other physically disabled person than for a person who is not physically disabled.

Sec. 6. The Legislature does not intend by this act to impose building standards or construction requirements of any sort whatsoever or to augment, restrict, or alter in any way the authority that the State Architect otherwise possesses pursuant to other provisions of the law.

Approved by Governor July 14, 1987.

Filed with Secretary of State July 14, 1987.

CA LEGIS (1987) 159

**End of Document**  © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 38 of 98

DISCRIMINATION—DISABLED PERSONS, 1992 Cal. Legis. Serv. Ch. 913 (A.B....

1992 Cal. Legis. Serv. Ch. 913 (A.B. 1077) (WEST)

CALIFORNIA 1992 LEGISLATIVE SERVICE

1992 Portion of 1991-92 Regular Session

Additions are indicated by <<+ Text +>>; deletions by

<<- Text ->>. Changes in tables are made but not highlighted.

CHAPTER 913

A.B. No. 1077
DISCRIMINATION—DISABLED PERSONS

AN ACT to amend Section 125.6 of the Business and Professions Code, to amend Sections 51, 51.5, 51.8, 52, 53, 54, 54.1, 54.2, 54.3, and 54.8 of the Civil Code, to amend Section 224 of the Code of Civil Procedure, to amend Sections 44100, 44101, 44337, and 44338 of the Education Code, to amend Sections 754 and 754.5 of the Evidence Code, to amend Sections 4450, 4500, 11135, 12920, 12921, 12926, 12931, 12940, 12944, 12993, 19230, 19231, 19232, 19233, 19234, 19235, 19237, and 19702 of, to add Section 12940.3 to, and to repeal Section 12994 of, the Government Code, to amend Section 19952 of the Health and Safety Code, to amend Section 1735 of the Labor Code, to amend Section 365.5 of the Penal Code, to amend Sections 2881 and 99155.5 of, and to add Section 2881.2 to, the Public Utilities Code, to amend Section 2557 of the Streets and Highways Code, and to amend Section 336 of the Vehicle Code, relating to disabled persons.

[Approved by Governor September 24, 1992.]

[Filed with Secretary of State September 25, 1992.]

LEGISLATIVE COUNSEL'S DIGEST

AB 1077, Bronzan. Disabled persons: discrimination.

(1) Under existing law, persons holding licenses under the provisions of the Business and Professions Code are subject to disciplinary action for refusing, or aiding or inciting another licensee to refuse, to perform the licensed services because of, among other things, a physical handicap of the prospective recipient. Existing law also creates an exception to the prohibition for healing arts practitioners where the licensed activity sought is beyond the practitioner's skill or could better be performed by another licensee.

This bill would revise these antidiscrimination provisions to make them applicable to persons with defined disabilities and to replace the above exemption with an exemption permitting nonservice to disabled individuals who pose a direct threat to the health or safety of others, as defined.

(2) Existing provisions of the Unruh Civil Rights Act and related provisions, with certain exceptions, prohibit various types of discrimination by business establishments and franchisors, and in written instruments relating to real property, including discrimination on the basis of blindness or other physical disability.

This bill would make a violation of the Americans with Disabilities Act of 1990 also a violation of the Unruh Civil Rights Act, and would expand the express coverage of that act and related provisions to include discrimination on account of any disability.

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 39 of 98

DISCRIMINATION—DISABLED PERSONS, 1992 Cal. Legis. Serv. Ch. 913 (A.B....

(3) Existing provisions of the Unruh Civil Rights Act and related provisions specify that persons providing property for compensation are not required to modify their property or provide a higher degree of care for physically disabled persons than for persons who are not physically disabled.

This bill would delete those provisions.

(4) Existing law, with certain exceptions, guarantees physically disabled persons the full and free use of specified facilities for the public and guarantees them full and equal access to specified transportation, communication, lodging, places of public accommodation, amusement, or resort, and defined housing accommodations offered for rent, lease, or compensation.

This bill would extend these guarantees to all individuals with disabilities, as defined. The bill would define "full and equal access" for purposes of application of these requirements to transportation. The bill would modify a requirement in these provisions respecting rental of housing to persons with guide dogs, to expand the definition of "guide dog" to include guide dogs meeting definitional criteria of the federal law. The bill would also expand the scope of these provisions to include adoption agencies and private schools.

(5) Existing law gives specified blind, hearing-impaired, and physically handicapped persons a right to be accompanied by guide dogs, signal dogs, or service dogs without paying an extra charge therefor.

This bill would make these provisions applicable to individuals with a disability, as defined, rather than physically handicapped persons and would prohibit requiring a special security deposit for these dogs.

(6) Under existing law, in any judicial proceeding in which a party, witness, attorney, judicial employee, judge, or juror is hard of hearing, it is required that the hard-of-hearing person be supplied with an assistive listening system or that specified computer-aided transcription equipment be used, upon the person's request.

This bill would revise the above provisions to use the term "individual who is hearing impaired," as defined, and make these requirements additionally applicable to administrative hearings of public agencies and where other types of participants in the proceedings are hearing impaired, thereby imposing a state-mandated local program. The bill would expressly make these provisions applicable to traffic court, small claims court proceedings, and court-ordered alternative dispute resolution.

(7) Existing law requires parties to judicial actions who do not challenge an individual juror with a hearing, sight, or speech handicap, on the basis that the juror requires the services of a sign language interpreter, reader, or speech interpreter, to stipulate to the presence of the interpreter or reader in the jury room, and also requires the court in these cases to instruct the jury, as specified.

This bill would change the terminology describing these impairments and would impose a state-mandated local program by requiring the courts to appoint, and counties to compensate, defined service providers for these jurors. The bill would also expand the types of interpreters subject to these provisions to include oral-interpreters and deaf-blind interpreters.

(8) Existing law precludes using statements made by deaf or hard-of-hearing persons in response to questions from any person having a prosecutorial function against that person in a criminal or quasi-criminal investigation or proceeding, unless, among other things, the statement was either made knowingly, voluntarily, and intelligently and was accurately interpreted or the court makes a special finding that the statement was made knowingly, voluntarily, and intelligently.

This bill would revise these provisions to use the term "deaf or hearing impaired" and, as a condition of using such a statement against an individual who the court finds to be deaf or hearing impaired that was made without an interpreter, require the court to find that the person affirmatively indicated he or she did not use or could not have used an interpreter or that an interpreter was not required by the federal Americans with Disabilities Act of 1990. The bill would require, as a condition of using such a statement that is interpreted against an individual who is deaf or hearing impaired, that the questions to the person have been accurately interpreted. The bill would impose a state-mandated local program by requiring peace officers and others with a prosecutorial function to make good faith efforts without unnecessary delay to obtain an interpreter when

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 40 of 98

interviewing a person who is an alleged victim or witness and who demonstrates or alleges deafness or hearing impairment, unless the person indicates that he or she does not need or cannot use an interpreter or it is determined that an interpreter is not otherwise required by the Americans with Disabilities Act of 1990 and federal regulations adopted thereunder.

(8.5) Under existing law, court interpreters for deaf or hard-of-hearing persons are required to be certified commencing July 1, 1992, in accordance with guidelines adopted by the Judicial Council. Existing law requires the Judicial Council to initially approve testing entities for this purpose by July 1, 1992.

This bill would make these provisions applicable to court interpreters for individuals who are deaf or hearing impaired. The bill would postpone these requirements until January 1, 1994, and would require the Judicial Council to approve the testing entities by July 1, 1993.

(9) Existing law specifies that the use of an interpreter to facilitate communications of a deaf or hard-of-hearing person does not waive an otherwise valid privilege applicable to the communication.

This bill would make those provisions applicable to communications by individuals who are deaf or hearing impaired.

(10) Existing law requires each school district to have an affirmative action employment program.

This bill would impose a state-mandated local program by changing the requirements for those programs.

(11) Existing law precludes denial of an elementary or secondary teaching credential, training for the purpose of becoming a teacher, or refusal by a school district to employ a teacher, on account of a defined physical handicap.

This bill would instead make these prohibitions applicable with respect to defined disabilities.

(12) Existing law requires the State Architect to adopt regulations for access and usability of public facilities by the physically handicapped.

This bill would make these provisions applicable to access and usability by individuals with a disability and would preclude the regulations from imposing lower standards of usability and accessibility than specified regulations adopted under the Americans with Disabilities Act of 1990.

(13) Existing law requires local and quasi-public entities to require rapid transit equipment and structures to be built to provide easy access to handicapped persons. This requirement does not, however, apply to contracts for urban transit systems until the necessary equipment is available from not less than 2 manufacturers.

This bill would make these provisions applicable to access by individuals with a disability, would make these provisions applicable to fixed-route transit facilities, would expand application of the requirements to include the state, and would require all public transit facilities and operations to meet standards of Titles II and III of the Americans with Disabilities Act of 1990 and regulations adopted thereunder or higher standards of this state's law in effect on December 31, 1992, notwithstanding the above provisions or any other provision of law. The bill would delete the exemption for contracts for transit systems where the necessary equipment is not available from 2 or more manufacturers.

(14) Existing law prohibits discrimination on the basis of physical or mental disability in the receipt of benefits under any program funded directly or financially assisted by the state.

This bill would make that prohibition applicable to any disability as defined, rather than mental or physical disability, and would require these programs to meet or exceed specified protections and prohibitions in the Americans with Disabilities Act of 1990.

(15) Existing law in the California Fair Employment and Housing Act declares a state policy that persons are entitled to employment without discrimination on various bases, including physical handicap, and, with certain exceptions, prohibits

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 41 of 98

DISCRIMINATION—DISABLED PERSONS, 1992 Cal. Legis. Serv. Ch. 913 (A.B....

employers and labor organizations from discriminating on that basis. Existing provisions of that act also specify that nothing in the act requires an employer to make any accommodation for a physically handicapped employee where it would produce undue hardship to the employer.

This bill would change these provisions to substitute a reference to physical and mental disabilities for the existing reference to physical handicap. The bill would define "mental disability" and "physical disability" for this purpose. However, the bill would limit the application of provisions of the act on unlawful employment practices by employers against individuals with a mental disability to employers with 15 or more employees, the state, and its municipalities and political subdivisions; application of these provisions to employers with 15 to 24, inclusive, employees would be delayed until July 15, 1994, and the bill would provide for a study to determine the desirability of including employers with 5 to 14, inclusive, employees under these provisions. The bill would add discrimination on the basis of familial status to the types of discrimination declared to be against public policy with respect to both employment and housing accommodations, and would add discrimination on the basis of familial status to provisions authorizing the Department of Fair Employment and Housing to provide assistance in resolving disputes, disagreements, or difficulties relating to specified discriminatory practices. It also would add discrimination on the basis of disability to the type of discrimination declared to be against public policy with respect to housing accommocations. [1] The bill would require employers and certain other entities to make specified reasonable accommodations for employees with physical or mental disabilities and would require an employer making certain preemployment inquiries concerning a prospective employee's fitness, or refusing to hire or discharging a disabled employee, to comply with the Americans with Disabilities Act of 1990.

The bill would specify that the definitions of "physical disability" and "mental disability" in the California Fair Employment and Housing Act are superseded by the definition of "disability" in the federal Americans with Disabilities Act of 1990 if broader civil rights protection would thereby be produced for persons with mental or physical disabilities or a medical condition. The bill would specify that the act's provisions are not superseded by provisions of other laws relating to workers' compensation and insurance, benefits for injured state employees not covered by workers' compensation, and retraining and rehabilitation benefits for injured public employees.

(16) Existing law prohibits licensing boards from discriminating, as specified, on the basis of a person's physical handicap.

This bill would instead prohibit that discrimination by licensing boards on the basis of a physical or mental disability and would require a licensing board to make defined reasonable accommodation to an individual's physical or mental disability or medical condition, as specified.

(17) Existing law in the state civil service prohibits discrimination against employees on the basis of non-job-related physical handicap.

This bill would instead prohibit discrimination against state civil service employees who are individuals with a disability, as defined. The bill would also revise accommodations required to be made for these employees.

(18) Existing law requires specified places of public amusement and resort to be equipped with wheelchair spaces and other seating and accommodations for persons with physical disabilities.

This bill would make compliance with these provisions subject to no lesser standards than prescribed in prescribed federal regulations.

(19) Existing law, with certain exceptions, prohibits discrimination in employment on public works projects on the basis of physical handicap.

This bill would instead prohibit this discrimination on the basis of physical or mental disability.

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 42 of 98

DISCRIMINATION—DISABLED PERSONS, 1992 Cal. Legis. Serv. Ch. 913 (A.B....

(20) Existing law prohibits any person from denying access to specified transportation and accommodations to any blind, deaf, or physically disabled person on account of the person being accompanied by a guide dog, signal dog, or service dog.

This bill would revise the definition of "guide dog" for purposes of these provisions.

(21) Existing law requires the Public Utilities Commission to design and implement a dual party relay system by which telephone service may be made available between deaf and hard-of-hearing persons and persons of normal hearing, as specified.

This bill would substitute the term "hearing impaired" for "hard-of-hearing" and require the commission to apply to the Federal Communications Commission for prescribed certification of this system and would revise existing requirements for an annual report by the commission on the fiscal status of this and related programs. The bill would require the commission to study whether there exist sufficient public pay phones with capability to serve deaf and severely hearing impaired persons.

(22) Existing law requires operators of dial-a-ride or paratransit services funded through the Mills-Alquist-Deddeh Act to provide specified services for defined handicapped persons.

This bill would require these services to be provided to individuals with disabilities, would make clarifying changes, and would make certain of these provisions subject to overriding requirements of the federal Americans with Disabilities Act of 1990. The bill would also revise the Vehicle Code definition of "general public paratransit vehicle."

(23) Existing law authorizes the formation of service authorities for freeway emergencies, which are empowered to establish a prescribed motorist aid system.

This bill would require these motorist aid systems to meet standards of Title II of the federal Americans with Disabilities Act of 1990.

(24) This bill would incorporate additional changes in Section 12926 of the Government Code, proposed by AB 311 or AB 1286, or both, to become operative only if AB 311 or AB 1286, or both, and this bill are chaptered and become effective on or before January 1, 1993, and this bill is chaptered last.

(25) This bill would incorporate additional changes in Section 12940 of the Government Code, proposed by AB 1286 or AB 2265, or both, to become operative only if AB 1286 or AB 2265, or both, and this bill are chaptered and become effective on or before January 1, 1993, and this bill is chaptered last.

(26) This bill would incorporate additional changes in Section 12993 of the Government Code, proposed by AB 311 or AB 1178, or both, to be operative only if AB 311 or AB 1178, or both, and this bill are chaptered and become effective January 1, 1993, and this bill is chaptered last.

(27) The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement, including the creation of a State Mandates Claims Fund to pay the costs of mandates which do not exceed $1,000,000 statewide and other procedures for claims whose statewide costs exceed $1,000,000.

This bill would provide that, if the Commission on State Mandates determines that this bill contains costs mandated by the state, reimbursement for those costs shall be made pursuant to those statutory procedures and, if the statewide cost does not exceed $1,000,000, shall be made from the State Mandates Claims Fund.

The people of the State of California do enact as follows:

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 43 of 98

DISCRIMINATION—DISABLED PERSONS, 1992 Cal. Legis. Serv. Ch. 913 (A.B....

SECTION 1. It is the intent of the Legislature in enacting this act to strengthen California law in areas where it is weaker than the Americans with Disabilities Act of 1990 (Public Law 101-336) and to retain California law when it provides more protection for individuals with disabilities than the Americans with Disabilities Act of 1990.

SEC. 2. Section 125.6 of the Business and Professions Code is amended to read:

## << CA BUS & PROF § 125.6 >>

125.6. Every person who holds a license under the provisions of this code is subject to disciplinary action under the disciplinary provisions of this code applicable to such person if, because of the applicant's race, color, sex, religion, ancestry, <<-* * *-><< +disability+>>, marital status, or national origin, he or she refuses to perform the licensed activity or aids or incites the refusal to perform such licensed activity by another licensee, or if, because of the applicant's race, color, sex, religion, ancestry, <<-* * *-><<+disability+>>, marital status, or national origin, he or she makes any discrimination, or restriction in the performance of the licensed activity. Nothing in this section shall be interpreted to apply to discrimination by employers with regard to employees or prospective employees, nor shall this section authorize action against any club license issued pursuant to Article 4 (commencing with Section 23425) of Chapter 3 of Division 9 because of discriminatory membership policy. The presence of architectural barriers to <<-* * *-><<+an individual with physical disabilities+>> which conform to applicable state or local building codes and regulations shall not constitute discrimination under this section.

<<-* * *-><< <<+Nothing in+>> this section <<+requires+>> a person licensed pursuant to Division 2 (commencing with Section 500) to <<-* * *-><< <<+permit an individual to participate in, or benefit from, the licensed activity of the licensee where that individual poses a direct threat to the health or safety of others. For this purpose, the term "direct threat" means a significant risk to the health or safety of others that cannot be eliminated by a modification of policies, practices, or procedures or by the provision of auxiliary aids and services+>>.

"License," as used in this section, includes "certificate," "permit," "authority," and "registration" or any other indicia giving authorization to engage in a business or profession regulated by this code.

"Applicant," as used in this section means a person applying for licensed services provided by a person licensed under this code. <<-* * *->>

<<+"Disability" means any of the following with respect to an individual:+>>

<<+(a) A physical or mental impairment that substantially limits one or more of the major life activities of the individual.+>>

<<+(b) A record of such an impairment.+>>

<<+(c) Being regarded as having such an impairment.+>>

SEC. 3. Section 51 of the Civil Code is amended to read:

## << CA CIVIL § 51 >>

51. This section shall be known, and may be cited, as the Unruh Civil Rights Act.

All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, or <<-* * *->> disability are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

This section shall not be construed to confer any right or privilege on a person which is conditioned or limited by law or which is applicable alike to persons of every sex, color, race, religion, ancestry, national origin, or <<-* * *->> disability.

Nothing in this section shall be construed to require any construction, alteration, repair, structural or otherwise, or modification of any sort whatsoever to any new or existing establishment, facility, building, improvement, or any other structure, or to augment, restrict, or alter in any way the authority of the State Architect to require construction, alteration, repair, or modifications that the State Architect otherwise possesses pursuant to other provisions of the law. <<-* * *->>

<<+A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101–336) shall also constitute a violation of this section.+>>

SEC. 3.2. Section 51.5 of the Civil Code is amended to read:

## << CA CIVIL § 51.5 >>

51.5. No business establishment of any kind whatsoever shall discriminate against, boycott or blacklist, refuse to buy from, sell to, or trade with any person in this state because of the race, creed, religion, color, national origin, sex, or <<-* * *->> disability of the person or of the person's partners, members, stockholders, directors, officers, managers, superintendents, agents, employees, business associates, suppliers, or customers.

As used in this section "person" includes any person, firm, association, organization, partnership, business trust, corporation, or company.

Nothing in this section shall be construed to require any construction, alternation, repair, structural or otherwise, or modification of any sort whatsoever to any new or existing establishment, facility, building, improvement, or any other structure, or to augment, restrict, or alter in any way the authority of the State Architect to require construction, alteration, repair, or modifications that the State Architect otherwise possesses pursuant to other provisions of the law.

<<-* * *->>

SEC. 3.4. Section 51.8 of the Civil Code is amended to read:

## << CA CIVIL § 51.8 >>

51.8. No franchisor shall discriminate in the granting of franchises solely because of the race, color, religion, sex, <<-* * *->> national origin<<+, or disability+>> of the franchisee and the racial, ethnic, religious, national origin, or <<-* * *->> disability composition of a neighborhood or geographic area in which the franchise is located. Nothing in this section shall be interpreted to prohibit a franchisor from granting a franchise to prospective franchisees as part of a program or programs to make franchises available to persons lacking the capital, training, business experience, or other qualifications ordinarily required of franchisees, or any other affirmative action program adopted by the franchisor.

Nothing in this section shall be construed to require any construction, alteration, repair, structural or otherwise, or modification of any sort whatsoever to any new or existing establishment, facility, building, improvement, or any other structure, or to augment, restrict, or alter in any way the authority of the State Architect to require construction, alteration, repair, or modifications that the State Architect otherwise possesses pursuant to other provisions of the law.

<<-* * *->>

SEC. 3.6. Section 52 of the Civil Code is amended to read:

## << CA CIVIL § 52 >>

52. (a) Whoever denies, aids or incites a denial, or makes any discrimination <<+or+>> distinction <<-* * *->> contrary to Section 51 or 51.5, is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than two hundred fifty dollars ($250), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51 or 51.5.

(b) Whoever denies the right provided by Section 51.7, or aids, incites, or conspires in that denial, is liable for each and every offense for the actual damages suffered by any person denied that right and, in addition, the following:

(1) An amount to be determined by a jury, or a court sitting without a jury, for exemplary damages.

(2) A civil penalty of twenty-five thousand dollars ($25,000) to be awarded to the person denied the right provided by Section 51.7.

(3) Attorney fees as may be determined by the court.

(c) Whenever there is reasonable cause to believe that any person or group of persons is engaged in conduct of resistance to the full enjoyment of any of the rights hereby secured, and that conduct is of that nature and is intended to deny the full exercise of the rights herein described, the Attorney General, any district attorney or city attorney, or any person aggrieved by the conduct may bring a civil action in the appropriate court by filing with it a complaint. The complaint shall contain the following:

(1) The signature of the officer, or, in his or her absence, the individual acting on behalf of the officer, or the signature of the person aggrieved.

(2) The facts pertaining to the conduct.

(3) A request for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order against the person or persons responsible for the conduct, as the complainant deems necessary to insure the full enjoyment of the rights herein described.

(d) Whenever an action has been commenced in any court seeking relief from the denial of equal protection of the laws under the Fourteenth Amendment to the Constitution of the United States on account of race, color, religion, sex, national origin, or <<-* * *->> disability, the Attorney General or any district attorney or city attorney for or in the name of the people of the State of California may intervene in the action upon timely application if the Attorney General or any district attorney or city attorney certifies that the case is of general public importance. In that action the people of the State of California shall be entitled to the same relief as if it had instituted the action.

(e) Actions under this section shall be independent of any other remedies or procedures that may be available to an aggrieved party.

(f) Any person claiming to be aggrieved by an alleged unlawful practice in violation of Section 51 or 51.7 may also file a verified complaint with the Department of Fair Employment and Housing pursuant to Section 12948 of the Government Code.

(g) Nothing in this section shall be construed to require any construction, alteration, repair, structural or otherwise, or modification of any sort whatsoever to any new or existing establishment, facility, building, improvement, or any other structure, or to augment, restrict, or alter in any way the authority of the State Architect to require construction, alteration, repair, or modifications that the State Architect otherwise possesses pursuant to other laws.

<<-* * *->>

(h) For the purposes of this section, "actual damages" means special and general damages. This subdivision is declaratory of existing law.

SEC. 3.8. Section 53 of the Civil Code is amended to read:

## << CA CIVIL § 53 >>

53. (a) Every provision in a written instrument relating to real property which purports to forbid or restrict the conveyance, encumbrance, leasing, or mortgaging of that real property to any person of a specified sex, race, color, religion, ancestry, national origin, or <<-* * *->> disability, is void and every restriction or prohibition as to the use or occupation of real property because of the user's or occupier's sex, race, color, religion, ancestry, national origin, or <<-* * *->> disability is void.

(b) Every restriction or prohibition, whether by way of covenant, condition upon use or occupation, or upon transfer of title to real property, which restriction or prohibition directly or indirectly limits the acquisition, use or occupation of that property because of the acquirer's, user's, or occupier's sex, race, color, religion, ancestry, national origin, or <<-* * *->> disability is void.

(c) In any action to declare that a restriction or prohibition specified in subdivision (a) or (b) is void, the court shall take judicial notice of the recorded instrument or instruments containing the prohibitions or restrictions in the same manner that it takes judicial notice of the matters listed in Section 452 of the Evidence Code.

<<-* * *->>

SEC. 4. Section 54 of the Civil Code is amended to read:

## << CA CIVIL § 54 >>

54. <<-* * *->> <<+(a) Individuals with disabilities+>> shall have the same right as the <<-* * *->> <<+general public+>> to the full and free use of the streets, highways, sidewalks, walkways, public buildings, public facilities, and other public places.

<<+(b) "Disability," as used in this part, means any of the following with respect to an individual:+>>

<<+(1) A physical or mental impairment that substantially limits one or more of the major life activities of the individual.+>>

<<+(2) A record of such an impairment.+>>

<<+(3) Being regarded as having such an impairment.+>>

SEC. 5. Section 54.1 of the Civil Code is amended to read:

## << CA CIVIL § 54.1 >>

54.1. (a) <<-* * *->> <<+Individuals with disabilities+>> shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, and privileges of all common carriers, airplanes, motor vehicles,

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 46 of 98

DISCRIMINATION—DISABLED PERSONS, 1992 Cal. Legis. Serv. Ch. 913 (A.B....

railroad trains, motorbuses, streetcars, boats, or any other public conveyances or modes of transportation <<+(whether private, public, franchised, licensed, contracted, or otherwise provided)+>>, telephone facilities, <<+adoption agencies, private schools, +>> hotels, lodging places, places of public accommodation, amusement<<+,+>> or resort, and other places to which the general public is invited, subject only to the conditions and limitations established by law, or state or federal regulation, and applicable alike to all persons.

As used in this section, "telephone facilities" means tariff items and other equipment and services which have been approved by the Public Utilities Commission to be used by <<-* * *->> <<+individuals with disabilities+>> in a manner feasible and compatible with the existing telephone network proved [2] by the telephone companies.

<<+"Full and equal access," for purposes of this section in its application to transportation, means access that meets the standards of Titles II and III of the Americans with Disabilities Act of 1990 (Public Law 101–336) and federal regulations adopted pursuant thereto, except that, if the laws of this state prescribe higher standards, it shall mean access that meets those higher standards.+>>

(b) (1) <<-* * *->> <<+Individuals with disabilities+>> shall be entitled to full and equal access, as other members of the general public, to all housing accommodations offered for rent, lease, or compensation in this state, subject to the conditions and limitations established by law, or state or federal regulation, and applicable alike to all persons.

(2) "Housing accommodations" means any real property, or portion thereof, which is used or occupied, or is intended, arranged, or designed to be used or occupied, as the home, residence, or sleeping place of one or more human beings, but shall not include any accommodations included within subdivision (a) or any single-family residence the occupants of which rent, lease, or furnish for compensation not more than one room therein.

(3) Nothing in this subdivision shall require any person renting, leasing, or providing for compensation real property to modify his or her property in any way or provide a higher degree of care for <<-* * *->> <<+an individual with a disability+>> than for <<-* * *->> <<+an individual+>> who is not disabled.

(4) Except as provided in paragraph (5) of this subdivision, nothing in this part shall require any person renting, leasing, or providing for compensation real property, if <<+that+>> person refuses to accept tenants who have dogs, to accept as a tenant <<-* * *->> <<+an individual with a disability+>> who has a dog.

(5) It shall be deemed a denial of equal access to housing accommodations within the meaning of this subdivision for any person, firm, or corporation to refuse to lease or rent housing accommodations to <<-* * *->> <<+an individual who is+>> blind <<-* * *->> or visually <<-* * *->> <<+ impaired+>> on the basis that <<-* * *->> <<+the individual+>> uses the services of a guide dog, <<-* * *->> <<+an individual who is+>> deaf <<-* * *->> <<+or hearing impaired+>> on the basis that <<-* * *->> <<+the individual+>> uses the services of a signal dog, or to <<-* * *->> <<+an individual with a physical disability+>> on the basis that <<-* * *->> <<+the individual+>> uses the services of a service dog, or to refuse to permit such <<-* * *->> <<+an individual who is+>> blind <<-* * *->> or visually <<-* * *->> <<+ impaired+>> to keep a guide dog, <<-* * *->> <<+an individual who is+>> deaf <<-* * *->> <<+or hearing impaired+>> to keep a signal dog, or <<-* * *->> <<+an individual with a physical disability+>> to keep a service dog on the premises.

Except in the normal performance of duty as a mobility or signal aid, nothing contained in this paragraph shall be construed to prevent the owner of a housing accommodation from establishing <<-* * *->> terms in a lease or rental agreement which reasonably <<+regulate+>> the presence of guide dogs, signal dogs, or service dogs on the premises of a housing accommodation, nor shall this paragraph be construed to relieve a tenant from any liability otherwise imposed by law for real and personal property damages caused by such a dog when proof of same exists.

As used in this subdivision, "guide dog" means any guide dog <<-* * *->> which was trained by a person licensed under the provisions of Chapter 9.5 (commencing with Section 7200) of Division 3 of the Business and Professions Code <<+or as defined in the regulations implementing Title III of the Americans with Disabilities Act of 1990 (Public Law 101–336)+>>.

As used in this subdivision, "signal dog" means any dog trained to alert <<-* * *->> <<+an individual who is+>> deaf <<-* * *->> <<+ or hearing impaired+>> to intruders or sounds.

As used in this subdivision, "service dog" means any dog individually trained to the <<-* * *->> <<+individual with a physical disability's+>> requirements including, but not limited to, minimal protection work, rescue work, pulling a wheelchair, or fetching dropped items.

(6) It shall be deemed a denial of equal access to housing accommodations within the meaning of this subdivision for any person, firm, or corporation to refuse to lease or rent housing accommodations to <<-* * *->> <<+an individual who is+>>

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 47 of 98

blind <<-* * *->> <<+or+>> visually <<-* * *->> <<+impaired, an individual who is+>> deaf <<-* * *->> <<+or hearing impaired+>>, or other <<-* * *->> <<+individual with a disability+>> on the basis that the <<-* * *->> <<+individual with a disability+>> is partially or wholly dependent upon the income of his or her spouse, if the spouse is a party to the lease or rental agreement. Nothing in this subdivision shall, however, prohibit a lessor or landlord from considering the aggregate financial status of <<-* * *->> <<+an individual with a disability+>> and his or her spouse.

(c) Persons licensed to train guide dogs for <<-* * *->> <<+individuals who are visually impaired or+>> blind pursuant to Chapter 9.5 (commencing with Section 7200) of Division 3 of the Business and Professions Code <<<+or guide dogs as defined in the regulations implementing Title III of the Americans with Disabilities Act of 1990 (Public Law 101–336),+>> and persons authorized to train signal dogs for <<-* * *->> <<+individuals who are+>> deaf <<<+or+>> hearing impaired, and <<<+persons authorized to train+>> service dogs for <<-* * *->> <<+individuals with physical disabilities,+>> may take dogs, for the purpose of training them as guide dogs, signal dogs, or service dogs in any of the places specified in subdivisions (a) and (b). These persons shall carry and display identification if issued as an authorization, upon request.

SEC. 6. Section 54.2 of the Civil Code is amended to read:

## << CA CIVIL § 54.2 >>

54.2. (a) Every <<-* * *->> <<+individual with a disability+>> shall have the right to be accompanied by a guide dog, signal dog, or service dog, especially trained for the purpose, in any of the places specified in Section 54.1 without being required to pay an extra charge <<+or security deposit+>> for the guide dog, signal dog, or service dog. However, the <<+ individual+>> shall be liable for any damage done to the premises or facilities by his or her dog.

(b) Persons licensed to train guide dogs for <<-* * *->> <<+individuals who are+>> blind <<+or visually impaired+>> pursuant to Chapter 9.5 (commencing with Section 7200) of Division 3 of the Business and Professions Code <<<+or as defined in regulations implementing Title III of the Americans with Disabilities Act of 1990 (Public Law 101–336),+>> and persons authorized to train signal dogs for <<-* * *->> <<+individuals who are+>> deaf <<<+or+>> hearing impaired, and service dogs for the <<-* * *->> <<+individuals with physical disabilities+>> may take dogs, for the purpose of training them as guide dogs, signal dogs, or service dogs in any of the places specified in Section 54.1 without being required to pay an extra charge <<+or security deposit+>> for the guide dog, signal dog, or service dog. However, the person shall be liable for any damage done to the premises or facilities by his or her dog.

These persons shall carry and display identification if issued as an authorization, upon request.

(c) As used in this section, the terms "guide dog," "signal dog," and "service dog" have the same meanings as specified in Section 54.1.

SEC. 7. Section 54.3 of the Civil Code is amended to read:

## << CA CIVIL § 54.3 >>

54.3. Any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of <<-* * *->> <<+an individual with a disability+>> under Sections 54, 54.1 and 54.2 is liable for each <<-* * *->> offense for the actual damages and any amount as may be determined by a jury, or the court sitting without a jury, up to a maximum of three times the amount of actual damages but in no case less than two hundred fifty dollars ($250), and such attorney's fees as may be determined by the court in addition thereto, suffered by any person denied any of the rights provided in Sections 54, 54.1, and 54.2.

SEC. 8. Section 54.8 of the Civil Code is amended to read:

## << CA CIVIL § 54.8 >>

54.8. (a) <<-* * *->> <<+I+>>n any civil or criminal proceeding, including, but not limited to, <<+traffic, small claims court, family court proceedings and services, and+>> juvenile court proceedings, <<+in any court-ordered or court-provided alternative dispute resolution, including mediation and arbitration, or in any administrative hearing of a public agency,+>> where a party, witness, attorney, judicial employee, judge, <<-* * *->> juror <<-* * *->><<+, or other participant who is hearing impaired, the individual who is hearing impaired+>>, upon his or her request, shall be provided with a functioning assistive listening system <<+ or a computer-aided transcription system. Any individual requiring this equipment shall give

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 48 of 98

DISCRIMINATION—DISABLED PERSONS, 1992 Cal. Legis. Serv. Ch. 913 (A.B....

advance notice of his or her need to the appropriate court or agency at the time the hearing is set or not later than five days before the hearing+>>.

(b) Assistive listening systems include, but are not limited to, special devices which transmit amplified speech by means of audio-induction loops, radio frequency systems (AM or FM), or infrared transmission. Personal receivers equipped with headphones for, or use with, hearing aids shall be available upon request by <<-* * *->> <<+individuals who are hearing impaired+>>.

(c) <<-* * *->> <<+If a computer-aided transcription system is used,+>> sufficient display terminals <<-* * *->> <<+shall be+>> provided to allow the <<-* * *->> <<+individual who is hearing impaired+>> to read the real time transcript of the proceeding without difficulty.

(d) A sign shall be posted in a prominent place indicating the availability of an assistive listening system or a computer-aided transcription system.

(e) Each county shall have at least one portable assistive listening <<-* * *->> system for use by any court within the county. The system shall be <<-* * *->> in a location jointly determined by the county board of supervisors and the judges. Notice of the availability of the system shall be posted with notice of trials.

(f) The Judicial Council shall develop and approve official forms for notice of the availability of assistive listening systems <<+and+>> computer-aided transcription systems for <<-* * *->> <<+individuals who are+>> hearing <<+impaired+>>. The Judicial Council shall also develop and maintain a system to record utilization by the courts of these assistive listening systems and computer-aided transcription systems.

(g) If the <<-* * *->> <<+individual who is hearing impaired+>> in question is a juror, the jury deliberation room shall be equipped with an assistive listening system or a computer-aided transcription system upon the request of the juror.

(h) A court reporter may be present in the jury deliberating room during a jury deliberation if the services of a court reporter for the purpose of operating <<+a+>> computer-aided transcription <<+system+>> are required for a <<-* * *->> juror <<+who is hearing impaired+>>.

(i) In any <<-* * *->> <<+of the proceedings referred to in subdivision (a), or administrative hearing of a public agency,+>> in which the <<-* * *->> <<+individual who is hearing impaired+>> is a party, witness, attorney, judicial employee, judge, juror, <<+or other participant,+>> and has requested use of an assistive listening system or computer-aided transcription system, the proceedings shall not commence until the system is in place and functioning.

(j) As used in this section, <<-* * *->> <<+"individual who is hearing impaired"+>> means <<-* * *->> <<+an individual +>> with a <<-* * *->> hearing loss, who, with sufficient amplification <<-* * *->> <<+or a computer-aided transcription system, is able to fully participate in the proceeding+>>.

<<+(k) In no case shall this section be construed to prescribe a lesser standard of accessibility or usability than that provided by Title II of the Americans with Disabilities Act of 1990 (Public Law 101–336) and federal regulations adopted pursuant to that act.+>>

SEC. 9. Section 224 of the Code of Civil Procedure is amended to read:

<< CA CIV PRO § 224 >>

224. (a) If a party does not cause the removal by challenge of an individual juror who is <<-* * *->> <<+deaf,+>> hearing <<-* * *->> <<+ impaired, blind, visually impaired+>>, or <<-* * *->> speech <<-* * *->> <<+impaired+>> and who requires <<-* * *->> <<+auxiliary services+>> to facilitate communication, the party shall (1) stipulate to the presence of <<-* * *->> <<+a service provider+>> in the jury room during jury deliberations, and (2) prepare and deliver to the court proposed jury instructions to <<-* * *->> <<+the service provider+>>.

(b) <<-* * *->> <<+As used in this section, "service provider" includes, but is not limited to, a person who is+>> a sign language interpreter, <<+ oral interpreter, deaf-blind interpreter,+>> reader, or speech interpreter<<+. If auxiliary services+>> are required during the course of jury deliberations, the court shall instruct the jury and <<-* * *->> <<+ the service provider that the service provider+>> for the <<-* * *->> juror <<+with a disability+>> is not to participate in the jury's deliberations in any manner except to facilitate communication between the <<-* * *->> juror <<+with a disability+>> and other jurors.

<<+(c) The court shall appoint an [3] service provider whose services are needed by a juror with a disability to facilitate communication or participation. A sign language interpreter, oral interpreter, or deaf-blind interpreter appointed pursuant to this section shall be a qualified interpreter, as defined in subdivision (f) of Section 754 of the Evidence Code. Persons appointed

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 49 of 98

DISCRIMINATION—DISABLED PERSONS, 1992 Cal. Legis. Serv. Ch. 913 (A.B....

by the court to serve as attendants under this subdivision shall be compensated in the same manner as provided in subdivision (i) of Section 754 of the Evidence Code.+>>

SEC. 10. Section 44100 of the Education Code is amended to read:

<< CA EDUC § 44100 >>

44100. The Legislature finds and declares that:

(a) Generally, California school districts employ a disproportionately low number of racial and ethnic minority classified and certificated employees and a disproportionately low number of women and members of racial and ethnic minorities in administrative positions.

(b) It is educationally sound for the minority student attending a racially impacted school to have available to him the positive image provided by minority classified and certificated employees. It is likewise educationally sound for the child from the majority group to have positive experiences with minority people which can be provided, in part, by having minority classified and certificated employees at schools where the enrollment is largely made up of majority group students. It is also educationally important for students to observe that women as well as men can assume responsible and diverse roles in society.

(c) Past employment practices created artificial barriers and past efforts to promote additional action in the recruitment, employment, and promotion of women and minorities have not resulted in a substantial increase in employment opportunities for <<+these+>> persons.

(d) Lessons concerning democratic principles and the richness which racial diversity brings to our national heritage can be best taught by the presence of staffs of mixed races and ethnic groups working toward a common goal.

It is the intent of the Legislature to establish and maintain a policy of equal opportunity in employment for all persons and to prohibit discrimination based on race, sex, color, religion, age, <<+disability+>>, ancestry, or national origin in every aspect of personnel policy and practice in employment, development, advancement, and treatment of persons employed in the public school system, and to promote the total realization of equal employment opportunity through a continuing affirmative action employment program.

The Legislature recognizes that it is not enough to proclaim that public employers do not discriminate in employment but that effort must also be made to build a community in which opportunity is equalized. It is the intent of the Legislature to require educational agencies to adopt and implement plans for increasing the numbers of women and minority persons at all levels of responsibility.

SEC. 11. Section 44101 of the Education Code is amended to read:

<< CA EDUC § 44101 >>

44101. For the purposes of this article:

(a) "Affirmative action employment program" means planned activities designed to seek, hire, and promote persons who are underrepresented in the work force compared to their number in the population, including <<-* * *->> <<+ individuals with disabilities+>>, women, and persons of minority racial and ethnic backgrounds. It is a conscious, deliberate step taken by a hiring authority to assure equal employment opportunity for all staff, both certificated and classified. Such programs require the employer to make additional efforts to recruit, employ, and promote members of groups formerly excluded at the various levels of responsibility who are qualified or may become qualified through appropriate training or experience within a reasonable length of time. Such programs should be designed to remedy the exclusion, whatever its cause. Affirmative action requires imaginative, energetic, and sustained action by each employer to devise recruiting, training, and career advancement opportunities which will result in an equitable representation of women and minorities in relation to all employees of <<+the +>> employer.

<<+(b) "Disability," means (1) a physical or mental impairment that substantially limits one or more of the major life activities of the individual, (2) a record of such an impairment, or (3) being regarded as having such an impairment.+>>

<<+(c)+>> "Goals and timetables" means projected new levels of employment of women and minority racial and ethnic groups to be attained on an annual schedule, given the expected turnover in the work force and the availability of persons who are qualified or may become qualified through appropriate training or experience within a reasonable length of time. Goals are not quotas or rigid proportions. They should relate both to the qualitative and quantitative needs of the employer.

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 50 of 98

<<+(d)+>> "Public education agency" means the Department of Education, each office of the county superintendent of schools, and the governing board of each school district in California.

SEC. 12. Section 44337 of the Education Code is amended to read:

## << CA EDUC § 44337 >>

44337. No person otherwise qualified shall be denied the right to receive credentials from the commission, to receive training for the purpose of becoming a teacher, or to engage in practice teaching in any school, on the grounds he <<-* * *->> <<+or she is an individual with a disability+>>; nor shall any school district refuse to engage a teacher on such grounds, provided, that <<-* * *->> <<+the+>> teacher<<+, with reasonable accommodations,+>> is able to carry out the duties of the position for which he <<+or she+>> applies in the school district. <<-* * *->> <<+"Disability,"+>> as used in this section <<-* * *->><< +, means (1) a physical or mental impairment that substantially limits one or more of the major life activities of the individual, (2) a record of such an impairment, or (3) being regarded as having such an impairment+>>.

SEC. 13. Section 44338 of the Education Code is amended to read:

## << CA EDUC § 44338 >>

44338. No person otherwise qualified shall be denied the right to receive credentials issued by the commission, to receive training for the purpose of becoming a teacher, or to engage in practice teaching in any school, on the ground he <<-* * *->> << +or she is a person with a disability+>>; provided, that <<-* * *->> <<+the person does not pose a direct threat of substantial harm to the health or safety of other individuals+>>.

SEC. 14. Section 754 of the Evidence Code is amended to read:

## << CA EVID § 754 >>

754. (a) As used in this section, <<-* * *->> <<+"individual who is deaf or hearing impaired"+>> means <<-* * *->> <<+an individual+>> with a hearing loss so great as to prevent his or her understanding language spoken in a normal tone, but does not include <<-* * *->> <<+an individual who is hearing impaired+>> provided with, and able to fully participate in the proceedings through the use of, an assistive listening system or computer-aided transcription equipment provided pursuant to Section 54.8 of the Civil Code.

(b) In any civil or criminal action, including<<+, but not limited to,+>> any action involving a traffic or other infraction <<-* * *->><<+, any small claims court proceeding,+>> any juvenile court proceeding, <<+any family court proceeding or service, +>> or any proceeding to determine the mental competency of a person, <<+in any court-ordered or court-provided alternative dispute resolution, including mediation and arbitration,+>> or any administrative hearing, where a party or witness is <<-* * *->> <<+an individual who is+>> deaf or <<-* * *->> <<+hearing impaired and the individual who is+>> deaf or <<-* * *->> <<+hearing impaired+>> is present and participating, the proceedings shall be interpreted in a language that the <<-* * *->> <<+individual who is+>> deaf or <<-* * *->> <<+hearing impaired+>> understands by a qualified interpreter appointed by the court <<-* * *->> or other <<+ appointing+>> authority, or as agreed upon <<-* * *->>.

(c) For purposes of this section, "appointing authority" means a court, department, board, commission, agency, licensing or legislative body, or other body for proceedings requiring a qualified interpreter.

(d) For the purposes of this section, "interpreter" includes, but is not limited to, an oral interpreter, a sign language interpreter, or a deaf-blind interpreter, depending upon the needs of the <<-* * *->> <<+individual who is+>> deaf or <<-* * *->> << +hearing impaired+>>.

(e) For purposes of this section, "intermediary interpreter" means <<-* * *->> <<+an individual who is deaf or hearing impaired, or a hearing individual+>> who is able to assist in providing an accurate interpretation between spoken English and sign language or between variants of sign language or between American Sign Language and other foreign languages by acting as an intermediary between the <<-* * *->> <<+individual who is+>> deaf <<-* * *->> <<+or hearing impaired+>> and the qualified interpreter.

(f) For purposes of this section, "qualified interpreter" means an interpreter who has been certified as competent to interpret court proceedings by a testing organization, agency, or educational institution approved by the Judicial Council as qualified to administer tests to court interpreters for <<-* * *->> <<+individuals who are+>> deaf or <<-* * *->> <<+ hearing impaired+>>.

DISCRIMINATION—DISABLED PERSONS, 1992 Cal. Legis. Serv. Ch. 913 (A.B....

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 51 of 98

(g) In the event that the appointed interpreter is not familiar with the <<-* * *->> <<+use of particular signs by the individual who is+>> deaf or <<-* * *->> <<+hearing impaired+>> or his or her particular variant of sign language, the court or other appointing authority shall, in consultation with the <<-* * *->> <<+individual who is+>> deaf or <<-* * *->> <<+hearing impaired+>> or his or her representative, appoint an intermediary interpreter.

(h) Prior to July 1, 1992, the Judicial Council shall conduct a study to establish the guidelines pursuant to which it shall determine which testing organizations, agencies, or educational institutions will be approved to administer tests for certification of court interpreters for <<-* * *->> <<+individuals who are deaf or hearing impaired+>>. It is the intent of the Legislature that the study obtain the widest possible input from the public, including, but not limited to, educational institutions, the judiciary, linguists, members of the State Bar, court interpreters, members of professional interpreting organizations, and members of the deaf and <<-* * *->> <<+hearing-impaired+>> communities. After obtaining public comment and completing its study, the Judicial Council shall publish these guidelines and shall approve one or more entities to administer testing for court interpreters for <<-* * *->> <<+individuals who are deaf or hearing impaired+>>. Initial approval of testing entities by the Judicial Council shall occur prior to <<+January+>> 1, <<+1994+>>.

Commencing July 1, <<+1994+>>, court interpreters for <<-* * *->> <<+individuals who are+>> deaf or <<-* * *->> <<+hearing impaired+>> shall meet the qualifications specified in subdivision (f).

(i) Persons appointed to serve as interpreters under this section shall be paid, in addition to actual travel costs, the prevailing rate paid to persons employed by the court to provide other interpreter services unless such service is considered to be a part of the person's regular duties as an employee of the state, county, or other political subdivision of the state. Payment of the interpreter's fee shall be a charge against the county, or other political subdivision of the state, in which <<+that+>> action is pending. Payment of the interpreter's fee in administrative proceedings shall be a charge against the appointing board <<-* * *->> <<+or+>> authority.

<<+(j) Whenever a peace officer or any other person having a law enforcement or prosecutorial function in any criminal or quasi-criminal investigation or proceeding questions or otherwise interviews an alleged victim or witness who demonstrates or alleges deafness or hearing impairment, a good faith effort to secure the services of an interpreter shall be made, without any unnecessary delay unless either the individual who is deaf or hearing impaired affirmatively indicates that he or she does not need or cannot use an interpreter, or an interpreter is not otherwise required by Title II of the Americans with Disabilities Act of 1990 (Public Law 101–336) and federal regulations adopted thereunder.+>>

<<+(k)+>> No statement, written or oral, made by <<-* * *->> <<+an individual who the court finds+>> is deaf or <<-* * *->> <<+hearing impaired+>> in reply to a question of a peace officer, or any other person having a <<+law enforcement or+>> prosecutorial function in any criminal or quasi-criminal investigation or proceeding, may be used against that <<-* * *->> <<+individual who is+>> deaf or <<-* * *->> <<+ hearing impaired+>> unless the <<+question was accurately interpreted and the +>> statement was made knowingly, voluntarily, and intelligently and was accurately interpreted, or the court makes <<-* * *->> special <<+ findings that either the individual could not have used an interpreter or an interpreter was not otherwise required by Title II of the Americans with Disabilities Act of 1990 (Public Law 101–336) and federal regulations adopted thereunder and+>> that the statement was made knowingly, voluntarily, and intelligently.

<<+(*l*)+>> In obtaining services of an interpreter for <<-* * *->> <<+purposes of+>> subdivision (j) <<+or (k)+>>, priority shall be given to first obtaining a qualified interpreter.

<<+(m)+>> Nothing in subdivision (j) or (k) shall be deemed to supersede the requirement of subdivision (b) for use of a qualified interpreter for <<-* * *->> <<+individuals who are+>> deaf or <<-* * *->> <<+ hearing impaired+>> participating as parties or witnesses in a trial or hearing.

<<+(n)+>> In any action or proceeding in which <<-* * *->> <<+an individual who is+>> deaf or <<-* * *->> <<+hearing impaired+>> is a participant, the <<-* * *->> <<+appointing+>> authority shall not commence proceedings until the appointed interpreter is in full view of and spatially situated to assure proper communication with the <<-* * *->> <<+participating individual who is+>> deaf or <<-* * *->> <<+hearing impaired+>>.

<<+(o)+>> Each superior court shall maintain a current roster of qualified interpreters certified pursuant to subdivision (f).

SEC. 15. Section 754.5 of the Evidence Code is amended to read:

<< CA EVID § 754.5 >>

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 52 of 98

DISCRIMINATION—DISABLED PERSONS, 1992 Cal. Legis. Serv. Ch. 913 (A.B....

754.5. Whenever an otherwise valid privilege exists between <<-* * *->> <<+an individual who is+>> deaf or <<-* * *->> <<+hearing impaired+>> and another person, that privilege is not waived merely because an interpreter was used to facilitate their communication.

SEC. 16. Section 4450 of the Government Code is amended to read:

<< CA GOVT § 4450 >>

4450. <<+(a)+>> It is the purpose of this chapter to <<+ensure+>> that all buildings, structures, sidewalks, curbs, and related facilities, constructed in this state by the use of state, county, or municipal funds, or the funds of any political subdivision of the state shall be accessible to and usable by <<-* * *->> <<+individuals with disabilities+>>. The State Architect shall adopt and submit proposed building standards for approval pursuant to Chapter 4 (commencing with Section 18935) of Part 2.5 of Division 13 of the Health and Safety Code and shall adopt other regulations for making buildings, structures, sidewalks, curbs, and related facilities accessible to and usable by <<-* * *->> <<+individuals with disabilities+>>. The regulations and building standards relating to access for <<-* * *->> <<+ individuals with disabilities+>> shall be consistent with the standards for buildings and structures which are contained in pertinent provisions of the latest edition of the Uniform Building Code, as adopted by the International Conference of Building Officials, and <<+these+>> regulations and building standards shall contain such additional requirements relating to buildings, structures, sidewalks, curbs, and other related facilities as the State Architect determines are necessary to assure access and usability for <<-* * *->> <<+individuals with disabilities +>>. In developing and revising <<+these+>> additional requirements, the State Architect shall consult with the <<-* * *->> Department of Rehabilitation, the League of California Cities, the County Supervisors Association of California, and at least one private organization representing and comprised of <<-* * *->> individuals with disabilities<<+.+>>

<<+(b) However, in no case shall the State Architect's regulations and building standards prescribe a lesser standard of accessibility or usability than provided by regulations of the federal Architectural and Transportation Barriers Compliance Board adopted to implement the Americans with Disabilities Act of 1990 (Public Law 101–336).+>>

SEC. 17. Section 4500 of the Government Code is amended to read:

<< CA GOVT § 4500 >>

4500. <<+(a)+>> Notwithstanding the provisions of any statute, rule, regulation, decision<<+,+>> or pronouncement to the contrary, <<+other than subdivision (b), every state agency, board, and department,+>> every local governmental subdivision, every district, every public and quasi-public corporation, every local public agency and public service corporation, and every city, county, city and county and municipal corporation, whether incorporated or not and whether chartered or not, in awarding contracts for <<+operations,+>> equipment<<+,+>> or structures shall be obligated to require that all <<+fixed-route+>> transit equipment and <<+public transit+>> structures shall be so built that <<-* * *->> <<+individuals with disabilities+>> shall have ready access to, from and in such equipment and structures <<-* * *->>.

<<+(b) Notwithstanding any other provision of law, public transit facilities and operations, whether operated by or under contract with a public entity, shall meet the applicable standards of Titles II and III of the federal Americans with Disabilities Act of 1990 (Public Law 101–336) and the federal regulations adopted pursuant thereto, subject to the exceptions provided in that act. However, if the laws of this state in effect on December 31, 1992, prescribe higher standards than the Americans with Disabilities Act of 1990 (Public Law 101–336) and federal regulations adopted pursuant thereto, then those public transit facilities and operations shall meet the higher standards.+>>

SEC. 18. Section 11135 of the Government Code is amended to read:

<< CA GOVT § 11135 >>

11135. <<+(a)+>> No person in the State of California shall, on the basis of ethnic group identification, religion, age, sex, color, or <<-* * *->> disability, be unlawfully denied the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is funded directly by the state or receives any financial assistance from the state.

<<+(b) With respect to discrimination on the basis of disability, programs and activities subject to subdivision (a) shall meet the protections and prohibitions contained in Section 202 of the Americans with Disabilities Act of 1990 (42 U.S.C. Sec. 12132), and the federal rules and regulations adopted in implementation thereof, except that if the laws of this state prescribe stronger

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 53 of 98

DISCRIMINATION—DISABLED PERSONS, 1992 Cal. Legis. Serv. Ch. 913 (A.B....

protections and prohibitions, the programs and activities subject to subdivision (a) shall be subject to the stronger protections and prohibitions.+>>

  <<+(c) As used in this section, "disability" means any of the following with respect to an individual: (1) a physical or mental impairment that substantially limits one or more of the major life activities of the individual, (2) a record of such an impairment, (3) being regarded as having such an impairment.+>>

  SEC. 19. Section 12920 of the Government Code is amended to read:

<< CA GOVT § 12920 >>

  12920. It is hereby declared as the public policy of this state that it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of race, religious creed, color, national origin, ancestry, physical <<-* * *->> <<+disability, mental disability+>>, medical condition, marital status, sex, or age.

  It is recognized that the practice of denying employment opportunity and discriminating in the terms of employment for such reasons foments domestic strife and unrest, deprives the state of the fullest utilization of its capacities for development and advance, and substantially and adversely affects the interest of employees, employers, and the public in general.

  Further, the practice of discrimination because of race, color, religion, sex, marital status, national origin, <<-* * *->> ancestry<<+, familial status, or disability+>> in housing accommodations is declared to be against public policy.

  It is the purpose of this part to provide effective remedies which will eliminate such discriminatory practices.

  This part shall be deemed an exercise of the police power of the state for the protection of the welfare, health, and peace of the people of this state.

  SEC. 20. Section 12921 of the Government Code is amended to read:

<< CA GOVT § 12921 >>

  12921. The opportunity to seek, obtain and hold employment without discrimination because of race, religious creed, color, national origin, ancestry, physical <<-* * *->> <<+disability, mental disability+>>, medical condition, marital status, sex, or age is hereby recognized as and declared to be a civil right.

  SEC. 21. Section 12926 of the Government Code is amended to read:

<< CA GOVT § 12926 >>

  12926. As used in this part in connection with unlawful practices, unless a different meaning clearly appears from the context:

  (a) "Age" refers to the chronological age of any individual who has reached his or her 40th birthday.

  (b) "Employee" does not include any individual employed by his or her parents, spouse, or child, or any individual employed under a special license in a nonprofit sheltered workshop or rehabilitation facility.

  (c) "Employer <<-* * *->><<+"+>> includes any person regularly employing five or more persons, or any person acting as an agent of an employer, directly or indirectly; the state or any political or civil subdivision thereof and cities <<-* * *->><< +, except as follows:+>>

  <<+(1)+>> "Employer" does not include a religious association or corporation not organized for private profit.

  <<+(2) "Employer," for purposes of provisions defining unlawful employment practices related to mental disability, means any person regularly employing 15 or more persons, or any person directly or indirectly acting as an agent of such an employer, and also includes the state and municipalities and political subdivisions of the state.+>>

  (d) "Employment agency" includes any person undertaking for compensation to procure employees or opportunities to work.

  <<+(e) "Essential duties" means the fundamental job duties of the employment position the individual with a disability holds or desires. "Essential duties" does not include the marginal functions of the position.+>>

  <<+(1) A job function may be considered essential for any of several reasons, including, but not limited to, any one or more of the following:+>>

  <<+(A) The function may be essential because the reason the position exists is to perform that function.+>>

  <<+(B) The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed.+>>

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 54 of 98

<<+(C) The function may be highly specialized, so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function.+>>

<<+(2) Evidence of whether a particular function is essential includes, but is not limited to, the following:+>>

<<+(A) The employer's judgment as to which functions are essential.+>>

<<+(B) Written job descriptions prepared before advertising or interviewing applicants for the job.+>>

<<+(C) The amount of time spent on the job performing the function.+>>

<<+(D) The consequences of not requiring the incumbent to perform the function.+>>

<<+(E) The terms of a collective bargaining agreement.+>>

<<+(F) The work experiences of past incumbents in the job.+>>

<<+(G) The current work experience of incumbents in similar jobs.+>>

<<+(f)+>> "Labor organization" includes any organization which exists and is constituted for the purpose, in whole or in part, of collective bargaining or of dealing with employers concerning grievances, terms or conditions of employment, or of other mutual aid or protection.

<<+(g)+>> "Medical condition" <<-* * *->> <<+includes, but is not limited to,+>> any health impairment related to or associated with a diagnosis of cancer, for which a person has been rehabilitated or cured, based on competent medical evidence.

<<+(h) "Mental disability" includes any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities. However, "mental disability" does not include conditions excluded from the federal definition of "disability" pursuant to Section 511 of the Americans with Disabilities Act of 1990 (42 U.S.C., Sec. 12211). Additionally, for purposes of this part, the unlawful use of controlled substances or other drugs shall not be deemed, in and of itself, to constitute a mental disability.+>>

<<+(i)+>> "On the bases enumerated in this part" means or refers to discrimination on the basis of one or more of the following: race, religious creed, color, national origin, ancestry, physical <<-* * *->> <<+ disability, mental disability+>>, medical condition, marital status, sex, or age.

<<+(j)+>> "Physical <<+disability+>>" includes impairment of sight, hearing, or speech, or impairment of physical ability because of amputation or loss of function or coordination, or any other health impairment which requires special education or related services. <<+It is the intent of the Legislature that the definition of "physical disability" in this subdivision shall have the same meaning as the term "physical handicap" formerly defined by this subdivision and construed in American National Ins. Co. v. Fair Employment & Housing Com., 32 Cal.3d 603. However, "physical disability" does not include conditions excluded from the federal definition of "disability" pursuant to Section 511 of the Americans with Disabilities Act of 1990 (42 U.S.C., Sec. 12211). Additionally, for purposes of this part, the unlawful use of controlled substances or other drugs shall not be deemed, in and of itself, to constitute a physical disability.+>>

<<+(k) "Reasonable accommodation" may include either of the following:+>>

<<+(1) Making existing facilities used by employees readily accessible to, and usable by, individuals with disabilities.+>>

<<+(2) Job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.+>>

<<+(l)+>> "Religious creed," "religion," "religious observance," "religious belief," and "creed" include all aspects of religious belief, observance, and practice.

<<+(m)+>> "Sex" includes, but is not limited to, pregnancy, childbirth, or medical conditions related to pregnancy or childbirth.

<<+(n) "Undue hardship" means an action requiring significant difficulty or expense, when considered in light of all the following factors: (1) the nature and cost of the accommodation needed, (2) the overall financial resources of the facilities involved in the provision of the reasonable accommodations, the number of persons employed at the facility, and the effect on expenses and resources or the impact otherwise of these accommodations upon the operation of the facility, (3) the overall financial resources of the covered entity, the overall size of the business or a covered entity with respect to the number of employees, and the number, type, and location of its facilities, (4) the type of operations, including the composition, structure, and functions of the work force of the entity, and (5) the geographic separateness, administrative, or fiscal relationship of the facility or facilities.+>>

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 55 of 98

<<+Notwithstanding subdivision (h) and (k), if the definition of "disability" used in the Americans with Disabilities Act of 1990 (Public Law 101–336) would result in broader protection of the civil rights of individuals with a mental disability or physical disability, as defined in subdivision (h) or (j), or would include any medical condition not included within those definitions, then that broader protection or coverage shall be deemed incorporated by reference into, and shall prevail over conflicting provisions of, the definitions in subdivisions (h) and (j).+>>

SEC. 21.1. Section 12926 of the Government Code is amended to read:

<< CA GOVT § 12926 >>

12926. As used in this part in connection with unlawful practices, unless a different meaning clearly appears from the context:

<<<(a) "Affirmative relief" or "prospective relief" includes the authority to order reinstatement of an employee, awards of back pay, reimbursement of out-of-pocket expenses, hiring, transfers, reassignments, grants of tenure, promotions, cease and desist orders, posting of notices, training of personnel, testing, expunging of records, reporting of records, and any other similar relief that is intended to correct unlawful practices under this part.+>>

<<<(b)+>> "Age" refers to the chronological age of any individual who has reached his or her 40th birthday.

<<<(c)+>> "Employee" does not include any individual employed by his or her parents, spouse, or child, or any individual employed under a special license in a nonprofit sheltered workshop or rehabilitation facility.

<<<(d)+>> "Employer <<-* * *->><<+"+>> includes any person regularly employing five or more persons, or any person acting as an agent of an employer, directly or indirectly; the state or any political or civil subdivision thereof and cities <<-* * *->><<+, except as follows:+>>

<<<(1)+>> "Employer" does not include a religious association or corporation not organized for private profit.

<<<(2) "Employer," for purposes of provisions defining unlawful employment practices related to mental disability, means any person regularly employing 15 or more persons, or any person directly or indirectly acting as an agent of such an employer, and also includes the state and municipalities and political subdivisions of the state.+>>

<<<(e)+>> "Employment agency" includes any person undertaking for compensation to procure employees or opportunities to work.

<<<(f) "Essential duties" means the fundamental job duties of the employment position the individual with a disability holds or desires. "Essential duties" does not include the marginal functions of the position.+>>

<<<(1) A job function may be considered essential for any of several reasons, including, but not limited to, any one or more of the following:+>>

<<<(A) The function may be essential because the reason the position exists is to perform that function.+>>

<<<(B) The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed.+>>

<<<(C) The function may be highly specialized, so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function.+>>

<<<(2) Evidence of whether a particular function is essential includes, but is not limited to, the following:+>>

<<<(A) The employer's judgment as to which functions are essential.+>>

<<<(B) Written job descriptions prepared before advertising or interviewing applicants for the job.+>>

<<<(C) The amount of time spent on the job performing the function.+>>

<<<(D) The consequences of not requiring the incumbent to perform the function.+>>

<<<(E) The terms of a collective bargaining agreement.+>>

<<<(F) The work experiences of past incumbents in the job.+>>

<<<(G) The current work experience of incumbents in similar jobs.+>>

<<<(g)+>> "Labor organization" includes any organization which exists and is constituted for the purpose, in whole or in part, of collective bargaining or of dealing with employers concerning grievances, terms or conditions of employment, or of other mutual aid or protection.

<<<(h)+>> "Medical condition" <<-* * *->> <<+includes, but is not limited to,+>> any health impairment related to or associated with a diagnosis of cancer, for which a person has been rehabilitated or cured, based on competent medical evidence.

<<<(i) "Mental disability" includes any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities. However, "mental disability" does not include conditions excluded

from the federal definition of "disability" pursuant to Section 511 of the Americans with Disabilities Act of 1990 (42 U.S.C., Sec. 12211). Additionally, for purposes of this part, the unlawful use of controlled substances or other drugs shall not be deemed, in and of itself, to constitute a mental disability.+>>

<<<(j)+>> "On the bases enumerated in this part" means or refers to discrimination on the basis of one or more of the following: race, religious creed, color, national origin, ancestry, physical <<-* * *->> <<+ disability, mental disability+>>, medical condition, marital status, sex, or age.

<<<(k)+>> "Physical <<+disability+>>" includes impairment of sight, hearing, or speech, or impairment of physical ability because of amputation or loss of function or coordination, or any other health impairment which requires special education or related services. <<+It is the intent of the Legislature that the definition of "physical disability" in this subdivision shall have the same meaning as the term "physical handicap" formerly defined by this subdivision and construed in American National Ins. Co. v. Fair Employment & Housing Com., 32 Cal.3d 603. However, "physical disability" does not include conditions excluded from the federal definition of "disability" pursuant to Section 511 of the Americans with Disabilities Act of 1990 (42 U.S.C., Sec. 12211). Additionally, for purposes of this part, the unlawful use of controlled substances or other drugs shall not be deemed, in and of itself, to constitute a physical disability.+>>

<<<+(*l*) "Reasonable accommodation" may include either of the following:+>>

<<<+(1) Making existing facilities used by employees readily accessible to, and usable by, individuals with disabilities.+>>

<<<+(2) Job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.+>>

<<<(m)+>> "Religious creed," "religion," "religious observance," "religious belief," and "creed" include all aspects of religious belief, observance, and practice.

<<<(n)+>> "Sex" includes, but is not limited to, pregnancy, childbirth, or medical conditions related to pregnancy or childbirth.

<<<(o) "Undue hardship" means an action requiring significant difficulty or expense, when considered in light of all the following factors:+>>

<<<+(1) The nature and cost of the accommodation needed.+>>

<<<+(2) The overall financial resources of the facilities involved in the provision of the reasonable accommodations, the number of persons employed at the facility, and the effect on expenses and resources or the impact otherwise of these accommodations upon the operation of the facility.+>>

<<<+(3) The overall financial resources of the covered entity, the overall size of the business or a covered entity with respect to the number of employees, and the number, type, and location of its facilities.+>>

<<<+(4) The type of operations, including the composition, structure, and functions of the work force of the entity.+>>

<<<+(5) The geographic separateness, administrative, or fiscal relationship of the facility or facilities.+>>

<<<+Notwithstanding subdivisions (i) and (k), if the definition of "disability" used in the Americans with Disabilities Act of 1990 (Public Law 101–336) would result in broader protection of the civil rights of individuals with a mental disability or physical disability, as defined in subdivision (i) or (k), or would include any medical condition not included within those definitions, then that broader protection or coverage shall be deemed incorporated by reference into, and shall prevail over conflicting provisions of, the definitions in subdivisions (i) and (k).+>>

SEC. 21.2. Section 12926 of the Government Code is amended to read:

<< CA GOVT § 12926 >>

12926. As used in this part in connection with unlawful practices, unless a different meaning clearly appears from the context:

(a) "Age" refers to the chronological age of any individual who has reached his or her 40th birthday.

(b) "Employee" does not include any individual employed by his or her parents, spouse, or child, or any individual employed under a special license in a nonprofit sheltered workshop or rehabilitation facility.

(c) "Employer <<-* * *->><<<+"+>> includes any person regularly employing five or more persons, or any person acting as an agent of an employer, directly or indirectly; the state or any political or civil subdivision thereof and cities <<-* * *->><<+, except as follows:+>>

<<<+(1)+>> "Employer" does not include a religious association or corporation not organized for private profit.

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 57 of 98

DISCRIMINATION—DISABLED PERSONS, 1992 Cal. Legis. Serv. Ch. 913 (A.B....

<<+(2) "Employer," for purposes of provisions defining unlawful employment practices related to mental disability, means any person regularly employing 15 or more persons, or any person directly or indirectly acting as an agent of such an employer, and also includes the state and municipalities and political subdivisions of the state.+>>

(d) "Employment agency" includes any person undertaking for compensation to procure employees or opportunities to work.

<<+(e) "Essential duties" means the fundamental job duties of the employment position the individual with a disability holds or desires. "Essential duties" does not include the marginal functions of the position.+>>

<<+(1) A job function may be considered essential for any of several reasons, including, but not limited to, any one or more of the following:+>>

<<+(A) The function may be essential because the reason the position exists is to perform that function.+>>

<<+(B) The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed.+>>

<<+(C) The function may be highly specialized, so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function.+>>

<<+(2) Evidence of whether a particular function is essential includes, but is not limited to, the following:+>>

<<+(A) The employer's judgment as to which functions are essential.+>>

<<+(B) Written job descriptions prepared before advertising or interviewing applicants for the job.+>>

<<+(C) The amount of time spent on the job performing the function.+>>

<<+(D) The consequences of not requiring the incumbent to perform the function.+>>

<<+(E) The terms of a collective bargaining agreement.+>>

<<+(F) The work experiences of past incumbents in the job.+>>

<<+(G) The current work experience of incumbents in similar jobs.+>>

<<+(f)+>> "Labor organization" includes any organization which exists and is constituted for the purpose, in whole or in part, of collective bargaining or of dealing with employers concerning grievances, terms or conditions of employment, or of other mutual aid or protection.

<<+(g)+>> "Medical condition" <<-* * *->> <<+includes, but is not limited to,+>> any health impairment related to or associated with a diagnosis of cancer, for which a person has been rehabilitated or cured, based on competent medical evidence.

<<+(h) "Mental disability" includes any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities. However, "mental disability" does not include conditions excluded from the federal definition of "disability" pursuant to Section 511 of the Americans with Disabilities Act of 1990 (42 U.S.C., Sec. 12211). Additionally, for purposes of this part, the unlawful use of controlled substances or other drugs shall not be deemed, in and of itself, to constitute a mental disability.+>>

<<+(i)+>> "On the bases enumerated in this part" means or refers to discrimination on the basis of one or more of the following: race, religious creed, color, national origin, ancestry, physical <<-* * *->> <<+ disability, mental disability+>>, medical condition, marital status, sex, or age.

<<+(j)+>> "Physical handicap" includes <<-* * *->><<+, but is not limited to, all of the following:+>>

<<+(1) Having any physiological disease, disorder, condition, cosmetic disfigurement, or anatomical loss that does both of the following:+>>

<<+(A) Affects one or more of the following body systems: neurological, immunological, musculoskeletal, special sense organs, respiratory, including speech organs, cardiovascular, reproductive, digestive, genitourinary, hemic and lymphatic, skin, and endocrine.+>>

<<+(B) Limits an individual's ability to participate in major life activities.+>>

<<+(2) Any other health impairment not described in paragraph (1) that requires special education or related services.+>>

<<+(3) Being regarded as having or having had a disease, disorder, condition, cosmetic disfigurement, anatomical loss, or health impairment described in paragraph (1) or (2).+>>

<<+(4) Being regarded as having, or having had, a disease, disorder, condition, cosmetic disfigurement, anatomical loss, or health impairment that has no present disabling effect but may become a physical disability as described in paragraph (1) or (2).+>>

<<+It is the intent of the Legislature that the definition of "physical disability" in this subdivision shall have the same meaning as the term "physical handicap" formerly defined by this subdivision and construed in American National Ins. Co. v. Fair

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 58 of 98

DISCRIMINATION—DISABLED PERSONS, 1992 Cal. Legis. Serv. Ch. 913 (A.B....

Employment & Housing Com., 32 Cal.3d 603. However, "physical disability" does not include conditions excluded from the federal definition of "disability" pursuant to Section 511 of the Americans with Disabilities Act of 1990 (42 U.S.C., Sec. 12211). Additionally, for purposes of this part, the unlawful use of controlled substances or other drugs shall not be deemed, in and of itself, to constitute a physical disability.+>>

<<+(k) "Reasonable accommodation" may include either of the following:+>>

<<+(1) Making existing facilities used by employees readily accessible to, and usable by, individuals with disabilities.+>>

<<+(2) Job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.+>>

<<+(*l*)+>> "Religious creed," "religion," "religious observance," "religious belief," and "creed" include all aspects of religious belief, observance, and practice.

<<+(m)+>> "Sex" includes, but is not limited to, pregnancy, childbirth, or medical conditions related to pregnancy or childbirth.

<<+(n) "Undue hardship" means an action requiring significant difficulty or expense, when considered in light of all the following factors:+>>

<<+(1) The nature and cost of the accommodation needed.+>>

<<+(2) The overall financial resources of the facilities involved in the provision of the reasonable accommodations, the number of persons employed at the facility, and the effect on expenses and resources or the impact otherwise of these accommodations upon the operation of the facility.+>>

<<+(3) The overall financial resources of the covered entity, the overall size of the business or a covered entity with respect to the number of employees, and the number, type, and location of its facilities.+>>

<<+(4) The type of operations, including the composition, structure, and functions of the work force of the entity.+>>

<<+(5) The geographic separateness, administrative, or fiscal relationship of the facility or facilities.+>>

<<+Notwithstanding subdivisions (h) and (j), if the definition of "disability" used in the Americans with Disabilities Act of 1990 (Public Law 101–336) would result in broader protection of the civil rights of individuals with a mental disability or physical disability, as defined in subdivision (h) or (j), or would include any medical condition not included within those definitions, then that broader protection or coverage shall be deemed incorporated by reference into, and shall prevail over conflicting provisions of, the definitions in subdivisions (h) and (j).+>>

SEC. 21.3. Section 12926 of the Government Code is amended to read:

## << CA GOVT § 12926 >>

12926. As used in this part in connection with unlawful practices, unless a different meaning clearly appears from the context:

<<+(a) "Affirmative relief" or "prospective relief" includes the authority to order reinstatement of an employee, awards of back pay, reimbursement of out-of-pocket expenses, hiring, transfers, reassignments, grants of tenure, promotions, cease and desist orders, posting of notices, training of personnel, testing, expunging of records, reporting of records, and any other similar relief that is intended to correct unlawful practices under this part.+>>

<<+(b)+>> "Age" refers to the chronological age of any individual who has reached his or her 40th birthday.

<<+(c)+>> "Employee" does not include any individual employed by his or her parents, spouse, or child, or any individual employed under a special license in a nonprofit sheltered workshop or rehabilitation facility.

<<+(d)+>> "Employer <<-* * *->><<+"+>> includes any person regularly employing five or more persons, or any person acting as an agent of an employer, directly or indirectly; the state or any political or civil subdivision thereof and cities <<-* * *->><<+, except as follows:+>>

<<+(1)+>> "Employer" does not include a religious association or corporation not organized for private profit.

<<+(2) "Employer," for purposes of provisions defining unlawful employment practices related to mental disability, means any person regularly employing 15 or more persons, or any person directly or indirectly acting as an agent of such an employer, and also includes the state and municipalities and political subdivisions of the state.+>>

<<+(e)+>> "Employment agency" includes any person undertaking for compensation to procure employees or opportunities to work.

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 59 of 98

DISCRIMINATION—DISABLED PERSONS, 1992 Cal. Legis. Serv. Ch. 913 (A.B....

<<+(f) "Essential duties" means the fundamental job duties of the employment position the individual with a disability holds or desires. "Essential duties" does not include the marginal functions of the position.+>>

<<+(1) A job function may be considered essential for any of several reasons, including, but not limited to, any one or more of the following:+>>

<<+(A) The function may be essential because the reason the position exists is to perform that function.+>>

<<+(B) The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed.+>>

<<+(C) The function may be highly specialized, so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function.+>>

<<+(2) Evidence of whether a particular function is essential includes, but is not limited to, the following:+>>

<<+(A) The employer's judgment as to which functions are essential.+>>

<<+(B) Written job descriptions prepared before advertising or interviewing applicants for the job.+>>

<<+(C) The amount of time spent on the job performing the function.+>>

<<+(D) The consequences of not requiring the incumbent to perform the function.+>>

<<+(E) The terms of a collective bargaining agreement.+>>

<<+(F) The work experiences of past incumbents in the job.+>>

<<+(G) The current work experience of incumbents in similar jobs.+>>

<<+(g)+>> "Labor organization" includes any organization which exists and is constituted for the purpose, in whole or in part, of collective bargaining or of dealing with employers concerning grievances, terms or conditions of employment, or of other mutual aid or protection.

<<+(h)+>> "Medical condition" <<-* * *->> <<+includes, but is not limited to,+>> any health impairment related to or associated with a diagnosis of cancer, for which a person has been rehabilitated or cured, based on competent medical evidence.

<<+(i) "Mental disability" includes any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities. However, "mental disability" does not include conditions excluded from the federal definition of "disability" pursuant to Section 511 of the Americans with Disabilities Act of 1990 (42 U.S.C., Sec. 12211). Additionally, for purposes of this part, the unlawful use of controlled substances or other drugs shall not be deemed, in and of itself, to constitute a mental disability.+>>

<<+(j)+>> "On the bases enumerated in this part" means or refers to discrimination on the basis of one or more of the following: race, religious creed, color, national origin, ancestry, physical <<-* * *->> <<+ disability, mental disability+>>, medical condition, marital status, sex, or age.

<<+(k)+>> "Physical <<+disability+>>" includes <<-* * *->><<+, but is not limited to, all of the following:+>>

<<+(1) Having any physiological disease, disorder, condition, cosmetic disfigurement, or anatomical loss that does both of the following:+>>

<<+(A) Affects one or more of the following body systems: neurological, immunological, musculoskeletal, special sense organs, respiratory, including speech organs, cardiovascular, reproductive, digestive, genitourinary, hemic and lymphatic, skin, and endocrine.+>>

<<+(B) Limits an individual's ability to participate in major life activities.+>>

<<+(2) Any other health impairment not described in paragraph (1) that requires special education or related services.+>>

<<+(3) Being regarded as having or having had a disease, disorder, condition, cosmetic disfigurement, anatomical loss, or health impairment described in paragraph (1) or (2).+>>

<<+(4) Being regarded as having, or having had, a disease, disorder, condition, cosmetic disfigurement, anatomical loss, or health impairment that has no present disabling effect but may become a physical disability as described in paragraph (1) or (2).+>>

<<+It is the intent of the Legislature that the definition of "physical disability" in this subdivision shall have the same meaning as the term "physical handicap" formerly defined by this subdivision and construed in American National Ins. Co. v. Fair Employment & Housing Com., 32 Cal. 3d 603. However, "physical disability" does not include conditions excluded from the federal definition of "disability" pursuant to Section 511 of the Americans with Disabilities Act of 1990 (42 U.S.C., Sec. 12211). Additionally, for purposes of this part, the unlawful use of controlled substances or other drugs shall not be deemed, in and of itself, to constitute a physical disability.+>>

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 60 of 98

<<+(*l*) "Reasonable accommodation" may include either of the following:+>>

<<+(1) Making existing facilities used by employees readily accessible to, and usable by, individuals with disabilities.+>>

<<+(2) Job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities. It is the intent of the Legislature that the definition of "physical disability" in this subdivision shall have the same meaning as the term "physical handicap" formerly defined by this subdivision and construed in American National Ins. Co. v. Fair Employment & Housing Com., 32 Cal.3d 603. However, "physical disability" does not include conditions excluded from the federal definition of "disability" pursuant to Section 511 of the Americans with Disabilities Act of 1990 (42 U.S.C., Sec. 12211). Additionally, for purposes of this part, the unlawful use of controlled substances or other drugs shall not be deemed, in and of itself, to constitute a physical disability.+>>

<<+(m) "Reasonable accommodation" may include either of the following:+>>

<<+(1) Making existing facilities used by employees readily accessible to, and usable by, individuals with disabilities.+>>

<<+(2) Job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.+>>

<<+(n)+>> "Religious creed," "religion," "religious observance," "religious belief," and "creed" include all aspects of religious belief, observance, and practice.

<<+(o)+>> "Sex" includes, but is not limited to, pregnancy, childbirth, or medical conditions related to pregnancy or childbirth.

<<+(p) "Undue hardship" means an action requiring significant difficulty or expense, when considered in light of all the following factors: (1) the nature and cost of the accommodation needed, (2) the overall financial resources of the facilities involved in the provision of the reasonable accommodations, the number of persons employed at the facility, and the effect on expenses and resources or the impact otherwise of these accommodations upon the operation of the facility, (3) the overall financial resources of the covered entity, the overall size of the business or a covered entity with respect to the number of employees, and the number, type, and location of its facilities, (4) the type of operations, including the composition, structure, and functions of the workforce of the entity, (5) the geographic separateness, administrative, or fiscal relationship of the facility or facilities.+>>

<<+Notwithstanding subdivisions (i) and (k), if the definition of "disability" used in the Americans with Disabilities Act of 1990 (Public Law 101–336) would result in broader protection of the civil rights of individuals with a mental disability or physical disability, as defined in subdivision (i) or (k), or would include any medical condition not included within those definitions, then that broader protection or coverage shall be deemed incorporated by reference into, and shall prevail over conflicting provisions of, the definitions in subdivisions (i) and (k).+>>

SEC. 22. Section 12931 of the Government Code is amended to read:

<< CA GOVT § 12931 >>

12931. The department may also provide assistance to communities and persons therein in resolving disputes, disagreements, or difficulties relating to discriminatory practices based on race, religious creed, color, national origin, ancestry, physical <<-* * *->> <<+disability, mental disability+>>, medical condition, marital status, sex, <<+familial status,+>> or age which impair the rights of persons in such communities under the Constitution or laws of the United States or of this state. The services of the department may be made available in cases of such disputes, disagreements, or difficulties only when, in its judgment, peaceful relations among the citizens of the community involved are threatened thereby. The department's services are to be made available only upon the request of an appropriate state or local public body, or upon the request of any person directly affected by any such dispute, disagreement, or difficulty.

The assistance of the department pursuant to this section shall be limited to endeavors at investigation, conference, conciliation, and persuasion.

SEC. 23. Section 12940 of the Government Code is amended to read:

<< CA GOVT § 12940 >>

12940. It shall be an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California:

(a) For an employer, because of the race, religious creed, color, national origin, ancestry, physical <<-* * *->> <<+disability, mental disability+>>, medical condition, marital status, or sex of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions or privileges of employment.

(1) Nothing in this part shall prohibit an employer from refusing to hire or discharging <<-* * *->> <<+an+>> employee << +with a physical or mental disability+>>, or subject an employer to any legal liability resulting from the refusal to employ or the discharge of <<-* * *->> <<+an+>> employee <<+with a physical or mental disability+>>, where the employee, because of his or her physical or <<-* * *->> <<+mental disability+>>, is unable to perform his or her <<+essential+>> duties <<+even with reasonable accommodations+>>, or cannot perform those duties in a manner which would not endanger his or her health or safety or the health and safety of others <<+even with reasonable accommodations+>>.

(2) Nothing in this part shall prohibit an employer from refusing to hire or discharging an employee who, because of the employee's medical condition, is unable to perform his or her <<+essential+>> duties <<+even with reasonable accommodations +>>, or cannot perform those duties in a manner which would not endanger the employee's health or safety or the health or safety of others <<+even with reasonable accommodations+>>. Nothing in this part shall subject an employer to any legal liability resulting from the refusal to employ or the discharge of an employee who, because of the employee's medical condition, is unable to perform his or her <<+ essential+>> duties, or cannot perform those duties in a manner which would not endanger the employee's health or safety or the health or safety of others <<+even with reasonable accommodations+>>.

(3) Nothing in this part relating to discrimination on account of marital status shall either (i) affect the right of an employer to reasonably regulate, for reasons of supervision, safety, security, or morale, the working of spouses in the same department, division, or facility, consistent with the rules and regulations adopted by the commission, or (ii) prohibit bona fide health plans from providing additional or greater benefits to employees with dependents than to those employees without or with fewer dependents.

(4) Nothing in this part relating to discrimination on account of sex shall affect the right of an employer to use veteran status as a factor in employee selection or to give special consideration to Vietnam era veterans.

(b) For a labor organization, because of the race, religious creed, color, national origin, ancestry, physical <<-* * *->> << +disability, mental disability+>>, medical condition, marital status, or sex of any person, to exclude, expel or restrict from its membership the person, or to provide only second-class or segregated membership or to discriminate against any person because of the race, religious creed, color, national origin, ancestry, physical <<-* * *->> <<+disability, mental disability+>>, medical condition, marital status, or sex of the person in the election of officers of the labor organization or in the selection of the labor organization's staff or to discriminate in any way against any of its members or against any employer or against any person employed by an employer.

(c) For any person to discriminate against any person in the selection or training of that person in any apprenticeship training program or any other training program leading to employment because of the race, religious creed, color, national origin, ancestry, physical <<-* * *->> <<+disability, mental disability+>>, medical condition, marital status, or sex of the person discriminated against.

(d) For any employer or employment agency, unless specifically acting in accordance with federal equal employment opportunity guidelines and regulations approved by the commission, to print or circulate or cause to be printed or circulated any publication, or to make any non-job-related inquiry, either verbal or through use of an application form, which expresses, directly or indirectly, any limitation, specification, or discrimination as to race, religious creed, color, national origin, ancestry, physical <<-* * *->> <<+disability, mental disability+>>, medical condition, marital status, or sex, or any intent to make any such limitation, specification or discrimination. <<+Except as provided in the Americans with Disabilities Act of 1990 (Public Law 101–336) and the regulations adopted pursuant thereto, n+>>othing in this subdivision shall prohibit any employer from making, in connection with prospective employment, an inquiry as to, or <<-* * *->> request for information regarding, the physical fitness, medical condition, physical condition or medical history of applicants if that inquiry or request for information is directly related and pertinent to the position the applicant is applying for or directly related to a determination of whether the applicant would endanger his or her health or <<+the+>> safety or <<-* * *->> health <<+and+>> safety of others.

(e) For any employer, labor organization, or employment agency to harass, discharge, expel, or otherwise discriminate against any person because the person has made a report pursuant to Section 11161.8 of the Penal Code which prohibits retaliation against hospital employees who report suspected patient abuse by health facilities or community care facilities.

(f) For any employer, labor organization, employment agency, or person to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part.

(g) For any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this part, or to attempt to do so.

(h) For an employer, labor organization, employment agency, apprenticeship training program or any training program leading to employment, or any other person, because of race, religious creed, color, national origin, ancestry, physical <<-* * *->> << +disability, mental disability+>>, medical condition, marital status, sex, or age, to harass an employee or applicant. Harassment of an employee or applicant by an employee other than an agent or supervisor shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action. An entity shall take all reasonable steps to prevent harassment from occurring. Loss of tangible job benefits shall not be necessary in order to establish harassment. The provisions of this subdivision are declaratory of existing law, except for the new duties imposed on employers with regard to harassment. For purposes of this subdivision only, "employer" means any person regularly employing one or more persons, or any person acting as an agent of an employer, directly or indirectly, the state, or any political or civil subdivision thereof, and cities. However, "employer" does not include a religious association or corporation not organized for private profit. For other types of discrimination as enumerated in subdivision (a), an employer remains as defined in subdivision (c) of Section 12926. Nothing contained in this subdivision shall be construed to apply the definition of employer found in this subdivision to subdivision (a).

(i) For an employer, labor organization, employment agency, apprenticeship training program, or any training program leading to employment, to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring.

(j) For an employer or other entity covered by this part to refuse to hire or employ a person or to refuse to select a person for a training program leading to employment or to bar or to discharge a person from employment or from a training program leading to employment, or to discriminate against a person in compensation or in terms, conditions, or privileges of employment because of a conflict between the person's religious belief or observance and any employment requirement, unless the employer or other entity covered by this part demonstrates that it has explored any available reasonable alternative means of accommodating the religious belief or observance, including the possibilities of excusing the person from those duties which conflict with his or her religious belief or observance or permitting those duties to be performed at another time or by another person, but is unable to reasonably accommodate the religious belief or observance without undue hardship on the conduct of the business of the employer or other entity covered by this part. Religious belief or observance, as used in this section, includes, but is not limited to, observance such as a Sabbath or other religious holy day or days, and reasonable time necessary for travel prior and subsequent to a religious observance.

<<+(k) For an employer or other entity covered by this part to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee. Nothing in this subdivision or in paragraph (1) or (2) of subdivision (a) shall be construed to require an accommodation that is demonstrated by the employer or other covered entity to produce undue hardship to its operation.+>>

<<+(*l*) Initial application of this section to discrimination by employers on the basis of mental disability shall be in accordance with the following schedule:+>>

<<+(1) Commencing January 1, 1993, for employers with 25 or more employees, the state, and its municipalities and political subdivisions.+>>

<<+(2) Commencing July 26, 1994, for all other employers specified in paragraph (2) of subdivision (c) of Section 12926.+>>

SEC. 23.1. Section 12940 of the Government Code is amended to read:

<< CA GOVT § 12940 >>

12940. It shall be an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California:

(a) For an employer, because of the race, religious creed, color, national origin, ancestry, physical <<-* * *->> <<+disability, mental disability+>>, medical condition, marital status, or sex of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions or privileges of employment.

(1) Nothing in this part shall prohibit an employer from refusing to hire or discharging <<-* * *->> <<+an+>> employee <<+with a physical or mental disability+>>, or subject an employer to any legal liability resulting from the refusal to employ or the discharge of <<-* * *->> <<+an+>> employee <<+with a physical or mental disability+>>, where the employee, because of his or her physical or mental disability, is unable to perform his or her <<+essential+>> duties <<+even with reasonable accommodations+>>, or cannot perform those duties in a manner <<+that+>> would not endanger his or her health or safety or the health and safety of others <<+even with reasonable accommodations+>>.

(2) Nothing in this part shall prohibit an employer from refusing to hire or discharging an employee who, because of the employee's medical condition, is unable to perform his or her <<+essential+>> duties <<+even with reasonable accommodations +>>, or cannot perform those duties in a manner which would not endanger the employee's health or safety or the health and safety of others <<+even with reasonable accommodations+>>. Nothing in this part shall subject an employer to any legal liability resulting from the refusal to employ or the discharge of an employee who, because of the employee's medical condition, is unable to perform his or her <<+ essential+>> duties, or cannot perform those duties in a manner which would not endanger the employee's health or safety or the health or safety of others <<+even with reasonable accommodations+>>.

(3) Nothing in this part relating to discrimination on account of marital status shall <<+do+>> either <<-* * *->> <<+of the following:+>>

<<+(A) A+>>ffect the right of an employer to reasonably regulate, for reasons of supervision, safety, security, or morale, the working of spouses in the same department, division, or facility, consistent with the rules and regulations adopted by the commission <<-* * *->><<+.+>>

<<+(B) P+>>rohibit bona fide health plans from providing additional or greater benefits to employees with dependents than to those employees without or with fewer dependents.

(4) Nothing in this part relating to discrimination on account of sex shall affect the right of an employer to use veteran status as a factor in employee selection or to give special consideration to Vietnam era veterans.

(b) For a labor organization, because of the race, religious creed, color, national origin, ancestry, physical <<-* * *->> <<+disability, mental disability+>>, medical condition, marital status, or sex of any person, to exclude, expel or restrict from its membership the person, or to provide only second-class or segregated membership or to discriminate against any person because of the race, religious creed, color, national origin, ancestry, physical <<-* * *->> <<+disability, mental disability+>>, medical condition, marital status, or sex of the person in the election of officers of the labor organization or in the selection of the labor organization's staff or to discriminate in any way against any of its members or against any employer or against any person employed by an employer.

(c) For any person to discriminate against any person in the selection or training of that person in any apprenticeship training program or any other training program leading to employment because of the race, religious creed, color, national origin, ancestry, physical <<-* * *->> <<+disability, mental disability+>>, medical condition, marital status, or sex of the person discriminated against.

(d) For any employer or employment agency, unless specifically acting in accordance with federal equal employment opportunity guidelines and regulations approved by the commission, to print or circulate or cause to be printed or circulated any publication, or to make any non-job-related inquiry, either verbal or through use of an application form, which expresses, directly or indirectly, any limitation, specification, or discrimination as to race, religious creed, color, national origin, ancestry, physical <<-* * *->> <<+disability, mental disability+>>, medical condition, marital status, or sex, or any intent to make any such limitation, specification or discrimination. <<+Except as provided in the Americans with Disabilities Act of 1990 (Public Law 101–336) and the regulations adopted pursuant thereto, n+>>othing in this subdivision shall prohibit any employer from making, in connection with prospective employment, an inquiry as to, or a request for information regarding, the physical fitness, medical condition, physical condition or medical history of applicants if that inquiry or request for information is directly related and pertinent to the position the applicant is applying for or directly related to a determination of whether the applicant would endanger his or her health or safety or the health or safety of others.

DISCRIMINATION—DISABLED PERSONS, 1992 Cal. Legis. Serv. Ch. 913 (A.B....

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 64 of 98

(e) For any employer, labor organization, or employment agency to harass, discharge, expel, or otherwise discriminate against any person because the person has made a report pursuant to Section 11161.8 of the Penal Code which prohibits retaliation against hospital employees who report suspected patient abuse by health facilities or community care facilities.

(f) For any employer, labor organization, employment agency, or person to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part.

(g) For any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this part, or to attempt to do so.

(h) <<+(1)+>> For an employer, labor organization, employment agency, apprenticeship training program or any training program leading to employment, or any other person, because of race, religious creed, color, national origin, ancestry, physical <<-* * *->> <<+disability, mental disability+>>, medical condition, marital status, sex, or age, to harass an employee or applicant. Harassment of an employee or applicant by an employee other than an agent or supervisor shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action. An entity shall take all reasonable steps to prevent harassment from occurring. Loss of tangible job benefits shall not be necessary in order to establish harassment.

<<-* * *->> <<+(2) T+>>his subdivision <<+is+>> declaratory of existing law, except for the new duties imposed on employers with regard to harassment.

<<+(3) (A)+>> For purposes of this subdivision only, "employer" means any person regularly employing one or more persons, or any person acting as an agent of an employer, directly or indirectly, the state, or any political or civil subdivision thereof, and cities.

<<-* * *->> <<+(B) Notwithstanding subparagraph (A), for purposes of this subdivision+>>, "employer" does not include a religious association or corporation not organized for private profit.

<<+(4)+>> For other types of discrimination as enumerated in subdivision (a), an employer remains as defined in subdivision (c) of Section 12926.

<<+(5)+>> Nothing contained in this subdivision shall be construed to apply the definition of employer found in this subdivision to subdivision (a).

(i) For an employer, labor organization, employment agency, apprenticeship training program, or any training program leading to employment, to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring.

(j) For an employer or other entity covered by this part to refuse to hire or employ a person or to refuse to select a person for a training program leading to employment or to bar or to discharge a person from employment or from a training program leading to employment, or to discriminate against a person in compensation or in terms, conditions, or privileges of employment because of a conflict between the person's religious belief or observance and any employment requirement, unless the employer or other entity covered by this part demonstrates that it has explored any available reasonable alternative means of accommodating the religious belief or observance, including the possibilities of excusing the person from those duties which conflict with his or her religious belief or observance or permitting those duties to be performed at another time or by another person, but is unable to reasonably accommodate the religious belief or observance without undue hardship on the conduct of the business of the employer or other entity covered by this part. Religious belief or observance, as used in this section, includes, but is not limited to, observance such as a Sabbath or other religious holy day or days, and reasonable time necessary for travel prior and subsequent to a religious observance.

<<+(k) For an employer or other entity covered by this part to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee. Nothing in this subdivision or in paragraph (1) or (2) of subdivision (a) shall be construed to require an accommodation that is demonstrated by the employer or other covered entity to produce undue hardship to its operation.+>>

<<+(*l*) Initial application of this section to discrimination by employers on the basis of mental disability shall be in accordance with the following schedule:+>>

<<+(1) Commencing January 1, 1993, for employers with 25 or more employees, the state, and its municipalities and political subdivisions.+>>

<<+(2) Commencing July 26, 1994, for all other employers specified in paragraph (2) of the subdivision of Section 12926 which defines "employer."+>>

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 65 of 98

DISCRIMINATION—DISABLED PERSONS, 1992 Cal. Legis. Serv. Ch. 913 (A.B....

SEC. 23.2. Section 12940 of the Government Code is amended to read:

<< CA GOVT § 12940 >>

12940. It shall be an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California:

(a) For an employer, because of the race, religious creed, color, national origin, ancestry, physical <<-* * *->> <<+disability, mental disability+>>, medical condition, marital status, or sex of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions or privileges of employment.

(1) Nothing in this part shall prohibit an employer from refusing to hire or discharging <<-* * *->> <<+an+>> employee << +with a physical or mental disability+>>, or subject an employer to any legal liability resulting from the refusal to employ or the discharge of <<-* * *->> <<+an+>> employee <<+with a physical or mental disability+>>, where the employee, because of his or her physical <<-* * *->> <<+or mental disability+>>, is unable to perform his or her <<+essential+>> duties <<+even with reasonable accommodations+>>, or cannot perform those duties in a manner which would not endanger his or her health or safety or the health and safety of others <<+even with reasonable accommodations+>>.

(2) Nothing in this part shall prohibit an employer from refusing to hire or discharging an employee who, because of the employee's medical condition, is unable to perform his or her <<+essential+>> duties <<+even with reasonable accommodations +>>, or cannot perform those duties in a manner which would not endanger the employee's health or safety or the health or safety of others <<+even with reasonable accommodations+>>. Nothing in this part shall subject an employer to any legal liability resulting from the refusal to employ or the discharge of an employee who, because of the employee's medical condition, is unable to perform his or her <<+ essential+>> duties, or cannot perform those duties in a manner which would not endanger the employee's health or safety or the health or safety of others <<+even with reasonable accommodations+>>.

(3) Nothing in this part relating to discrimination on account of marital status shall either (i) affect the right of an employer to reasonably regulate, for reasons of supervision, safety, security, or morale, the working of spouses in the same department, division, or facility, consistent with the rules and regulations adopted by the commission, or (ii) prohibit bona fide health plans from providing additional or greater benefits to employees with dependents than to those employees without or with fewer dependents.

(4) Nothing in this part relating to discrimination on account of sex shall affect the right of an employer to use veteran status as a factor in employee selection or to give special consideration to Vietnam era veterans.

(b) For a labor organization, because of the race, religious creed, color, national origin, ancestry, physical <<-* * *->> << +disability, mental disability+>>, medical condition, marital status, or sex of any person, to exclude, expel or restrict from its membership the person, or to provide only second-class or segregated membership or to discriminate against any person because of the race, religious creed, color, national origin, ancestry, physical <<-* * *->> <<+disability+>>, mental disability, medical condition, marital status, or sex of the person in the election of officers of the labor organization or in the selection of the labor organization's staff or to discriminate in any way against any of its members or against any employer or against any person employed by an employer.

(c) For any person to discriminate against any person in the selection or training of that person in any apprenticeship training program or any other training program leading to employment because of the race, religious creed, color, national origin, ancestry, physical <<-* * *->> <<+disability, mental disability+>>, medical condition, marital status, or sex of the person discriminated against.

(d) For any employer or employment agency, unless specifically acting in accordance with federal equal employment opportunity guidelines and regulations approved by the commission, to print or circulate or cause to be printed or circulated any publication, or to make any non-job-related inquiry, either verbal or through use of an application form, which expresses, directly or indirectly, any limitation, specification, or discrimination as to race, religious creed, color, national origin, ancestry, physical <<-* * *->> <<+disability, mental disability+>>, medical condition, marital status, or sex, or any intent to make any such limitation, specification or discrimination. <<+Except as provided in the Americans with Disabilities Act of 1990 (Public Law 101–336) and the regulations adopted pursuant thereto, n+>>othing in this subdivision shall prohibit any employer from making, in connection with prospective employment, an inquiry as to, or a request for information regarding, the physical

DISCRIMINATION—DISABLED PERSONS, 1992 Cal. Legis. Serv. Ch. 913 (A.B....

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 66 of 98

fitness, medical condition, physical condition or medical history of applicants if that inquiry or request for information is directly related and pertinent to the position the applicant is applying for or directly related to a determination of whether the applicant would endanger his or her health or safety or the health or safety of others.

(e) For any employer, labor organization, or employment agency to harass, discharge, expel, or otherwise discriminate against any person because the person has made a report pursuant to Section 11161.8 of the Penal Code which prohibits retaliation against hospital employees who report suspected patient abuse by health facilities or community care facilities.

(f) For any employer, labor organization, employment agency, or person to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part.

(g) For any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this part, or to attempt to do so.

(h) For an employer, labor organization, employment agency, apprenticeship training program or any training program leading to employment, or any other person, because of race, religious creed, color, national origin, ancestry, physical <<-* * *->> << +disability, mental disability+>>, medical condition, marital status, sex, or age, to harass an employee or applicant. Harassment of an employee or applicant by an employee other than an agent or supervisor shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action. An entity shall take all reasonable steps to prevent harassment from occurring. Loss of tangible job benefits shall not be necessary in order to establish harassment. <<+For purposes of this section, hostile work environment sexual harassment is established where there is unwelcome sexual conduct that a reasonable person of the same gender as the complainant would consider sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.+>> The provisions of this subdivision are declaratory of existing law, except for the new duties imposed on employers with regard to harassment <<+and the standard provided for the establishment of hostile work environment sexual harassment+>>. For purposes of this subdivision only, "employer" means any person regularly employing one or more persons, or any person acting as an agent of an employer, directly or indirectly, the state, or any political or civil subdivision thereof, and cities. However, "employer" does not include a religious association or corporation not organized for private profit. For other types of discrimination as enumerated in subdivision (a), an employer remains as defined in subdivision (c) of Section 12926. Nothing contained in this subdivision shall be construed to apply the definition of employer found in this subdivision to subdivision (a).

(i) For an employer, labor organization, employment agency, apprenticeship training program, or any training program leading to employment, to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring.

(j) For an employer or other entity covered by this part to refuse to hire or employ a person or to refuse to select a person for a training program leading to employment or to bar or to discharge a person from employment or from a training program leading to employment, or to discriminate against a person in compensation or in terms, conditions, or privileges of employment because of a conflict between the person's religious belief or observance and any employment requirement, unless the employer or other entity covered by this part demonstrates that it has explored any available reasonable alternative means of accommodating the religious belief or observance, including the possibilities of excusing the person from those duties which conflict with his or her religious belief or observance or permitting those duties to be performed at another time or by another person, but is unable to reasonably accommodate the religious belief or observance without undue hardship on the conduct of the business of the employer or other entity covered by this part. Religious belief or observance, as used in this section, includes, but is not limited to, observance such as a Sabbath or other religious holy day or days, and reasonable time necessary for travel prior and subsequent to a religious observance.

<<+(k) For an employer or other entity covered by this part to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee. Nothing in this subdivision or in paragraph (1) or (2) of subdivision (a) shall be construed to require an accommodation that is demonstrated by the employer or other covered entity to produce undue hardship to its operation.+>>

<<+(*l*) Initial application of this section to discrimination by employers on the basis of mental disability shall be in accordance with the following schedule:+>>

<<+(1) Commencing January 1, 1993, for employers with 25 or more employees, the state, and its municipalities and political subdivisions.+>>

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 67 of 98

DISCRIMINATION—DISABLED PERSONS, 1992 Cal. Legis. Serv. Ch. 913 (A.B....

<<+(2) Commencing July 26, 1994, for all other employers specified in paragraph (2) of the subdivision of Section 12926 which defines "employer."+>>

SEC. 23.3. Section 12940 of the Government Code is amended to read:

<< CA GOVT § 12940 >>

12940. It shall be an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California:

 (a) For an employer, because of the race, religious creed, color, national origin, ancestry, physical <<-* * *->> <<+disability, mental disability+>>, medical condition, marital status, or sex of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions or privileges of employment.

 (1) Nothing in this part shall prohibit an employer from refusing to hire or discharging <<-* * *->> <<+an+>> employee << +with a physical or mental disability+>>, or subject an employer to any legal liability resulting from the refusal to employ or the discharge of <<-* * *->> <<+an+>> employee <<+with a physical or mental disability+>>, where the employee, because of his or her physical <<-* * *->> <<+or mental disability+>>, is unable to perform his or her <<+essential+>> duties <<+even with reasonable accommodations+>>, or cannot perform those duties in a manner <<+that+>> would not endanger his or her health or safety or the health and safety of others <<+even with reasonable accommodations+>>.

 (2) Nothing in this part shall prohibit an employer from refusing to hire or discharging an employee who, because of the employee's medical condition, is unable to perform his or her <<+essential+>> duties <<+even with reasonable accommodations +>>, or cannot perform those duties in a manner which would not endanger the employee's health or safety or the health or safety of others <<+even with reasonable accommodations+>>. Nothing in this part shall subject an employer to any legal liability resulting from the refusal to employ or the discharge of an employee who, because of the employee's medical condition, is unable to perform his or her <<+ essential+>> duties, or cannot perform those duties in a manner which would not endanger the employee's health or safety or the health or safety of others <<+even with reasonable accommodations+>>.

 (3) Nothing in this part relating to discrimination on account of marital status shall <<+do+>> either <<-* * *->> <<+of the following:+>>

 <<+(A) A+>>ffect the right of an employer to reasonably regulate, for reasons of supervision, safety, security, or morale, the working of spouses in the same department, division, or facility, consistent with the rules and regulations adopted by the commission <<-* * *->><<+.+>>

 <<+(B) P+>>rohibit bona fide health plans from providing additional or greater benefits to employees with dependents than to those employees without or with fewer dependents.

 (4) Nothing in this part relating to discrimination on account of sex shall affect the right of an employer to use veteran status as a factor in employee selection or to give special consideration to Vietnam era veterans.

 (b) For a labor organization, because of the race, religious creed, color, national origin, ancestry, physical <<-* * *->> << +disability, mental disability+>>, medical condition, marital status, or sex of any person, to exclude, expel or restrict from its membership the person, or to provide only second-class or segregated membership or to discriminate against any person because of the race, religious creed, color, national origin, ancestry, physical <<-* * *->> <<+disability, mental disability+>>, medical condition, marital status, or sex of the person in the election of officers of the labor organization or in the selection of the labor organization's staff or to discriminate in any way against any of its members or against any employer or against any person employed by an employer.

 (c) For any person to discriminate against any person in the selection or training of that person in any apprenticeship training program or any other training program leading to employment because of the race, religious creed, color, national origin, ancestry, physical <<-* * *->> <<+disability, mental disability+>>, medical condition, marital status, or sex of the person discriminated against.

 (d) For any employer or employment agency, unless specifically acting in accordance with federal equal employment opportunity guidelines and regulations approved by the commission, to print or circulate or cause to be printed or circulated any publication, or to make any non-job-related inquiry, either verbal or through use of an application form, which expresses, directly or indirectly, any limitation, specification, or discrimination as to race, religious creed, color, national origin, ancestry,

physical <<-* * *->> <<+disability, mental disability+>>, medical condition, marital status, or sex, or any intent to make any such limitation, specification or discrimination. <<+Except as provided in the Americans with Disabilities Act of 1990 (Public Law 101–336) and the regulations adopted pursuant thereto, n+>>othing in this subdivision shall prohibit any employer from making, in connection with prospective employment, an inquiry as to, or a request for information regarding, the physical fitness, medical condition, physical condition or medical history of applicants if that inquiry or request for information is directly related and pertinent to the position the applicant is applying for or directly related to a determination of whether the applicant would endanger his or her health or safety or the health or safety of others.

(e) For any employer, labor organization, or employment agency to harass, discharge, expel, or otherwise discriminate against any person because the person has made a report pursuant to Section 11161.8 of the Penal Code which prohibits retaliation against hospital employees who report suspected patient abuse by health facilities or community care facilities.

(f) For any employer, labor organization, employment agency, or person to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part.

(g) For any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this part, or to attempt to do so.

(h) <<+(1)+>> For an employer, labor organization, employment agency, apprenticeship training program or any training program leading to employment, or any other person, because of race, religious creed, color, national origin, ancestry, physical <<-* * *->> <<+disability, mental disability+>>, medical condition, marital status, sex, or age, to harass an employee or applicant. Harassment of an employee or applicant by an employee other than an agent or supervisor shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action. An entity shall take all reasonable steps to prevent harassment from occurring. Loss of tangible job benefits shall not be necessary in order to establish harassment. <<-* * *->> <<+For purposes of this section, hostile work environment sexual harassment is established where there is unwelcome sexual conduct that a reasonable person of the same gender as the complainant would consider sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.+>>

<<+(2) T+>>his subdivision <<+is+>> declaratory of existing law, except for the new duties imposed on employers with regard to harassment <<+ and the standard provided for the establishment of hostile work environment sexual harassment+>>.

<<+(3) (A)+>> For purposes of this subdivision only, "employer" means any person regularly employing one or more persons, or any person acting as an agent of an employer, directly or indirectly, the state, or any political or civil subdivision thereof, and cities.

<<-* * *->> <<+(B) Notwithstanding subparagraph (A), for purposes of this subdivision+>>, "employer" does not include a religious association or corporation not organized for private profit.

<<+(4)+>> For other types of discrimination as enumerated in subdivision (a), an employer remains as defined in subdivision (c) of Section 12926.

<<+(5)+>> Nothing contained in this subdivision shall be construed to apply the definition of employer found in this subdivision to subdivision (a).

(i) For an employer, labor organization, employment agency, apprenticeship training program, or any training program leading to employment, to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring.

(j) For an employer or other entity covered by this part to refuse to hire or employ a person or to refuse to select a person for a training program leading to employment or to bar or to discharge a person from employment or from a training program leading to employment, or to discriminate against a person in compensation or in terms, conditions, or privileges of employment because of a conflict between the person's religious belief or observance and any employment requirement, unless the employer or other entity covered by this part demonstrates that it has explored any available reasonable alternative means of accommodating the religious belief or observance, including the possibilities of excusing the person from those duties which conflict with his or her religious belief or observance or permitting those duties to be performed at another time or by another person, but is unable to reasonably accommodate the religious belief or observance without undue hardship on the conduct of the business of the employer or other entity covered by this part. Religious belief or observance, as used in this section, includes, but is not limited to, observance such as a Sabbath or other religious holy day or days, and reasonable time necessary for travel prior and subsequent to a religious observance.

WESTLAW © 2023 Thomson Reuters. No claim to original U.S. Government Works. ADD_035 31

<<+(k) For an employer or other entity covered by this part to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee. Nothing in this subdivision or in paragraph (1) or (2) of subdivision (a) shall be construed to require an accommodation that is demonstrated by the employer or other covered entity to produce undue hardship to its operation.+>>

<<+(*l*) Initial application of this section to discrimination by employers on the basis of mental disability shall be in accordance with the following schedule:+>>

<<+(1) Commencing January 1, 1993, for employers with 25 or more employees, the state, and its municipalities and political subdivisions.+>>

<<+(2) Commencing July 26, 1994, for all other employers specified in paragraph (2) of the subdivision of Section 12926 which defines "employer."+>>

SEC. 23.5. Section 12940.3 is added to the Government Code, to read:

<< CA GOVT § 12940.3 >>

12940.3. Prior to January 1, 1996, a study or survey of the costs, including litigation and reasonable accommodation expenses and other impacts on California employers of 15 or more employees, resulting from compliance with Title I of the Americans with Disabilities Act of 1990 (Public Law 101–336), shall be undertaken jointly by the California Chamber of Commerce, the Department of Fair Employment and Housing, Protection and Advocacy, Inc., and the State Department of Rehabilitation. The study shall also include an analysis of the benefits of the requirements of Title I of the Americans with Disabilities Act of 1990 (Public Law 101–336) to persons with disabilities. The results of the study shall be submitted to the Commission on Special Education for their review and recommendations. The study shall provide a basis for a recommendation to the Legislature and the Governor concerning whether the hardships imposed upon businesses outweigh the benefits to persons with disabilities when the requirements of Title I of the Americans with Disabilities Act of 1990 (Public Law 101–336) are extended to California employers of 5 to 14, inclusive, employees by amending the Fair Employment and Housing Act to include people with mental disabilities as a protected class. In conducting the study and making a recommendation, the parties shall consider whether the additional requirements or consequences of being subject to the additional requirements will impose a significant hardship on employers of 5 to 14, inclusive, employees.

It is the intent to the Legislature that if, at the conclusion of the study and report to the Legislature, it is determined that employers of between 5 and 14 employees would not have a significant hardship in implementing the requirements of Title I of the Americans with Disabilities Act of 1990 (Public Law 101–336), legislation should be introduced to require that employers with between 5 and 14 employees are covered by the requirements of Title I of the Americans with Disabilities Act of 1990 (Public Law 101–336).

The Legislature intends that all employers, including employers of 5 to 14, inclusive, employees, voluntarily comply with the requirements of Title I of the Americans with Disabilities Act of 1990 (Public Law 101–336) so that persons with mental disabilities can participate fully in the employment opportunities provided to all Californians. However, it is the intent of the Legislature that existing employment discrimination provisions covering employers of 5 to 14, inclusive, employees shall not be altered by amendments to this part that become effective on January 1, 1993.

SEC. 24. Section 12944 of the Government Code is amended to read:

<< CA GOVT § 12944 >>

12944. (a) It shall be unlawful for a licensing board to require any examination or establish any other qualification for licensing which has an adverse impact on any class by virtue of its race, creed, color, national origin or ancestry, sex, age, medical condition, or physical <<-* * *->> <<+disability, mental disability+>>, unless such practice can be demonstrated to be job related.

Where the commission, after hearing, determines that an examination is unlawful under this subdivision, the licensing board may continue to use and rely on such examination until such time as judicial review by the superior court of the determination is exhausted.

DISCRIMINATION—DISABLED PERSONS, 1992 Cal. Legis. Serv. Ch. 913 (A.B....

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 70 of 98

If an examination or other qualification for licensing is determined to be unlawful under this section, that determination shall not void, limit, repeal, or otherwise affect any right, privilege, status, or responsibility previously conferred upon any person by such examination or by a license issued in reliance on such examination or qualification.

<<+(b) It shall be unlawful for a licensing board to fail or refuse to make reasonable accommodation to an individual's mental or physical disability or medical condition.+>>

<<+(c)+>> It shall be unlawful for any licensing board, unless specifically acting in accordance with federal equal employment opportunity guidelines or regulations approved by the commission, to print or circulate or cause to be printed or circulated any publication, or to make any non-job-related inquiry, either verbal or through use of an application form, which expresses, directly or indirectly, any limitation, specification, or discrimination as to race, religious creed, color, national origin, ancestry, physical <<-* * *->> <<+disability, mental disability+>>, medical condition, sex, or age, or any intent to make any such limitation, specification, or discrimination. Nothing in this subdivision shall prohibit any licensing board from making, in connection with prospective licensure or certification, an inquiry as to, or a request for information regarding, the physical fitness of applicants if that inquiry or request for information is directly related and pertinent to the license or the licensed position the applicant is applying for. <<+Nothing in this subdivision shall prohibit any licensing board, in connection with prospective examinations, licensure, or certification, from inviting individuals with physical or mental disabilities to request reasonable accommodations or from making inquiries related to reasonable accommodations.+>>

<<+(d)+>> It is unlawful for a licensing board to discriminate against any person because such person has filed a complaint, testified, or assisted in any proceeding under this part.

<<+(e)+>> It is unlawful for any licensing board to fail to keep records of applications for licensing or certification for a period of two years following the date of receipt of such applications.

<<+(f)+>> As used in this section, "licensing board" means any state board, agency, or authority in the State and Consumer Services Agency which has the authority to grant licenses or certificates which are prerequisites to employment eligibility or professional status.

SEC. 25. Section 12993 of the Government Code is amended to read:

<< CA GOVT § 12993 >>

12993. (a) The provisions of this part shall be construed liberally for the accomplishment of the purposes thereof. Nothing contained in this part shall be deemed to repeal any of the provisions of the Civil Rights Law or of any other law of this state relating to discrimination because of race, religious creed, color, national origin, ancestry, physical <<-* * *->> <<+ disability, mental disability+>>, medical condition, marital status, sex, or age.

(b) Nothing contained in this part relating to discrimination in employment on account of sex or medical condition shall be deemed to affect the operation of the terms or conditions of any bona fide retirement, pension, employee benefit, or insurance plan, provided such terms or conditions are in accordance with customary and reasonable or actuarially sound underwriting practices.

(c) While it is the intention of the Legislature to occupy the field of regulation of discrimination in employment and housing encompassed by the provisions of this part, exclusive of all other laws banning discrimination in employment and housing by any city, city and county, county, or other political subdivision of the state, nothing contained in this part shall be construed, in any manner or way, to limit or restrict the application of Section 51 of the Civil Code.

SEC. 25.1. Section 12993 of the Government Code is amended to read:

<< CA GOVT § 12993 >>

12993. (a) The provisions of this part shall be construed liberally for the accomplishment of the purposes thereof. Nothing contained in this part shall be deemed to repeal any of the provisions of the Civil Rights Law or of any other law of this state relating to discrimination because of race, religious creed, color, national origin, ancestry, physical <<-* * *->> <<+ disability, mental disability+>>, medical condition, marital status, sex, or age.

(b) Nothing contained in this part relating to discrimination in employment on account of sex or medical condition shall be deemed to affect the operation of the terms or conditions of any bona fide retirement, pension, employee benefit, or insurance

DISCRIMINATION—DISABLED PERSONS, 1992 Cal. Legis. Serv. Ch. 913 (A.B....

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 71 of 98

plan, provided such terms or conditions are in accordance with customary and reasonable or actuarially sound underwriting practices.

(c) While it is the intention of the Legislature to occupy the field of regulation of discrimination in employment and housing encompassed by the provisions of this part, exclusive of all other laws banning discrimination in employment and housing by any city, city and county, county, or other political subdivision of the state, nothing contained in this part shall be construed, in any manner or way, to limit or restrict the application of Section 51 <<+or 51.7+>> of the Civil Code.

SEC. 25.2. Section 12993 of the Government Code is amended to read:

<< CA GOVT § 12993 >>

12993. (a) This part shall be construed liberally for the accomplishment of the purposes thereof. Nothing contained in this part shall be deemed to repeal any of the provisions of the Civil Rights Law or of any other law of this state relating to discrimination because of race, religious creed, color, national origin, ancestry, physical <<-* * *->> <<+disability, mental disability+>>, medical condition, marital status, sex, or age.

(b) Nothing contained in this part relating to discrimination in employment on account of sex or medical condition shall be deemed to affect the operation of the terms or conditions of any bona fide retirement, pension, employee benefit, or insurance plan, provided <<-* * *->> <<+that those+>> terms or conditions are in accordance with customary and reasonable or actuarially sound underwriting practices.

(c) While it is the intention of the Legislature to occupy the field of regulation of discrimination in employment and housing encompassed by the provisions of this part, exclusive of all other laws banning discrimination in employment and housing by any city, city and county, county, or other political subdivision of the state, nothing contained in this part shall be construed, in any manner or way, to limit or restrict the application of Section 51 of the Civil Code <<+or to prohibit a city, city and county, county, or other political subdivision of this state from providing or maintaining greater protections for the classes of persons protected by the provisions of this part covering housing discrimination+>>.

<<+(d) This part shall be constructed to supplement other state and local fair housing laws.+>>

SEC. 25.3. Section 12993 of the Government Code is amended to read:

<< CA GOVT § 12993 >>

12993. (a) <<-* * *->> <<+T+>>his part shall be construed liberally for the accomplishment of the purposes thereof. Nothing contained in this part shall be deemed to repeal any of the provisions of the Civil Rights Law or of any other law of this state relating to discrimination because of race, religious creed, color, national origin, ancestry, physical <<-* * *->> <<+disability, mental disability+>>, medical condition, marital status, sex, or age.

(b) Nothing contained in this part relating to discrimination in employment on account of sex or medical condition shall be deemed to affect the operation of the terms or conditions of any bona fide retirement, pension, employee benefit, or insurance plan, provided <<-* * *->> <<+that those+>> terms or conditions are in accordance with customary and reasonable or actuarially sound underwriting practices.

(c) While it is the intention of the Legislature to occupy the field of regulation of discrimination in employment and housing encompassed by the provisions of this part, exclusive of all other laws banning discrimination in employment and housing by any city, city and county, county, or other political subdivision of the state, nothing contained in this part shall be construed, in any manner or way, to limit or restrict the application of Section 51 <<+or 51.7+>> of the Civil Code <<+or to prohibit a city, city and county, county, or other political subdivision of this state from providing or maintaining greater protections for the classes of persons protected by the provisions of this part covering housing discrimination+>>.

<<+(d) This part shall be construed to supplement other state and local fair housing laws.+>>

<< Repealed: CA GOVT § 12994 >>

SEC. 26. Section 12994 of the Government Code is repealed.

SEC. 27. Section 19230 of the Government Code is amended to read:

DISCRIMINATION—DISABLED PERSONS, 1992 Cal. Legis. Serv. Ch. 913 (A.B....

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 72 of 98

<< CA GOVT § 19230 >>

19230. The Legislature hereby declares that:

(a) It is the policy of this state to encourage and enable <<-* * *->> <<<+individuals with a disability+>> to participate fully in the social and economic life of the state and to engage in remunerative employment.

(b) It is the policy of this state that qualified <<-* * *->> <<+ individuals with a disability+>> shall be employed in the state service, the service of the political subdivisions of the state, in public schools, and in all other employment supported in whole or in part by public funds on the same terms and conditions as the nondisabled, unless it is shown that the particular disability is job related.

(c) It is the policy of this state that a department, agency, or commission shall make reasonable accommodation to the known physical or mental limitations of an otherwise qualified <<-* * *->> applicant or employee <<<+who is an individual with a disability+>>, unless the hiring authority can demonstrate that the accommodation would impose an undue hardship on the operation of its program. A department shall not deny any employment opportunity to a qualified <<-* * *->> applicant or employee <<<+who is an individual with a disability+>> if the basis for the denial is the need to make reasonable accommodation to the physical or mental limitations of the applicant or employee.

SEC. 28. Section 19231 of the Government Code is amended to read:

<< CA GOVT § 19231 >>

19231. (a) As used in this article, the following definitions apply:

(1) <<-* * *->> <<+"Individual with a disability"+>> means any <<+ individual+>> who (A) has a physical or mental impairment which substantially limits one or more of that <<<+individual's+>> major life activities, (B) has a record of the impairment, or (C) is regarded as having such an impairment.

<<-* * *->> <<<+An+>> individual <<+with a disability+>> is "substantially limited" if he or she is likely to experience difficulty in securing, retaining, or advancing in employment because of a disability.

(2) "Reasonable accommodation" means both of the following:

(A) Making facilities used by employees readily accessible to and usable by disabled persons.

(B) Job restructuring, part-time or modified work schedules, <<<+reassignment to a vacant position,+>> acquisition or modification of equipment or devices, <<<+appropriate adjustment or modification or examinations, training materials or policies,+>> provision of <<<+qualified+>> readers or interpreters, and other similar <<<+accommodations+>>.

(b) Undue hardship on the operation of a department's program shall be judged on all of the following:

(1) The overall size of the department's program with respect to the number of employees, the number and type of facilities, and the size of the department's budget.

(2) The type of departmental operation, including composition and structure of the department <<-* * *->> <<<+work force+>>.

(3) The nature and cost of the accommodation needed.

SEC. 29. Section 19232 of the Government Code is amended to read:

<< CA GOVT § 19232 >>

19232. Each state agency shall be responsible for establishing an effective affirmative action program to ensure <<-* * *->> <<<+individuals with a disability+>>, who are capable of remunerative employment, access to positions in state service on an equal and competitive basis with the general population.

Each state agency shall develop and implement an affirmative action employment plan for <<-* * *->> <<<+individuals with a disability,+>> which shall include goals and timetables. <<<+These+>> goals and timetables shall be set annually for disabilities identified pursuant to guidelines established by the State Personnel Board, and shall be submitted to the board no later than June 1 of each year beginning in 1978, for review and approval or modification. Goals and timetables shall be made available to the public upon request.

SEC. 30. Section 19233 of the Government Code is amended to read:

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 73 of 98

DISCRIMINATION—DISABLED PERSONS, 1992 Cal. Legis. Serv. Ch. 913 (A.B....

<< CA GOVT § 19233 >>

19233. The State Personnel Board shall be responsible for the following:

(a) Outline specific actions to improve the representation of <<-* * *->> <<+individuals with a disability+>> in the state work force and to ensure equal and fair employment practices for <<-* * *->> employees <<+who are individuals with a disability +>>.

(b) Survey the number of <<-* * *->> <<+individuals with a disability+>> in each department by at least job category and salary range for the purpose of developing goals and timetables pursuant to Section 19232 and compare <<+those+>> numbers with the number of <<-* * *->> <<+ individuals with a disability+>> in the work force.

(c) Establish guidelines for state agencies and departments to set goals and timetables to improve the representation of <<-* * *->> <<+individuals with a disability+>> in the state work force. Goals and timetables shall be set by at least job category.

SEC. 31. Section 19234 of the Government Code is amended to read:

<< CA GOVT § 19234 >>

19234. Each state agency shall annually review its hiring activities designed to achieve the employment objectives established pursuant to subdivision (c) of Section 19233 to determine if any category of <<-* * *->> <<+individuals with a disability+>> have been disproportionately excluded on a non-job-related basis from employment. If any category has been so excluded, the agency shall correct <<+that+>> underrepresentation.

SEC. 32. Section 19235 of the Government Code is amended to read:

<< CA GOVT § 19235 >>

19235. Each state agency shall establish a committee of <<-* * *->> employees <<+who are individuals with a disability+>> to advise the head of the agency on matters relating to the formulation and implementation of the plan to overcome and correct any underrepresentation determined pursuant to Section 19234.

SEC. 33. Section 19237 of the Government Code is amended to read:

<< CA GOVT § 19237 >>

19237. On or before November 15 of each year, beginning in 1978, the State Personnel Board shall report to the Governor and the Legislature on the current activity, future plans, and past accomplishments of the overall employment program for <<-* * *->> <<+individuals with a disability+>> in state government, including an evaluation of the achievement of annual employment objectives.

SEC. 34. Section 19702 of the Government Code is amended to read:

<< CA GOVT § 19702 >>

19702. (a) A person shall not be discriminated against under this part because of sex, race, religious creed, color, national origin, ancestry, marital status, <<-* * *->> physical <<-* * *->> <<+disability, or mental disability+>>. A person shall not be retaliated against because he or she has opposed any practice made an unlawful employment practice, or made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this part. For purposes of this article, "discrimination" includes harassment. This subdivision is declaratory of existing law.

(b) As used in this section, "physical <<+disability+>>" includes, but is not limited to, impairment of sight, hearing, or speech, or impairment of physical ability because of amputation or loss of function or coordination, or any other health impairment which requires special education or related services.

<<-* * *->>

<<+(c) As used in this section, "mental disability" includes, but is not limited to, any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.+>>

<<+(d) Notwithstanding subdivisions (b) and (c), if the definition of disability used in the Americans with Disabilities Act of 1990 (Public Law 101–336) would result in broader protection of the civil rights of individuals with a mental disability or

WESTLAW   © 2023 Thomson Reuters. No claim to original U.S. Government Works.

DISCRIMINATION—DISABLED PERSONS, 1992 Cal. Legis. Serv. Ch. 913 (A.B....

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 74 of 98

physical disability, as defined in subdivision (b) or (c), then that broader protection shall be deemed incorporated by reference into, and shall prevail over conflicting provisions of, the definitions in subdivisions (b) and (c). The definitions of subdivisions (b) and (c) shall not be deemed to refer to or include conditions excluded from the federal definition of "disability" pursuant to Section 511 of the Americans with Disabilities Act of 1990 (42 U.S.C. Sec. 12211).+>>

<<+(e)+>> If the board finds that a person has engaged in discrimination under this part, and it appears that this practice consisted of acts described in Section 243.4, 261, 286, 288, 288a, or 289 of the Penal Code, the board, with the consent of the complainant, shall provide the local district attorney's office with a copy of its decision and order.

<<+(f)+>> If the board finds that discrimination has occurred in violation of this part, the board shall issue and cause to be served on the appointing authority an order requiring the appointing authority to cause the discrimination to cease and desist and to take any action, including, but not limited to, hiring, reinstatement or upgrading of employees, with or without <<-* * *->> <<+backpay+>>, and compensatory damages, which, in the judgment of the board, will effectuate the purposes of this part. Consistent with this authority, the board may establish rules governing the award of compensatory damages. The order shall include a requirement of reporting the manner of compliance.

<<+(g)+>> Any person claiming discrimination within the state civil service may submit a complaint which shall be in writing and set forth the particulars of the alleged discrimination, the name of the appointing authority, the persons alleged to have committed the unlawful discrimination, and any other information that may be required by the board. The complaint shall be filed with the appointing authority or, in accordance with board rules, with the board itself.

<<+(h)+>> Complaints shall be filed within one year of the alleged unlawful discrimination or the refusal to act in accordance with this section, except that this period may be extended for not to exceed 90 days following the expiration of that year, if a person allegedly aggrieved by unlawful discrimination first obtained knowledge of the facts of the alleged unlawful discrimination after the expiration of one year from the date of its occurrence. Complaints of discrimination in adverse actions or rejections on probation shall be filed in accordance with Sections 19175 and 19575.

<<+(i)+>> When an employee of the appointing authority refuses, or threatens to refuse, to cooperate in the investigation of a complaint of discrimination, the appointing authority may seek assistance from the board. The board may provide for direct investigation or hearing of the complaint, the use of subpoenas, or any other action which will effect the purposes of this section.

SEC. 35. Section 19952 of the Health and Safety Code is amended to read:

<< CA HLTH & S § 19952 >>

19952. (a) Any person, or public or private firm, organization, or corporation, who owns or manages places of public amusement and resort including theaters, concert halls, and stadiums shall provide seating or accommodations for physically disabled persons in a variety of locations within the facility, to the extent that such variety can be provided while meeting fire and panic safety requirements of the State Fire Marshal, so as to provide such persons a choice of admission prices otherwise available to members of the general public.

(b) Readily removable seats may be installed in wheelchair spaces when the spaces are not required to accommodate wheelchair users.

(c) The requirements of this section shall apply with respect to publicly and privately owned facilities or structures for the purposes specified in subdivision (a) for which a building permit or a building plan for new construction has been issued on or after January 1, 1985. <<-* * *->>

<<+(d) In no case shall this section be construed to prescribe a lesser standard of accessibility or usability than provided by regulations of the federal Architectural and Transportation Barriers Compliance Board adopted to implement the Americans with Disabilities Act of 1990 (Public Law 101–336).+>>

SEC. 36. Section 1735 of the Labor Code is amended to read:

<< CA LABOR § 1735 >>

1735. No discrimination shall be made in the employment of persons upon public works because of the race, religious creed, color, national origin, ancestry, physical <<-* * *->> <<+disability, mental disability+>>, medical condition, marital status, or sex of such persons, except as provided in Section 12940 of the Government Code, and every contractor for public works violating this section is subject to all the penalties imposed for a violation of this chapter.

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 75 of 98

DISCRIMINATION—DISABLED PERSONS, 1992 Cal. Legis. Serv. Ch. 913 (A.B....

SEC. 37. Section 365.5 of the Penal Code is amended to read:

<< CA PENAL § 365.5 >>

365.5. (a) Any blind person, deaf person, or physically disabled person who is a passenger on any common carrier, airplane, motor vehicle, railway train, motorbus, streetcar, boat, or any other public conveyance or mode of transportation operating within this state, shall be entitled to have with him or her a specially trained guide dog, signal dog, or service dog.

(b) No blind person, deaf person, or physically disabled person and his or her specially trained guide dog, signal dog, or service dog shall be denied admittance to hotels, restaurants, lodging places, places of public accommodation, amusement, or resort or other places to which the general public is invited within this state because of that guide dog, signal dog, or service dog.

(c) Any person, firm, association, or corporation, or the agent of any person, firm, association, or corporation, who prevents a blind person, deaf person, or physically disabled person from exercising the rights specified in this section is guilty of an infraction, punishable by a fine not exceeding two hundred fifty dollars ($250).

(d) As used in this section, "guide dog" means any guide dog or seeing-eye dog which was trained by a person licensed under Chapter 9.5 (commencing with Section 7200) of Division 3 of the Business and Professions Code <<+or which meets the definitional criteria under federal regulations adopted to implement Title III of the Americans with Disabilities Act of 1990 (Public Law 101–336).+>>

(e) As used in this section, "signal dog" means any dog trained to alert a deaf person, or a person whose hearing is impaired, to intruders or sounds.

(f) As used in this section "service dog" means any dog individually trained to do work or perform tasks to meet the requirements of a physically disabled person, including, but not limited to, minimal protection work, rescue work, pulling a wheelchair, or fetching dropped items.

(g) Nothing in this section is intended to affect any civil remedies available for a violation of this section.

SEC. 38. Section 2881 of the Public Utilities Code is amended to read:

<< CA PUB UTIL § 2881 >>

2881. (a) The commission shall design and implement a program whereby each telephone corporation shall provide a telecommunications device capable of servicing the needs of <<-* * *->> <<+individuals who are+>> deaf or <<-* * *->> hearing impaired, together with a single party line, at no charge additional to the basic exchange rate, to any subscriber who is certified as <<+an individual who is+>> deaf or <<-* * *->> hearing impaired by a licensed physician, audiologist, or a qualified state agency and to any subscriber which is an organization representing <<-* * *->> <<+ individuals who are+>> deaf or <<-* * *->> hearing impaired, as determined and specified by the commission pursuant to subdivision <<+ (e)+>>.

(b) The commission shall also design and implement a program whereby each telephone corporation shall provide a dual-party relay system, using third-party intervention to connect <<+individuals who are+>> deaf or <<-* * *->> <<+hearing impaired +>> and offices of organizations representing <<-* * *->> <<+individuals who are+>> deaf or <<-* * *->> hearing impaired, as determined and specified by the commission pursuant to subdivision <<+(e)+>>, with persons of normal hearing by way of intercommunications devices for <<-* * *->> <<+ individuals who are+>> deaf or <<-* * *->> hearing impaired and the telephone system, making available reasonable access of all phases of public telephone service to <<+telephone subscribers who are+>> deaf or <<-* * *->> <<+hearing impaired+>>. In order to make a <<+dual-party+>> relay system which will meet the requirements of <<+individuals who are+>> deaf or <<-* * *->> <<+hearing impaired+>> available at a reasonable cost, the commission shall initiate an investigation, conduct public hearings to determine the most cost-effective method of providing dual-party relay service to the deaf or <<-* * *->> hearing impaired when using a telecommunications device, and solicit the advice, counsel, and physical assistance of statewide nonprofit consumer organizations of the deaf, during the development and implementation of the system. The commission shall phase in this program, on a geographical basis, over a three-year period ending on January 1, 1987. <<+The commission shall apply for certification of this program under rules adopted by the Federal Communications Commission pursuant to Section 401 of the Americans with Disabilities Act of 1990 (Public Law 101–336).+>>

(c) The commission shall also design and implement a program whereby specialized or supplemental telephone communications equipment may be provided to subscribers who are certified to be disabled at no charge additional to the basic

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 76 of 98

DISCRIMINATION—DISABLED PERSONS, 1992 Cal. Legis. Serv. Ch. 913 (A.B....

exchange rate. The certification, including a statement of medical need for specialized telephone communications equipment, shall be provided by a licensed physician and surgeon acting within the scope of his or her license or by a qualified state agency, as determined by the commission. The commission shall, in this connection, study the feasibility of, and implement if determined to be feasible, personal income criteria, in addition to the medical certification of disability, for determining a subscriber's eligibility under this subdivision.

(d) The commission shall establish a rate recovery mechanism through a surcharge not to exceed one-half of 1 percent uniformly applied to a subscriber's intrastate telephone service, other than one-way radio paging service and universal telephone service, both within a service area and between service areas, to allow telephone corporations to recover costs as they are incurred under this section. The surcharge shall be in effect until January 1, 1995. The commission shall require that the programs implemented under this section be identified on subscribers' bills as "communication devices funds for deaf and disabled" and shall establish a fund and require separate accounting for each of the programs implemented under this section.

(e) The commission shall determine and specify those statewide organizations representing the deaf or <<-* * *->> hearing impaired which shall receive a telecommunications device pursuant to subdivision (a) or a <<+dual-party+>> relay system pursuant to subdivision (b), or both, and in which offices the equipment shall be installed in the case of an organization having more than one office. The commission shall direct the telephone corporations subject to its jurisdiction to comply with its determinations and specifications in this regard.

(f) The commission shall annually review the surcharge level and the balances in the funds established pursuant to subdivision (d). Until January 1, 1995, the commission shall be authorized to make, within the limits set by subdivision (d), any necessary adjustments to the surcharge to ensure that the programs supported thereby are adequately funded and that the fund balances are not excessive. A fund balance which is projected to exceed six months' worth of projected expenses at the end of the fiscal year is excessive.

(g) The commission shall prepare and submit to the Legislature, on or before December 31, 1988, and annually thereafter, a report on the fiscal status of the programs established and funded pursuant to this section and <<+ Sections+>> 2881.1 <<+and 2881.2+>>. The report shall include a statement of the surcharge level established pursuant to subdivision (d) and revenues produced by the surcharge, an accounting of program expenses, and an evaluation of options for controlling those expenses and increasing program efficiency, including, but not limited to, all of the following proposals:

(1) The establishment of a means test for persons to qualify for program equipment or free or reduced charges for the use of telecommunication services.

(2) <<-* * *->> <<+If and to the extent not prohibited under Section 401 of the Americans with Disabilities Act of 1990 (Public Law 101–336), t+>>he imposition of limits or other restrictions on maximum usage levels for the relay service, which shall include the development of a program to provide basic communications requirements to <<+all+>> relay users at discounted rates<<+, including discounted toll call rates,+>> and, for usage in excess of those basic requirements, at rates which recover the full costs of service.

(3) More efficient means for obtaining and distributing equipment to qualified subscribers.

(4) The establishment of quality standards for increasing the efficiency of the relay system.

SEC. 39. Section 2881.2 is added to the Public Utilities Code, to read:

<< CA PUB UTIL § 2881.2 >>

2881.2. (a) The commission shall conduct a one-time study to determine whether the number and location of public pay telephones equipped with telecommunications devices capable of servicing the needs of individuals who are deaf, hearing impaired, or speech impaired, as required under the Americans with Disabilities Act of 1990 (Public Law 101-336) and federal regulations adopted thereunder, are adequate to meet the needs of individuals who are deaf, severely hearing impaired, or speech impaired. The commission shall include its findings in the report required by subdivision (g) of Section 2881 to be submitted to the Legislature on or before December 31, 1993.

(b) The commission shall study the feasibility of reasonable toll call discounts for public pay telephone calls made using telecommunications devices capable of servicing the needs of individuals who are deaf, severely hearing impaired, or speech impaired and shall include its findings in the report required by subdivision (g) of Section 2881 to be submitted to the Legislature on or before December 31, 1993.

SEC. 40. Section 99155.5 of the Public Utilities Code is amended to read:

DISCRIMINATION—DISABLED PERSONS, 1992 Cal. Legis. Serv. Ch. 913 (A.B....

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 77 of 98

<< CA PUB UTIL § 99155.5 >>

99155.5. (a) The Legislature intends that dial-a-ride and paratransit services be accessible to handicapped persons, as defined in Section 99206.5. It is intended that transportation service be provided for employment, education, medical, and personal reasons. Transportation for <<-* * *->> <<+ individuals with disabilities+>> is a necessity, and allows <<-* * *->> <<+these persons+>> to fully participate in our society.

<<+The Legislature finds and declares that the term "paratransit," as used in the Americans with Disabilities Act of 1990 (Public Law 101-336), refers to transportation services with specific criteria of quality and quantity, and which are required to be made available to limited classes of persons based on eligibility categories; this is often referred to as "ADA paratransit" or "complementary paratransit." The Legislature finds and declares that the terms "paratransit" and "dial-a-ride," as used in the laws of this state, apply to a broader range of transportation services and that not all individuals with disabilities under the laws of this state are eligible for "ADA paratransit" under the federal law.+>>

(b) Each transit operator, profit or nonprofit, which provides, or contracts for the provision of, dial-a-ride or paratransit service for <<-* * *->> <<+individuals with disabilities+>> and which receives public funding pursuant to the Mills-Alquist-Deddeh Act (Chapter 4 (commencing with Section 99200)) for that service shall provide the service without regard to either of the following:

(1) Whether the person is a member of a household which owns a motor vehicle.

(2) The place of residence of the person who requests transportation service within the service area of the provider. <<-* * *->> <<+To the extent that they are eligible for the specified service requested, a+>>ll persons requesting transportation service in the service area of the provider shall be provided service on the same terms and at the same price that service is provided to other persons residing within the service area of the provider.

(c) Subdivision (b) does not preclude a provider from offering a subscription service, and does not require a reduction in the amount the provider charges other public or private agencies.

(d) <<-* * *->> <<+Except as required by the Americans with Disabilities Act of 1990 (Public Law 101-336) and federal regulations adopted pursuant thereto or by higher standards prescribed by the laws of this state, n+>>othing in this section requires any transit operator which provides service to <<-* * *->> <<+individuals with disabilities+>> in a manner consistent with subdivision (b) to make those services available outside the operator's established operating service area, or requires the operator to make the presentation of identification a condition to using the service.

(e) A transit operator shall honor any current identification card <<+which is valid for the type of transportation service or discount requested and which has been+>> issued to <<-* * *->> <<+an individual with disabilities+>> by another transit operator.

(f) Any person who believes an operator has violated Section 99155 or 99155.5 may file a report of the alleged violation with the transportation planning agency or county transportation commission. Any <<-* * *->> <<+ individual with disabilities+>> may request the Attorney General to resolve any dispute as to compliance with Section 99155 or this section.

SEC. 41. Section 2557 of the Streets and Highways Code is amended to read:

<< CA STR & HWY § 2557 >>

2557. (a) Except as provided in subdivisions (c) and (d), the moneys received by each authority pursuant to subdivision (b) of Section 9250.10 of the Vehicle Code shall be used for the implementation, maintenance, and operation of a motorist aid system of call boxes, including the lease or lease-purchase of facilities and equipment for the system, on the portions of the California Freeway and Expressway System and a county expressway system, and on state highway routes that connect segments of these systems, which are located within the county in which the authority is established and over which the Department of the California Highway Patrol or an agency designated by that department has law enforcement responsibility. The Department of Transportation and the Department of the California Highway Patrol shall each review and approve plans for implementation of a motorist aid system proposed for any state highway route and shall be reimbursed by the service authority for all costs incurred.

(b) An authority or any other public entity may construct and maintain, and lease or lease-purchase on terms and conditions it deems appropriate, the facilities of a motorist aid system or it may contract with a private person or entity to do so.

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 78 of 98

DISCRIMINATION—DISABLED PERSONS, 1992 Cal. Legis. Serv. Ch. 913 (A.B....

(c) If leases or lease-purchase agreements are entered into pursuant to subdivision (a), or if revenue bonds are issued and sold pursuant to Section 2558, the moneys received by each authority pursuant to subdivision (b) of Section 9250.10 of the Vehicle Code shall be used to the extent necessary to make lease payments or to pay the principal of, and interest on, the amount of bonded indebtedness outstanding, as the case may be. Facilities and equipment acquired through the expenditure of proceeds from the sale of those bonds shall have a useful life at least equal to the term of the bonds.

(d) (1) Any money received by an authority pursuant to subdivision (b) of Section 9250.10 of the Vehicle Code which exceeds the amount needed for full implementation and ongoing costs to maintain and operate the motorist aid system of call boxes, installed pursuant to subdivision (a), may be used for purposes of paragraph (2) and for additional motorist aid services or support, including, but not limited to, the following safety-related projects:

(A) Changeable message signs.

(B) Lighting for call boxes.

(C) Support for traffic operations centers.

(D) Contracting for removal of disabled vehicles from the traveled portion of the right-of-way.

(2) Any amendment to an existing plan for a motorist aid system adopted by an authority for any state highway route shall, prior to implementation, be submitted to the Department of Transportation and the Department of the California Highway Patrol for review and approval and shall not be implemented until so reviewed and approved. The authority shall reimburse each department for the costs of that review.

<<+(e) A motorist aid system constructed, maintained, or operated pursuant to this section shall meet the applicable standards of Title II of the Americans with Disabilities Act of 1990 (Public Law 101-336) and federal regulations adopted pursuant thereto.+>>

SEC. 42. Section 336 of the Vehicle Code is amended to read:

<< CA VEHICLE § 336 >>

336. "General public paratransit vehicle" means any motor vehicle designed for carrying no more than 19 persons and the driver, and which provides local transportation to the general public under the exclusive jurisdiction of a publicly owned and operated transit system through one of the following modes: dial-a-ride, subscription service, or route-deviated bus service. Vehicles used in the exclusive transportation of handicapped <<+persons+>> as defined <<+in+>> Section <<-* * *->> << +99206.5 of the Public Utilities Code+>>, or of persons 55 years of age or older, including any persons necessary to provide assistance to these passengers, are not general public paratransit vehicles.

<<-* * *->>

<<+However, transportation of attendants, companions, or both traveling together with those individuals with disabilities who are determined to be eligible for complementary paratransit services in accordance with Title II of the Americans with Disabilities Act of 1990 (Public Law 101–336) and federal regulations adopted pursuant thereto, shall not be sufficient to qualify a vehicle as a general public paratransit vehicle.+>>

SEC. 43. Notwithstanding Section 17610 of the Government Code, if the Commission on State Mandates determines that this act contains costs mandated by the state, reimbursement to local agencies and school districts for those costs shall be made pursuant to Part 7 (commencing with Section 17500) of Division 4 of Title 2 of the Government Code. If the statewide cost of the claim for reimbursement does not exceed one million dollars ($1,000,000), reimbursement shall be made from the State Mandates Claims Fund. Notwithstanding Section 17580 of the Government Code, unless otherwise specified in this act, the provisions of this act shall become operative on the same date that the act takes effect pursuant to the California Constitution.

<< Note: CA GOVT § 12926 >>

SEC. 44. (a) Section 21.1 of this bill incorporates amendments to Section 12926 of the Government Code proposed by both this bill and AB 311. It shall only become operative if (1) both bills are enacted and become effective January 1, 1993, (2) each bill amends Section 12926 of the Government Code, and (3) AB 1286 is not enacted or as enacted does not amend that section, and (4) this bill is enacted after AB 311, in which case Sections 21, 21.2, and 21.3 of this bill shall not become operative.

(b) Section 21.2 of this bill incorporates amendments to Section 12926 of the Government Code proposed by both this bill and AB 1286. It shall only become operative if (1) both bills are enacted and become effective January 1, 1993, (2) each bill

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 79 of 98

DISCRIMINATION—DISABLED PERSONS, 1992 Cal. Legis. Serv. Ch. 913 (A.B....

amends Section 12926 of the Government Code, (3) AB 311 is not enacted or as enacted does not amend that section, and (4) this bill is enacted after AB 1286, in which case Sections 21, 21.1, and 21.3 of this bill shall not become operative.

(c) Section 21.3 of this bill incorporates amendments to Section 12926 of the Government Code proposed by this bill, AB 311, and AB 1286. It shall only become operative if (1) all three bills are enacted and become effective January 1, 1993, (2) all three bills amend Section 12926 of the Government Code, and (3) this bill is enacted after AB 311 and AB 1286, in which case Sections 21, 21.1, and 21.2 of this bill shall not become operative.

<< Note: CA GOVT § 12940 >>

SEC. 45. (a) Section 23.1 of this bill incorporates amendments to Section 12940 of the Government Code proposed by both this bill and AB 1286. It shall only become operative if (1) both bills are enacted and become effective January 1, 1993, (2) each bill amends Section 12940 of the Government Code, and (3) AB 2265 is not enacted or as enacted does not amend that section, and (4) this bill is enacted after AB 1286, in which case Sections 23, 23.2, and 23.3 of this bill shall not become operative.

(b) Section 23.2 of this bill incorporates amendments to Section 12940 of the Government Code proposed by both this bill and AB 2265. It shall only become operative if (1) both bills are enacted and become effective January 1, 1993, (2) each bill amends Section 12940 of the Government Code, (3) AB 1286 is not enacted or as enacted does not amend that section, and (4) this bill is enacted after AB 2265 in which case Sections 23, 23.1, and 23.3 of this bill shall not become operative.

(c) Section 23.3 of this bill incorporates amendments to Section 12940 of the Government Code proposed by this bill, AB 1286, and AB 2265. It shall only become operative if (1) all three bills are enacted and become effective January 1, 1993, (2) all three bills amend Section 12940 of the Government Code, and (3) this bill is enacted after AB 1286 and AB 2265, in which case Sections 23, 23.1, and 23.2 of this bill shall not become operative.

<< Note: CA GOVT § 12993 >>

SEC. 46. (a) Section 25.1 of this bill incorporates amendments to Section 12993 of the Government Code proposed by both this bill and AB 311. It shall only become operative if (1) both bills are enacted and become effective January 1, 1993, (2) each bill amends Section 12993 of the Government Code, and (3) AB 1178 is not enacted or as enacted does not amend that section, and (4) this bill is enacted after AB 311, in which case Sections 25, 25.2, and 25.3 of this bill shall not become operative.

(b) Section 25.2 of this bill incorporates amendments to Section 12993 of the Government Code proposed by both this bill and AB 1178. It shall only become operative if (1) both bills are enacted and become effective January 1, 1993, (2) each bill amends Section 12993 of the Government Code, and (3) AB 311 is not enacted or as enacted does not amend that section, and (4) this bill is enacted after AB 1178 in which case Sections 25, 25.1, and 25.3 of this bill shall not become operative.

(c) Section 25.3 of this bill incorporates amendments to Section 12993 of the Government Code proposed by this bill, AB 311, and AB 1178. It shall only become operative if (1) all three bills are enacted and become effective January 1, 1993, (2) all three bills amend Section 12993 of the Government Code, and (3) this bill is enacted after AB 311 and AB 1178, in which case Sections 25, 25.1, and 25.2 of this bill shall not become operative.

[1] So in enrolled bill.

[2] So in enrolled bill.

[3] So in enrolled bill.

CA LEGIS 913 (1992)

---

    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2023 Thomson Reuters. No claim to original U.S. Government Works.    ADD_046    42

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 80 of 98

CIVIL RIGHTS—EQUALITY—FINES AND PENALTIES, 2001 Cal. Legis. Serv. Ch....

2001 Cal. Legis. Serv. Ch. 261 (A.B. 587) (WEST)

CALIFORNIA 2001 LEGISLATIVE SERVICE

2001 Portion of 2001-2002 Regular Session

Additions are indicated by <<+ Text +>>; deletions by

<<- * * * ->>. Changes in tables are made but not highlighted.

CHAPTER 261

A.B. No. 587

CIVIL RIGHTS—EQUALITY—FINES AND PENALTIES

AN ACT to amend Sections 52 and 52.1 of the Civil Code, relating to civil rights.

[Filed with Secretary of State September 10, 2001.]

LEGISLATIVE COUNSEL'S DIGEST

AB 587, Firebaugh. Civil rights.

Existing law provides that all persons in this state shall have full and equal access to the facilities, privileges, and services of business establishments of all kinds without regard to sex, race, color, religion, ancestry, national origin, disability, or medical condition. Existing law further prohibits a business establishment from, among other things, boycotting, blacklisting, refusing to contract with, sell to, or trade with a person based on the criteria described above, and from discriminating on the price charged for similar or like services on the basis of a person's gender. A person who contravenes these provisions is liable for actual damages and any additional amount determined by a jury or the court up to a maximum of 3 times the amount of actual damages but not less than $1,000.

This bill would increase the minimum additional amount that may be awarded in the cases described above to $4,000.

Existing law provides that if a person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state, the Attorney General, any district attorney, or any city attorney may bring a civil action for injunctive and other appropriate equitable relief in the name of the people of the State of California, in order to protect the peaceable exercise or enjoyment of the right or rights secured.

This bill would specify that in an action brought by the Attorney General, any district attorney, or any city attorney, the Attorney General, or any district attorney or city attorney, may seek a civil penalty of $25,000. This bill would also specify that if this civil penalty is requested, it shall be assessed individually against each person who is determined to have violated the right or rights of any individual or individuals secured by law and the penalty shall be awarded to each individual whose right or rights are determined to have been violated.

The people of the State of California do enact as follows:

SECTION 1. Section 52 of the Civil Code is amended to read:

<< CA CIVIL § 52 >>

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 81 of 98

CIVIL RIGHTS—EQUALITY—FINES AND PENALTIES, 2001 Cal. Legis. Serv. Ch....

52. (a) Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51<<+,+>> 51.5, <<+or 51.6,+>> is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than <<+ four+>> thousand dollars ($<<+4,000+>>), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51<<+,+>> 51.5<<+, or 51.6+>>.

(b) Whoever denies the right provided by Section 51.7 or 51.9, or aids, incites, or conspires in that denial, is liable for each and every offense for the actual damages suffered by any person denied that right and, in addition, the following:

(1) An amount to be determined by a jury, or a court sitting without a jury, for exemplary damages.

(2) A civil penalty of twenty-five thousand dollars ($25,000) to be awarded to the person denied the right provided by Section 51.7 in any action brought by the person denied the right, or by the Attorney General, a district attorney, or a city attorney.

(3) Attorney's fees as may be determined by the court.

(c) Whenever there is reasonable cause to believe that any person or group of persons is engaged in conduct of resistance to the full enjoyment of any of the rights described in this section, and that conduct is of that nature and is intended to deny the full exercise of those rights, the Attorney General, any district attorney or city attorney, or any person aggrieved by the conduct may bring a civil action in the appropriate court by filing with it a complaint. The complaint shall contain the following:

(1) The signature of the officer, or, in his or her absence, the individual acting on behalf of the officer, or the signature of the person aggrieved.

(2) The facts pertaining to the conduct.

(3) A request for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order against the person or persons responsible for the conduct, as the complainant deems necessary to ensure the full enjoyment of the rights described in this section.

(d) Whenever an action has been commenced in any court seeking relief from the denial of equal protection of the laws under the Fourteenth Amendment to the Constitution of the United States on account of race, color, religion, sex, national origin, or disability, the Attorney General or any district attorney or city attorney for or in the name of the people of the State of California may intervene in the action upon timely application if the Attorney General or any district attorney or city attorney certifies that the case is of general public importance. In that action, the people of the State of California shall be entitled to the same relief as if it had instituted the action.

(e) Actions brought pursuant to this section are independent of any other actions, remedies, or procedures that may be available to an aggrieved party pursuant to any other law.

(f) Any person claiming to be aggrieved by an alleged unlawful practice in violation of Section 51 or 51.7 may also file a verified complaint with the Department of Fair Employment and Housing pursuant to Section 12948 of the Government Code.

(g) This section does not require any construction, alteration, repair, structural or otherwise, or modification of any sort whatsoever, beyond that construction, alteration, repair, or modification that is otherwise required by other provisions of law, to any new or existing establishment, facility, building, improvement, or any other structure, nor does this section augment, restrict, or alter in any way the authority of the State Architect to require construction, alteration, repair, or modifications that the State Architect otherwise possesses pursuant to other laws.

(h) For the purposes of this section, "actual damages" means special and general damages. This subdivision is declaratory of existing law.

SEC. 2. Section 52.1 of the Civil Code is amended to read:

<< CA CIVIL § 52.1 >>

52.1. (a) If a person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state, the Attorney General, or any district attorney or city attorney may bring a civil action for injunctive and other appropriate equitable relief in the name of the people of the State of California, in order to protect the peaceable exercise or enjoyment of the right or rights secured. <<+An action brought by the Attorney General, any district attorney, or any city attorney may also seek a civil penalty of twenty-five thousand dollars ($25,000). If this civil penalty is requested, it shall be assessed individually

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 82 of 98

CIVIL RIGHTS—EQUALITY—FINES AND PENALTIES, 2001 Cal. Legis. Serv. Ch....

against each person who is determined to have violated this section and the penalty shall be awarded to each individual whose rights under this section are determined to have been violated.+>>

(b) Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (a), may institute and prosecute in his or her own name and on his or her own behalf a civil action for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured.

(c) An action brought pursuant to subdivision (a) or (b) may be filed either in the superior court for the county in which the conduct complained of occurred or in the superior court for the county in which a person whose conduct complained of resides or has his or her place of business. An action brought by the Attorney General pursuant to subdivision (a) also may be filed in the superior court for any county wherein the Attorney General has an office, and in <<-* * *->><<+that+>> case, the jurisdiction of the court shall extend throughout the state.

(d) If a court issues a temporary restraining order or a preliminary or permanent injunction in an action brought pursuant to subdivision (a) or (b), ordering a defendant to refrain from conduct or activities, the order issued shall include the following statement: VIOLATION OF THIS ORDER IS A CRIME PUNISHABLE UNDER SECTION 422.9 OF THE PENAL CODE.

(e) The court shall order the plaintiff or the attorney for the plaintiff to deliver, or the county clerk to mail, two copies of any order, extension, modification, or termination thereof granted pursuant to this section, by the close of the business day on which the order, extension, modification, or termination was granted, to each local law enforcement agency having jurisdiction over the residence of the plaintiff and any other locations where the court determines that acts of violence against the plaintiff are likely to occur. Those local law enforcement agencies shall be designated by the plaintiff or the attorney for the plaintiff. Each appropriate law enforcement agency receiving any order, extension, or modification of any order issued pursuant to this section shall serve forthwith one copy thereof upon the defendant. Each appropriate law enforcement agency shall provide to any law enforcement officer responding to the scene of reported violence, information as to the existence of, terms, and current status of, any order issued pursuant to this section.

(f) A court shall not have jurisdiction to issue an order or injunction under this section, if that order or injunction would be prohibited under Section 527.3 of the Code of Civil Procedure.

(g) An action brought pursuant to this section is independent of any other action, remedy, or <<+procedure+>> that may be available to an aggrieved individual under any other provision of law, including, but not limited to, an action, remedy, or procedure brought pursuant to Section 51.7.

(h) In addition to any damages, injunction, or other equitable relief awarded in an action brought pursuant to subdivision (b), the court may award the petitioner or plaintiff reasonable attorney's fees.

(i) A violation of an order described in subdivision (d) may be punished either by prosecution under Section 422.9 of the Penal Code, or by a proceeding for contempt brought pursuant to Title 5 (commencing with Section 1209) of Part 3 of the Code of Civil Procedure. However, in any proceeding pursuant to the Code of Civil Procedure, if it <<+is+>> determined that the person proceeded against is guilty of the contempt charged, in addition to any other relief, a fine may be imposed not exceeding one thousand dollars ($1,000), or the person may be ordered imprisoned in a county jail not exceeding six months, or the court may order both the imprisonment and fine.

(j) Speech alone is not sufficient to support an action brought pursuant to subdivision (a) or (b), except upon a showing that the speech itself threatens violence against a specific person or group of persons; and the person or group of persons against whom the threat is directed reasonably fears that, because of the speech, violence will be committed against them or their property and that the person threatening violence had the apparent ability to carry out the threat.

(k) No order issued in any proceeding brought pursuant to subdivision (a) or (b) shall restrict the content of any person's speech. An order restricting the time, place, or manner of any person's speech shall do so only to the extent reasonably necessary to protect the peaceable exercise or enjoyment of constitutional or statutory rights, consistent with the constitutional rights of the person sought to be enjoined.

CA LEGIS 261 (2001)

**End of Document** © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 83 of 98

DISABLED PERSONS—DISCRIMINATION—PARKING..., 2001 Cal. Legis. Serv....

2001 Cal. Legis. Serv. Ch. 708 (A.B. 677) (WEST)

CALIFORNIA 2001 LEGISLATIVE SERVICE

2001 Portion of 2001-2002 Regular Session

Additions are indicated by <<+ Text +>>; deletions by

<<- * * * ->>. Changes in tables are made but not highlighted.

CHAPTER 708

A.B. No. 677

DISABLED PERSONS—DISCRIMINATION—PARKING PLACARDS

AN ACT to amend Sections 11135 and 11139 of the Government Code, and to amend Sections 22511.55 and 22511.59 of the Vehicle Code, relating to discrimination.

[Filed with Secretary of State October 11, 2001.]

LEGISLATIVE COUNSEL'S DIGEST

AB 677, Steinberg. Persons with disabilities.

(1) Existing law provides that no person in the state shall be unlawfully denied the benefits of, or unlawfully subjected to discrimination under, any program or activity that is funded directly by the state or receives any financial assistance from the state, on the basis of ethnic group identification, religion, age, sex, color, or disability, and defines the term "disability" for these purposes.

This bill instead would provide that no person in the state shall, on any of those bases, be unlawfully denied full and equal access to the benefits of, or unlawfully subjected to discrimination under, any program or activity that is conducted, operated, or administered by the state or by any state agency, is funded directly by the state, or receives any financial assistance from the state. It would also revise the definition of "disability" for these purposes.

Existing law also specifies a hearing procedure for determining violations of the above provisions, requires curtailing state funding for any contractor, grantee, or local agency found to be in violation, and makes these provisions and regulations adopted thereunder enforceable by a civil action for equitable relief.

This bill would provide that any civil action for equitable relief shall be independent of any other rights and remedies.

(2) Existing law authorizes a disabled person, any temporarily disabled person, and any disabled veteran, including those temporarily traveling in the state, to apply to the Department of Motor Vehicles for the issuance of a distinguishing placard for specified parking purposes. The placard is required to be the size and color determined by the department and to have a fixed expiration date of June 30 every 2 years. The fee for an original application, a renewal application, or the issuance of a new or substitute placard is fixed at $6.

This bill would provide that the placard shall also be in the shape determined by the department, and would require that a portion of the placard be printed in a contrasting color that shall be changed every 2 years. It would also repeal the fees, except for a temporary placard for a person who is temporarily disabled.

The people of the State of California do enact as follows:

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 84 of 98

DISABLED PERSONS—DISCRIMINATION—PARKING..., 2001 Cal. Legis. Serv....

SECTION 1. Section 11135 of the Government Code is amended to read:

<< CA GOVT § 11135 >>

11135. (a) No person in the State of California shall, on the basis of ethnic group identification, religion, age, sex, color, or disability, be unlawfully denied <<+full and equal access to+>> the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is <<+ conducted, operated, or administered by the state or by any state agency, is+>> funded directly by the state<<+,+>> or receives any financial assistance from the state.

(b) With respect to discrimination on the basis of disability, programs and activities subject to subdivision (a) shall meet the protections and prohibitions contained in Section 202 of the Americans with Disabilities Act of 1990 (42 U.S.C. Sec. 12132), and the federal rules and regulations adopted in implementation thereof, except that if the laws of this state prescribe stronger protections and prohibitions, the programs and activities subject to subdivision (a) shall be subject to the stronger protections and prohibitions.

(c) As used in this section, "disability" means any <<-* * *->><<+mental or physical disability as defined in Section 12926+>>.

SEC. 2. Section 11139 of the Government Code is amended to read:

<< CA GOVT § 11139 >>

11139. The prohibitions and sanctions imposed by this article are in addition to any other prohibitions and sanctions imposed by law.

This article shall not be interpreted in a manner that would frustrate its purpose.

This article shall not be interpreted in a manner that would adversely affect lawful programs which benefit the disabled, the aged, minorities, and women.

This article and regulations adopted pursuant to this article may be enforced by a civil action for equitable relief<<+, which shall be independent of any other rights and remedies+>>.

SEC. 3. Section 22511.55 of the Vehicle Code is amended to read:

<< CA VEHICLE § 22511.55 >>

22511.55. (a)(1) Any disabled person or disabled veteran may apply to the department for the issuance of a distinguishing placard. The placard may be used in lieu of the special identification license plate or plates issued under Section 5007 for parking purposes described in Section 22511.5 when suspended from the rear view mirror or, if there is no rear view mirror, when displayed on the dashboard of a vehicle. It is the intent of the Legislature to encourage the use of these distinguishing placards because they provide law enforcement officers with a more readily recognizable symbol for distinguishing vehicles qualified for the parking privilege. The placard shall be the size<<+, shape,+>> and color determined by the department <<+and +>> shall bear the International Symbol of Access adopted pursuant to Section 3 of Public Law 100–641, commonly known as the "wheelchair symbol." The department shall incorporate instructions for the lawful use of a placard, and a summary of the penalties for the unlawful use of a placard, into the identification card issued to the placard owner.

(2)(A) The department may establish procedures for the issuance and renewal of the placards. The placards shall have a fixed expiration date of June 30 every two years. <<-* * *->><<+A portion of the placard shall be printed in a contrasting color that shall be changed every two years. The size and color of this contrasting portion of the placard shall be large and distinctive enough to be readily identifiable by a law enforcement officer in a passing vehicle+>>.

(B) As used in this section, "year" means the period between the inclusive dates of July 1 through June 30.

(C) Prior to the end of each year, the department shall, for the most current three years available, compare its record of disability placards issued against the records of the Bureau of Vital Statistics of the State Department of Health Services, or its successor, and withhold any renewal notices that otherwise would have been sent, for any placard holders identified as deceased.

(3) <<-* * *->><<+Except as provided in paragraph (4)+>>, no person is eligible for more than one placard at any time.

<<+(4)+>> Organizations and agencies involved in the transportation of disabled persons or disabled veterans may apply for a placard for each vehicle used for the purpose of transporting disabled persons or disabled veterans.

(b)(1) Prior to issuing any disabled person or disabled veteran an original distinguishing placard, the department shall require the submission of a certificate, in accordance with paragraph (2), signed by the physician or surgeon substantiating the disability,

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 85 of 98

DISABLED PERSONS—DISCRIMINATION—PARKING..., 2001 Cal. Legis. Serv....

unless the applicant's disability is readily observable and uncontested. The disability of any person who has lost, or has lost use of, one or more lower extremities or both hands, or who has significant limitation in the use of lower extremities, may also be certified by a licensed chiropractor. The blindness of any applicant shall be certified by a licensed physician or surgeon who specializes in diseases of the eye or a licensed optometrist. The physician or person certifying the qualifying disability shall provide a full description of the illness or disability on the form submitted to the department.

(2) The physician or other person who signs a certificate submitted under this subdivision shall retain information sufficient to substantiate that certificate and, upon request of the department, shall make that information available for inspection by the Medical Board of California.

(3) The department shall maintain in its records all information on an applicant's certification of permanent disability and shall make that information available to eligible law enforcement or parking control agencies upon a request pursuant to Section 22511.58.

(c) <<-* * *->>Any person who has been issued a distinguishing placard pursuant to subdivision (a) may apply to the department for a substitute placard without recertification of eligibility, if that placard has been lost or stolen.

<<-* * *->>

(d) The distinguishing placard shall be returned to the department not later than 60 days after the death of the disabled person or disabled veteran to whom the placard was issued.

SEC. 4. Section 22511.59 of the Vehicle Code is amended to read:

<< CA VEHICLE § 22511.59 >>

22511.59. (a) Upon receipt of the applications and documents required by subdivisions (b), (c), or (d), the department shall issue a temporary distinguishing placard bearing the International Symbol of Access adopted pursuant to Section 3 of Public Law 100–641 commonly known as the "wheelchair symbol." During the period for which it is valid, the temporary distinguishing placard may be used for the parking purposes described in Section 22511.5 in the same manner as a distinguishing placard issued pursuant to Section 22511.55.

(b)(1) Any person who is temporarily disabled for a period of not more than six months may apply to the department for the issuance of the temporary distinguishing placard described in subdivision (a).

(2) Prior to issuing a placard pursuant to this subdivision, the department shall require the submission of a certificate signed by a physician or surgeon, as described in subdivision (b) of Section 22511.55, substantiating the temporary disability and stating the date upon which the disability is expected to terminate.

(3) The physician or other person who signs a certificate submitted under this subdivision shall maintain information sufficient to substantiate that certificate and, upon request of the department, shall make that information available for inspection by the Medical Board of California.

(4) A placard issued pursuant to this subdivision shall expire not later than 180 days from the date of issuance or upon the expected termination date of the disability, as stated on the certificate required by paragraph (2), whichever is less.

<<+(5) The fee for a temporary placard issued pursuant to this subdivision shall be six dollars ($6).+>>

(c)(1) Any disabled person or disabled veteran who is not a resident of this state and plans to travel within the state may apply to the department for the issuance of the temporary distinguishing placard described in subdivision (a).

(2) Prior to issuing a placard pursuant to this subdivision, the department shall require certification of the disability, as described in subdivision (b) of Section 22511.55.

(3) The physician or other person who signs a certificate submitted under this subdivision shall maintain information sufficient to substantiate that certificate and, upon request of the department, shall make that information available for inspection by the Medical Board of California.

(4) A placard issued pursuant to this subdivision shall expire not later than 90 days from the date of issuance.

(d)(1) Any disabled person or disabled veteran who has been issued either a distinguishing placard pursuant to Section 22511.55 or special identification license plates pursuant to Section 5007, but not both, may apply to the department for the issuance of the temporary distinguishing placard for the purpose of travel described in subdivision (a).

(2) Prior to issuing a placard pursuant to this subdivision, the department shall require the applicant to submit either the number identifying the distinguishing placard issued pursuant to Section 22511.55 or the number on the special identification license plates.

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 86 of 98

**DISABLED PERSONS—DISCRIMINATION—PARKING...**, 2001 Cal. Legis. Serv....

(3) A placard issued pursuant to this subdivision shall expire not later than 30 days from the date of issuance.

<<-* * *->>

CA LEGIS 708 (2001)

---

**End of Document**
© 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 87 of 98

CIVIL RIGHTS—CIVIL RIGHTS ACT OF 2005, 2005 Cal. Legis. Serv. Ch. 420 (A.B....

2005 Cal. Legis. Serv. Ch. 420 (A.B. 1400) (WEST)

CALIFORNIA 2005 LEGISLATIVE SERVICE

2005 Portion of 2005-2006 Regular Session

Additions are indicated by Text; deletions by

\* \* \* . Changes in tables are made but not highlighted.

CHAPTER 420

A.B. No. 1400

CIVIL RIGHTS—CIVIL RIGHTS ACT OF 2005

AN ACT to amend Sections 51, 51.5, 51.7, 51.8, and 53 of the Civil Code, relating to civil rights.

[Filed with Secretary of State September 29, 2005.]

LEGISLATIVE COUNSEL'S DIGEST

AB 1400, Laird. Civil Rights Act.

The Unruh Civil Rights Act generally prohibits business establishments from discriminating on the basis of sex, race, color, religion, ancestry, national origin, disability, or medical condition. The Unruh Civil Rights Act provides civil remedies for violations of its provisions.

This bill would further prohibit that discrimination on the basis of marital status or sexual orientation, and would define related terms. The bill would also integrate those definitions into other related provisions, and would make specified findings and declarations in that regard.

The people of the State of California do enact as follows:

SECTION 1. This act shall be known and may be cited as "The Civil Rights Act of 2005."

SEC. 2. The Legislature finds and declares as follows:

(a) Even prior to passage of the Unruh Civil Rights Act, California law afforded broad protection against arbitrary discrimination by business establishments. The Unruh Civil Rights Act was enacted to provide broader, more effective protection against arbitrary discrimination. California's interest in preventing that discrimination is longstanding and compelling.

(b) In keeping with that history and the legislative history of the Unruh Civil Rights Act, California courts have interpreted the categories enumerated in the act to be illustrative rather than restrictive. It is the intent of the Legislature that these enumerated bases shall continue to be construed as illustrative rather than restrictive.

(c) The Legislature affirms that the bases of discrimination prohibited by the Unruh Civil Rights Act include, but are not limited to, marital status and sexual orientation, as defined herein. By specifically enumerating these bases in the Unruh Civil Rights Act, the Legislature intends to clarify the existing law, rather than to change the law, as well as the principle that the bases enumerated in the act are illustrative rather than restrictive.

(d) It is the intent of the Legislature that the amendments made to the Unruh Civil Rights Act by this act do not affect the California Supreme Court's rulings in Marina Point, Ltd. v. Wolfson (1982) 30 Cal.3d 721 and O'Connor v. Village Green Owners Association (1983) 33 Cal.3d 790.

SEC. 3. Section 51 of the Civil Code is amended to read:

<< CA CIVIL § 51 >>

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 88 of 98

CIVIL RIGHTS—CIVIL RIGHTS ACT OF 2005, 2005 Cal. Legis. Serv. Ch. 420 (A.B....

51. (a) This section shall be known, and may be cited, as the Unruh Civil Rights Act.

(b) All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, * * * medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

(c) This section shall not be construed to confer any right or privilege on a person that is conditioned or limited by law or that is applicable alike to persons of every sex, color, race, religion, ancestry, national origin, disability, * * * medical condition, marital status, or sexual orientation.

(d) Nothing in this section shall be construed to require any construction, alteration, repair, structural or otherwise, or modification of any sort whatsoever, beyond that construction, alteration, repair, or modification that is otherwise required by other provisions of law, to any new or existing establishment, facility, building, improvement, or any other structure, nor shall anything in this section be construed to augment, restrict, or alter in any way the authority of the State Architect to require construction, alteration, repair, or modifications that the State Architect otherwise possesses pursuant to other laws.

(e) For purposes of this section:

(1) "Disability" means any mental or physical disability as defined in Sections 12926 and 12926.1 of the Government Code.

(2) "Medical condition" has the same meaning as defined in subdivision (h) of Section 12926 of the Government Code.

(3) "Religion" includes all aspects of religious belief, observance, and practice.

(4) "Sex" has the same meaning as defined in subdivision (p) of Section 12926 of the Government Code.

(5) "Sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation" includes a perception that the person has any particular characteristic or characteristics within the listed categories or that the person is associated with a person who has, or is perceived to have, any particular characteristic or characteristics within the listed categories.

(6) "Sexual orientation" has the same meaning as defined in subdivision (q) of Section 12926 of the Government Code.

(f) A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101–336) shall also constitute a violation of this section.

SEC. 4. Section 51.5 of the Civil Code is amended to read:

<< CA CIVIL § 51.5 >>

51.5. (a) No business establishment of any kind whatsoever shall discriminate against, boycott or blacklist, or refuse to buy from, contract with, sell to, or trade with any person in this state * * * on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51, or of the person's partners, members, stockholders, directors, officers, managers, superintendents, agents, employees, business associates, suppliers, or customers, because the person is perceived to have one or more of those characteristics, or because the person is associated with a person who has, or is perceived to have, any of those characteristics.

(b) As used in this section, "person" includes any person, firm, association, organization, partnership, business trust, corporation, limited liability company, or company.

(c) This section shall not be construed to require any construction, alteration, repair, structural or otherwise, or modification of any sort whatsoever, beyond that construction, alteration, repair, or modification that is otherwise required by other provisions of law, to any new or existing establishment, facility, building, improvement, or any other structure, nor shall this section be construed to augment, restrict, or alter in any way the authority of the State Architect to require construction, alteration, repair, or modifications that the State Architect otherwise possesses pursuant to other laws.

* * *

SEC. 5. Section 51.7 of the Civil Code is amended to read:

<< CA CIVIL § 51.7 >>

51.7. (a) All persons within the jurisdiction of this state have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of * * * political affiliation, * * * or on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51, or position in a labor dispute, or because another

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 89 of 98

CIVIL RIGHTS—CIVIL RIGHTS ACT OF 2005, 2005 Cal. Legis. Serv. Ch. 420 (A.B....

person perceives them to have one or more of those characteristics. The identification in this subdivision of particular bases of discrimination is illustrative rather than restrictive.

(b) This section does not apply to statements concerning positions in a labor dispute which are made during otherwise lawful labor picketing.

\* \* \*

SEC. 6. Section 51.8 of the Civil Code is amended to read:

<< CA CIVIL § 51.8 >>

51.8. (a) No franchisor shall discriminate in the granting of franchises solely \* \* \* on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51 of the franchisee and the \* \* \* composition of a neighborhood or geographic area reflecting any characteristic listed or defined in subdivision (b) or (e) of Section 51 in which the franchise is located. Nothing in this section shall be interpreted to prohibit a franchisor from granting a franchise to prospective franchisees as part of a program or programs to make franchises available to persons lacking the capital, training, business experience, or other qualifications ordinarily required of franchisees, or any other affirmative action program adopted by the franchisor.

(b) Nothing in this section shall be construed to require any construction, alteration, repair, structural or otherwise, or modification of any sort whatsoever, beyond that construction, alteration, repair, or modification that is otherwise required by other provisions of law, to any new or existing establishment, facility, building, improvement, or any other structure, nor shall anything in this section be construed to augment, restrict, or alter in any way the authority of the State Architect to require construction, alteration, repair, or modifications that the State Architect otherwise possesses pursuant to other laws.

SEC. 7. Section 53 of the Civil Code is amended to read:

<< CA CIVIL § 53 >>

53. (a) Every provision in a written instrument relating to real property that purports to forbid or restrict the conveyance, encumbrance, leasing, or mortgaging of that real property to any person \* \* \* because of any characteristic listed or defined in subdivision (b) or (e) of Section 51 is void, and every restriction or prohibition as to the use or occupation of real property because of \* \* \* any characteristic listed or defined in subdivision (b) or (e) of Section 51 is void.

(b) Every restriction or prohibition, whether by way of covenant, condition upon use or occupation, or upon transfer of title to real property, which restriction or prohibition directly or indirectly limits the acquisition, use or occupation of that property because of \* \* \* any characteristic listed or defined in subdivision (b) or (e) of Section 51 is void.

(c) In any action to declare that a restriction or prohibition specified in subdivision (a) or (b) is void, the court shall take judicial notice of the recorded instrument or instruments containing the prohibitions or restrictions in the same manner that it takes judicial notice of the matters listed in Section 452 of the Evidence Code.

CA LEGIS 420 (2005)

WESTLAW　© 2023 Thomson Reuters. No claim to original U.S. Government Works.　　　**ADD_056**　3

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 90 of 98

CIVIL RIGHTS—DISCRIMINATION—IMMIGRATION; 2015 Cal. Legis. Serv. Ch. 282...

2015 Cal. Legis. Serv. Ch. 282 (S.B. 600) (WEST)

CALIFORNIA 2015 LEGISLATIVE SERVICE

2015 Portion of 2015-2016 Regular Session

Additions are indicated by **Text**; deletions by
\* \* \* .

Vetoes are indicated by ~~Text~~ ;
stricken material by ~~Text~~ .

CHAPTER 282

S.B. No. 600

CIVIL RIGHTS—DISCRIMINATION—IMMIGRATION

AN ACT to amend Section 51 of the Civil Code, relating to discrimination.

[Filed with Secretary of State September 8, 2015.]

**LEGISLATIVE COUNSEL'S DIGEST**

SB 600, Pan. Discrimination: citizenship: language: immigration status.

Existing law finds and declares that all protections, rights, and remedies available under state law, except any reinstatement remedy prohibited by federal law, are available to all individuals regardless of immigration status who have applied for employment, or who are or who have been employed, in this state. Existing law, the Unruh Civil Rights Act, provides that all persons within the jurisdiction of this state are entitled to full and equal accommodations in all business establishments regardless of their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, or sexual orientation.

This bill would extend the protections of the Unruh Civil Rights Act to persons regardless of citizenship, primary language, or immigration status. The bill would specify that those protections do not require the provision of services or documents in a language other than English, beyond that which is otherwise required by law.

The people of the State of California do enact as follows:

SECTION 1. Section 51 of the Civil Code is amended to read:

<< CA CIVIL § 51 >>

51. (a) This section shall be known, and may be cited, as the Unruh Civil Rights Act.

(b) All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, \* \* \* sexual orientation**, citizenship, primary language, or immigration status** are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

CIVIL RIGHTS—DISCRIMINATION—IMMIGRATION; 2015 Cal. Legis. Serv. Ch. 282...

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 91 of 98

(c) This section shall not be construed to confer any right or privilege on a person that is conditioned or limited by law or that is applicable alike to persons of every sex, color, race, religion, ancestry, national origin, disability, medical condition, marital status, ∗ ∗ ∗ sexual orientation, **citizenship, primary language, or immigration status,** or to persons regardless of their genetic information.

(d) Nothing in this section shall be construed to require any construction, alteration, repair, structural or otherwise, or modification of any sort whatsoever, beyond that construction, alteration, repair, or modification that is otherwise required by other provisions of law, to any new or existing establishment, facility, building, improvement, or any other structure, nor shall anything in this section be construed to augment, restrict, or alter in any way the authority of the State Architect to require construction, alteration, repair, or modifications that the State Architect otherwise possesses pursuant to other laws.

(e) For purposes of this section:

(1) "Disability" means any mental or physical disability as defined in Sections 12926 and 12926.1 of the Government Code.

(2)(A) "Genetic information" means, with respect to any individual, information about any of the following:

(i) The individual's genetic tests.

(ii) The genetic tests of family members of the individual.

(iii) The manifestation of a disease or disorder in family members of the individual.

(B) "Genetic information" includes any request for, or receipt of, genetic services, or participation in clinical research that includes genetic services, by an individual or any family member of the individual.

(C) "Genetic information" does not include information about the sex or age of any individual.

(3) "Medical condition" has the same meaning as defined in subdivision **(i)** of Section 12926 of the Government Code.

(4) "Religion" includes all aspects of religious belief, observance, and practice.

(5) "Sex" includes, but is not limited to, pregnancy, childbirth, or medical conditions related to pregnancy or childbirth. "Sex" also includes, but is not limited to, a person's gender. "Gender" means sex, and includes a person's gender identity and gender expression. "Gender expression" means a person's gender-related appearance and behavior whether or not stereotypically associated with the person's assigned sex at birth.

(6) "Sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, ∗ ∗ ∗ sexual orientation, **citizenship, primary language, or immigration status**" includes a perception that the person has any particular characteristic or characteristics within the listed categories or that the person is associated with a person who has, or is perceived to have, any particular characteristic or characteristics within the listed categories.

(7) "Sexual orientation" has the same meaning as defined in subdivision **(s)** of Section 12926 of the Government Code.

(f) A violation of the right of any individual under the federal Americans with Disabilities Act of 1990 (∗ ∗ ∗ **Public Law** 101–336) [1] shall also constitute a violation of this section.

**(g) Verification of immigration status and any discrimination based upon verified immigration status, where required by federal law, shall not constitute a violation of this section.**

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 92 of 98

CIVIL RIGHTS—DISCRIMINATION—IMMIGRATION; 2015 Cal. Legis. Serv. Ch. 282...

**(h) Nothing in this section shall be construed to require the provision of services or documents in a language other than English, beyond that which is otherwise required by other provisions of federal, state, or local law, including Section 1632.**

SEC. 2. The amendment of Section 51 of the Civil Code by this act does not constitute a change in, but is declaratory of, existing law. It is not the intent of the Legislature in amending the Unruh Civil Rights Act to affect the protected status of any other classification, whether or not expressed in Section 51 of the Civil Code.

## Footnotes

1  For public law sections classified to the U.S.C.A., see USCA–Tables.

---

**End of Document**    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2023 Thomson Reuters. No claim to original U.S. Government Works.  ADD_059 3

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 93 of 98

California Bill Analysis, A.B. 587 Assem., 3/26/2001, California Bill Analysis, A.B. 587...

CA B. An., A.B. 587 Assem., 3/26/2001

California Bill Analysis, Assembly Floor, 2001-2002 Regular Session, Assembly Bill 587

March 26, 2001
California Assembly
2001-2002 Regular Session

ASSEMBLY THIRD READING

AB 587 (Firebaugh)

As Amended March 26, 2001

Majority vote

| | | |
|---|---|---|
| JUDICIARY | | 7-2 |

| | |
|---|---|
| Ayes: | Steinberg, Corbett, |
| | Dutra, Jackson, |
| | Longville, Shelley, Wayne |
| Nays: | Robert Pacheco, Harman |

SUMMARY: Permits government attorneys to seek specified civil penalties in actions brought on behalf of victims of hate crimes, and raises from $1,000 to $4,000 the minimum damages that may be awarded for violations of various civil rights acts. Specifically, this bill:

1) Allows the Attorney General (AG), any district attorney, or any city attorney to seek a civil penalty of $25,000 (in addition to injunctive and other appropriate equitable relief already available), in a civil action brought on behalf of victims under the state hate crimes statute. It also provides that if this civil penalty is requested, it must be assessed individually against each person who is determined to have violated the statute, and the penalty must be awarded to each individual victim whose rights under the statute are determined to have been violated.

2) Raises from $1,000 to $4,000 the minimum damages that may be awarded victims for violations of the Unruh Civil Rights Act (Unruh Act), Civil Code Section 51.5, and the Gender Tax Repeal (GTR) Act.

FISCAL EFFECT: None

COMMENTS: This bill, which is sponsored by the AG, would make two important changes regarding enforcement of the state's civil rights laws. First, this bill would permit government attorneys to seek the same $25,000 civil penalty in actions brought under the Bane Civil Rights Act (Bane Act) on behalf of hate crimes victims that the individual victims are already entitled to recover when they sue on their own behalf. In such cases, the penalty will be assessed against each person who is determined to have violated the Bane Act and the penalty will be awarded to each individual victim whose rights have been violated. Second, this bill would raise from $1,000 to $4,000 the minimum damages that may be awarded for violations of the Unruh Act, a related anti-discrimination provision, and the GTR Act, in order to help deter such violations.

According to the AG, permitting government attorneys to seek civil penalties, in addition to injunctive or equitable relief, may provide incentives for individual victims to pursue actions for violations of the Bane Act by reporting these incidents to the

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 94 of 98

California Bill Analysis, A.B. 587 Assem., 3/26/2001, California Bill Analysis, A.B. 587...

AG and/or local government attorneys. The AG explains that individuals today are more likely to hire a private attorney if they could afford one or find one, rather than seeking the assistance of government prosecutors, because the present hate crimes statutory scheme only permits these government attorneys to obtain injunctive and equitable relief. By allowing the AG and district and city attorneys to seek civil penalties in such cases, at no cost to the individual, the AG believes it is much more likely that violations of the hate crimes statute will be reported to these government prosecutors. The AG argues that if the problem is not addressed, most victims of hate crimes will be unable to obtain meaningful relief for the violations, and perpetrators of such violations will have little incentive to refrain from future violations.

With respect to the second part of this bill, the AG notes that current law provides for a minimum damage award of only $1,000 for violations of the Unruh Act, a related anti-discrimination provision, and the GTR Act. According to the AG, many of the violations of these civil rights acts often result in damages to each individual in amounts less than $1,000. For example, in cases which are typically brought under the GTR Act, the plaintiff would likely only recover the $1,000 minimum amount and yet the defendant may have had hundreds or thousands of transactions that violated the acts and which would have unjustly enriched him or her. Thus, the prospect of paying an occasional $1,000 damage award due to a discriminatory promotion may be calculated as an absorbable cost of doing business if, as a result of the promotion, a lot of customers who are unaware of the law patronize the business. While the difference in the amount paid by a plaintiff may seem trivial and the motive for the offer benevolent or paternalistic, such acts of discrimination would be viewed entirely differently if the discounts were offered only to members of a certain race or religion. The AG believes that since the typical $1,000 damage award is unlikely to have a significant deterrent effect on the discriminatory practices of a large company, that minimum amount should be increased to at least $4,000. According to the AG, this increased amount will allow plaintiffs to continue to pursue their claims within the jurisdictional limitations of small claims court, and will ensure that a small business is not put out of business by the commission of one violation.

<u>Analysis Prepared by</u>: Daniel Pone / JUD. / (916) 319-2334

FN: 0000284

CA B. An., A.B. 587 Assem., 3/26/2001

**End of Document**                                      © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 95 of 98

California Bill Analysis, A.B. 587 Sen., 7/03/2001, California Bill Analysis, A.B. 587...

CA B. An., A.B. 587 Sen., 7/03/2001

California Bill Analysis, Senate Committee, 2001-2002 Regular Session, Assembly Bill 587

July 3, 2001
California Senate
2001-2002 Regular Session

SENATE JUDICIARY COMMITTEE

Martha M. Escutia, Chair

2001-2002 Regular Session

AB 587

Assembly Member Firebaugh

As Amended March 26, 2001

Hearing Date: July 3, 2001

Civil Code

GMO

## SUBJECT

Civil Rights: Penalties for Violations

## DESCRIPTION

This bill would allow the Attorney General, district attorney or city attorney prosecuting enforcement actions under the Bane Civil Rights Act to seek a civil penalty of $25,000 in addition to injunctive and equitable relief available under current law. The $25,000 would be awarded to the person whose rights were violated, and assessed against each person who violated those rights.

The bill also would increase the minimum penalty for a violation of another's civil right to be free from discrimination under Sections 51 and 51.5 of the Civil Code, from $1,000 to $4,000.

## BACKGROUND

The Ralph Civil Rights Act of 1976 provides that all persons within California have the right to be free from any violence or intimidation by threat of violence, committed against them or their property because of their race, sex, or religion, among other things. [Civil Code Section 51.7.] Section 52(b)(2) provides for the award of a civil penalty of $25,000 to the person denied the right to be free from violence under Section 51.7.

AB 2719 (Wesson, Chapter 98, Statutes of 2000) amended the penalty provision in Section 52(b)(2) to expressly state that the $25,000 civil penalty is to be awarded to the person denied the right to be free from violence under Section 51.7, in any action brought by the Attorney General, a district attorney, city attorney, or the person.

The Tom Bane Civil Rights Act (Chapter 1277, Statutes of 1987) provides that an action may be brought by the Attorney General, any district attorney or city attorney, or individual if a person, whether or not acting under color of law, interferes or

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 96 of 98

California Bill Analysis, A.B. 587 Sen., 7/03/2001, California Bill Analysis, A.B. 587...

attempts to interfere by threats, intimidation or coercion, with the exercise or enjoyment by the individual of rights secured by the Constitution or laws of the United States or this state. A civil action brought by the individual may seek to recover damages, injunctive relief, and other appropriate relief to protect the peaceable exercise or enjoyment of the right or rights secured by law. An action brought by the Attorney General, district attorney, or city attorney may seek injunctive or other equitable relief in order to protect the peaceable exercise or enjoyment of the rights secured by law.

The Gender Tax Repeal Act of 1995 (AB 1100, Speier, Chapter 866, Statutes of 1995) prohibits discriminatory pricing of goods and services based on gender.

The Attorney General (AG) is the sponsor of this bill.

CHANGES TO EXISTING LAW

Existing law authorizes the Attorney General, district attorney, or city attorney to bring an action seeking injunctive and equitable relief in order to protect the peaceable exercise or enjoyment by an individual or individuals of rights secured by the Constitution or laws of the United States or this state, whenever a person interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with those rights. [Civil Code Section 52.1.]

Existing law provides specified penalties for violations of civil rights as follows:

For a violation of a person's right under the Ralph Civil Rights Act of 1976 to be free from any violence or intimidation by threat of violence, committed against them or their property because of their race, sex, religion, ancestry, national origin, political affiliation, sexual orientation, age, disability or position in a labor dispute, or because another person perceives them to have one or more of those characteristics, a civil penalty of $25,000, awarded to the person denied the right to be free from violence or intimidation, in any action brought by the Attorney General, district attorney, city attorney, or the person. [Civil Code Sections 51.7 and 52(b)(2).]

For a violation of a person's right under the Unruh Civil Rights Act to be free from discrimination in accommodations, advantages, facilities, privileges or services in all business establishments of every kind whatsoever no matter their sex, race, color, religion, ancestry, national origin, disability, or medical condition, or on the basis of the Americans with Disabilities Act, the penalty, for each and every violation, is actual damages plus any amount that a jury or court may award up to three times the amount of the actual damages, but in no case less than $1,000, and any attorney's fees as determined by the court. [Civil Code Sections 51 and 52(a).]

For a violation of the statute prohibiting a business establishment of any kind from discriminating against, boycotting, blacklisting, refusing to buy from or contracting with, selling to or trading with a person because of that person's race, creed, religion, color, national origin, sex, disability, or medical condition or because that person's partners, business associates, stockholders, agents, customers, agents, have any of those characteristics, or the person or person's business associates are perceived to have any of those characteristics, the penalty, for each and every violation, is actual damages plus any amount that a jury or court may award up to three times the amount of the actual damages, but in no case less than $1,000 and any attorney's fees as determined by the court. [Civil Code Sections 51.5 and 52(a).]

For a violation of the Gender Tax Repeal Act of 1995, which prohibits a business establishment from discriminating, with respect to price charged for services of similar or like kind, against a person because of the person's gender, the penalty for each and every violation, is actual damages plus any amount that a jury or court may award up to three times the amount of the actual damages, but in no case less than $1,000 and any attorney's fees as determined by the court. [Civil Code Sections 51.6 and 52(a).]

This bill would:

a. Authorize the Attorney General, district attorney, or city attorney seeking injunctive or equitable relief to protect the peaceable exercise of a person's rights under the Constitution or laws of the United States or this state, to also seek a civil penalty of $25,000, to be awarded to the person whose rights were violated, and to be assessed against each person who violated those rights.

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 97 of 98

California Bill Analysis, A.B. 587 Sen., 7/03/2001, California Bill Analysis, A.B. 587...

b. Increase, from $1,000 to $4,000, the minimum penalty assessable for every violation of the Unruh Civil Rights Act or the statute prohibiting business establishments from discriminating on the basis of the specified characteristics, or the Gender Tax Repeal Act of 1995.

<u>COMMENT</u>

1. <u>Need for the bill</u>

According to the author, "permitting government attorneys to seek civil penalties in addition to injunctive and/or equitable relief may provide incentives to individuals to pursue actions for violations of this [the Bane Act]," which prohibits the unlawful interference with the peaceable exercise of rights secured by the Constitution or laws of the US or the state. Because the Attorney General, district attorney or city attorney is empowered to seek only injunctive or equitable relief against the violators, victims who cannot afford to hire an attorney to seek compensation for actual damages or who cannot find an attorney who would take a case on a contingency basis simply walk away and do not prosecute.

The Attorney General reports that despite the efforts its office has made to inform the public about the AG's authority to bring Bane Act claims on behalf of victims of hate crimes, they have not been very successful in getting requests for assistance. They do know that hate crime cases exist, both from reports they receive from human relations agencies and from reported case law. (See Comment 2.) But because most victims do not report the violations, the Attorney General's (and other prosecutors') efforts to bring civil rights enforcement cases have been very limited. If the problem is not addressed, says the author, "most victims of Bane Act violations will be unable to obtain meaningful relief for the violations, and perpetrators of such violations will have little incentive to refrain from future violations."

By adding a $25,000 civil penalty to the remedies government prosecutors are authorized to seek, the Attorney General believes that victims of hate crimes and other victims of Bane Act violations would step forward so that the violators may be prosecuted. Another proponent, the Anti-Defamation League, states that their four California offices receive hundreds of calls from victims of discrimination, intimidation, and hate-motivated violence, and that those callers are regularly channeled to the Attorney General or district or city attorney for assistance in obtaining injunctions. However, those victims who want to pursue a civil action against the perpetrators find little recourse, because very few attorneys are willing to take these difficult cases on a contingency basis.

2. <u>New civil penalty for Bane Act violations: $25,000 to each victim from each defendant</u>

This bill would specify a civil penalty of $25,000 for each victim of a Bane Act violation, assessable against each person who violates the statute. This new penalty is similar to that applicable to violations of the Ralph Civil Rights Act of 1976 (see Background, above) and to civil rights violations under the Fair Employment and Housing Act.

The Attorney General contends that few Bane Act claims have been successfully prosecuted by individual parties, who have recovered money damages for the violations. (See e.g., <u>Bay Area Rapid Transit Dist. V. Superior Court</u> (1995) 38 Cal. App. 4th 141 [parents of 19-year old African American shot and killed by white police officer employed by BART brought Bane Act suit against BART]; <u>Jones v. K Mart</u> (1998) 17 Cal. 4th 329 (complainant alleged that store employees violated Bane Act by engaging in aggressive search and seizure); <u>Nelson v. City of Irvine</u> (9th Cir. 1998) 143 F.3d 1196 (arrestees alleged they were coerced into submitting to blood tests following arrest for DUI and were deprived of option to take breath and urine test in violation of the Bane Act). These cases were prosecuted through private actions by the victims, and as previously stated, not many attorneys take these types of cases are cases on a contingent fee basis.

By allowing the government prosecutors to seek civil penalties in addition to the appropriate injunctive or equitable relief, at no cost to the individual victim, the Attorney General argues that it is much more likely that violations of the Bane Act will be reported to these government prosecutors, resulting in more enforcement actions being pursued.

3. <u>Increase minimum penalty from $1,000 to $4,000 for violations by business establishments</u>

Under <u>Section 52(a) of the Civil Code,</u> a person who violates the Unruh Civil Rights Act or the statutory prohibition against discrimination or boycott in business transactions or the Gender Tax Repeal Act is liable for actual damages incurred by the person who is the victim of discrimination, plus an amount that a jury or court may award up to three times the actual damages but in no case less than $1,000, plus attorney's fees as determined by the court.

This bill would raise the minimum penalty, to be imposed over and above any actual damages suffered by the victim, to $4,000.

The Attorney General has reported that violations of these civil rights provisions often result in damages to victims in amounts less than $1,000. They cite two recent cases involving the refusal of gender-based discounts by business establishments that

California Bill Analysis, A.B. 587 Sen., 7/03/2001, California Bill Analysis, A.B. 587...

Case: 22-55873, 06/21/2023, ID: 12740225, DktEntry: 38, Page 98 of 98

resulted in $1,000 awards, even though the business owner may have had hundreds or thousands of such violations. One of the cases involved a male plaintiff who was refused discounts on car washes and nightclub cover charges offered to women through "Ladies' Day" or "Ladies' Night" promotions. The actual amount charged to the plaintiff based on his gender ranged from 15 cents to $3 more than that charged to women. [Koire v. Metro Car Wash (1985) 40 Cal. 3r 24, which was based on Unruh Civil Rights Act violations.] Another case, Reese v. Wal-Mart Stores, Inc. (1999) 73 Cal. App. 4th 1225, was based on the Gender Tax Repeal Act of 1995 and was filed by a plaintiff who was overcharged by $3.79 for an oil change because of his gender. According to the Attorney General, since very few individuals are likely to file complaints and pursue prosecution, many businesses simply dismiss the prospect of an occasional penalty as an "absorbable cost of doing business," and continue to undertake discriminatory promotions that, even with the occasional $1,000 penalty, will garner them thousands of dollars in sales because customers are unaware of the law. The AG argues that even though the actual dollar amount typically involved in gender-based discounts appears trivial, the Legislature has made a determination that such practices are discriminatory and should be halted. "Raising the minimum penalty at a level that is still below the threshold for small claims court actions makes it more likely that claims will be followed [sic] and that violators will be unwilling to incur these costs as absorbable business costs."

The rationale given for raising the minimum penalty to $4,000, as opposed to a higher amount, is that these claims are usually pursued by victims in small claims court, which has a jurisdictional limit of $5,000. Further, the amount will ensure that the small business (who is usually the violator) is not put out of business by the commission of one violation.

4. Suggested technical amendment

Civil Code Section 51.6, the Gender Tax Repeal Act of 1995, refers to Section 52(a) as the remedy for a violation of the statute. However, Section 52(a) refers only to violations under Section 51 (Unruh Civil Rights Act) and Section 51.5 (ban against discrimination in business transactions). Since this bill would amend Section 52(a) that section should be amended to include a reference to Section 51.6.

Support: Los Angeles County District Attorney's Office; Anti-Defamation League; Protection and Advocacy, Inc.; Lambda Legal Defense and Education Fund, Inc.; California School Employees Association

Opposition: None Known

<u>HISTORY</u>

Source: Attorney General

Related Pending Legislation: AB 1088 (Jackson), which would amend the Gender Tax Repeal Act to require price postings by specific service providers, will be heard in Committee today.

Prior Legislation: AB 2719 (Wesson, Chapter 98, Statutes of 2000) - allowed the AG and district/city attorney to seek $25,000 civil penalty to be awarded to victims in a successful enforcement action brought on their behalf under the Ralph Civil Rights Act. (See Background section.)

Prior Vote: Asm. Jud. (Ayes 7, Noes 2); Asm. Flr. (Ayes 46, Noes 23)

CA B. An., A.B. 587 Sen., 7/03/2001

**End of Document**　　　　　© 2023 Thomson Reuters. No claim to original U.S. Government Works.